UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
AMY R. GURVEY,

                           Plaintiff,                           Case No. 06 CV 1202 (BSJ)

       -against-

WILLIAM BORCHARD, MIDGE HYMAN,
BAILA CELEDONIA, CHRISTOPHER JENSEN,
COWAN, LIEBOWITZ & LATMAN, P.C.,
CLEAR CHANNEL COMMUNICATIONS, INC.,
INSTANTLIVE CONCERTS, LLC, LIVE
NATION, INC., NEXTTICKETING, LLC, DALE
HEAD, STEVE SIMON, MICHAEL GORDON and
SUSAN SCHICK,

                           Defendants.
-------------------------------------------------------------X


# MEMORANDUM OF LAW IN SUPPORT OF THE CLL DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT


Hinshaw & Culbertson LLP
780 Third Avenue
New York, New York 10017
212-471-6200

Attorneys for Defendants Cowan, Liebowitz & Latman, P.C.,
William Borchard, Midge Hyman, Baila Celedonia and Christopher Jensen

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS ..........................................................................................3

ARGUMENT ...............................................................................................................7

    I.    GOVERNING STANDARDS ..........................................................................7

    II.   COUNTS EIGHT, NINE AND ELEVEN AGAINST CLL, AND ALL
       COUNTS AGAINST THE CLL PARTNERS, ARE TIME-BARRED ...................7

        A.    The Claims Against CLL ........................................................................8

        B.    The Claims Against the CLL Partners ...........................................................9

    III.  ALL CLAIMS AGAINST THE CLL DEFENDANTS SHOULD BE
        DISMISSED UNDER RULE 12(b)(6) ..........................................................11

        A.    The Misappropriation Claims (Counts Two and Three)............................11

             1. Gurvey Did Not Keep Her Trade Secret/Idea Confidential ................. 12
             2. Gurvey's Alleged Trade Secret/Idea Is Not Novel................................ 13
             3. Gurvey's Alleged Trade Secret Was Not Used In The
                Course of Business ........................................................................... 15
             4. Gurvey Merely Speculates That CLL Gave Her
                Trade Secret/Idea to CCC................................................................... 15

        B.    Legal Malpractice and Breach of Fiduciary Duty
             (Counts Four and Six)........................................................................17

             1. Gurvey Does Not Allege Acts Amounting To Legal
                Malpractice ...................................................................................... 18
             2. Gurvey's Breach of Fiduciary Duty Claims Are Duplicative
                Or Nonsensical.................................................................................. 19

        C.    Tortious Interference with Contract (Count Five) ....................................21

        D.    The Antitrust Claims (Counts Eight and Nine)...........................................21

        E.    Interference with Prospective Economic Relations (Count Eleven)..........23

CONCLUSION.............................................................................................................25

i

## TABLE OF AUTHORITIES

### Cases

*Abernathy-Thomas Engineering Co. v. Pall Corp.,*
   103 F.Supp.2d 582 (E.D.N.Y. 2000) ...................................................... 11

*Adsani v. Miller, PMA,*
   1996 WL 194326 (S.D.N.Y. Apr. 22, 1996)............................................ 12

*Allen v. WestPoint-Pepperell, Inc.*
   945 F.2d 40 (2d Cir. 1991)................................................................. 7

*Alliance Sec. Prod. Inc. v. Fleming Co.*
   471 F.Supp.2d 452 (S.D.N.Y. 2007)................................................ 13, 14

*American Bus. Training Inc. v. American Mgt. Assoc.,*
   __ A.D.3d __, 815 N.Y.S.2d 491 (1st Dep't 2008) ............................... 13

*Ashland Mgmt. Inc. v. Janien,*
   82 N.Y.2d 395, 407, 604 N.Y.S.2d 912 (1993) .......................... 12, 13, 15

*ATSI Communications Inc. v. Shaar Fund Ltd.,*
   493 F.3d 87 (2d Cir. 2007).............................................................. 16

*Bell Atlantic Corp. v. Twombly,*
   __ U.S. __, 127 S.Ct. 1955 (2007)................................................. 7, 21

*Boyle v. Stephens, Inc.,*
   1997 WL 529006 (S.D.N.Y. Aug. 26, 1997).......................................... 12

*Bullmore v. Ernst & Young Cayman Islands,*
   45 A.D.3d 461, 846 N.Y.S.2d 145 (1st Dep't 2007) ............................. 22

*Cable News Network L.P. v. GoSMS.com, Inc.,*
   2000 WL 1678039 (S.D.N.Y. Nov. 6, 2000).......................................... 16

*Camp v. Dema,*
   948 F.2d 455 (8th Cir. 1991) ........................................................... 22

*Chicago Title Ins. Co. v. Great Western Financial Corp.,*
   444 P.2d 481 (Calif. 1968)............................................................... 22

*Cinelli v. Oppenheim-Ephratah Cent. Sch. Dist.,*
   2008 WL 111174 (N.D.N.Y. Jan. 7, 2008)............................................. 9

*Cornwall v. Robinson,*
  23 F.3d 694 (2d Cir. 1994)..................................................................................... 10, 11

*Cruise v. Doyle,*
  2008 WL 116703 (S.D.N.Y. Jan. 9, 2008) .............................................................. 7

*Enron Corp. v. J.P. Morgan Sec. Inc.,*
  361 B.R. 36 (S.D.N.Y. 2006).................................................................................. 10

*Henneberry v. Sumitomo Corp. of America,*
  2007 WL 2068346 (S.D.N.Y. July 12, 2007) ......................................................... 24

*Higgins v. New York Stock Exch.,*
  942 F.2d 829 (2d Cir. 1991)..................................................................................... 7

*Iannazzo v. Day Pitney LLP,*
  2007 WL 2020052 (S.D.N.Y. July 10, 2007) ......................................................... 19

*In re Adelphia,*
  324 B.R. 492 (Bkrtcy. S.D.N.Y. 2005) ................................................................... 17

*In re Dana Corp.,*
  2007 WL 3376882 (Bkrtcy. S.D.N.Y. Nov. 6, 2007) ............................................ 16

*In re IAC/Interactivecorp Sec. Litig.,*
  478 F.Supp.2d 574 (S.D.N.Y. 2007)....................................................................... 18

*Jones v. Weiss, Neuren & Neuren,*
  95 F.Supp.2d 105 (N.D.N.Y. 2000) ........................................................................ 23

*Kolbeck v. LIT America, Inc.,*
  939 F.Supp. 240 (S.D.N.Y. 1996) .......................................................................... 22

*Kronos Inc. v. AVX Corp.,*
  81 N.Y.2d 90, 595 N.Y.S.2d 289 (1993) ................................................................. 8

*Leadsinger, Inc. v. Cole,*
  2006 WL 2320544 (S.D.N.Y. Aug. 10, 2006) ........................................................ 21

*Lehman v. Dow Jones & Co.,*
  783 F.2d 285 (2d Cir. 1986).................................................................................... 12

*Lemelson v. Carolina Enters., Inc.,*
  541 F.Supp. 645 (S.D.N.Y. 1982) ............................................................................ 8

*LinkCo Inc. v. Fujitsu Ltd.,*
    230 F.Supp.2d 492 (S.D.N.Y. 2002)................................................................ 13, 15

*MacPhee v. Verizon Communications Inc.,*
    2008 WL 162899 (S.D.N.Y. Jan. 15, 2008) ............................................................ 21

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574, 106 S.Ct. 1348 (1986)................................................................ 17

*McCoy v. Feinman,*
    99 N.Y.2d 295, 755 N.Y.S.2d 693 (2002) ............................................................... 8

*Mo-Kan Cent. Recovery Co. v. Hedenkamp,*
    671 S.W.2d 394 (Mo. App. W.D. 1984).............................................................. 15

*Nadel v. Play-by-Play Toys & Novelties, Inc.,*
    208 F.3d 368 (2d Cir. 2000)................................................................................. 13

*Pasqualini v. Mortgageit, Inc.,*
    2007 WL 2161781 (S.D.N.Y., July 27, 2007) ........................................................ 8

*Paul v. Haley,*
    183 A.D.2d 44, 588 N.Y.S.2d 897 (2nd Dep't 1992) ......................................... 13

*PI, Inc. v. Ogle,*
    1997 WL 37941 (S.D.N.Y. Jan. 30, 1997) ............................................................ 24

*Raul v. American Stock Exch., Inc.,*
    1996 WL 627574 (S.D.N.Y. Oct. 29, 1996) ......................................................... 19

*Riddell Sports, Inc. v. Brooks,*
    872 F.Supp. 73 (S.D.N.Y. 1995)........................................................................... 24

*RMS Int'l Shipping GmbH v. Stemcor USA, Inc.,*
    1991 WL 136035 (S.D.N.Y. July 19, 1991) ......................................................... 21

*Roe v. City of New York,*
    151 F.Supp.2d 495 (S.D.N.Y. 2001)..................................................................... 20

*Sales Strategies Group Inc. v. Fenton,*
    16 Misc.3d 171, 838 N.Y.S.2d 856 (Sup. Ct. Monroe Co. 2007)........................... 15

*Schafrann v. Famka,*
    14 A.D.3d 363, 787 N.Y.S.2d 315 (1st Dep't 2005) ............................................ 19

*Scott v. Galusha,*
  890 S.W.2d 945 (Tex.App. - Fort Worth 1994)........................................................ 22

*Solla v. Aetna Health Plans of New York, Inc.,*
  14 F.Supp.2d 252 (E.D.N.Y. 1998) ...................................................................... 22

*Stolow v. Greg Manning Auctions, Inc.,*
  258 F.Supp.2d 236 (S.D.N.Y. 2003)..................................................................... 22

*Tamoxifen Citrate Antitrust Litig.,*
  466 F.3d 187 (2d Cir. 2006)................................................................................... 7

*Tinelli v. Redl,*
  199 F.3d 603 (2d Cir. 1999).................................................................................. 18

*Todd v. Exxon Corp.,*
  275 F.3d 191 (2d Cir. 2001).................................................................................... 7

*Turk v. Angel,*
  293 A.D.2d 284, 740 N.Y.S.2d 50 (1st Dep't 2002) .......................................... 19

*TVGA Engineering, Surveying, P.C. v. Gallick,*
  45 A.D.3d 1252, 846 N.Y.S.2d 506 (4th Dep't 2007)......................................... 8

*Victor G. Reiling Assocs. v. Fisher-Price, Inc.,*
  450 F.Supp.2d 175 (D.Conn. 2006) ...................................................................... 14

*WGJ Holdings, Inc. v. Greenberg,*
  2008 WL 80952 (S.D.N.Y. Jan. 8, 2008) ....................................................... 11, 14

## Other Authorities

15 U.S.C. § 15(b) ....................................................................................................... 8

15 U.S.C. § 2 ............................................................................................................ 22

2 Callmann *Unfair Competition, Trademarks and Monopolies* (4th ed.) § 14:27........................ 12

22 N.Y.C.R.R. § 1215.1 ........................................................................................... 19

3 Pat. L. Fundamentals (2d ed.) § 15:5 ....................................................................... 5

4B N.Y. Prac., Com. Litig. in New York State Courts (2d ed.) § 81:5)....................... 15

5 Wright & Miller, *Federal Practice and Procedure* (3d ed.) § 1216........................... 16

Cal. Bus. & Prof. Code § 16750.1 ................................................................. 8

Fed. R. Civ. P. 12(b)(6) ......................................................................... 1, 7

Fed. R. Civ. P. 12(f) ............................................................................. 17

Fed. R. Civ. P. 15(c)(2) ............................................................................ 9

N.Y. Gen. Bus. Law § 340(5) ..................................................................... 8

N.Y. Judiciary Law § 90(10) .................................................................... 20

Tex. Bus. & Com. Code § 15.25 ................................................................. 8

## PRELIMINARY STATEMENT

Defendants Cowan, Liebowitz & Latman, P.C. ("CLL"), William Borchard, Midge Hyman, Baila Celedonia, and Christopher Jensen (the "CLL Partners") (collectively, the "CLL Defendants") respectfully submit this memorandum in support of their motion to dismiss plaintiff Amy R. Gurvey's Third Amended Complaint (the "TAC") pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a cognizable cause of action.

Gurvey is an attorney and disgruntled former employee of CLL, a Manhattan law firm. According to her pleading, Gurvey believes she has a trade secret or other interest in a methodology for distributing compact disc recordings of a live entertainment event. When she joined CLL in 2002 as "counsel" under a one-year contract, the firm agreed to help her seek patent protection for her idea. Before her contract was set to expire, however, CLL discharged Gurvey and withdrew from representing her. Gurvey no longer challenges the propriety of CLL's decision to terminate her contract.

In 2003, Gurvey read a newspaper article that discussed implementation of a business plan conceived by defendants Clear Channel Communications, Inc. ("CCC"), LiveNation, Inc., InstantLive Concerts, LLC ("InstantLive"), Dale Head and Steve Simon (collectively, the "CCC Defendants") to sell recordings of live music concerts to concertgoers. Gurvey asserts that the CCC Defendants copied her trade secret. She blames the CLL Defendants for the alleged misappropriation, asserting that they must have been acting as the CCC Defendants' "scout" because CLL had represented CCC in one or more unidentified matters. All but one of Gurvey's claims in the TAC flow from the defendants' purported misappropriation.

The TAC should be dismissed. First, all of the claims against the CLL Partners and some of the claims against CLL are barred by an applicable statute of limitations. Second, Gurvey's

1

main misappropriation claim, and, by extension, all but one of her other claims, rely on legally insufficient speculation that CLL must have stolen her supposed trade secret merely because CLL was CCC's attorneys.  Third, Gurvey's own pleading makes clear that her purported trade secret is not entitled to protection because it is not novel, because she did not keep it secret, and because she never used it in the course of business.  Fourth, Gurvey's single claim unrelated to misappropriation -- namely, that CLL induced one of her personal clients to breach a contract with her -- is insufficient because Gurvey does not allege or infer how the purported breach occurred.  Instead, as with her misappropriation claims, she relies entirely on a self-serving guess that CLL acted wrongfully even though other explanations consistent with CLL's honest conduct are just as plausible, if not more plausible, than her speculation.

It is axiomatic, especially now that the Supreme Court has clarified the standards for an acceptable civil pleading, that a plaintiff cannot rely on bald speculative assertions to support claims that a defendant violated the law.  That, in essence, is the fatal flaw in Gurvey's TAC, which represents her fourth attempt to craft an adequate pleading and should therefore be dismissed with prejudice.

## STATEMENT OF FACTS

For purposes of this motion, any adequately-asserted facts in the TAC must be deemed true even if they are actually false or misleading.

Gurvey alleges that starting in or about 1999, she sought to develop processes and "associated ticketing methods" for selling recordings of live entertainment events to attendees. Id. ¶¶ 24, 26. In the TAC, she describes her processes and methods in general terms and admits that they have not been "commercially exploit[ed]." *See* Id., ¶¶ 1, 21-22, 24-25, 57-58.

In late 2001 or early 2002, Gurvey negotiated a one-year contract to become an "of counsel" attorney to CLL. Id.; *see also* Declaration of Schuyler Kraus, dated April 25, 2008 ("Kraus Dec."), Exhibit A. The contract, dated January 15, 2002, provided for Gurvey's base compensation and a bonus dependent on her productivity. CLL also agreed that it would not share in income generated by Gurvey's "[o]wnership interest in [an] invention for the taping of concerts and the distribution of copies to patrons/ticket holders." Id., Exhibit A, ¶ 6(c) & Schedule A. Some time after CLL gave Gurvey a "Letter of Intent" to employ her, it additionally agreed to represent her before the United States Patent and Trademark Office ("USPTO") to help her attempt to patent her claimed "invention." TAC, ¶ 30. Gurvey does not claim that CLL asked for or received any compensation for its legal services.

Gurvey contends that on her second day of employment at CLL, the CLL Partners "ordered" her to make a presentation about her invention at the firm's monthly meeting of partners and "of counsel" lawyers. Defendant William Borchard told Gurvey that her presentation would help other CLL lawyers determine whether her practice might "fit" with their intellectual property and entertainment practices. Plaintiff then made a presentation concerning "unsigned bands" which included "confidential" handouts concerning "business models" for her "technologies." The 40+ CLL lawyers in attendance purportedly gave Gurvey a "standing

ovation" at the end of her presentation.  TAC, ¶¶ 34-35, 39.  Gurvey does not assert or imply that she asked the attendees at the meeting to return or destroy her handouts after the presentation. Gurvey also does not assert or imply that she questioned the CLL Partners' "order" directing her to make a presentation.  By this time, Gurvey had already revealed her "business models and trade secrets" to various classical and popular music artists and others, including Yo-Yo Ma, Laura Nyro, Jose Carreras, Peter Gelb and Nolan Bushnell.  Id., ¶¶ 31, 35, 46.

After the meeting, Borchard told Gurvey that CLL's client CCC would be interested in her business models/technologies.  Borchard further stated that although Gurvey had just started working at CLL, he "preferred" that she cease her employment and merely be a client of the firm.  TAC, ¶¶ 36-37.

At about this time, a CLL associate, Susan Schick, discussed with Gurvey possible names for a new business to promote Gurvey's inventions, including "Live Concerts," "Instant Concerts" and "Live Networks."  TAC, ¶¶ 40, 76.  Also about this time, Gurvey was introduced to Schick's boyfriend, Michael Gordon, at a CLL-hosted party.  Gordon is a musician in a rock music band called *Phish*.  After speaking with Gordon, Gurvey concluded that he had learned about her "confidential business plans and technology" from Schick.  Id., ¶¶ 4, 41.

In May 2002, CLL told Gurvey that it had "changed its mind" about her and intended to cancel her "of counsel" contract.  TAC, ¶ 42.  Defendants Christopher Jensen, Midge Hyman and Borchard asked Gurvey to release the firm in respect to its obligations under her "of counsel" contract, but she refused.  CLL then requested that Gurvey continue to bill "already started matters" and indicated to Gurvey that it would continue representing her before the USPTO.  On May 22 and 24, 2002, CLL partners Mark Montague and Lewis Gable filed two provisional

patent applications ("PPAs") they had prepared for Gurvey's claimed inventions. Id., ¶¶ 43-45; Kraus Dec., Exhibits B and C (copies of the PPAs).[1]

In August 2002, Gurvey went to California on a two-week business trip to work with "her own clients." TAC, ¶ 46. She maintains that when she returned to New York, CLL had locked her out of her office and would not allow her to access her computer or files. Later, CLL mailed some files and computer directories to Gurvey, although various documents, including notes regarding her "business plans" and "handouts" used during her past presentation to CLL's partners and "of counsel" lawyers, were allegedly missing. Id., ¶¶ 47, 49. On or about February 16, 2003, Gurvey received notification from the USPTO that CLL had withdrawn from representing her because of a conflict of interest. The notice referenced one of Gurvey's PPAs. Gurvey claims not to understand "what the 'conflict of interest' was." Id., ¶¶ 50-51.

In early March 2003, Gurvey discovered that defendant InstantLive was advertising a service that allowed a music concertgoer to purchase a live recording of a concert right after it ended. TAC, ¶ 55. On May 5, 2003, the *New York Times* published an article describing InstantLive's new service. According to Gurvey, the article "described [her] entire confidential business models for the onsite distribution of live recordings at concerts ..." TAC, ¶¶ 9, 52; *see* Kraus Dec., Exhibit D. The article summarized InstantLive's business plan to create CDs using "burners" from a "master recording" of a concert so that the CDs could be sold to exiting concertgoers right after "the show ends." The article noted that CCC had started testing its service in February 2003, and that another company, DiscLive, "has also started to test the instant disc market" with "on-site sales ..." To illustrate the potential market for promptly distributed live music recordings, the article quoted the manager of *Phish*, which, in December

---

[1] "The purpose of a provisional application is to establish priority ... A provisional application requires the filing only of a specification, drawings where necessary, and a cover sheet ... The specification need not include any claim." 3 Pat. L. Fundamentals (2d ed.) § 15:5.

2002, had started making recordings of its concerts available within two days through its Website. Contrary to the TAC, the author of the article did not interview "members of ... *Phish*" or identify the band's purported "interest" in any particular recording technology. Kraus Dec., Exhibit D.

Gurvey speculates that CLL provided CCC with her confidential information regarding instant recordings of live entertainment events, that that this information made its way to InstantLive, and that, but for CLL's provision of information to CCC, CCC and/or InstantLive would not have conceived or implemented a plan to sell live concert recordings to attendees. TAC, ¶¶ 41, 76. Notably, however, Gurvey does not contend that CLL ever communicated with DiscLive, which, according to the *Times*, was testing a business plan for the on-site recording of live music using the same or substantially similar process being test marketed by InstantLive. Kraus Dec., Exhibit D.

After InstantLive announced that it would distribute live concert recordings, Gurvey did not pursue a private placement offering of securities in "her company," which is not identified in her pleading. TAC, ¶ 146.

On or about February 12, 2006, Gurvey filed but did not serve her original Complaint in this action. On or about June 5, 2006, she filed and served an Amended Complaint that did not name any of the CLL Partners as defendants, although she explicitly referenced them in the pleading. Thereafter, following an aborted effort to file a Second Amended Complaint, Gurvey moved for permission to file the TAC on August 6, 2007. That motion was granted. The TAC was filed on March 4, 2008. Kraus Dec., ¶ 7, Exhibits E (copy of Gurvey's Complaint), F (copy of Gurvey's Amended Complaint) and G (copy of the TAC).

## ARGUMENT

### I.

### GOVERNING STANDARDS

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court is not obligated to credit "bald assertions and conclusions of law." *Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 201 (2d Cir. 2006). "Factual allegations" in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1965 (2007) The Court should not "assume that the plaintiff can prove facts that it has not alleged ..." *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001). The Court's consideration of facts "is limited to [those] stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.* 945 F.2d 40, 44 (2d Cir. 1991). "Dismissal is proper where a plaintiff fails to plead the basic elements of a claim." *Cruise v. Doyle*, 2008 WL 116703 *2 (S.D.N.Y. Jan. 9, 2008).

### II.

### COUNTS EIGHT, NINE AND ELEVEN AGAINST CLL, AND ALL COUNTS AGAINST THE CLL PARTNERS, ARE TIME-BARRED

As an initial matter, certain of Gurvey's claims against CLL and all of her claims against the CLL Partners should be dismissed because they violate an applicable statute of limitations. The time within which Gurvey could bring any of her claims against the CLL Defendants began to run no later than "early March 2003," when she learned that InstantLive was advertising a CD sales service for concertgoers and "immediately" complained to the CCC Defendants that the service violated her "patents pending." *See* TAC, ¶¶ 56, 59; *see also Higgins v. New York Stock Exch.*, 942 F.2d 829, 832 (2d Cir. 1991) ("A cause of action for violation of the antitrust laws

ordinarily accrues as soon as there is an injury to competition"); *Kronos Inc. v. AVX Corp.*, 81 N.Y.S.2d 90, 94, 595 N.Y.S.2d 289, 292 (1993) (tort cause of action under New York law begins to accrue when "an injury is sustained").

The majority of Gurvey's claims are subject to a three-year statute of limitations.[2]  Her federal and state antitrust claims are governed by a four year statute of limitations.[3]  Gurvey did not notice her intent to file the TAC until August 2007, approximately four and one-half years after the limitations period had commenced for all of her claims.  The claims are therefore time-barred unless Gurvey can demonstrate that one or more of them was tolled for a time sufficient to bring them within an applicable limitations period.  As to CLL, she cannot make that showing as to Counts Eight, Nine or Eleven.  As to the CLL Partners, she cannot make that showing as to any of her claims.

A.    The Claims Against CLL

Gurvey cannot demonstrate that her time to bring Counts Eight, Nine, or Eleven was sufficiently tolled to avoid application of a relevant statute of limitations unless the tortious interference claim in Court Eleven "relates back" to February 15, 2006, the filing date of her first Complaint (i.e. the only pleading within three years of accrual of her claims) and/or unless the antitrust claims in Counts Eight and Nine relate back to June 5, 2006, the filing date of her Amended Complaint (i.e. the last pleading within four years of accrual of her claims).  Under

---

[2] Specifically, Counts Two (Misappropriation of Trade Secrets), Three (Unfair Competition and Misappropriation of Ideas and Labor, Skill and Expenditures), Four (Breach of Fiduciary Duty), Five (Tortious Interference With a Contract), Six (Legal Malpractice) and Eleven (Interference with Prospective Economic Relations) have a three year limitations period.  *See Lemelson v. Carolina Enters., Inc.*, 541 F.Supp. 645 (S.D.N.Y. 1982) (three year statute of limitations for misappropriation claims); *McCoy v. Feinman*, 99 N.Y.2d 295, 755 N.Y.S.2d 693 (2002) (three year statute of limitations for legal malpractice claims); *TVGA Engineering, Surveying, P.C. v. Gallick*, 45 A.D.3d 1252, 846 N.Y.S.2d 506 (4th Dep't 2007) (three year statute of limitations for breach of fiduciary duty claims); *Pasqualini v. Mortgageit, Inc.*, 2007 WL 2161781 (S.D.N.Y., July 27, 2007) (three year statute of limitations for tortious interference with prospective economic advantage claims).

[3] *See* 15 U.S.C. § 15(b); N.Y. Gen. Bus. Law § 340(5); Tex. Bus. & Com. Code § 15.25; Cal. Bus. & Prof. Code § 16750.1.

Fed. R. Civ. P. 15(c)(2), a claim relates back to a prior pleading for statute of limitations analysis purposes only if it "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading[.]"  A claim will not relate back if it is based on an "entirely different set of factual allegations." *Cinelli v. Oppenheim-Ephratah Cent. Sch. Dist.,* 2008 WL 111174 *5 (N.D.N.Y. Jan. 7, 2008).

Gurvey did not allege in either her Complaint or her Amended Complaint that CLL consciously aided and abetted CCC's effort to obtain or maintain monopoly power in the live entertainment industry. *Compare* TAC ¶¶ 128, 140 *with* Kraus Dec., Exhibits E and F.  Gurvey also did not allege in her Complaint or Amended Complaint that because of CLL, she had failed to "complete a private placement offering of securities" for her "own company ..." *See* TAC ¶ 146; Kraus Dec., Exhibits E and F.  These new claims of fact in the TAC are entirely extraneous to Gurvey's prior pleadings, which only alleged that CCC had committed antitrust violations and said nothing at all about a failed private placement.  Accordingly, as to CLL, Counts Eight, Nine and Eleven do not relate back to a prior pleading and should not be deemed to have commenced until Gurvey moved for permission to file the TAC on August 6, 2007, well after the relevant three and four year statutes of limitations had run.

B.    The Claims Against the CLL Partners

None of the claims against the CLL Partners relate back to a date when they would not have been time-barred.  Under Rule 15(c)(3), an amended claim against a newly-named party does not relate back to an earlier pleading unless Rule 15(c)(2) is satisfied, i.e. unless (i) the new claim "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading," (ii) the new party was made aware of the action within 120 days of the last non time-barred pleading and (iii) "the new party knew or should have known that, but for a

mistake concerning the identity of the proper party, the action would have been brought against [him or her]." *Enron Corp. v. J.P. Morgan Sec. Inc.,* 361 B.R. 36 (S.D.N.Y. 2006).

Since, as argued above, Counts Eight, Nine and Eleven cannot be maintained against CLL because they do not plead facts that arise from the occurrences alleged in Gurvey's Complaint and Amended Complaint, it follows *a fortiori* that those claims also cannot stand against the CLL Partners.

Moreover, all of the remaining claims, which are subject to a three year statute of limitations, must be dismissed against the CLL Partners because they were not made aware that Gurvey had filed her original Complaint in February 2006 since that pleading was never served on CLL. Thus, the CLL Partners were not on notice of any of the claims in this matter, even constructively, until Gurvey served CLL with her Amended Complaint in June 2006, after the three year limitations period had run.

Furthermore, the CLL Partners clearly did not know that they would have been sued earlier but for a mistake of identity. Gurvey obviously knew the identities of each of the CLL Partners because she named all of them in her Amended Complaint. Kraus Dec., Exhibit F, ¶ 11. It is well-established that where a plaintiff -- in this case, a lawyer -- makes a tactical decision to sue only some potentially liable parties, she cannot invoke the relation back doctrine to revisit her decision and prevent a determination that the statute of limitations has run. *Cornwall v. Robinson*, 23 F.3d 694, 705 (2d Cir. 1994). The Second Circuit's reasoning in *Cornwall* is fully applicable here:

> The requirement that a new defendant "knew" he was not named due to a mistake concerning identity presupposes that in fact the reason for his not being named was a mistake in identity. Cornwall, however, does not allege that she would have named the individual appellants as defendants in her original complaint but for a mistake concerning identity. Nor, in light of the record in the present case, would such an assertion be tenable. Plainly she knew the identities of the DFY

employees who she contended had harassed and discriminated against her. Further, an exhibit to the original complaint identified those individuals and set out details of their alleged misconduct. Cornwall was not required to sue them, and her failure to do so in the original complaint, in light of her obvious knowledge and the detailed nature of that pleading's exhibit, must be considered a matter of choice, not mistake. Id.

Accordingly, none of the claims against the CLL Partners was asserted before Gurvey moved for permission to sue them in August 2007, long after the applicable limitation periods had run.

## III.

## ALL CLAIMS AGAINST THE CLL DEFENDANTS SHOULD BE DISMISSED UNDER RULE 12(B)(6)

The CLL Defendants are named in Counts Two, Three, Four, Five, Six, Eight, Nine and Eleven. All of these claims are insufficiently pleaded. Each is addressed below.

A.    The Misappropriation Claims (Counts Two and Three)

In addition to being time-barred as to the CLL Partners, both of Gurvey's misappropriation claims against the CLL Defendants -- Count Two alleging misappropriation of trade secrets and Count Three alleging unfair competition and misappropriation of ideas -- fail as a matter of law. To prove a misappropriation of trade secrets, a plaintiff must establish that she (i) possessed a trade secret and that (ii) defendants used the trade secret in breach of an agreement, confidential relationship or duty or as a result of discovery by improper means. *WGJ Holdings, Inc. v. Greenberg*, 2008 WL 80952 *3 (S.D.N.Y. Jan. 8, 2008). Similarly, a claim for idea misappropriation -- which is the essence of Count Three [*see* TAC ¶¶ 101-102, 146 (alleging *in toto* that certain CCC-related defendants appropriated Gurvey's "ideas" and thereby prevented her from implementing them)] [4] -- requires (a) a legal relationship between the parties

---

[4] To the extent that Count Three is construed to assert a claim of unfair competition predicated upon the CLL Defendants alleged misappropriation of Gurvey's "trade secret," the claim is duplicative of Count Two and should be dismissed. *See Abernathy-Thomas Engineering Co. v. Pall Corp.,* 103 F.Supp.2d 582, 599-600 (E.D.N.Y. 2000).

in the form of a fiduciary relationship, an express or implied-in-fact-contract, or quasi-contract and the defendants' misappropriation of a (b) novel and concrete idea. *Adsani v. Miller, PMA,* 1996 WL 194326 *16 (S.D.N.Y. Apr. 22, 1996).

In the TAC, Gurvey fails to adequately plead that she kept her purported trade secret/idea confidential, that her trade secret/idea is novel, or that the CLL Defendants misappropriated her secret/idea by improperly passing it to CCC. Each of these failures provides an independent basis to dismiss Counts Two and Three. In addition, Count Two is defective because Gurvey does not allege that her trade secret was actually used in the course of business.

1.    *Gurvey Did Not Keep Her Trade Secret/Idea Confidential*

"[A] trade secret must first of all be secret." *Ashland Mgmt. Inc. v. Janien,* 82 N.Y.2d 395, 407, 604 N.Y.S.2d 912, 918 (1993); *see also* 2 Callmann *Unfair Competition, Trademarks and Monopolies* (4th ed.) § 14:27 ("A trade secret is of value only because it is a secret, and only so long as it remains a secret."); *Lehman v. Dow Jones & Co.,* 783 F.2d 285, 298 (2d Cir. 1986) (the "most important consideration" when determining if something qualifies as a trade secret or protectible idea is whether the alleged secret or idea was, in fact, kept secret).

Here, Gurvey pleads that before she was employed by CLL, she provided her "business models and trade secrets" to a number of musical performers and business executives who were "interest[ed]" in her ideas, namely "cellist Yo-Yo Ma, singer/songwriter Laura Nyro[,] tenor Jose Carreras[,]" Peter Gelb, "then President of SONY Classical," and Nolan Bushnell. TAC, ¶¶ 31, 35, 46, 75. However, with the possible exception of Mr. Ma's "office" [*see* Id., ¶ 35], Gurvey does not assert or infer that her "business models and trade secrets" were given to the musicians, Mr. Gelb or Mr. Bushnell confidentially. Accordingly, Gurvey's trade secret and misappropriation of ideas claims fail for the threshold reason that they were not, in fact, maintained in secrecy before any alleged misappropriation by the defendants. *Boyle v. Stephens,*

*Inc.,* 1997 WL 529006 *5 (S.D.N.Y. Aug. 26, 1997) (dismissing misappropriation claim because plaintiff could "hardly argue that its [trade secrets were] kept 'secret'" when executive summaries of them had previously been mailed to money managers to entice interest in plaintiff's ideas).

    2.    *Gurvey's Alleged Trade Secret/Idea Is Not Novel*

Under New York law, a trade secret is "any formula, pattern, device or compilation of information which is used in one's business, and which gives h[er] an opportunity to obtain an advantage over competitors who do not know or use it." *Ashland Management,* 82 N.Y.2d at 407. While a protectible idea need not rise to the level of a trade secret, it nonetheless must be the product of "genuine invention and not merely a clever or useful adaptation of existing knowledge." *Alliance Sec. Prod. Inc. v. Fleming Co.,* 471 F.Supp.2d 452, 459 (S.D.N.Y. 2007); *see also LinkCo Inc. v. Fujitsu Ltd.,* 230 F.Supp.2d 492, 501 (S.D.N.Y. 2002). In either instance, Gurvey must demonstrate that her allegedly misappropriated trade secret/idea is novel to the public-at-large. *American Bus. Training Inc. v. American Mgt. Assoc.,* __ A.D.3d __, 815 N.Y.S.2d 491, 494 (1st Dep't 2008); *Nadel v. Play-by-Play Toys & Novelties, Inc.,* 208 F.3d 368, 376 (2d Cir. 2000) (proof of novelty to public-at-large is required for trade secret misappropriation claims unless they are "contract based"). "[W]hether an idea is sufficiently novel or original to merit protection under New York law is amenable to summary disposition." *Paul v. Haley,* 183 A.D.2d 44, 53, 588 N.Y.S.2d 897, 903 (2nd Dep't 1992).

Gurvey asserts that the May 5, 2003 article in *The New York Times* "described [her] entire confidential business models for the onsite distribution of live recordings at concerts including for unsigned bands but attributed same to CLL[5] [sic] and InstantLive." TAC, ¶ 52.

---

[5] We assume Gurvey meant to reference CCC. The *Times* article says nothing about CLL.

The article states that CCC intended to "introduce a venture ... that will sell live recordings on compact disc within five minutes of a show's conclusion" by making:

> a master recording ... that blends music from the band's mixing board with ambient sounds, including crowd noise, from other microphones. As soon as the show ends, the master copy is taken to a small tower of CD burners, each of which can duplicate eight discs at a time. Fans will be able to preorder the discs when they buy tickets for the performance or place orders at any time during or after the performance.

Kraus Dec., Exhibit D.

If this is the essence of Gurvey's "entire" trade secret as she alleges, it certainly is not novel. A plaintiff cannot rest on a "mere assertion of novelty and originality," she must "demonstrate some basis for those ideas." *WGJ Holdings Inc. v. Greenberg*, 2008 WL 80952 *3 (S.D.N.Y. Jan. 8, 2008). An idea is not protected if it merely "elaborate[es] and renovat[es]" and does not "innovat[e]." *Victor G. Reiling Assocs. v. Fisher-Price, Inc.,* 450 F.Supp.2d 175, 180 (D.Conn. 2006) (applying New York law). In the case at bar, this Court can take judicial notice of several well-known facts or capabilities of the modern concert music industry, namely, the decades-old practice of bands to make master recordings of their concerts using a mixing board, the use of microphones to capture crowd noise, the technology for burning CDs, and the ability of concert promoters and venue managers to take preorders and/or orders of merchandise from persons attending or planning to attend an event. Not surprisingly, the *Times* described InstantLive's and DiscLive's ventures as "simply a continuation of the trend among various bands and start-ups in recent years to sell authorized recordings that are available on CD or as Internet downloads soon after the event." Kraus Dec., Exhibit D.

Consideration of these facts compels a conclusion that Gurvey's supposed trade secret/idea is, at best, "a useful adaptation of existing knowledge." *Alliance Security*, 471 F.Supp.2d at 459. A "[p]laintiff 'cannot take common sense from the public domain of ideas and

preserve it as a trade secret for [her] exclusive use'." *Sales Strategies Group Inc. v. Fenton,* 16 Misc.3d 171, 174, 838 N.Y.S.2d 856, 858 (Sup. Ct. Monroe Co. 2007), *quoting Mo-Kan Cent. Recovery Co. v. Hedenkamp,* 671 S.W.2d 394, 400-01 (Mo. App. W.D. 1984). Moreover, "[i]t is well-established that … business possibilities or goals are not "trade secret[s]." *LinkCo,* 230 F.Supp.2d at 499-500. These cases forbid what Gurvey is trying to do here -- take a common sense notion for a business possibility that follows naturally from an existing trend, baldly assert its novelty, and claim that the common sense idea was her invention even though at least one entity, DiscLive, independently thought of the same idea and exploited it commercially before she ever could. Gurvey has therefore failed to adequately plead the critical "novelty" element for Counts Two and Three.

     3.    *Gurvey's Alleged Trade Secret Was Not Used In The Course of Business*

Gurvey's trade secret claim additionally fails because she does not allege that her trade secret was ever used in the course of business. When "pleading a [trade secret misappropriation] claim, the plaintiff should set forth both how the information is used in the business and why it is important to the continued operation of the business." 4B N.Y. Prac., Com. Litig. in New York State Courts (2d ed.) § 81:5; *see also Ashland Management,* 82 N.Y.2d at 407 (a trade secret is something "used in one's business"). Gurvey concedes that she has not commercially "develop[ed]" the "technologies utilizing her trade secrets and inventions[.]" TAC, ¶ 146. She therefore failed to plead the required "use in business" element for Count Two.

     4.    *Gurvey Merely Speculates That CLL Gave Her Trade Secret/Idea to CCC*

Although defendants' alleged misappropriation of confidential information is the ostensible core of Gurvey's lengthy pleading, when it comes to describing the actual act of appropriation, Gurvey is reduced to guessing that "[u]pon information and belief, the Clear Channel Defendants learned plaintiff's trade secrets through CLL and the individual CLL

defendants." TAC, ¶ 41.[6]  Gurvey makes clear that her "information and belief" for this contention stems solely from the alleged fact that CCC was CLL's client. *See e.g.* TAC ¶ 54 ("It was CLL's and CCC's joint misappropriation, as agent and principal ... that empowered defendant CCC ... with the knowledge to form InstantLive ...")  Nowhere, however, does Gurvey allege circumstances to support her misappropriation claim apart from CLL's claimed relationship with CCC.  The CLL Partners are even one step further removed, as Gurvey does not plead that any of them worked on CCC-related matters or had any personal relationship with CCC employees.

Gurvey's bare allegation that CLL and/or the CLL Partners passed off her confidential information to CCC is much too speculative to be sufficient.  A "pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."  5 Wright & Miller, *Federal Practice and Procedure* (3d ed.) § 1216; *see also ATSI Communications Inc. v. Shaar Fund Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (complaints must satisfy a "plausibility standard").  Pleading only a common relationship between defendants is inadequate by itself to create an inference that the defendants engaged in wrongdoing.  *See Cable News Network L.P. v. GoSMS.com, Inc.,* 2000 WL 1678039 *6 (S.D.N.Y. Nov. 6, 2000) (dismissing copyright and trademark infringement claims against two defendants named in the suit merely because they were a "manager" and "[d]irector" of a corporate co-defendant).  Federal pleading rules are not so liberal that they permit an inference of misfeasance to rest entirely on a normal legal relationship.  If that were the case, a plaintiff could sue a defendant solely on the basis of a relationship that is at least as consistent with a finding of innocent conduct as it is with a finding of wrongdoing.  *Cf. In re Dana Corp.,* 2007 WL 3376882

---

[6] In this same paragraph, Gurvey alleges that defendant Gordon learned "confidential information of plaintiff's trade secrets from the CLL defendants," but this assertion appears to be unconnected to any claim because she does not allege that Gordon made use of her "confidential information."

*6-7 (Bkrtcy. S.D.N.Y. Nov. 6, 2007) (disallowing claim of trade secret misappropriation against individual defendants because the allegation that they "had worked with Dana and knew Dana's business is conduct consistent with permissible business competition"), *citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 597 n. 21, 106 S.Ct. 1348 (1986) ("conduct that is as consistent with permissible competition as with illegal conspiracy does not, without more, support even an inference of conspiracy").

Thus, to adequately state her claim, Gurvey at least needed to -- but plainly could not -- allege circumstances giving rise to a reasonable inference that CLL would betray her by giving her trade secret/idea to CCC.  *See In re Adelphia,* 324 B.R. 492, 499 (Bkrtcy. S.D.N.Y. 2005) ("the Court's main problem with the third-party complaint was, and continues to be, the absence of allegations delineating circumstances, as opposed to the use of conclusory allegations, in which third-party defendants knowingly participated in the wrongdoing complained of ...").  The mere fact that CCC was CLL's client would not lead a reasonable person to infer that CLL would purposely engage in illegal misconduct merely to serve CCC's business interests, particularly where there is no allegation that CLL ever worked on a matter for CCC having anything to do with the sale or distribution of live concert recordings, or that any of the CLL Partners had a relationship with defendants Head and Simon.

B.    Legal Malpractice and Breach of Fiduciary Duty (Counts Four and Six)

These are kitchen-sink style claims where Gurvey lumps her misappropriation allegation and everything else she can conjure to disparage the CLL Defendants and their counsel.  Not only are they inadequately pleaded, but much of Count Four, the breach of fiduciary duty claim, is also susceptible to a Fed. R. Civ. P. 12(f) motion to strike because it asserts irrelevant and scandalous matter that unfairly prejudices the CLL Defendants.

1.      *Gurvey Does Not Allege Acts Amounting To Legal Malpractice*

To sustain a claim for legal malpractice, a plaintiff must prove (i) a duty owed by the defendant to plaintiff, (ii) a breach of that duty, and (iii) proof that actual damages resulted from the breach. *Tinelli v. Redl*, 199 F.3d 603 (2d Cir. 1999). In the TAC, Gurvey essentially alleges that the CLL Defendants engaged in three instances of legal malpractice -- none that have anything to do with the actual quality of work performed on her behalf by CLL. All three of Gurvey's malpractice claims are inadequately pleaded and should be dismissed.

Initially, Gurvey contends that the CLL Defendants failed "to protect and safeguard [her] trade secrets ..." TAC, ¶ 120(1). This contention merely restates her misappropriation claims and should be dismissed for the same reasons as Counts Two and Three.

Second, Gurvey asserts that the CLL Defendants "failed to properly advise [her] with respect to the opportunities for commercial exploitation of [her] inventions and trade secrets." Id., ¶ 120(2). This conclusory contention finds no support in the TAC, but instead is contradicted by Gurvey's more specific statement that CLL merely "agreed to represent plaintiff in connection with her PPAs." Id., ¶ 28; *see also* ¶ 44. The claim should be dismissed because this Court should not "accept allegations that are contradicted or undermined by other more specific allegations in the complaint." *In re IAC/Interactivecorp Sec. Litig.,* 478 F.Supp.2d 574, 585 (S.D.N.Y. 2007)

Lastly, Gurvey alleges that the CLL Defendants had an undefined "conflict of interest" which it failed to "eliminate" or "resolve." TAC, ¶¶ 120(3) and (4); *see also* at ¶51 (implying that Gurvey does not know "what the 'conflict of interest' was"). As a threshold consideration, it is hard, if not impossible, to believe that Gurvey -- who is an attorney -- did not understand that a conflict of interest arose when CLL allegedly barred her from accessing her office, before her "of counsel" contract had expired, while representing her for her PPAs. But even if her statement is

accepted at face value, Gurvey's naked invocation of the phrase "conflict of interest" is not sufficient to support a legal malpractice claim. *See Raul v. American Stock Exch., Inc.*, 1996 WL 627574 *3 (S.D.N.Y. Oct. 29, 1996) (finding plaintiff's claim of an "undefined 'conflict of interest'" meritless); *Schafrann v. Famka*, 14 A.D.3d 363, 787 N.Y.S.2d 315 (1st Dep't 2005) ("A conflict of interest … does not by itself support a legal malpractice cause of action.")  This claim additionally fails because Gurvey does not maintain that she has been harmed by CLL's withdrawal.

2.      *Gurvey's Breach of Fiduciary Duty Claims Are Duplicative Or Nonsensical*

Under New York law, a breach of fiduciary claim premised on the same facts as a claim for legal malpractice is duplicative and should be dismissed. *Iannazzo v. Day Pitney LLP*, 2007 WL 2020052 *10 (S.D.N.Y. July 10, 2007); *Turk v. Angel*, 293 A.D.2d 284, 740 N.Y.S.2d 50 (1st Dep't 2002).  It follows that Gurvey's allegations that the CLL Defendants breached their fiduciary duty of "undivided loyalty, good faith, fair dealing, fairness and honesty and the duty to act in their client's best interest" by misappropriating her trade secrets and/or by failing to eliminate or resolve their conflict of interest should be dismissed as they are functionally identical to one of her legal malpractice claims. *Compare* TAC ¶¶ 104-111 *with* ¶¶ 118-121.

Gurvey's other two breach of fiduciary duty claims are utterly without merit.  First, her assertion that CLL breached its fiduciary obligation by failing to enter into a retainer agreement is simply wrong.  TAC, ¶ 110.  Gurvey does not allege that CLL charged her a fee.  New York law does not require an engagement letter for representation where no fee is charged or collected. *See* 22 N.Y.C.R.R. § 1215.1.

Second, in violation of a well-known confidentiality requirement imposed on attorneys under New York law,[7] Gurvey reveals that she filed a disciplinary complaint against CLL and insinuates that CLL purposely did not attach the rider to her employment contract to a submission that answered her complaint. She also makes essentially the same allegation against the CLL Defendants' current counsel in respect to a now-moot motion to compel arbitration of Gurvey's claims. TAC, ¶ 108. However, no prejudice or damage is claimed.

A lawyer-plaintiff, whether she is acting *pro se* or, in this instance, with the assistance of retained counsel, should not violate a confidentiality statute. It is also absurd to contend, as Gurvey does, that a fiduciary duty of "trust" can exist between a complainant and respondent in a disciplinary investigation or between adversarial parties in litigation. Obviously, no "trust" exists in such situations. These claims should be dismissed or, alternatively, struck under Rule 12(f) because they have no potential bearing on this matter, because the allegedly supporting "evidence" would not be admissible, and because further prosecution of them merely threatens without a good-faith purpose to publicize a now-dismissed disciplinary complaint, or worse, to interfere with the CLL Defendants' attorney-client relationship by making an irrelevant issue of fact of the circumstances surrounding counsel's otherwise privileged work product. *See Roe v. City of New York,* 151 F.Supp.2d 495, 510 (S.D.N.Y. 2001) (to succeed on a motion to strike, the movant must demonstrate: "(i) that no evidence in support of the allegations would be admissible; (ii) that the allegations have no bearing on the issues in the case; and (iii) that to permit the allegations to stand would result prejudice to the movant.")[8]

---

[7] *See* N.Y. Judiciary Law § 90(10) ("all papers, records and documents . . . upon any complaint … relating to the conduct or discipline or an attorney or attorneys, shall be sealed and be deemed private and confidential").

[8] Counsel for the CLL Defendants requested that Gurvey's counsel withdraw these impertinent and scandalous allegations. Kraus Dec., Exhibit H. Counsel's request was rejected without substantive explanation. Id., Exhibit I.

C.    Tortious Interference with Contract (Count Five)

In this cause of action, Gurvey contends that CLL -- but not the CLL Partners -- "induced" her client Legend Films to breach its contract with her.  TAC ¶¶ 115-16.  However, apart from merely reciting the elements of her claim [*see* Id., ¶¶ 113-117], which is insufficient to state a claim [*see Twombley*, 127 S.Ct. at 1964-65 ("a plaintiff's [pleading] obligation … requires more than … [a] formulaic recitation of the elements of a cause of action …")], Gurvey makes just one factual allegation, namely, that "[s]hortly after [she] became 'of counsel' to CLL, CLL attorney Mark Montague was introduced to plaintiff's client, Legend Films, whom plaintiff had also served as General Counsel up to 2002.  CLL orchestrated plaintiff's ouster from Legend and induced Legend to renege on its obligation to pay plaintiff for her services."  TAC, ¶ 29(f).

This claim should be dismissed because Gurvey merely asserts that a breach was "orchestrated" without saying how the breach was "orchestrated."  When interposing a claim of tortious interference with a contract, a plaintiff must "plead specifically whether and how the … contract was breached[.]"  *RMS Int'l Shipping GmbH v. Stemcor USA, Inc.*, 1991 WL 136035 *4 (S.D.N.Y. July 19, 1991); *see also MacPhee v. Verizon Communications Inc.*, 2008 WL 162899 *5 (S.D.N.Y. Jan. 15, 2008) (dismissing tortious interference claim where plaintiff "alleged no facts that would tend to show that [the defendant] intentionally or improperly procured the breach of contract …"); *Leadsinger, Inc. v. Cole*, 2006 WL 2320544 *12 (S.D.N.Y. Aug. 10, 2006) (dismissing tortious interference claim that, among other things, "failed to allege … how [defendants] breached the terms of their contracts with [plaintiff]").  Count Five is therefore insufficiently pleaded.

D.    The Antitrust Claims (Counts Eight and Nine)

Gurvey contends in Count Eight of the TAC that the CLL Defendants are guilty of "aiding and abetting" the CCC Defendants' "completed" or "attempted" monopoly in violation

of the Sherman Act by passing on to CCC her trade secret/idea, which allegedly "enabled defendant CCC with know-how and ideas to form ... InstantLive, Live Nation and ... NexTicketing ..." TAC ¶¶ 127-128. Count Nine makes the same claim under the "antitrust laws of the states of New York, Texas and California." Id., ¶ 140. In relevant part, the Sherman Act proscribes monopolies or attempts to monopolize "any part of the trade or commerce among the several States, or with foreign nations ..." 15 U.S.C. § 2. "To allege aiding and abetting [an antitrust violation], a plaintiff must claim: (i) a violation of law by the primary party; (ii) knowledge of the violation by the aider and abetter; and (iii) substantial assistance by the aider and abetter in achieving the primary violation." *Stolow v. Greg Manning Auctions, Inc.,* 258 F.Supp.2d 236, 250 (S.D.N.Y. 2003).

As to the CLL Defendants, Counts Eight and Nine should be dismissed because Gurvey does not adequately plead the second element of her claim.[9] "New York courts and federal courts in [the Southern District of New York] ... require[] actual knowledge [of the violation by the primary actor]." *Kolbeck v. LIT America, Inc.,* 939 F.Supp. 240, 246 (S.D.N.Y. 1996); *see also Bullmore v. Ernst & Young Cayman Islands,* 45 A.D.3d 461, 464, 846 N.Y.S.2d 145, 149 (1st Dep't 2007) ("[i]n the absence of any allegation that the ... defendants had actual knowledge of the primary wrong ... the complaint does not advance a valid claim for aiding and abetting ..."); *cf. Camp v. Dema,* 948 F.2d 455, 459 (8th Cir. 1991) (holding that "abet" includes "knowledge of the wrongful purpose of the perpetrator").

In the TAC, Gurvey does not state or imply that any of the CLL Defendants knew that the CCC Defendants had created or were attempting to create a monopoly by misappropriating her

---

[9] The CLL Defendants' arguments herein for dismissing Count Eight are of equal force as to Count Nine since the prevailing standards and legal authority for Gurvey's state law antitrust claims are co-extensive with federal law. *See Solla v. Aetna Health Plans of New York, Inc.,* 14 F.Supp.2d 252, 259-60 (E.D.N.Y. 1998) (New York); *Scott v. Galusha,* 890 S.W.2d 945, 950 (Tex.App. - Fort Worth 1994) (Texas); *Chicago Title Ins. Co. v. Great Western Financial Corp.,* 444 P.2d 481, 487 (Calif. 1968) (California).

trade secret/idea.  Rather, while Gurvey claims that CLL -- but not the CLL Partners -- knew that CCC had a "notorious reputation for predatory anti-competitive practices" and a "history of antitrust misconduct" concerning radio stations [*see* TAC, ¶ 67], so far as a market for live concert recordings is concerned, the TAC merely infers that CCC's so-called monopoly was, at best, a consequence of defendants' misappropriation.  Id., ¶ 23 (claiming that the misappropriation "enabl[ed] the CCC defendants to establish or attempt to establish a monopoly").  Indeed, according to Gurvey, it was not until the fall of 2004 that the CCC "defendants' intent de facto at attempted monopoly" was made clear through "press releases." Id., ¶ 69.

It is well-established that "an agent cannot be imputed with information that his principal has failed to give him." *Jones v. Weiss, Neuren & Neuren,* 95 F.Supp.2d 105, 109 (N.D.N.Y. 2000).  By failing to allege that the CLL Defendants knew that CCC planned to monopolize a market for live music recordings when the claimed misappropriation occurred sometime in or before March 2003, and inferring instead that the CLL Defendants were not aware of any such intent until much later in 2004 when the "press releases" were issued, Gurvey has not adequately stated that the CLL Defendants consciously aided and abetted a Sherman Act or state antitrust violation.

E.     Interference with Prospective Economic Relations (Count Eleven)

Gurvey finally attempts to claim that the CLL Defendants tortiously interfered with prospective economic relations because her unnamed "company" allegedly lost an "opportunity" to raise money through a "private placement offering of securities" as a result of their (and the CCC defendants') "conduct."  TAC, ¶ 146.  A claim for tortious interference with prospective economic relations has four elements: "(i) the plaintiff had a business relationship with a third party; (ii) the defendant knew of such relationship and intentionally interfered with it; (iii)

defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (iv) defendant's actions injured the relationship between plaintiff and third party." *Henneberry v. Sumitomo Corp. of America,* 2007 WL 2068346 *22 (S.D.N.Y. July 12, 2007).

Initially, this claim should be dismissed because Gurvey lacks individual standing to bring it. *See PI, Inc. v. Ogle*, 1997 WL 37941 (S.D.N.Y. Jan. 30, 1997) (a claim of tortious interference with prospective business advantage is a derivative claim). In addition, Gurvey does not assert or infer in the TAC that any of the CLL Defendants "knew" that she was seeking or would seek to establish economic relations with investors through an offering of securities, or even that she had formally created her own "company" for that purpose. Gurvey therefore does not adequately plead the second element of her claim. Further, she does not contend or infer in the TAC that "but for" the CLL Defendants' conduct, her "prospective business relations would have coalesced into actual contracts." *Riddell Sports, Inc. v. Brooks,* 872 F.Supp. 73, 78 (S.D.N.Y. 1995). Thus, she also does not adequately plead the fourth element of her claim. Accordingly, Count Eleven should be dismissed.

24

## CONCLUSION

For the foregoing reasons, all of Gurvey's claims against the CLL Defendants should be dismissed.   Furthermore, since Gurvey has already filed four versions of her complaint, she should not be allowed to replead.

Dated: New York, New York
        April 25, 2008

                                          Respectfully submitted,

                                          HINSHAW & CULBERTSON LLP

                                          By: _____
                                              J. Richard Supple Jr. (JS 3549)
                                              Schuyler B. Kraus (SK 8105)

                                          780 Third Avenue
                                          New York, New York 10017-2024
                                          212-471-6200

                                          Attorneys for Defendants Cowan, Liebowitz
                                          & Latman P.C., William Borchard, Midge
                                          Hyman, Baila Celedonia and Christopher
                                          Jensen