UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

───────────────────────────

AMY R. GURVEY,                                   :

                          Plaintiff,             :

          v.                                     :

COWAN, LIEBOWITZ & LATMAN, PC.,   :
CLEAR CHANNEL COMMUNICATIONS, :
INC., INSTANTLIVE CONCERTS, LLC.,   :
LIVE NATION, INC., NEXTICKETING,     :
INC., DALE HEAD, STEVE SIMON, and    :
DOES 1 - VIII, INCLUSIVE,                  :

                          Defendants.            :

                                                 :

───────────────────────────

**Civil Action No.: 06-CV-1202(BSJ)**


# MEMORANDUM OF LAW IN OPPOSITION TO THE JOINT MOTION OF DEFENDANTS COWAN, LIEBOWITZ & LATMAN, P.C., WILLIAM BORCHARD, MIDGE HYMAN, BAILA CELEDONIA AND CHRISTOPHER JENSEN'S TO DISMISS


Dated: June 11, 2008


SQUITIERI & FEARON, LLP
Lee Squitieri (LS-1684)
Maria J. Ciccia (MC-2801)
32 East 57th Street
12th Floor
New York, New York 10022
Tel:  (212) 421-6492
Fax:  (212) 421-6553

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................... iii

SUMMARY OF COMPLAINT ................................................................................. 1

ARGUMENT ............................................................................................................. 4

POINT I ..................................................................................................................... 4

STANDARDS FOR A MOTION TO DISMISS ...................................................... 4

POINT II .................................................................................................................... 4

PLAINTIFF'S CLAIMS ARE NOT TIME BARRED ............................................. 4

A. Plaintiff's Antitrust Claims (Counts Eight And Nine) Are Timely Against CLL ................ 4

B. Count Eleven For Interference With
Prospective Economic Relations Was Timely Filed ...................................................... 7

C. The Claims Against CLL Partners Are Not Time Barred ................................................. 7

   1. Count Two – Misappropriation Of Trade Secrets ........................................................ 9

   2. Count Three – Unfair Competition Misappropriation
   Of Ideas And Labor, Skill And Expenditures ............................................................. 9

   3. Count Four – Breach Of Fiduciary Duty .................................................................... 10

   4. Count Five – Tortious Interference With Contract ...................................................... 11

   5. Count Six – Professional Malpractice ........................................................................ 12

POINT III .................................................................................................................. 13

ALL PLAINTIFF'S CLAIMS AGAINST THE CLL
DEFENDANTS HAVE BEEN ADEQUATELY PLEADED ..................................... 13

A. Counts Two And Three – The Misappropriation
Claims Are Adequately Pleaded ................................................................................ 13

   1. Plaintiff Kept Her Trade Secret Confidential ............................................................ 14

2. Plaintiff's Misappropriation Of Ideas Claim States A
Cause Of Action Because Her Technology Was Novel.................................................15

3. Plaintiff Alleges That Gurvey's Trade Secret Was Used In Business ...........................16

4. Plaintiff Adequately Alleges How The Misappropriation Occurred .............................17

5. Plaintiff Has Adequately Alleged
A Legal Malpractice Claim Against CLL......................................................................17

6. Plaintiff Has Adequately Alleged A Breach
Of Fiduciary Duty Claim Against CLL.........................................................................20

7. Plaintiff Has Adequately Pleaded
A Tortious Interference With Contract Claim ...............................................................22

8. Plaintiff Has Adequately Pleaded The
Antitrust Claims (Counts Eight And Nine)...................................................................23

9. Plaintiff Has Adequately Alleged A Claim
For Interference With Prospective Economic Relations...............................................24

CONCLUSION....................................................................................................................25

## TABLE OF AUTHORITIES

Page

ATSI Communications Inc. v. Shaar Fund, Ltd.,
    493 F.3d 87 (2d Cir. 2007)....................................................................................17

In re Adelphia,
    324 B.R. 492 (S.D.N.Y. Bkrtcy. 2005).................................................................17

Albert v. Loksen,
    239 F.3d 256 (2d Cir. 2001)...............................................................................22

Alliance Sec. Prod. Lin. v. Fleming Co.,
    471 F. Supp. 2d 452 (S.D.N.Y. 2007)................................................................16

America Bus. Training Inc. v. America Mgt. Associate,
    815 N.Y.S.2d 491 (N.Y. App. Div. 1st Dep't 2008)..........................................16

Armstrong v. McAlpin,
    699 F.2d 79 (2d Cir. 1983)................................................................................23

Ashland Management Inc. v. Janien,
    82 N.Y.2d 395, 624 N.E.2d 1007 (N.Y. 1993)..................................14, 16, 17

Baldwin County Welcome Ctr. v. Brown,
    466 U.S. 147 (1984)............................................................................................5

Boyle v. Stephens, Inc.,
    No. 97 Civ. 1351, 1997 WL. 529006 (S.D.N.Y. Aug. 26, 1997).................15

Bullmore v. Ernst & Young Cayman Islands,
    45 A.D.3d 461, 846 N.Y.S.2d 145 (1st Dep't 2007)........................................23

Cable News Network LP v. GoSMS.com, Inc.,
    No. 00 Civ. 4812 WL. 1678039 (S.D.N.Y. Nov. 6, 2000)............................17

Camp v. Dema,
    948 F.2d 455 (8th Cir. 1991).............................................................................23

In re Chaus Sec. Litigation,
    801 F. Supp. 1257 (S.D.N.Y. 1992)....................................................................5

Cinelli v. Oppenheim-Ephratah Central Sch. District,
    No. 6: 07-cv-235 2008 WL. 111174 (N.D.N.Y. January 8, 2008)..................6

Cornwell v. Robinson,
    23 F.3d 694 (2d Cir. 1994)......................................................................................8

In re Dana Corp.,
    No. 06-10354 2007 WL. 3376882 (S.D.N.Y. Bkrtcy. Nov. 6, 2007)..........................17

Evans v. Perl,
    No. 602898/05, 2008 WL. 1735059 (N.Y. Sup. Ct. Apr. 9, 2008)..............................10

Global Crossing Estate Representative v. Winnick,
    No. 04 Civ. 2558(GEL), 2006 WL. 2212776 (S.D.N.Y. Aug. 3, 2006).......................11

Golden Pacific Bancorp v. F.D.I.C.,
    273 F.3d 509 (2d Cir. 2001).....................................................................................10

Greene v. Greene,
    56 N.Y.2d 86, 451 N.Y.S.2d 46, 436 N.E.2d 496 (N.Y.1982)....................................10

Greenlight Capital, Inc. v. Greenlight,
    No. 04 Civ. 3136 2005 WL. 13682 (January 3, 2005 S.D.N.Y.)..................................10

Hafter v. Farkas,
    498 F.2d 587 (2d Cir. 1974).....................................................................................20

Iannazzo v. Day Pitney LLP,
    No. 04 Civ. 7413(DC), at 10 2007 WL. 2020052 (S.D.N.Y. July 10, 2007) ..............21

IIT, An International Investment Trust v. Cornfeld,
    619 F.2d 909 (2d Cir. 1980).....................................................................................23

InKine Pham. Co v. Coleman,
    305 A.D.2d 151 (N. Y. App. Div. 1st Dep't 2003) ......................................................20

Integrated Cash Management Services, Inc. v. Digital Transactions, Inc.,
    920 F.2d 171 (2d Cir. 1990)................................................................13, 14, 15, 16

Jones v. Weiss, Neuren & Neuren,
    95 F. Supp. 2d 105 (N.D.N.Y. 2000).........................................................................23

Kirk v. Heppt,
    532 F. Supp. 2d 586 (S.D.N.Y. 2008)........................................................................21

Kolbeck v. LIT America, Inc.,
    939 F. Supp. 240 (S.D.N.Y. 1996) ...........................................................................23

Kronos, Inc. v. AVX Corp.,
    81 N.Y.2d 90, 612 N.E.2d 289 (N.Y. 1993) ................................................11

Leadsinger, Inc. v. Cole,
    No. 05 Civ. 5605(HBP), 2006 WL. 2320544 (S.D.N.Y. Aug. 10, 2006)....................22

Lehman v. Dow Jones & Co., Inc.,
    783 F.2d 285 (2d Cir. 1986)........................................................16

Lemelson v. Carolina Enterprises, Inc.,
    541 F. Supp. 645 (S.D.NY. 1982) ..................................................9

LinkCo Inc. v. Fujitsu Ltd.,
    230 F. Supp. 2d 492 (S.D.N.Y. 2002)..............................................16

MacPhee v. Verizon Communications Inc.,
    No. 06-CV-7870(BSJ), 2008 WL. 162899 (S.D.N.Y. Jan. 15, 2008) ........................22

Estate of Mantle v. Rothgeb,
    No.04 Civ. 4310 2007 WL. 4548127 (S.D.N.Y. November 6, 2007) ........................7

Marshall v. Nacht, 172 A.D.2d 727, 569 N.Y.S.2d 113 (2d Dep't 1991)...........................18

McGhan v. Ebersol,
    608 F. Supp. 277 (S.D.N.Y. 1985) ................................................13

Nadel v. Play-by-Play Toys & Novelties, Inc.,
    208 F.3d 368 (2d Cir. 2000)........................................................16

Newburger, Loeb & Co., Inc. v. Gross,
    563 F.2d 1057 (2d Cir. 1977),
    cert. denied, 434 U.S. 1035 (1978) ..............................................20

Niagara Mohawk Power Corp. v. Freed,
    278 A.D.2d 839, 719 N.Y.S.2d 789 (N.Y. App. Div. 4th Dep't 2000)........................8

Ocean Ships, Inc. v. Stiles,
    315 F.3d 111 (2d Cir. 2002)........................................................18

PI, Inc. v. Ogle,
    No. 95 Civ. 1723(JGK), 1997 WL. 37941 (S.D.N.Y. Jan. 30, 1997)........................24

Paul v. Haley,
    183 A.D.2d 44, 588 N.Y.S.2d 897 (N.Y. App. Div. 2d Dep't 1992)........................16

Petnel v. American Telephone & Telegraph Co.,
    280 App. Div. 706, 117 N.Y.S.2d 294 (3d Dep't 1952) .................................9

Pollack v. Laidlaw Holdings, Inc., No. 90 Civ. 5788, 1995 WL. 261518
    (S.D.N.Y. May 3, 1995).................................................................5

RMS Int'l Shipping GmbH v. Stemcor USA, Inc.,
    No. 90 Civ. 4918(LMM), 1991 WL. 136035 (S.D.N.Y. July 18, 1991) ....................22

Rafter v. Liddle,
    No. 05 CV 21296, 2006 WL. 2255093 (S.D.N.Y. Aug. 4, 2006) ...........................12

Raul v. Am. Stock Exchange, Inc.,
    No. 95 Civ. 3154 (SAS), 95 Civ. 8361  1996 WL. 627574
    (S.D.N.Y. Oct. 29, 1996) ............................................................19

Riddell Sports, Inc. v Brooks,
    872 F. Supp. 73 (S.D.N.Y. 1995) .....................................................25

Roe v. City of New York,
    151 F. Supp. 2d 495 (S.D.N.Y. 2001)..................................................22

Sales Strategies Group, Inc. v. Fenton,
    16 Misc. 3d 171, 838 N.Y.S.2d 856 (N.Y. Sup. Ct. Monroe Cty. 2007)...................16

Schafrann v. N.V. Famka,
    14 A.D.3d 363, 787 N.Y.S.2d 315 (N.Y. App. Div. 1st Dep't 2005) .....................19

Schweizer v. Mulvehill,
    93 F. Supp. 2d 376 (S.D.N.Y.2000)....................................................21

Shumsky v. Eisenstein,
    96 N.Y.2d 164, 750 N.E.2d 67 (N.Y. 2001).............................................12

Softel, Inc. v. Dragon Medical & Scientific Communications, Inc.,
    118 F.3d 955 (2d Cir. 1997)......................................................14, 15

Stevelman v. Alias Research Inc.,
    174 F.3d 79 (2d Cir. 1999)..........................................................5, 6

Stolow v. Greg Manning Auctions, Inc.,
    258 F. Supp. 2d 236 (S.D.N.Y. 2003).................................................23

Sugarman v. Glaser,
    62 Misc. 2d 1037, 310 N.Y.S.2d 591 (N.Y. Sup.Ct. 1970) ..............................8

Tenzer, Greenblatt, Fallon & Kaplan v. Ellenberg,
    199 A.D.2d 45 (N.Y. App. Div. 1st Dep't 1993) .........................................................20

Tinelli v. Redl,
    199 F.3d 603 (2d Cir. 1999)......................................................................................18

Ulico Casualty Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker,
    16 Misc.3d 1051, 843 N.Y.S.2d 749 (N.Y. Sup. Ct. 2007) .........................................20

U.S. v. Stein,
    463 F. Supp. 2d 459 (S.D.N.Y. 2006).........................................................................8

Victor G. Reiling Associates v. Fisher-Price, Inc.,
    450 F. Supp. 2d 175 (D. Conn. 2006) .......................................................................16

WGJ Holdings Inc. v. Greenberg,
    No. 07 Civ. 2742(WHP), 2008 WL. 80952 (S.D.N.Y. Jan. 8, 2008) ..........................16

Whitney v. Citibank, N.A.,
    782 F.2d 1106 (2d Cir. 1986)....................................................................................20

Wilson v. Fairchild Republic Co., Inc.,
    143 F.3d 733 (2d Cir. 1998).......................................................................................5

Zenith Radio Corp. v. Hazeltine Res., Inc.,
    401 U.S. 321 (1971)..................................................................................................5

Plaintiff submits this memorandum of law in opposition to the joint motion of defendants Cowan, Liebowitz & Latman, P.C. ("CLL"), William Borchard, Midge Hyman, Baila Celedonia and Christopher Jensen's (the "CLL Partners") (collectively the "CLL Defendants") to dismiss plaintiff's Third Amended Complaint as time barred and for failure to state claims pursuant to Fed.R.Civ.P. 12(b)(6). As demonstrated below, each of defendants' bases for the motion to dismiss are groundless and accordingly, defendants' motion should be dismissed in its entirety.

## SUMMARY OF COMPLAINT

Plaintiff is an inventor, attorney and former employee and client of defendant CLL. Gurvey and CLL's relationship began in January 2002, when Gurvey signed an "Of Counsel" agreement with the firm. See Third Amended Complaint dated March 4, 2008 (hereinafter referred to as "TAC") ¶29. Shortly thereafter, CLL became Gurvey's attorney and agent in connection with some of her proprietary information for which CLL filed patent applications numbers 60,382,710 and 60,382,949.[1] TAC ¶30. Plaintiff's proprietary information is the result of many years of her hard work and financial investment. Id. At that time, no other entity existed to distribute live concert recordings on site at Clear Channel venues nor did Clear Channel have a venture existing or in formation for implementing new electronic ticketing operations to assist with live recording distribution. CCC Br. ¶53.

Shortly after Gurvey's employment with CLL began, CLL partners, defendants William Borchard, Midge Hyman, Baila Celedonia and Christopher Jensen, ordered plaintiff to present her confidential proprietary projects, business plans, and inventions to them at the firm's monthly partners conference, allegedly to familiarize members of the firm with the nature of plaintiff's practice to see if there was a good fit for strategic partnerships between their clients and her confidential proprietary projects, inventions and start-up clients. TAC ¶34. What plaintiff did not know at the time, was that also in attendance at the "partners" meeting, were

---

[1]     Plaintiff's inventions include the development of processes, systems and methods for the editing, packaging and distribution of live recordings emanating from live events and associated electronic ticketing methods. TAC ¶1.

outsiders. TAC ¶39. After the meeting, plaintiff was informed by Borchard that her proprietary technology created "quite a buzz" at the firm and that it might be of significant interest to the firm's major client, Clear Channel. TAC ¶36. Neither at that time, nor at any other time, did plaintiff give permission for Borchard or any other defendant, to divulge her proprietary information to Clear Channel or anyone else. TAC ¶36.

Also unbeknownst to plaintiff, CLL associate, defendant Susan Schick, was living with defendant Mike Gordon, bassist in the band "Phish." TAC ¶38. Shortly after the "partners" meeting, plaintiff attended a CLL hosted firm party at the Waldorf Astoria where she and her husband met Mike Gordon. At that meeting, Gordon revealed to plaintiff and her husband details of her confidential business plans and technology including use for unsigned bands. TAC ¶41. Plaintiff believes, and through this action alleges, that defendant Schick and the other CLL Defendants disclosed plaintiff's confidential information to Gordon and Clear Channel.

In early May 2002, plaintiff was informed by defendant, Borchard, that CLL was repudiating her "Of Counsel" agreement because it simply "changed its mind" (TAC ¶42), but that it was still interested in her proprietary technology and would go ahead and file plaintiff's PPAs before the USPTO.[2] In August, 2002 upon her return from a business trip as an employee of CLL, CLL locked Gurvey out of her office and refused her access to her computer and her other belongings. TAC ¶47. Plaintiff's computer contained her confidential business plans containing her personal notes related to the patent filings. TAC ¶48. Although CLL eventually returned some of plaintiff's belongings, CLL did not take adequate precautions to ensure that plaintiff's confidential trade secrets were protected and some of boxes from CLL showed signs of tampering and unauthorized access and some of her personal files were left by the CLL Defendants in public places where they could be accessed by anyone. TAC ¶48. In or about November 2002, when CLL sent plaintiff a CD ROM allegedly containing her computer files,

---

[2]    In May, 2002 CLL filed two patent applications with the UPSTO on Gurvey's behalf. TAC ¶48.

including e-mails from her office, plaintiff discovered that CLL had made multiple deletions. TAC ¶49. On or about February 16, 2003, plaintiff received notification from the UPSTO that CLL had withdrawn as plaintiff's attorney on PA # 60,382,710, citing the firm's conflict of interest. TAC ¶50. However, at no time did any of the defendants reveal to plaintiff that they had a conflict of interest in representing her. TAC ¶43.

Plaintiff alleges that once the CLL Defendants learned Gurvey's trade secrets, they shared her secrets with their other client, Clear Channel. TAC ¶31. The CLL Defendants, thus, enabled Clear Channel with the know-how and ideas to form the three other corporate defendants, InstantLive, Live Nation and NexTicketing. TAC ¶128. The CLL Defendants were aware, at that time, that Clear Channel had a notorious reputation for predatory and anti-competitive conduct and in fact had a history of antitrust misconduct cited by the FCC. TAC ¶67. In fact, Clear Channel, armed with plaintiff's trade secrets from the CLL Defendants, intentionally passed of plaintiff's technology as their own and eradicated competition in the market for live concert recording and distribution. TAC ¶128. In March 2003, InstantLive's website contained ads/statements that defendant InstantLive was offering a new added benefit to concert audiences that allowed them to purchase live recordings of the concerts attended with their tickets (one of plaintiff's major confidential operating systems). TAC ¶55. After learning of these websites, plaintiff contacted InstantLive's executives, Steve Simon and Dale Head and advised them that the ads violated her patents pending and the joint representation of Clear Channel and plaintiff by CLL. TAC ¶56. Almost immediately, InstantLive removed the ticket association offer from its website. TAC ¶56. Then, in May, 2003, plaintiff learned from The New York Times article announced Clear Channel's newest venture, InstantLive Concerts and described plaintiff's confidential business models for the onsite distribution of live recordings including for unsigned bands which it attributed to CLL and InstantLive. Also interviewed in this article were members of the band Phish whom identified their interest in the technology.

3

TAC ¶52. In the Fall of 2005, and after the formation of Live Nation, press releases in the Wall Street Journal and Billboard revealed that defendants were deploying plaintiff's proprietary technology to record labels and concert audiences as their own invention. TAC ¶57. There was no technology in existence similar to plaintiff's PPAs, at the time. TAC ¶28.

As a result of the conduct of the CLL Defendants, plaintiff started this action.

## ARGUMENT

### POINT I

### STANDARDS FOR A MOTION TO DISMISS

Plaintiff respectfully refers the Court to Point I, A of her opposition to the Live Nation Defendants' motion submitted concurrently with this memorandum in opposition.

### POINT II

### PLAINTIFF'S CLAIMS ARE NOT TIME BARRED

A.   **Plaintiff's Antitrust Claims (Counts Eight And Nine) Are Timely Against CLL**

CLL argues that plaintiff's antitrust claims[3] are barred by the statute of limitations because all of Gurvey's claims accrued no later than early March 2003 when plaintiff learned InstantLive was advertising a CD sales service to concertgoers (CLL Br. at 7) and CLL was only first put on notice of these claims in August 2007 when plaintiff filed her motion to amend the complaint[4]. CLL Br. at 7. Additionally, CLL argues this claim fails because it does not relate back to a prior timely filed complaint because the TAC contains factual allegations not included in prior complaints. CLL Br. at 7, 8.

---

[3]      Plaintiff's Section 2 Sherman Act claim (Count Eight) has a four year statute of limitation  under 15 U.S.C. § 15b. Count Nine is brought under the New York, California and Texas state antitrust laws which all have four year statutes of limitation. N.Y. Gen. Bus. Law § 340(5); Cal. Bus. & Prof. Code § 16750.1; Tx Bus. & Com. Code Ann. §15.05. Count Eleven is plaintiff's claim for Interference with Prospective Economic Relations which has a three year statute of limitation.

[4]      The CLL Partners join CLL in making this argument.  Plaintiff's response addresses the arguments collectively.

An antitrust claim accrues each time the plaintiff suffers injury. Plaintiff respectfully refers the Court to Point II, B pg. 12 of the Opp. to CCC Br. for further discussion of this issue. Here, the TAC contains detailed factual allegations that plaintiff's injuries occurred as late as the Fall 2005 and continued thereafter.[5] Therefore, the TAC first included in a motion to amend the complaint filed in August 2007, is timely.

Accordingly, with each of plaintiff's injuries, beginning in the fall of 2005, a separate antitrust cause of action accrued and the four-year statute of limitations runs anew. Zenith Radio Corp. v. Hazeltine Res., Inc., 401 U.S. 321, 338 (1971). Therefore, TAC is timely because it was served in August 2007, within four years of accrual (2005 at the earliest). However, even if the court were to find that plaintiff's claim accrued in March 2003, as defendants suggest, with each subsequent injury to plaintiff's business a new cause of action accrues and thus all of the acts that took place after the March 2003 acts starts the statutes of limitation anew. Id. Accordingly, plaintiff's antitrust claims are timely.

Alternatively, Counts Eight and Nine are timely filed because they relate back to the Amended Complaint filed on June 5, 2006, which defendants concede was timely. CLL Br. at 8. An amended complaint relates back to a prior timely filed pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed.R.Civ.P. 15(c)(2).[6] Relation back is liberally granted when no new cause of action is raised by an amended complaint. Stevelman v.

---

[5]     In the TAC, plaintiff alleges that she suffered damage to her business when, in 2005, CCC informed her that she could not record or distribute concert recordings at CCC's venues (TAC ¶74) and that as recent as February 2006, plaintiff's business suffered antitrust injury when CCC implemented her additional proprietary e-ticketing methods with telecom venture partners (including those described in plaintiff's PPAs) TAC ¶80. Moreover, plaintiff alleges that injuries to plaintiff's business are ongoing because CCC continues to pass off plaintiff's proprietary technologies as their own invention and continues to illegally contracts with the major labels for the exclusive right to record and distribute the recordings of live concerts in CCC owned or operated arenas. TAC ¶¶78-79. As plaintiff alleges, all of the aforementioned acts of CCC completely restrains trade by preventing other management and recording companies from contracting with companies, such as plaintiffs. TAC ¶79.

[6]     A complaint is found to arise out of the same conduct, transaction, or occurrence when "the original complaint gave the defendant fair notice of the newly alleged claims." Wilson v. Fairchild Republic Co., Inc., 143

Alias Research Inc. 174 F.3d 79, 87 (2d Cir. 1999) ("where not new cause of action is alleged. . . this Court, liberally grants relation back under Rule 15(c)").

In the TAC plaintiff alleges that the antitrust violations occurred when Clear Channel used their market power to: (a) falsely claim to own a monopoly in the technologies that produce post-concert live recordings on digital media; (b) forcing acts to use Clear Channel's duplicating technologies at their venues; (c) thereby preventing competitors from entering the market; and (d) misappropriating plaintiff's trade secrets. TAC ¶¶128-134. The Amended Complaint ("AC") contains nearly identical allegations of Clear Channel's anticompetitive conduct. See, e.g., AC ¶ 39- 45 (Plaintiff's allegations include that Clear Channel boasted of a monopoly in distributing live concert recordings; prevented plaintiff from recording or distributing concert recordings at Clear Channel venues; and misappropriated plaintiff's trade secrets. Moreover, the antitrust claims in both the TAC (¶¶128-134) and the AC (¶¶39-45) are related to defendants' misappropriation of Gurvey's trade secrets demonstrates that the claims in the TAC arise out of the same conduct, transactions, and/ or occurrence as alleged in the AC. Therefore, Counts Eight and Nine relate back to the AC. Stevelman, 174 F.3d at 87.

CLL erroneously relies on Cinelli v. Oppenheim-Ephratah Cent. Sch. Dist, No. 6: 07-cv-235 2008 WL 111174, at *5 (N.D.N.Y. January 8, 2008) in support of its argument against relation back. The Cinelli court found that plaintiff's "two new causes of action were merely an expansion" of a claim in the original complaint and granted relation back. Cinelli, 2008 WL 111174, at *6. This case is similar to Cinelli, because the new factual allegations CLL refers to are not new claims, but rather merely expand on the antitrust claims stated in the AC.

opposing party by the general fact situation alleged in the original pleading"), quoting In re Chaus Sec. Litig., 801 F. Supp. 1257, 1264 (S.D.N.Y. 1992).

**B.    Count Eleven For Interference With**
       **Prospective Economic Relations Was Timely Filed**

It is undisputed that a claim for tortuous interference with prospective economic relations claim has a three-year statute of limitations, which accrues from the date of injury alleged. CPLR 214(4); Estate of Mantle v. Rothgeb, No.04 Civ. 4310 2007 WL 4548127, at *5 (S.D.N.Y. November 6, 2007) (accrual date is date of any injury).

The TAC contains detailed factual allegations that demonstrate Gurvey's injury took place when she lost the opportunity to complete a private placement offering of securities to be issued by her own company which was to have served as seed money for the development of technologies utilizing her trade secrets and inventions which (TAC ¶146) occurred in Fall, 2005.[7] Additionally, Gurvey alleges that she was subsequently injured in the February 2006, when it was reported in several trade journals that Clear Channel was implementing her proprietary ticketing methods on mobile devices because this was another operating system she developed and sought patent protection for in 2002. TAC ¶65. Accordingly, at the earliest, Plaintiff's cause of action for tortious interference with prospective economic relations accrued in the fall of 2005 and therefore filed with the motion to amend the complaint in August 2007 was timely.

**C.    The Claims Against CLL Partners Are Not Time Barred**

Individually, the CLL Partners also argue that all claims against them are time barred because they are "newly named parties" in the TAC under Fed. R. Civ. P. 15(c)(3) and therefore, the TAC does not relate back to the AC.[8]

---

[7]    Specifically, plaintiff alleges that Clear Channel caused this injury through their misappropriation of her trade secrets and Clear Channel's advertisement to the public as its own. TAC ¶¶57, 60-66.

[8]    The relation back of amended pleadings to prior pleadings when new parties are added is governed by Fed.R.Civ.P. 15(c)(3) which states: "[a]n amendment of a pleading relates back to the date of the original pleading when … the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a misstate concerning the identity of the proper  party, the action would have been brought against the party.

The CLL Partners are wrong – they are not "newly named parties" as defined by Fed.R.Civ.P. 15(c)(3), because under New York law partners are not distinct entities from the partnership. See, e.g., Sugarman v. Glaser, 62 Misc. 2d 1037, 310 N.Y.S.2d 591 (N.Y. Sup.Ct. 1970) ("a partnership is not to be regarded as a separate entity distinct from the persons who compose it"). Thus, the CLL Partners received notice of plaintiff's claims in the TAC when CLL was served with the Amended Complaint in June 2006, which they concede was properly served. CLL Br. at 10. Under New York law, a partner in a partnership receives notice of a lawsuit pending against them when the firm (CLL) is served. CPLR 1025 ("Two or more persons conducting a business as a partnership may sue or be sued in the partnership name"); Niagara Mohawk Power Corp. v. Freed, 278 A.D.2d 839, 719 N.Y.S.2d 789 (N.Y. App. Div. 4th Dep't 2000) ("Persons conducting a business as a partnership may be sued in the partnership name"); U.S. v. Stein, 463 F.Supp.2d 459 (S.D.N.Y. 2006) (CPLR § 1025 allows a partnership to be sued in its name and in fact "counsel to the partnership in reality represents the individual partners"). Accordingly, a suit served on CLL is also served on the CLL Partners. Here, because CLL concedes that the AC was properly served on it in June 2006, thus, the CLL Partners also were timely served with the AC in June 2006. Id.

CLL Partners' attempt to support their argument with Cornwell v. Robinson, 23 F.3d 694, 705 (2d Cir. 1994) is futile because Cornwell did not involve a partnership, but rather an individual suing her former employer and supervisors, is factually dissimilar to this case and therefore its holding is inapplicable here.

CLL Partners argue that the remaining claims - for misappropriation of trade secrets (Count Two), unfair competition and misappropriation of ideas and labor, skills and expenditures (Count Three), breach of fiduciary duty (Count Four), tortious interference with contract (Count Five) and professional malpractice (Count Six) (subject to three year statutes of limitation) should be dismissed against them because they had no notice of this claim until the AC was

8

served on CLL in June 2006 and by that time the statute of limitations had already run.  CLL Br. at 10.[9]  The CLL Partners are wrong.

### 1.   Count Two – Misappropriation Of Trade Secrets

The statute of limitations for a misappropriation of trade secrets claim is three years.  NY CPLR § 214(4).  The accrual date for such a claim is determined "either when the defendant discloses the trade secret or when he first makes use of the plaintiff's ideas."  Lemelson v. Carolina Enterprises, Inc., 541 F. Supp. 645 (S.D.NY. 1982), citing Petnel v. American Telephone & Telegraph Co., 280 App. Div. 706, 117 N.Y.S.2d 294 (3d Dep't 1952).

The TAC contains detailed factual allegations alleging that the CLL Partners' shared plaintiff's trade secrets with Clear Channel (TAC ¶¶ 34-41) who then used plaintiff's trade secrets no earlier than Fall, 2005 when they implemented plaintiff's proprietary electronic ticketing solutions related to plaintiff's proprietary methods on mobile devices.  TAC ¶¶62-65.  Therefore, plaintiff has alleged that Clear Channel misappropriated plaintiff's trade secrets, in Fall 2005, and thus, the claim accrued at that time.  Accordingly, plaintiff's Motion to Amend the Complaint filed on August 2007 timely tolled the statute of limitations for this claim.

### 2.   Count Three –Unfair Competition Misappropriation Of Ideas And Labor, Skill And Expenditures

The Statute of Limitations for this claim is 6 years when based on the same facts as a claim under Section 43(a) of Lanham Act.  See Opp. to CCC Br. at page 13.

The TAC contains detailed factual allegations that the CLL Partners attempted to pass off plaintiff's ideas as their own in the Fall of 2005.[10]  Thus, since defendants' first passed off

---

[9]    Here the CLL Partners concede that notice to CLL is constructive notice to the CLL Partners.  CLL Br. at 10.

[10]    Specifically plaintiff alleges that in the Fall, 2005, defendant Clear Channel announced the formation of Live Nation (which later acquired InstantLive) and revealed that they were "re-deploying plaintiff's proprietary ticketing methods, were marketing plaintiff's proprietary technologies to record labels and concert audiences as their own invention."  TAC ¶57.  Defendants in fact, utilized the technology described in the Fall, 2005 articles.  TAC ¶ 65.  Further, plaintiff alleges that in February 2006, Billboard magazine reported that Clear Channel joint ventured

plaintiff's proprietary information as their own in the Fall 2005, plaintiff's claim for unfair competition and misappropriation of her ideas and labor, skill and expenditures accrued at that time and therefore the TAC filed in August 2007 was timely.  Greenlight Capital, Inc. v. Greenlight, No. 04 Civ. 3136 2005 WL 13682, at *7 (January 3, 2005 S.D.N.Y.)

### 3.     Count Four – Breach Of Fiduciary Duty

The CLL Partners are wrong because the statute of limitations for a breach of fiduciary duty claim is six years when the relief sought is equitable and three years when the relief sought is monetary.  See CPLR §§ 213(1) and 214(4) respectively; see also Evans v. Perl, No. 602898/05, 2008 WL 1735059, at * 7 (N.Y. Sup. Ct. Apr. 9, 2008).  A cause of action for breach of fiduciary duties accrues when there is a repudiation of the fiduciary relationship.  Id.; Golden Pacific Bancorp v. F.D.I.C., 273 F.3d 509, 519 (2d Cir. 2001) ("Under New York law, the limitations period for claims arising out of a fiduciary relationship does not commence until the fiduciary has openly repudiated his or her obligation or the relationship has been otherwise terminated") (internal citations omitted).  The attorney client relationship is a fiduciary one and thus a client is not expected to bring suit against her attorney until the relationship is ended.  See Greene v. Greene, 56 N.Y.2d 86, 92, 94-95, 451 N.Y.S.2d 46, 436 N.E.2d 496 (N.Y.1982) (describing the relationship between an attorney and his client as a fiduciary one and then noting that "the client [cannot] be expected ... to oversee or supervise the attorney's handling of the matter, and thus ... the client's right of action [did not] accrue[ ] before he terminated [his] relationship with [his] attorney").  The TAC is full of detailed factual allegations describing the fiduciary relationship between Plaintiff and CLL and the fact that the CLL Partners never withdrew their representation of plaintiff's second PPA.[11]  In this case, the applicable statute of

---

with Ticketmaster and Nokia to put tickets on mobile devices and thereby began using another of plaintiff's proprietary information. TAC ¶58.

[11]     Plaintiff alleges that CLL was her attorney and represented her before the USPTO in connection with, and filed on her behalf, two PPAs (Nos. 60, 382, 710 and 60, 382, 949) containing her confidential proprietary

limitation is six years because plaintiff's claims are for <u>both</u> equitable and monetary relief. <u>See,</u> <u>e.g.</u>, <u>Global Crossing Estate Representative v. Winnick</u>, No. 04 Civ. 2558(GEL), 2006 WL 2212776, at *18 (S.D.N.Y. Aug. 3, 2006) (court applied six year statute of limitations to breach of fiduciary duty claim seeking monetary and equitable relief when breach occurred more than three but less than six years prior to filing the complaint). However, even if the applicable statute of limitations was only three years, the time within which plaintiff could bring this claim did not accrue prior to plaintiff's filing of the complaint because CLL never openly repudiated the attorney client relationship with Plaintiff. <u>Id.</u>

### 4. <u>Count Five – Tortious Interference With Contract</u>

The tortious interference with contract claim has a three-year statute of limitations. (CPLR 214(4)); which accrues on the date the plaintiff suffers damages. <u>Kronos, Inc. v. AVX</u> <u>Corp.</u>, 81 N.Y.2d 90, 612 N.E.2d 289 (N.Y. 1993) (court found that "no cause of action for tortious inducement to breach a contract arises until actual damages are sustained").

The TAC contains detailed factual allegations that Gurvey suffered damages as a result of defendants' tortious conduct in or about 2005.[12] Accordingly, this claim was timely filed with the motion to amend the complaint in August 2007.

---

information related to the packaging, editing, management and distribution of live recordings emanating from events at concert, sports, conferencing and gaming venues including associated electronic ticketing methods and in connection with plaintiff's commercial exploitation of her inventions, ideas, and trade secrets. TAC ¶¶1, 32, 106. CLL never withdrew their representation of plaintiff with respect to PPA No. 60, 382, 949 and plaintiff only received notification from the USPTO that CLL had withdrawn their representation of PPA. No. 60, 382, 6 in February, 2003. TAC ¶32.

[12]     Specifically, she suffered damage that after the CLL partners interfered with plaintiff's contract with Legend, in or about 2005. In the TAC, Gurvey alleges that Plaintiff alleged that CLL partners interfered with a valid contract with Legend Films to pay plaintiff in Legend stock for her services as Legend's General Counsel from 1999, which CLL was aware of at the time they signed her "Of Counsel" agreement. TAC ¶113. Plaintiff further alleges that due to CLL's desire to become counsel to Legend, the CLL Defendants and that plaintiff was damaged and that plaintiff alleges that she continues to suffer damages as a result of defendants' interference with this contract. TAC ¶¶112-117.

11

### 5.      **Count Six – Professional Malpractice**

A claim for professional legal malpractice has a three-year statue of limitations CPLR

214 (6) and accrues on the date of the professional misconduct. <u>Shumsky v. Eisenstein</u>, 96

N.Y.2d 164, 750 N.E.2d 67 (N.Y. 2001); <u>Rafter v. Liddle</u>, No. 05 CV 21296, 2006 WL 2255093,

at *7 (S.D.N.Y. Aug. 4, 2006)).  The "continuous representation" doctrine tolls the statute of

limitations when plaintiff can show that the relationship with her attorney was ongoing after the

attorney's wrongful acts.  <u>Shumsky</u>, 96 N.Y.2d at 166 ("the continuous representation doctrine,

... recognizes that a person seeking professional assistance has a right to repose confidence in

the professional's ability and good faith, and realistically cannot be expected to question and

assess the techniques employed or the manner in which the services are rendered").

The TAC is replete with detailed factual allegations describing when the legal

malpractice took place in this action and how the representation continued even after the

wrongful acts.[13]  TAC ¶¶33-41.  Accordingly, plaintiff alleges that the legal malpractice occurred

prior to 2005 when defendants began using plaintiff's trade secrets (TAC ¶¶31, 32, 34), that

Under the continuing representation doctrine, the statute of limitations was tolled while the

attorney-client relationship was ongoing (<u>Shumskey</u>, 96 N.Y. 2d at 166) and that because the

CLL Partners never repudiated the relationship with Plaintiff, the statute was tolled until the time

she brought this suit.  Count Six is timely.

---

[13]      Plaintiff alleges that the CLL partners were her attorneys beginning in 2002 in connection with plaintiff's
proprietary technology issue in this litigation.  TAC¶ 30-32.  In connection with this representation, the CLL
defendants filed on plaintiff's behalf two patents before the USPTO (Nos. 60, 382, 710 and 60, 382, 949).  TAC
¶32.  CLL never withdrew their representation of plaintiff in connection with the second PPA that CLL filed on May
24, 2002 with the USPTO.  <u>Id.</u>

## POINT III

## ALL PLAINTIFF'S CLAIMS AGAINST THE CLL
## DEFENDANTS HAVE BEEN ADEQUATELY PLEADED[14]

### A.    Counts Two And Three – The Misappropriation
###        Claims Are Adequately Pleaded

The CLL Defendants argue that plaintiff's misappropriation claims[15] fail to state claims

for the following reasons:  1) Plaintiff did not keep her trade secret confidential;[16] 2) plaintiff's

trade secret is not novel and therefore is not a protectable idea;[17] 3) plaintiff did not use the trade

secret in the course of business; and 4) plaintiff merely speculates that CLL gave her trade

secrets to Clear Channel.[18]  CLL Br. at 13-15.  Defendants are wrong because plaintiff alleges all

elements of the misappropriation claims.[19]

Under New York law, a trade secret "may consist of any formula, pattern, device or

compilation of information which is used in one's business, and which gives him an opportunity

---

[14]      Both CLL and the CLL Partners move to dismiss under 12(b)(6) and are collectively referred to as "The CLL Defendants."

[15]      Count Two is for misappropriation of trade secrets and Count Three is for misappropriation of ideas and labor, skills and expenditures.

[16]      Secrecy is an element of the misappropriation of trade secrets claim and not the misappropriation of ideas and labor, skill and expenditures.  See, e.g., Integrated Cash Management Servs., Inc. v. Digital Transactions, Inc., 920 F.2d 171, 173 (2d Cir. 1990)(trade secret elements) and McGhan v. Ebersol, 608 F. Supp. 277, 283 (S.D.N.Y. 1985) (ideas and labor, skill and expenditures elements).

[17]      Novelty is only an element of the misappropriation of ideas and labor, skill and expenditures claim, but not of the trade secrets claim.

[18]      CLL does not, however, contest that Gurvey has adequately described the trade secret, but argues instead that plaintiff did not keep the trade secret a secret and therefore her claim fails.  CLL Br. at 12.  CLL also does not contest that there was a legal relationship between the parties (the first element of the misappropriation of ideas claim), but instead argues that plaintiff's claim fails because the trade secret is not novel.  CLL Br. at 13.

[19]      Under New York law, to establish a prima facie case for misappropriation of trade secrets, a plaintiff must prove that: (1) it possessed a trade secret, and (2) defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means."  Integrated Cash Management Servs., Inc. v. Digital Transactions, Inc., 920 F.2d 171, 173 (2d Cir. 1990).  A claim for misappropriation of ideas and labor, skill and expenditures under New York law has the following two elements: (1) the existence of a legal relationship between the parties in the form of a fiduciary relationship, an express or implied-in-fact contract, or quasi contract, and (2) the idea must be novel or concrete.  McGhan v. Ebersol, 608 F. Supp. 277, 283 (S.D.N.Y. 1985) (Claims for misappropriation of ideas are situations in which the courts of New York will "afford protection to persons who ... have disclosed their ideas to others in the expectation that the idea would be used, and the use compensated"); An idea is novel if it is not "already in use in the industry at the time of plaintiff's submission."  Id. at 285.

to obtain an advantage over competitors who do not know or use it." Id.; see also Softel, Inc. v. Dragon Med. & Scientific Communications, Inc., 118 F.3d 955, 968 (2d Cir. 1997) ("process or device for continuous use in the operation of the business"). Whether the trade secret is a secret has been uniformly held to be a question of fact inappropriate for determination on a motion to dismiss. Integrated Cash Management Servs., Inc., 920 F.2d at 171, 174 (2d Cir. 1990) ("Existence of a trade secret is a question of fact for the determination of the trier of fact, secrecy being a basic element"); Ashland Management Inc. v. Janien, 82 N.Y.2d 395, 407, 624 N.E. 2d 1007 (N.Y. 1993) ("A trade secret must first of all be secret: whether it is generally a question of fact").

### 1.        Plaintiff Kept Her Trade Secret Confidential

Courts have found there are several factors that should be considered in deciding whether a trade secret actually constitutes a "secret":  (1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value of the information to [the business] and [its] competitors; (5) the amount of effort or money expended by [the business] in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." Ashland Management Inc. v. Janien, 82 N.Y.2d 395, 407 , 624 N.E. 2d 1007 (N.Y. 1993).

Plaintiff alleges that she maintained her trade secrets in secret at all times and that at no time did plaintiff authorize dissemination of any her confidential materials, business proposals, invention descriptions and trade secrets to any third person, party or entity, including nor to any

client of CLL. TAC ¶27. Under established law these allegations suffice. See, e.g., Integrated Cash Management, 920 F.2d at 174.[20]

The CLL Defendant's argument that Gurvey's did not keep her trade secrets confidential because she discussed her ideas with Yo-Yo Ma and others is wrong because Gurvey never divulged the details of her proprietary technology, but merely discussed its practical application in user-friendly terms. TAC ¶31. Under applicable law such disclosure does not destroy the secret's status. See Softel, Inc. v. Dragon Med. & Scientific, Commun'cs, Inc., 118 F.3d at 968 (court held that "[t]he fact that [plaintiff] told [a third party] that his code contained four design elements does not disclose the manner of their combination" and thus was "not disclosure sufficient to violate the secrecy of his trade secret"), citing Integrated Cash Mgmt. II, 920 F.2d at 174 (stating under New York law that a "user-oriented description" of a computer program is not a disclosure of a trade secret).

### 2. Plaintiff's Misappropriation Of Ideas Claim States A Cause Of Action Because Her Technology Was Novel[21]

Gurvey's ideas were novel because they were not in use at the time at the time defendants misappropriated her business plans, see TAC ¶ 28, and under established law, this suffices. See, e.g., McGhan 608 F. Supp. At 285 (An idea is novel if it is not "already in use in the industry at the time of plaintiff's submission"); ¶¶ 76, 100. The New York Times article of May 5, 2003 did not demonstrate that plaintiff's business plans and proprietary technologies were not novel at the

---

[20]     In support of their argument, defendants rely solely on Boyle v. Stephens, Inc., No. 97 Civ. 1351, 1997 WL 529006, at *5 (S.D.N.Y. Aug. 26, 1997) in support of their argument that plaintiff has not adequately alleged a trade secret. However, Boyle, is factually distinguishable from this case because the Boyle, plaintiff sought protection for marketing materials which are not protectable trade secrets under New York law and because Plaintiff voluntarily mailed out the marketing materials to the public. Id. Here, however, Plaintiff did not intentionally reveal her trade secrets to non attorneys and her technology is not under New York State law. Thus, Boyle is inapplicable to this case.

[21]     Moreover, New York state courts are instructed to cautiously use the novelty requirement in a misappropriation claim based on trade secrets. See Sofitel, Inc., 118 F.3d at 968 ("We caution the district court on its use of the term 'novelty.' Under the Restatement's approach- at least as that term is used in patent law-is not required in a trade secret"), citing Restatement of Torts § 757 cmt. b, at 6-7 ("Novelty and invention are not requisite for a trade secret").

time defendants misappropriated the ideas because the article does not divulge the details of

Plaintiff's invention, but merely states it was a "continuation of the trend among various bands

and start-ups in recent years to sell authorized recordings that are available on CD or as internet

downloads soon after the event." CLL Br. at 14; Victor G. Reiling Assocs. v. Fisher-Price, Inc.,

450 F. Supp.2d 175, 180 (D. Conn. 2006)(court denied defendant's motion for judgment as a

matter of law or for a new trial because jury could find that "an innovative idea to combine

certain existing elements may be novel because that idea may not be in the public domain").[22]

### 3.  Plaintiff Alleges That Gurvey's Trade Secret Was Used In Business

Plaintiff alleges that her proprietary information and technology was used in business

because she formed a company to commercially exploit her trade secrets and even hired an

attorney to represent her before the USPTO. TAC ¶30. A review of relevant case law

demonstrates that to satisfy the "use" element, a plaintiff must allege that the trade secret "is a

process or device for continuous use in a business." Lehman v. Dow Jones & Co., Inc., 783 F.2d

285, 297-98 (2d Cir. 1986), citing, Restatement of Torts, § 757, comment b (1939); Integrated

---

[22]  The cases cited by defendants do not entitle CLL to a dismissal of Gurvey's claims on the grounds that the claim is not novel. See, e.g., Ashland Management, 82 N.Y.2d at 407(court found that plaintiff's programs were not a trade secret but non-protectable promotional material because based on plaintiff's public disclosures, the calculations could be easily reproduced without access to plaintiff's programs); Alliance Sec. Prod. Lin. v. Fleming Co., 471 F.Supp.2d 452, 459 (S.D.N.Y. 2007) "[a]n idea that combines several known ideas may be novel"); LinkCo Inc. v. Fujitsu Ltd., 230 F.Supp.2d 492, 501 (S.D.N.Y. 2002) (court held that the software architecture could not be a trade secret because once it was marketed the technology could no longer remain secret); Am. Bus. Training Inc. v. Am. Mgt. Assoc., 815 N.Y.S.2d 491, 494 (N.Y. App. Div. 1st Dep't 2008)(court found plaintiff's idea was not novel because the same program was already marketed by several other companies); Nadel v. Play-by-Play Toys & Novelties, Inc., 208 F.3d 368, 376 (2d Cir. 2000)(court held some of plaintiff's toys lacked novelty because they were copies of toys already in the public domain); Paul v. Haley, 183 A.D.2d 44, 53, 588 N.Y.S.2d 897, 903 (N.Y. App. Div. 2d Dep't 1992) (court held Plaintiff must put forth evidence of novelty in a summary judgment context); WGJ Holdings Inc. v. Greenberg, No. 07 Civ. 2742(WHP), 2008 WL 80952, at * 3 (S.D.N.Y. Jan. 8, 2008) (court found plaintiff could not establish that its recipes constituted a trade secret because newspaper articles had published the actual recipes, plaintiffs kept several copies of the recipe books in the bakery where anyone could see it and because plaintiffs did not spend any money creating the recipes); Victor G. Reiling Assocs. v. Fisher-Price, Inc., 450 F. Supp. 2d 175, 180 (D. Conn. 2006)(court denied defendant's motion for judgment as a matter of law or for a new trial because jury could find that "an innovative idea to combine certain existing elements may be novel because that idea may not be in the public domain"); Sales Strategies Group, Inc. v. Fenton, 16 Misc. 3d 171, 174, 838 N.Y.S.2d 856, 858 (N.Y. Sup. Ct. Monroe Cty. 2007) (court refused to find plaintiffs idea was a trade secret because it was already used by Plaintiff in public domain and no longer a secret). In this case, however, there are no arguments that Gurvey's trade secret lost its secrecy once the item was in use in the business, so LinkCo is not applicable here. See LinkCo Inc. v. Fujitsu Ltd., 230 F.Supp.2d at 501. Moreover, Paul v. Haley is not applicable to this case either because the court found the novelty issue was subject to summary disposition after discovery took place unlike here where has been no discovery so the holding of Paul, does not apply. 588 N.Y.S.2d at 903.

Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc., 920 F.2d 171, 173 (2d Cir. 1990) (same).[23]
These cases demonstrate not that the trade secret must be already used but that it must be fit for
"continuous use in a business."

### 4.    Plaintiff Adequately Alleges How The Misappropriation Occurred

Plaintiff adequately alleges how the misappropriation occurred.[24]  The cases cited by
defendants are not persuasive because they are easily distinguished from this case and involve
plaintiffs who failed to allege any facts describing the manner of misappropriation, unlike the
plaintiff here.[25]  Therefore these cases are inapplicable here.

### 5.    Plaintiff Has Adequately Alleged
### A Legal Malpractice Claim Against CLL

CLL Defendants argue that plaintiff has alleged three instances of legal malpractice
against CLL that do not allege acts amounting to malpractice.  The CLL Defendants argue:  1)
plaintiffs allegations that CLL Defendants failed "to protect and safeguard [her] trade secrets"

---

[23]    The CLL Partners rely on Ashland Management, 82 N.Y.2d at 407, to support its argument.  CLL Br. at 15.
CLL's citation to Ashland Management reiterates the well-known requirement definition of trade secret in New
York law, but does not address the "use" issue.

[24]    First, Gurvey alleges that CLL induced her to sign an "Of Counsel" agreement with them by promising to
"take stock in her start-up clients" and by guaranteeing her a base salary plus a formula for a contingent draw.  TAC
¶29.  At the same time, Gurvey alleges that CLL was acting as a scout for its most coveted client Clear Channel and
that CLL's intent in signing an "Of Counsel" contract with her was to get immediate access to plaintiff's proprietary
information and technology, her clients and business plans and to terminate plaintiff's contract.  TAC ¶31.
Moreover, plaintiff alleges that CLL ordered her to present her confidential proprietary projects, business plans and
inventions at their monthly "partners' conference" under the false pretenses that only partners would be present and
failed to inform her that outsiders would be present at that meeting.  TAC ¶¶34, 39.  Plaintiff alleges that based upon
this information she presented at the firm meeting, defendant William Borchard's told Plaintiff's that her business
plans would be perfectly partnered with Clear Channel.  TAC ¶¶34, 36.  In fact, immediately thereafter, Borchard
informed plaintiff that he preferred to have her as a client of CLL rather than as "Of Counsel."  TAC ¶37.  Plaintiff
also alleges that an associate at CLL defendant, Susan Schick, was living with Phish bass guitarist defendant Mike
Gordon, with whom CLL and the CLL Partners shared plaintiff's trade secrets.  TAC ¶41.  Through all of the above
allegations, plaintiff has provided the detailed facts surrounding the misappropriation of her trade secrets.

[25]    See, e.g., ATSI Communications Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 89 (2d Cir. 2007) (securities fraud
case and thus subject to a different pleading standard and does not address misappropriation claims); Cable News
Network LP v. GoSMS.com, Inc., No. 00 Civ. 4812 WL 1678039, at * 6 (S.D.N.Y. Nov. 6, 2000)(court found
plaintiff did not allege any "acts of infringement, supervision or control over the direct infringers, or contribution to
the infringement" and therefore the claim failed); In re Dana Corp., No. 06-10354 2007 WL 3376882, at **6-7
(S.D.N.Y. Bkrtcy. Nov. 6, 2007) (on a summary judgment motion, court held that claim failed because there was no
evidence connecting defendants to the conspiracy); In re Adelphia, 324 B.R. 492, 499 (S.D.N.Y. Bkrtcy. 2005)
("Court's main problem with the third-party complaint was, and continues to be, the absence of allegations
delineating circumstances, as opposed to the use of conclusory allegations in which the third-party participated in
the wrong-doing complained of in the complaint").

fails because it merely restates her misappropriation claim; 2) Gurvey's claims of improper

advice are conclusory and contradicted by other allegations in the complaint; 3) the conflict of

interest claim is a "naked invocation of the phrase and is therefore inadequately pleaded and is

unsupported by other allegations, such as, that Gurvey was injured by CLL's withdrawal as her

counsel. CLL Br. at 18 and 19. None of the CLL Defendants' arguments can earn them a

dismissal of the legal malpractice claim.

Plaintiff alleges all the elements of a claim for legal malpractice, i.e., (1) a duty, (2) a

breach of the duty, and (3) actual damages proximately caused by the breach of that duty.[26]

Ocean Ships, Inc. v. Stiles, 315 F.3d 111, 117 (2d Cir. 2002).[27]

Despite the CLL Defendants arguments to the contrary[28], plaintiff's legal malpractice

claim does not merely restate her misappropriation claims because the legal malpractice claim

focuses on the CLL defendant's acts that violated the duties they owed to plaintiff as her attorney

while (TAC ¶33) the misappropriation claims focus on the CLL Defendants' tortuous conduct in

general. They are not duplicative.

---

[26]     The TAC alleges: (1) CLL defendants were plaintiff's attorneys in association with the proprietary
technology contained in PPA Nos. 60, 382 and 964, and thus owed her the duties of utmost loyalty, care and all the
protections of the attorney-client privilege; TAC ¶¶30, 119; (2) that the CLL Defendants breached those duties by:
(a) failing to protect and safeguard plaintiff's trade secrets from disclosures and misappropriation, TAC ¶¶34-41, 54;
(b) failing to properly advise plaintiff with respect to the opportunities for commercial exploitation of plaintiff's
inventions and trade secrets; TAC ¶31, (c) failing to eliminate conflicts of interest, TAC ¶¶30-32; and (3) that as a
result of the CLL Defendants' conduct, plaintiff was injured. TAC ¶121. Thus, plaintiff has adequately alleged a
claim for legal malpractice.

[27]     This argument also fails because to state a prima facie case for legal malpractice, plaintiff need only plead
that there was a duty, that the duty was breached and that she was harmed by defendants' breach of the duties owed
to her, which plaintiff has done. Tinelli v. Redl, 199 F.3d 603 (2d Cir. 1999), citing Marshall v. Nacht, 172 A.D.2d
727, 569 N.Y.S.2d 113, 114 (2d Dep't 1991); TAC ¶ 77, 79, 121. Plaintiff has alleged that CLL owed her the duties
of utmost loyalty and care (TAC ¶119), that CLL breached that duty by misappropriating her trade secrets to
CLEAR CHANNEL, by failing to properly advise her regarding the commercial exploitation of her trade secret and
by having an improper conflict of interest which damaged plaintiff. (TAC ¶120).

[28]     CLL defendants rely on no authority for this argument.

The CLL Defendants second argument is wrong because it ignores plaintiff's allegations that CLL failed to advise Gurvey that non-partners were present at her presentation.[29] TAC ¶39. Additionally, CLL argues Gurvey's allegations of legal malpractice based upon a conflict of interest fails because Gurvey should have understood that a conflict of interest arose when CLL barred her from accessing her office is wholly irrelevant to this matter. CLL Br. at 18. What plaintiff understood or did not understand is not at issue here because this argument does not refute plaintiff's claim that CLL knew, at the time it initiated representation of her, that it was involved in a serious conflict of interest due to its simultaneous representation of Clear Channel.[30] TAC ¶¶32, 33, 51. CLL's argument that plaintiff's allegations of conflict of interest are a "naked invocation" of the phrase is ridiculous because the CLL defendants have admitted the conflict when it withdrew of Gurvey's attorney for patent application.[31] TAC ¶¶32, 54, 72.

Last, CLL's argument that plaintiff's claim fails because she did not allege that she was harmed by CLL's withdrawal of counsel is erroneous and unsupported by any law. The fact that CLL withdrew as counsel does not destroy plaintiff's claim because she is not alleging that her damages were cause by their withdrawal but by their acts prior to the withdrawal of counsel. At the motion to dismiss stage (pre-discovery), plaintiff "need only plead allegations from which

---

[29]     CLL defendants also ignore plaintiff's allegations that CLL did not advise Gurvey with respect to opportunities for the commercial exploitation of her own inventions and instead allowed its other client, Clear Channel to exploit Gurvey's trade ideas. TAC ¶¶52-59. Also, this claim is not undermined by allegations that the CLL defendants agreed to represent Gurvey in connection with her PPAs because in no way was CLL defendant's representation limited to filing the PPAs as defendants arguments implies.

[30]     Moreover, CLL admitted to the USPTO that CLL had an impermissible conflict of interest regarding representation of Gurvey, and thus withdrew its representation of Gurvey. TAC ¶32 (plaintiff received notification from the USPTO that "CLL had unilaterally withdrawn as plaintiff's attorney on PPA # 60,382,710 for an alleged 'conflict of interest'").

[31]     The cases cited by CLL in support of its argument that claims of conflict of interest alone are insufficient to support a legal malpractice claim are easily distinguished from this case. See Raul v. Am. Stock Exchange, Inc., No. 95 Civ. 3154 (SAS), 95 Civ. 8361 (SAS), 1996 WL 627574, at *3 (S.D.N.Y. Oct. 29, 1996) (court did not reject a claim for legal malpractice based on conflict of interest, but rather rejected plaintiff's involving "an undefined 'conflict of interest' rule of law") and Schafrann v. N.V. Famka, 14 A.D.3d 363, 787 N.Y.S.2d 315 (N.Y. App. Div. 1ˢᵗ Dep't 2005) (court held that a "conflict of interest …does not by itself support a legal malpractice claim" in a motion for a new trial after it rejected the supporting expert witness). Both of these cases are vastly different from this case because the in this case plaintiff alleges that CLL has an impermissible conflict of interest which it did not rectify or advise her of and therefore CLL committed legal malpractice. TAC ¶¶32,33,51. Neither of the cases cited by defendants speak to this issue, and thus do not support defendants' argument for dismissal of this claim.

damages attributable to [defendant's] conduct might be inferred'" Id., citing, InKine Pham. Co v. Coleman, 305 A.D.2d 151,152 (N. Y. App. Div. 1st Dep't 2003), quoting Tenzer, Greenblatt, Fallon & Kaplan v. Ellenberg, 199 A.D.2d 45 (N.Y. App. Div. 1st Dep't 1993). Therefore, plaintiff has adequately alleged all the elements of a legal malpractice claim.

### 6. Plaintiff Has Adequately Alleged A Breach Of Fiduciary Duty Claim Against CLL

CLL argues that Gurvey's claim for breach of fiduciary duty is duplicative of plaintiff's legal malpractice claim and should be dismissed because:  1) CLL was not required to sign a retainer with Gurvey because they did not charge her a fee; 2) plaintiff violated a confidentiality statute that forbid her from revealing details about a disciplinary action; 3) it is absurd for Gurvey to contend that CLL owed her fiduciary duties while they were involved in litigation against each other; and 4) in the alternative this claim should be stricken under Rule 12(f).[32] See CLL Br. at 19 and 20.

Attorneys can breach their fiduciary obligations by appropriating a client's business opportunity for the benefit of another client. See, e.g.,  Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker, 16 Misc.3d 1051, 843 N.Y.S.2d 749 (N.Y. Sup. Ct. 2007) (court refused to dismiss breach of fiduciary duty claim holding that it was not duplicative of the legal malpractice claim because "[t]here is thus substantial persuasive authority upholding fiduciary duty claims based on an attorney's appropriation of a former client's business opportunity for the

---

[32]    To state a claim for breach of fiduciary duty in New York plaintiff must allege: "(1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that the plaintiff suffered damages as a result of the breach." Whitney v. Citibank, N.A., 782 F.2d 1106 (2d Cir. 1986) (reciting elements of claim), citing, Newburger, Loeb & Co., Inc. v. Gross, 563 F.2d 1057, 1074 (2d Cir. 1977), cert. denied, 434 U.S. 1035 (1978). Attorneys owe fiduciary obligations to clients. See, e.g., Hafter v. Farkas, 498 F.2d 587 (2d Cir. 1974) ("In New York...a lawyer is bound to conduct himself as a fiduciary or trustee occupying the highest position of trust and confidence, so that, in all his relations with his client, it is his duty to exercise and maintain the utmost good faith, honesty, integrity, fairness and fidelity. Flores v. Willard J. Price Associates, LLC, 20 A.D.3d 343, 799 N.Y.S.2d 43 (N.Y. App. Div. 1st Dep't 2005) ("This unique fiduciary reliance, ... is imbued with ultimate trust and confidence. Furthermore, "[t]he duty to deal fairly, honestly and with undivided loyalty superimposes onto the attorney-client relationship a set of special and unique duties, including maintaining confidentiality, avoiding conflicts of interest, ... and honoring the clients' interest over the lawyer's")(internal citations and quotations omitted).

benefit of the attorney or another client, where there is a reasonable probability or significant risk that the client's confidential information will be used in acquiring the business.") Similarly, a breach of fiduciary duty claim is not duplicative of legal malpractice claim when it relates to the "manner in which an attorney interacted with his clients." <u>Kirk v. Heppt</u>, 532 F.Supp.2d 586 (S.D.N.Y. 2008), citing and quoting <u>Schweizer v. Mulvehill</u>, 93 F.Supp.2d 376, 400 n. 29 (S.D.N.Y.2000) (noting that breach of fiduciary duty claims are distinguished from legal malpractice claims based on the same factual allegations when they do not relate to the "manner in which the attorney pursued the underlying case" but which relate to "the manner in which an attorney interacted with his clients"). The breach of fiduciary claim in this case is not duplicative of the legal malpractice claim because it relates to the manner in which the attorney, CLL Defendants, interacted with their client, plaintiff.[33]

Lastly, defendants contend that this claim should be dismissed because plaintiff violated a confidentiality requirement imposed on attorneys under New York Law by alleging that CLL failed to attach a rider to the employment contract in a submission to the Disciplinary Committee and before this Court. However, defendants misconstrue the law. Under N.Y. Judiciary Law § 90, which CLL relies on, "all papers, records and documents…upon any complaint, inquiry, investigation or proceeding relating to the conduct or discipline of an attorney or attorneys, shall be sealed and be deemed private and confidential." In this case, plaintiff did not disclose any paper, record or document related to the disciplinary action, but rather included such allegations in the TAC, which does not violate the Judiciary Law. N.Y. Judiciary Law § 90. Moreover, plaintiff's actions do not determine a legal malpractice claim and are therefore irrelevant.

---

[33]    Defendants rely on <u>Iannazzo v. Day Pitney LLP</u>, No. 04 Civ. 7413(DC), at *10 2007 WL 2020052 (S.D.N.Y. July 10, 2007) in support of their argument that the breach of fiduciary duty claim was duplicative of the legal malpractice claim and should be dismissed. In <u>Iannazzo</u>, the court granted summary judgment of all of Plaintiff's claims, but specifically dismissed the breach of fiduciary duty claim because it was based on the same set of facts as the legal malpractice claim. 2007 WL 2020052 at 10. <u>Iannazzo</u> is distinguished from this case because in <u>Iannazzo</u> the plaintiff's legal malpractice claim was based on the manner in which the attorney pursued the underlying case and not the manner in which the attorney interacted with his client as is the case here. <u>Schweizer</u>, 93 F. Supp. 2d at 400 n. 29.

Defendants argue that these allegations should be struck pursuant to Fed.R.Civ.P.12(f). But defendants have failed to offer any strong reason to do so.  Roe v. City of New York, 151 F.Supp.2d 495 (S.D.N.Y. 2001) "[m]otions to strike are disfavored, and should be granted only if "there is a strong reason to do so."

### 7.    Plaintiff Has Adequately Pleaded A Tortious Interference With Contract Claim

CLL argues that the tortious interference with contract claim should be dismissed because: 1) plaintiff makes only one factual allegation in support of this claim[34] and it is therefore is inadequately pleaded (CLL Br. at 21) and 2) plaintiff does not identify how the breach was orchestrated.  CLL Br. at 21.

Plaintiff's complaint adequately alleges facts to support all elements of her claim.[35] In the TAC, plaintiff alleges she has a valid contract with Legend Films for her services as Legend's General Counsel (TAC ¶113), that CLL was aware of her contract with Legend Films (TAC ¶114) and that CLL intentionally procured the breach of that contract by inducing Legend to refrain from performing the contract (TAC ¶115).[36]  Finally, plaintiff alleges that as a result of CLL's conduct and the breach of contract by Legend, she suffered damages.[37]  TAC ¶117.

---

[34]    Plaintiff alleges that CLL attorney Mark Montague was introduced to plaintiff's client Legend films shortly after she became of counsel to CLL and that CLL orchestrated her ouster from Legend and induced Legend to renege on its obligation to pay plaintiff.

[35]    To state a claim for tortious interference with contract under New York law, plaintiff must show the following four elements: "(a) that a valid contract exists; (b) that a 'third party' had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff."  MacPhee v. Verizon Communications Inc., No. 06-CV-7870(BSJ), 2008 WL 162899, at *3 (S.D.N.Y. Jan. 15, 2008) citing,  Albert v. Loksen, 239 F.3d 256, 274 (2d Cir. 2001) (citations omitted).

[36]    Plaintiff alleges that CLL attorney Mark Montague was introduced to plaintiff's client, Legend Films shortly after she became "Of Counsel" to CLL (TAC ¶29(f) and that CLL thereafter orchestrated plaintiff's ouster from Legend (where she had served as General Counsel up until 2002) and induced Legend to renege on their contract with her.  TAC ¶29(f).

[37]    The cases cited by defendants do not compel the court to dismiss this claim and are all distinguishable on the facts from this case.  See, e.g., RMS Int'l Shipping GmbH v. Stemcor USA, Inc., No. 90 Civ. 4918(LMM), 1991 WL 136035, at *4 (S.D.N.Y. July 18, 1991) (holding that plaintiff alleged that defendants acts would interfere with the contract were insufficient to state a claim); Mac Phee v. Verizon Communications Inc., No. 06-cv-7870 (BSJ), 2008 WL 162899, at *5 (S.D.N.Y. Jan. 15, 2008) (this court dismissed the tortious interference with contract claim finding plaintiff alleged no facts showing that third party "intentionally or improperly procured the breach of

**8.    Plaintiff Has Adequately Pleaded The
Antitrust Claims (Counts Eight And Nine)**

The CLL Partners argue that plaintiff's claim for aiding and abetting Clear Channel's monopoly and other antitrust violations should be dismissed for two reasons: 1) Gurvey failed to adequately plead CLL's actual knowledge of Clear Channel's alleged violations (CLL Br. at 22) and 2) plaintiff's allegations that CLL knew that Clear Channel had "a notorious reputation" for antitrust violations, are insufficient because plaintiff alleges this information was available in 2004 after the events at issue here.  CLL Br. at 23.[38]

CLL had actual knowledge of Clear Channel's antitrust violations because Clear Channel admitted it had a monopoly on distributing live concert recordings in its multiple press releases issued by Clear Channel and Live Nation in 2004 and 1005.  TAC ¶69.  The CLL Defendants had actual knowledge also because Clear Channel' press releases in 2002 ominously forecasted that Clear Channel would continue to misuse its market power and stated: "the opportunities for synergies among all these CC divisions are explosive… and are in the very early beginnings." TAC ¶67.[39]  Under established case law, these allegations suffice.  See, e.g., Armstrong v. McAlpin, 699 F.2d at 80.[40]

---

contract"); and Leadsinger, Inc. v. Cole, No. 05 Civ. 5605(HBP), 2006 WL 2320544, at *12 (S.D.N.Y. Aug. 10, 2006) (court dismissed tortious interference with contract claim because plaintiff failed to show there was a valid contract and that there was actual breach of a contract).  In RMS and MacPhee , plaintiffs cited no or virtually no allegations supporting the elements of the claim, unlike this case which does contain many supportive allegations thus are not persuasive here.  See 1991 WL 136035, at *4; 2008 WL 162899.  Moreover, Leadsinger is inapplicable because here Plaintiff has alleged a valid contract (unlike the plaintiff in Leadsinger) which is not contested by defendants.  Therefore, the aforementioned cases are distinguished and this inapplicable to this case.

[38]    To state a claim for aiding and abetting liability in this Circuit, plaintiff must prove: (1) a violation of law by a primary wrongdoer, (2) knowledge of the violation by the person sought to be charged, and (3) proof that the person sought to be charged substantially assisted in the primary wrongdoing.  Armstrong v. McAlpin, 699 F.2d 79 (2d Cir. 1983) (citing elements of claim), citing, IIT, An International Investment Trust v. Cornfeld, 619 F.2d 909, 922 (2d Cir. 1980).  CLL does not challenge the sufficiency of plaintiff's allegations of: (1) a violation of law by a primary wrongdoer and element (3) proof that the person sought to be charged substantially assisted in the primary wrongdoing.  CLL Br. at 22.

[39]    Plaintiff alleges that CLL further knew about Clear Channel's antitrust violations because during CLL's representation of Clear Channel, Congressman Howard Berman wrote the US Department of Justice and the FCC concerning Clear Channel's predatory practices and sought House Judiciary Committee Hearings on the subject; that on July 190, 2002, the FCC announced it would conduct hearings on various pending CC radio acquisitions due to

Accordingly, plaintiff has adequately alleged that CLL aided and abetted Clear Channel in committing antitrust violations.

### 9.   Plaintiff Has Adequately Alleged A Claim For Interference With Prospective Economic Relations

CLL argues that plaintiff's claim for interference with prospective economic relations fails for three reasons: (1) Gurvey lacks individual standing since this is a derivative claim; (2) Gurvey does not assert that the CLL partners knew she was seeking economic relations with investors through an offering of securities or that she had created a company for that purpose; and (3) Gurvey does not allege that but for the CLL Partners conduct her prospective business operations would have coalesced into actual contracts. CLL Br. at 24. Defendants' are wrong because plaintiff has adequately alleged all the elements of this claim.[41]

The CLL Defendants reliance on Ogle to support its argument that this claim is derivative, is erroneous. PI, Inc. v. Ogle, No. 95 Civ. 1723(JGK), 1997 WL 37941, at *3 (S.D.N.Y. Jan. 30, 1997). Ogle is inapplicable here because it involved a claim brought on behalf of a corporation, unlike this case, where Gurvey is an individual seeking relief on behalf of herself. Next, plaintiff alleges that the CLL Defendants knew that she was seeking or would

---

competitive concerns; that in 2001 defendant Clear Channel was separately sued by Florida entity Spanish Broadcasting Company, Inc. for additional anti-competitive and predatory practices aimed at monopolizing the Hispanic radio television and advertising markets. TAC ¶67.

[40]   The cases cited by defendants do not support their argument, but simply reiterate the requirement that the aider and abettor have actual knowledge of the primary violation. See, e.g., Stolow v. Greg Manning Auctions, Inc., 258 F.Supp.2d 236, 250 (S.D.N.Y. 2003) (cited for elements of claim only); Kolbeck v. LIT Am., Inc., 939 F. Supp. 240, 246 (S.D.N.Y. 1996) ("actual knowledge is required to impose liability on an aider and abettor under new York law"); Bullmore v. Ernst & Young Cayman Islands, 45 A.D.3d 461, 464, 846 N.Y.S.2d 145, 149 (1st Dep't 2007) (same); Camp v. Dema, 948 F.2d 455, 459 (8th Cir. 1991)(same). The case Jones v. Weiss, Neuren & Neuren, 95 F. Supp. 2d 105, 109 (N.D.N.Y. 2000) is wholly irrelevant to this case because it holds that knowledge of creditor that consumer had an attorney is not imputed to a debt collector.

[41]   To state a claim for tortious interference with prospective economic relations, a plaintiff must allege:  (1) business relations with a third party, (2) defendants' interference with those business relations, (3) defendants acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means, and (4) injury to the relationship." Purgess v. Sharrock, 33 F.3d 134, 141 (2d Cir. 1994) (court held that plaintiff adequately alleged specific relationships and how whey were impacted by defendants behavior). CLL does not challenge Gurvey's allegations of business relations with a third party (first element) and that Gurvey has alleged injury to the relationship (fourth element). CLL Br. at 24.

seek to establish economic relations with investors through an offering of securities or that she

set up a company for that purpose because she alleges CLL "had knowledge that plaintiff's trade

secrets were valuable, confidential and that plaintiff was in the process of forming an new

company, attempting to commercially exploit her trade secrets and inventions and seek patent

protection for her inventions." TAC ¶33.  Last, plaintiff's does allege that but for CLL's conduct

her prospective economic relations would have coalesced into actual contracts because plaintiff

alleged that but for defendants conduct she would have had the opportunity to complete a private

placement offering of the securities in her company which would have provided her seed money

for the development of technologies using her trade secrets and inventions.[42]

## CONCLUSION

For all of the foregoing reasons, defendants' motion should be dismissed in their entirety.

Dated:  June 11, 2008

SQUITIERI & FEARON, LLP

By: _Maria Ciccia_

Lee Squitieri (LS-1684)
Maria J. Ciccia (MC-2801)
32 East 57th Street
12th Floor
New York, New York 10022
Tel:  (212) 421-6492
Fax:  (212) 421-6553

---

[42]     Moreover, defendant's reliance on Riddell Sports, Inc. v Brooks, 872 F. Supp. 73, 78 (S.D.N.Y. 1995), is inapposite to this issue because it merely restates the elements of this claim.

25