UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

AMY R. GURVEY

    Plaintiff,

    v.

COWAN, LIEBOWITZ & LATMAN, PC.,
CLEAR CHANNEL COMMUNICATIONS, INC.,
INSTANTLIVE CONCERTS, LLC, LIVE
NATION, INC., NEXTICKETING, INC.
DALE HEAD, STEVE SIMON, and DOES
I-VIII, INCLUSIVE,
    Defendants.

------------------------------------------------------------- X

06 Civ. 1202
**Opinion & Order**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/24/09

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

    Plaintiff Amy Gurvey brings claims of misappropriation (trade secrets; ideas, labor or skill), Sherman Act and state antitrust violations, Lanham Act violations, interference with prospective economic relations, tortious interference with contract, legal malpractice, breach of fiduciary duty, and unjust enrichment against her former employer, Cowan, Liebowitz & Latman, P.C. ("CLL"), named CLL partners ("CLL Partners"), and various entities affiliated with Clear Channel Communications ("CCC Defendants")[1].

## BACKGROUND[2]

    Plaintiff was employed as Of Counsel to CLL pursuant to an employment agreement dated January 15, 2002. (Third Amended Complaint ("TAC") ¶29). At that

---

[1] Although two entities affiliated with the Clear Channel family have been released from this case after personal jurisdiction was found lacking, two other affiliated entities, InstantLive and NextTicketing, remain. They will continue to be referred to as the CCD Defendants.

[2] The facts described are taken from Plaintiffs' Complaint and are assumed to be true for the purposes of this motion only.

time, CLL agreed to represent the Plaintiff before the US Patent and Trademark office ("USPTO") to file Provisional Patent Applications ("PPA"s) for inventions developed by Plaintiff prior to joining CLL. (TAC ¶¶28, 33).

Plaintiff's inventions included business plans to edit, package and distribute live recordings of live music events, as well as electronic ticketing methods related to these recordings. (TAC ¶¶28, 33.)

Shortly after beginning at CLL, Plaintiff presented her projects, business plans, and inventions at the firm's monthly partners' conference. (TAC ¶34).

After the meeting a CLL Partner told Plaintiff that the her business plans would be of significant interest to the firm's client CCC. (TAC ¶36). This same CLL Partner also told Plaintiff that he preferred to have her as a client of CLL rather than as Of Counsel. (TAC ¶37.)

In early May 2002, Plaintiff was notified that she would no longer be employed Of Counsel, but that CLL continued to have interest in the subject matter of her patents and would file the Plaintiff's PPA's before the USPTO. (TAC ¶43). On May 22, 2002 and May 24, 2002, CLL filed two patents with the USPTO naming the plaintiff as sole inventor and CLL as attorneys of record. (TAC ¶44).

In August 2002, Plaintiff returned from a business trip to find that she had been locked out of her office. (TAC ¶47)

On or about February 16, 2003, the Plaintiff received notification from the USPTO that CLL had withdrawn as the attorney on one of her patents because of a conflict of interest. (TAC ¶50).

...

In March 2003, the CCC affiliated entity InstantLive posted ads/statements on their website announcing a new program that would allow concert-goers to purchase its recordings. (TAC ¶55). On May 5, 2003, *The New York Times* published an article describing InstantLive. Plaintiff alleges that this description mirrored her business models for the onsite distribution of live recordings at concerts. (Band members of Phish were also interviewed for the article and identified their interest in this new product. (TAC ¶52). A member of Phish is married to a CLL attorney.)

In Fall 2005, CCC formed defendant LiveNation, which acquired defendant InstantLive. (TAC ¶57).

On June 5, 2006, Plaintiff filed an Amended Complaint, which was served on the CLL law firm and the CCC Defendants on June 16, 2006.[3] The named CLL partners were added as parties to the TAC, filed on March 4, 2008.[4]

## STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief may be granted. "In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court is required to accept the material facts alleged in the complaint as true." Frasier v. General Elec. Co., 930 F.2d 1004, 1007 (2d Cir. 1991). The court is also required to read a complaint generously, drawing all reasonable inferences from its allegations in favor of

---

[3] An earlier Complaint was filed on February 15, 2006, but was never served.
[4] It is unclear whether the individual partners were ever served with the Third Amended Complaint. Plaintiff appears to argue that constructive notice was sufficient, since the CLL firm was itself served with the Amended Complaint on June 5, 2006. The Court need not, however, reach the constructive notice argument, since the relevant claims are time-barred whether they are measured from the Amended Complaint or the TAC.

the plaintiff. California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 515 (1972).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, ----, 127 S.Ct. 1955, 1964 (2007) (internal quotation marks, citations, and alterations omitted). A plaintiff must assert "enough facts to state a claim to relief that is plausible on its face." Id. at 1974. This "plausibility standard" is a flexible one, "oblig[ing] a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007), *cert. granted,* 128 S.Ct. 2931 (2008).

## DISCUSSION

### A. Misappropriation Claims

*i. Misappropriation of Trade Secrets*

The date upon which a cause of action for misappropriation of trade secrets begins to accrue depends on the nature of the misappropriation alleged: "If a defendant misappropriates and discloses a trade secret, he becomes liable to plaintiff upon disclosure. On the other hand, if the defendant keeps the secret confidential, yet makes use of it to his own commercial advantage, each successive use constitutes a new, actionable tort for the purpose of the running of the Statute of Limitations." Architectronics, Inc. v. Control Systems, Inc., 935 F.Supp. 425, 433 (S.D.N.Y. 1996) (citing Lemelson v. Carolina Enterprises, Inc., 541 F.Supp. 645, 659 (D.C.N.Y. 1982).

Plaintiff here has alleged the former. The TAC describes a misappropriation that occurred and was disclosed some time between Plaintiff's CLL presentation in early 2002 and the May 5, 2003 *New York Times* article that allegedly revealed (in the guise of CCC's own venture) Plaintiff's "entire confidential business models for the onsite distribution of live music at concerts" (TAC ¶¶34, 52).[5] The statute of limitations for this cause of action is three years. Plaintiff's Amended Complaint (the first to be served on Defendants) was not filed until June 5, 2006.[6] The claim was therefore brought more than three years subsequent to the disclosure of the allegedly misappropriated trade secret. Plaintiff's claim is time-barred and is DISMISSED as against all Defendants.

ii. Unfair Competition / Misappropriation of Ideas, Labor, or Skill

Under New York law, a claim for unfair competition claim premised on misappropriation and unauthorized use is subject to a three-year statute of limitations under N.Y. C.P.L.R. § 214. *Sporn v. MCA Records, Inc.*, 58 N.Y.2d 482, 488 (1983). In a case such as this, where the unfair competition claim is identical to a misappropriation claim and where the extent of the misappropriation alleged is more akin to a wholesale conversion rather than a mere interference with Plaintiff's alleged property interest, the statute of limitations period is identical to that of a claim for misappropriation of trade secrets. See Greenlight Capital, Inc. v. GreenLight (Switzerland) S.A., No. 04-cv-3136, 2005 WL 13682, at*7 (S.D.N.Y. 2005); Opals on Ice Lingerie v. BodyLines, Inc., 425 F.Supp.2d 286, 296 -297 (E.D.N.Y. 2004) ("Defendant's unlawful actions culminated in numerous products it designed, sold and manufactured that are 'substantially similar' to

---

[5] Plaintiff argues that the May 5 article did not "disclose" the misappropriated trade secret, but only "addressed its practical application." (Opp'n at 11.) However, the TAC itself is clear in stating that disclosure of Plaintiff's "entire confidential business models" occurred on in that article, on that date.

[6] Plaintiff has failed to establish that the earlier Complaint should operate to bring these claims against these Defendants within the applicable period.

those of [Plaintiff],... which were 'generally unavailable in the marketplace' during the time period in which [Plaintiff] shared samples with [Defendant]...As in Sporn, these allegations of misappropriation amount to more than mere interference with [Plaintiff's] designs and, as such, constitute a "taking" or conversion of plaintiff's property."); LinkCo, Inc. v. Fujitsu Ltd., 230 F.Supp.2d 492, 501 (S.D.N.Y. 2002).

Therefore, Plaintiff's claim began to run on than May 5, 2003. Defendants were not notified of her claims until the filing of the Amended Complaint on June 5, 2006, and its service on June 16, 2006. This claim is therefore time-barred and DISMISSED as against all Defendants.

B. Sherman Act and State Antitrust

Plaintiff claims that the CCC Defendants violated federal and state antitrust laws, and that CLL and its partners aided and abetted those antitrust violations. Plaintiff has failed to adequately plead these causes of action.

In order to state a claim under Section Two of the Sherman Act,[7] Plaintiff must allege: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451 (1992) (internal quotation marks and citation omitted).

The TAC describes various business practices implemented by the CCC Defendants, speculating as to various concert recording arrangements, describing

---

[7] The TAC attempts to state claims under both section 2 of the Sherman Act and "the antitrust laws of the states of New York, Texas, and California." (TAC para. 140.) It is unclear from the TAC precisely which state antitrust statutes and provisions Plaintiff refers to. Based on the TAC and the parties' papers pursuant to this motion, however, there do not appear to be any substantive differences amongst the various antitrust claims brought by Plaintiff.

corporate structures, and referring vaguely to supposed admissions of "monopoly" control. (TAC ¶¶128-130.) These practices, as alleged, do not describe the holding or wielding of monopoly power--"the power to control prices in the relevant market or to exclude competitors," Aspen Skiing Co. v. Aspen Highlands Skiing Corp., 472 U.S. 585, 596, n. 20, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985)--and so do not provide a basis for Plaintiff's conclusory pleadings of antitrust violations. .

Similarly, Plaintiff has made little attempt to define the market within which CCC's monopoly supposedly exists, alleging only that Defendants have made certain efforts to operate within "the relevant live concert venue market in the United States" (TAC para. 128) or the "US pop concert venues and radio markets." (TAC ¶129.). The relevant market on claims of antitrust violation involves the specification of its dimensions, its product, geographic and time dimensions. Yankees Entertainment and Sports Network, LLC v. Cablevision Systems Corp., 224 F.Supp.2d 657, 666 (S.D.N.Y. 2002) (citing 2 Earl W. Kintner, *Federal Antitrust Law* § 12.2 (1980), and must provide a factual basis for the Court's evaluation of the marketplace in light of "the realities of competition" Balaklaw v. Lovell, 14 F.3d 793, 797 n. 9 (2d Cir.1994) (quotation omitted); see United States v. E.I. du Pont de Nemours & Co., 351 U.S. 377 (1956); Yellow Page Solutions, Inc. v. Bell Atlantic Yellow Pages Co., No. 00-cv-5563, 2001 WL 1468168, at *12 (S.D.N.Y. Nov. 19, 2001).

Plaintiff has failed to adequately plead these elements and her claims of antitrust violations, federal and state, are hereby DISMISSED as against all Defendants.

C. Lanham Act

Section 43(a) of the Lanham Act provides two grounds upon which a plaintiff may assert a claim: false designation and false advertising. 15 U.S.C. § 1125(a)(1). Plaintiff alleges that Defendant misrepresented various products or services as their own and argues that such misrepresentations constitute false advertising.

Plaintiff's claim, however, is more accurately described as one for "passing off," as her allegations make clear. The TAC identifies the May 3, 2003 *New York Times* article (TAC ¶52), as well as various website advertisements and press releases (TAC ¶¶55-59) that describe technology and a business plan allegedly similar to those developed by Plaintiff. While Plaintiff attempts to label this as "false and misleading statements of fact in advertising" (TAC ¶83.), the pleadings make clear that Plaintiff's claim is aimed at Defendants' holding out as their own that which is allegedly Plaintiff's.[8]

Plaintiff's claim of "passing off" is not properly brought under the Lanham Act, as it disputes the "origin" of an idea. "[A]s used in the Lanham Act, the phrase 'origin of goods' is…incapable of connoting the person or entity that originated the ideas or communications that 'goods' embody or contain. Such an extension would not only stretch the text, but it would be out of accord with the history and purpose of the Lanham Act and inconsistent with precedent." Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 32, 123 S.Ct. 2041, 2047 (U.S. 2003).

A failure to attribute the authorship of an idea simply does not amount to the misrepresentation of the "nature characteristics, qualities, or geographic origin of…goods, services, or commercial activities" as required under section 43(a) of the

---

[8] One particularly relevant section of the TAC is in fact entitled "Defendants Live Nation and Clear Channel Pass Off as Their Own The Trade Secrets Misappropriated from Plaintiff." (TAC s.H.)

Lanham Act. See Antidote International Films, Inc. v. Bloomsbury Publishing, PLC, 467 F.Supp.2d 394 (S.D.N.Y. 2006) (dismissing false advertising claim alleging misrepresentations relating to authorship of a novel); see also Thomas Publishing Co., LLC v. Technology Evaluation Centers, Inc., No. 06 Cv 14212(RMB), 2007 WL 2193964 (S.D.N.Y. July 27, 2007) (dismissing false advertising claim "premised upon the assertion that Defendant passed off Plaintiff's work as its own," where defendant misrepresented itself as the developer, creator or owner of materials comprising a software directory, because "a failure to attribute authorship to Plaintiff does not amount to misrepresentation of 'the nature, characteristics, qualities or geographic origin' of ... [Defendant's] goods.").

Plaintiff's allegations do not describe a violation of the Lanham Act and this claim is therefore DISMISSED as against all Defendants.

D. Tortious Interference with Prospective Economic Relations

In order to state a claim for tortious interference with prospective economic relations under New York law, a plaintiff must allege: "(1) that [she] had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." Friedman v. Coldwater Creek, Inc., No. 08-cv-979, 2009 WL 932546, at * 1 (2d Cir. April 8, 2009); Kirch v. Liberty Media Corp., 449 F.3d 388, 400 (2d Cir.2006). The New York Court of Appeals has explained that, "as a general rule, a defendant's conduct must amount to a crime or an independent tort" in order to amount to tortious interference with a prospective economic advantage. Carvel Corp. v. Noonan, 3

N.Y.3d 182, 190 (2004). A defendant who has not committed a crime or independent tort or acted solely out of malice may nevertheless be liable if he has employed "wrongful means." "'Wrongful means' include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions," Guard-Life Corp. v. S. Parker Hardware Mfg. Corp., 50 N.Y.2d 183 (1980) (quotation and citation omitted) and "'extreme and unfair' economic pressure." Carvel, 3 N.Y.3d at 190.

Here, Plaintiff has alleged that she "lost the opportunity to complete a private placement offering of securities to be issued by her own company which was to have served as seed money for the development of technologies utilizing her trade secrets and inventions." (Compl. para. 146.) In addition to the evident vagueness of this pleading, Plaintiff neglects to allege that Defendants knew of this private placement opportunity and wrongfully interfered with it.[9] The allegations therefore do not state a claim for tortious interference with prospective economic relations and must be DISMISSED as against all Defendants.

E. Tortious Interference with Contract (against the CLL Defendants)

In New York, the statute of limitations for a tortious interference with contract claim is three years. See N.Y. C.P.L.R. § 214(4); Norris v. Grosvenor Marketing Ltd., 803 F.2d 1281, 1287 (2d Cir.1986). The TAC describes a series of events occurring in early 2002, culminating in the alleged usurpation of Plaintiff as counsel to Legend Films. (TAC ¶29(f).) Defendants were made aware of this claim for the first time in the Amended Complaint filed on June 5, 2006 and served on June 16, 2006. The three year

---

[9] Although the parties further submit arguments concerning the statute of limitations applicable to this cause of action, the TAC's allegations on this cause are too vague to determine when, precisely, Plaintiff alleges that the tortious interference occurred. Because this same vagueness disposes of Plaintiff's claim under the Rule 12(b)(6) motion, the Court need not make a final conclusion on the issue of timeliness.

statute of limitations on this claim has therefore lapsed, and the claim is hereby DISMISSED.

Moreover, even if the claim were not time-barred, it would be subject to dismissal pursuant to Rule 12(b)(6), for failure to state a claim.

To state a claim for tortious interference with contract under New York law, a plaintiff must allege: (1) "the existence of a valid contract between the plaintiff and a third party"; (2) the "defendant's knowledge of the contract"; (3) the "defendant's intentional procurement of the third-party's breach of the contract without justification"; (4) "actual breach of the contract"; and (5) damages. Kirch v. Liberty Media Corp., 449 F.3d 388, 401-02 (2d Cir.2006) (quoting Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 646 N.Y.S.2d 76, 668 N.E.2d 1370, 1375 (N.Y.1996)).[FN21] In addition, a plaintiff must assert, with respect to each defendant, that the defendant's actions were the "but for" cause of the alleged breach-in other words, that there would not have been a breach but for the activities of the defendant. Sharma v. Skaarup Ship Mgmt. Corp., 916 F.2d 820, 828 (2d Cir.1990) (citing Special Event Entm't v. Rockefeller Ctr., Inc., 458 F.Supp. 72, 78 (S.D.N.Y.1978)).

Plaintiff has alleged that "shortly after [she] became 'of counsel' to CLL, CLL attorney Mark Montague was introduced to plaintiff's client, Legend Films, whom plaintiff had also served as General Counsel up to 2002. CLL orchestrated plaintiff's ouster from Legend and induced Legend to renege on its obligation to pay plaintiff for her services." (TAC para. 29(f).) It is insufficient to merely state, without more, that Defendants "orchestrated" Plaintiff's ouster. "[T]he law requires some factual specificity in pleading tortious interference." World Wide Commc'ns, Inc. v. Rozar, No. 96 Civ.

1056, 1997 U.S. Dist. LEXIS 20596, at *7, 1997 WL 795750, (S.D.N.Y. December 30, 1997) (citation omitted).  As such, Plaintiff has failed to adequately plead that the Defendants intentionally procured, without justification, the breach in question, and Plaintiff's claim on this issue is DISMISSED.

F. Legal Malpractice (against the CLL Defendants)

"To state a claim for legal malpractice under New York law, a plaintiff must allege: (1) attorney negligence; (2) which is the proximate cause of a loss; and (3) actual damages." Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir.2006) (citing Prudential Ins. Co. of Am. v. Dewey, Ballantine, Bushby, Palmer & Wood, 573 N.Y.S.2d 981, 986 (App.Div.1991)).

In order to establish negligence in a legal malpractice case, a plaintiff must allege that the attorney's conduct "fell below the ordinary and reasonable skill and knowledge commonly possessed by a member of the profession." Achtman, 464 F.3d at 337 (quoting Grago v. Robertson, 49 A.D.2d 645, 370 N.Y.S.2d 255 (N.Y.App.Div.1975)).  "A complaint that essentially alleges either an error of judgment or a selection of one among several reasonable courses of action fails to state a claim for malpractice…Generally, an attorney may only be held liable for ignorance of the rules of practice, failure to comply with conditions precedent to suit, or for his neglect to prosecute or defend an action." Achtman, 464 F.3d at 337 (quotations omitted) (citing Rosner v. Perry, 65 N.Y.2d at 738, 492 N.Y.S.2d 13, 481 N.E.2d 553 (NY 1985); Bernstein v. Oppenheim & Co., 160 A.D.2d 428, 430, 554 N.Y.S.2d 487 (1990)).

Here, Plaintiff offers only vague and non-actionable challenges to CLL's legal representation.  Plaintiff first pleads that CLL "failed to protect and safeguard her trade

secrets." TAC ¶120(1). This allegation appears to refer either to the presence of non-attorney CLL employees at the initial presentation of Plaintiff's inventions or to the misappropriation at the heart of Plaintiff's TAC. However, neither instance is premised on anything more than speculation, and neither presents a challenge to the actual quality of CLL's legal representation  Plaintiff also alleges that CLL "fail[ed] to properly advise [her] with respect to the opportunities for commercial exploitation of [her] inventions and trade secrets" (TAC ¶120(2)). This allegation again does not address CLL's legal representation and merely challenges the "selection of one among several reasonable courses."  Finally, Plaintiff alleges that CLL failed to eliminate a conflict of interest to its representation of Plaintiff TAC ¶¶120(3) and (4). Because this allegation includes no detail, even in speculation,  as to the supposed conflict, the allegation does not provide a basis for a malpractice claim.

Moreover, the TAC fails to identify the precise damages suffered or how the Defendant's legal representation of her actually caused these damages.  A plaintiff must properly plead that, "'but for' the attorney's conduct the client would have prevailed in the underlying matter or would not have sustained any ascertainable damages." Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison, LLP, No. 06 Civ. 14211(GBD), 2007 WL 2219485, *3 (S.D.N.Y. Aug. 2, 2007) (citing Weil Gotshal & Manges v. Fashion Boutique of Short Hills, 780 N.Y.S.2d 593, 596 (2004)). "Notwithstanding counsel's purported negligence, the client must demonstrate his or her own likelihood of success; absent such a showing, counsel's conduct is not the proximate cause of the injury. Nor may speculative damages or conclusory claims of damage be a basis for legal malpractice." Russo v. Feder, Kaszovitz, Isaacson, Weber, Skala & Bass,

LLP, 301 A.D.2d 63, 67, 750 N.Y.S.2d 277 (N.Y.App.Div.2002). See also Morgan, Lewis & Bockius, LLP v. IBuyDigital.com, Inc., 2007 N.Y. Slip Op 50149U, at 6 (N.Y.Misc.2007). The TAC fails to allege that CLL's legal representation constitutes 'but for' causation of some ascertainable and actionable damage.

For these reasons, Plaintiff's claim of legal malpractice against the CLL Defendants is DISMISSED.

G. Breach of Fiduciary Duty (against the CLL Defendants)

To state a claim for breach of fiduciary duty in New York, "plaintiff must allege three elements: (1) the existence of fiduciary relationship; (2) knowing breach of a duty that relationship imposes; and (3) damages suffered." Nay ex. rel. Thiele v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 05 Civ. 10264, 2006 WL 2109467, at *6 (S.D.N.Y. July 25, 2006) (quoting Carruthes v. Flaum, 388 F.Supp.2d 360, 380 (S.D.N.Y.2005)) (internal quotation marks omitted).

Here, it appears that the same set of speculative allegations that comprised the legal malpractice claim is also relied upon for Plaintiff's fiduciary duty claim. As discussed above, the TAC does not identify with any more than broadly-worded speculations what duty was breached or what damage was caused by that breach.

This claim is hereby DISMISSED.

H. Unjust Enrichment

In order to state a claim for unjust enrichment, "plaintiff must establish 1) that the defendant benefited; 2) at plaintiff's expense; and 3) that 'equity and good conscience' require restitution." Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir.2000). (citing *Dolmetta v. Uintah Nat'l Corp.,* 712 F.2d 15, 20 (2d Cir.1983)). As with her other

claims, Plaintiff has provided only assertion and speculation as to the benefit that was taken from her by Defendants. Even under the low threshold that plaintiffs must meet under Rule 12(b)(6), the unjust enrichment claim must be DISMISSED as against all Defendants.

H. Accounting

Plaintiff attempts to state a claim for "accounting." "Accounting" is a remedy available in certain circumstances, not a claim in itself. That cause of action is therefore DISMISSED as against all Defendants.

**CONCLUSION**

Plaintiff's claims against all Defendants are hereby DISMISSED. The Clerk of Court is hereby directed to close this case.

SO ORDERED:

_____
Barbara S. Jones
**UNITED STATES DISTRICT JUDGE**

Dated:    New York, New York
          April 23, 2009