

Amy R. Gurvey, Plaintiff Pro se
315 Highland Avenue
Upper Montclair, NJ  07043
June 11, 2013

FAX (212) 805-6111
Hon. Lorna G. Schofield
cc:  Hon. Henry B. Pitman
United States Magistrate Judge
USDC  SDNY
500 Pearl Street
New York, NY  10007

RECEIVED
JUN 1 1 2013
PRO SE OFFICE

## PLAINTIFF'S 2nd  STATUS LETTER

Re:  (1) *Gurvey v. Cowan Liebowitz & Latman, PC* 06 –cv-1202
(LGS)(HBP); (2) *Gurvey v. Legend 3D/Legend Films, Inc. et al.,* originally
08-cv-9256 (SHS)(SDNY) transferred in April, 2009 to SDCA, 09-0942-cv
(SDCA) (Before 9th Circuit since Fall, 2012 (9th Cir. Case No. 12-56872)

Dear Judge Schofield (and Judge Pitman):

This is Plaintiff's 2nd status letter due today after a previous letter was
submitted on April 5, 2013 (Docket #168 incorporated by reference).
Plaintiff was thereafter forced to file for a writ of replevin in Supreme Court
of NY (Index No. 12/102516)  to compel production of all her electronic
files from her previous attorneys, Squitieri & Fearon, LLP, in part because
Cowan defendants were requesting production of all files in Plaintiff's
control including in possession of attorneys and agents (Cowan, Instruction
#2).  Plaintiff was granted a writ of replevin by Supreme Court (Index No.
12/102516 on April 30, 2013) and S&F turned over 4 CDs of voluminous
electronic files the second week of May.  S&F was unlawfully retaining
these files to Plaintiff prejudice for 3 years since being granted withdrawal
in 2010 by this Court and falsely representing they "turned over everything
they had". There was no justification for the retention.  S&F was also
retaining Plaintiff's files in the related Legend Films lawsuit before SDCA
above-captioned.

*Status Letter to Hon. Lorna G. Schofield*
*Page -2-*
*June 11, 2013*

On May 14, 2013, Plaintiff was forced to write to the Court to oppose Cowan attorney Richard Supple, Esq.'s audacious *ex parte* letter dated May 8, 2013 seeking to docket two April, 2013 orders in the Legend lawsuit. [1]  Plaintiff herein encloses ECF confirmation that her letter of May 14th was docketed as Docket #169 on May 21, 2013 but that Supple's letter was not docketed. (See, attached).  Most respectfully as of this morning, there is no #169 entered on the docket.  Plaintiff was just advised by ECF Intake that Plaintiff's letter is confidentially docketed but not for public review.  Plaintiff has not since received any follow-up letter from Supple for a joint status letter per the Court's order.  Plaintiff continues to be owed costs and expenses from Cowan for her Second Circuit appeal.

The April, 2013 orders Supple seeks to docket were entered in favor of Cowan's other patent clients Legend Films and its founding officers to whom Cowan, as confirmed by USPTO Solicitor in 2012, converted Plaintiff's inventions and concealed known conflicts of interests between 2002-2003 "*at Legend's express instructions*".

In Cowan's first document production in this lawsuit that was sent to Plaintiff in December, 2012, there is evidence of Cowan's conspiracy to commit patent fraud to help Legend officers convert Plaintiff's inventions in 2002.  Cowan in fact selectively purged the incriminating emails in anticipation of litigation from a CD ROM they sent to Plaintiff in 2003 allegedly with "all her files".  That litigation was anticipated by Cowan was admitted by Supple before this Court during oral argument in January, 2013.

Cowan's misconduct is now under investigation by the USPTO OED since Plaintiff's patent malpractice and breach of fiduciary claims against Cowan were upheld by the Second Circuit.  The incriminating e-mails implicate Cowan attorneys in patent fraud and concealment of known

---

[1] Plaintiff's Ninth Circuit appeal to SDCA's order entering summary judgment in favor of Legend defendants' while precluding Plaintiff's discovery is Plaintiff's last attempt to mitigate damages against Cowan for conspiring with Legends' officers to commit fraud at the USPTO contrary to Plaintiff's patent interests and convert Plaintiff's inventions.

*Status Letter to Hon. Lorna G. Schofield*
*Page -3-*
*June 11, 2013*

conflicts with Legend. They were selectively purged and spoliated from a CD ROM Cowan sent to Plaintiff in 2003 in anticipation of litigation, mandating sanctions. [See, *Micron Technology v. Rambus*, ___ F. 3d ___, 2013 WL 227630 (D. Del.); *see also Ibid*, 645 F. 3d 1311, 98 USPQ2d 1693 (Fed. Cir. 2011)].   Plaintiff's files were intentionally and selectively purged by Cowan to deny Plaintiff notice of her claims; and certain of the purged e-mails appeared for the first time in Cowan's first document production post appeal in December, 2012, close to seven years after this case was filed.

Contrary to Supple's letter, Plaintiff did not serve a subpoena on the USPTO with Second Circuit's order in December, 2012.  OED opened the investigation against Cowan attorneys *sua sponte* after reading the order and looking at the emails that Plaintiff attached and had just gotten in discovery.
[2]

Plaintiff was in fact Cowan's superior patent client in time and right before Legend.   Plaintiff was also first inventor of certain editing and conversion algorithms Legend needed and unlawfully outsourced without Plaintiff's knowledge, consent or payment to convert their previous analog only technology for restoration and colorization of older Hollywood films and series to digital.   Cowan did not adequately protect Plaintiff's inventions first before converting them in favor of Legend and other clients such as Clear Channel, Live Nation and Phish.

---

[2] [NOTE: From the 4 CDs  produced by Plaintiff's previous attorneys, Squitieri & Fearon, LLP ("S&F") pursuant to writ of replevin issued by Supreme Court of NY on April 30, 2013,  Plaintiff fully complied with Cowan's previous document requests for arbitration turning over four boxes prior to arbitration in March, 2009.  Ergo what Supple purported was Cowan's first request, is actually its second. Supple with intent to deceive Plaintiff and he Court in February, 2013 moved again for Rule 37 sanctions, a previously ploy that was rejected by Arbitration, and now in hindsight demonstrates why Cowan opposed entry of the Arbitration award in Plaintiff's favor on the docket].

*Status Letter to Hon. Lorna G. Schofield*
*Page -4-*
*June 11, 2013*

In addition, at times relevant, Cowan knew that Plaintiff was listed as unconditional General Counsel of Legend in the new company's 2001 prospectus.  With Plaintiff also having introduced Legend to Cowan shortly thereafter, Cowan further knew that Plaintiff would have had to have approved any Legend retainer (required under NY statutes) and all patent work including on any PCT or other US application Cowan prepared and filed for Legend.  However, Plaintiff had no idea that in 2002 Cowan was incorporating certain of Plaintiff's inventions they were already obligated to protect into Legend's first digital patent applications.

Then  Cowan also elected to unlawfully and fraudulently conceal its patent services performed for Legend in spite of the known conflicts with Plaintiff's inventions and Cowan's priority fiduciary obligations to Plaintiff.

Cowan's torts and breach of fiduciary duty thereby lost Plaintiff ½ participation in 10 years of Legend's global patent service retainers and customization contracts in which Legend enjoyed a monopoly for the restoration and colorization of Hollywood black and white theatrical films, video and TV series (*Shirley Temple Films, Three Stooges*).  Cowan also lost Plaintiff 3% vested in Legend stock at founder' s level at the highest valuation since 2003, which was reserved to Plaintiff on her of counsel agreement rider that per SDNY Arbitrator, Cowan managing partners date-stamped and signed on April 17, 2002.

Further unbeknownst to Plaintiff, Cowan thereafter also created a forgery of Plaintiff's contract rider on May 8, 2002 and in breach of the attorney client privilege to Plaintiff, sent it to Legend and its attorneys in California.  Both the original rider signed by Cowan on April 17, 2002 and the forgery were previously omitted from Cowan's early motion to compel arbitration and stay discovery that Supple filed in this Court on July 14, 2006 (Docket #s 15-18) with Supple and Cowan partner Simon Gerson, Esq. both untruthfully alleging that what was appended thereto was Plaintiff's "complete contract".

4

*Status Letter to Hon. Lorna G. Schofield*
*Page -5-*
*June 11, 2013*

Between the firm's original execution/stamp date of April 17, 2002 (the date found by SDNY Arbitrator) to May 8, 2002 (the new date), in the interim three weeks, Cowan perfected, filed and 100% assigned to Legend a PCT patent application incorporating Plaintiff's inventions, concealed the work; and then purged Plaintiff's files.

In addition on May 7, 2002, Plaintiff's of counsel agreement was unilaterally terminated by Cowan and as found by Arbitrator on August 4, 2009, without cause just three weeks after Cowan signed Plaintiff contract on April 17, 2002. In hindsight, the reason was Cowan's irreconcilable and concealed conflicts with Legend's patent application and with other clients who Cowan knew had interest in the subject matter of Plaintiff's inventions because Cowan was shopping Plaintiff's inventions over the previous five months.

Cowan's selective purging and spoliation of Plaintiff's files tolls prevailing statutes of limitation on fraud, breach of fiduciary duty and malpractice claims.

The loss of Plaintiff's ½ participations and royalties in Legend's patent services retainers and customization contracts lost Plaintiff more than $10 mil dollars alone. These claims are not duplicative of Plaintiff's stock for services agreement with Legend officers that is based on contract theories to pay Plaintiff for seminal formation services to the company and its founders since 1999. Some of Plaintiff's services included business solutions, technology strategy and business affairs services included successfully severing Legend officers from directorships at analog competitor American Films Technologies, Inc., helping negotiate settlements for the breach of fiduciary duty claims brought by AFT shareholders; helping Legend acquire AFT's assets in bankruptcy; helping Legend acquire black-and-white classic Hollywood product for colorization and restoration, and negotiating complex outsourcing agreements.

Starting 2002, Legend officers used Cowan as its NY agents to defraud Plaintiff and convert her patents in their favor behind her back. Legend also used an outside Pennsylvania patent attorney to help them,

*Status Letter to Hon. Lorna G. Schofield*
*Page -6 -*
*June 11, 2013*

Lawrence Husick, Esq. the same attorney with whom Legend CTO's Barry Sandrew encumbered the previous analog only patent applications that were work for hire for American Film Technologies, Inc.  Cowan had the e-mails since 2002 that Sandrew hoped this information "did not come out".

    SDCA's April, 2013 orders were entered *after* the Legend lawsuit was already on appeal to the Ninth Circuit and the District Court was divested of jurisdiction to hear Legend defendants' motion for sanctions. For seven years, Supple's ex parte frivolous motion practice before this Court helped keep the purged emails concealed.  Then SDCA also improperly denied Plaintiff all discovery as well as her files from Squitieri & Fearon ("S&F") after their abandonment of both cases in 2010.

    Because the  e-mails confirming conspiracy to commit patent fraud between Legend and Cowan were in fact selectively purged and spoliated from a CD ROM Cowan sent to Plaintiff in 2003, Plaintiff now must be awarded sanctions against Cowan and Supple; and Supple's motion for sanctions against Plaintiff must be denied.  *Micron Technology v. Rambus*, ___ F. 3d ___, 2013 WL 227630 (D. Del.), *supra*. There is no grounds for the Court awarding sanctions in Cowan favor particularly because Cowan dn Supple come to the Court with filthy hands.  *Yu Chen v. LW Estaurant, Inc.*, 2011 WL 3420433 (EDNY); *N'Jie v. Cheung*, 201 WL 3259793 (DNJ).

    For example, through Supple' frivolous ex parte motion practice in moving to stay discovery without justification (Docket #s 15-18, July, 2006) and thereafter falsely writing to Judge Jones in January, 2008 (Docket #45) that Plaintiff had agreed to withdraw her claims such that he was withdrawing his application for arbitration (Docket #45), Plaintiff was prevented from earlier discovering  that Legend defendants' induced Cowan's breach of fiduciary duty to Plaintiff through fraud and conspiracy during the period that Cowan patent partners were serving as Legend's New York agent in the conversion of Plaintiff's intellectual property. *Mindy's Cosmetics v. Dakar*, 611 F. 3d 590 (9th Cir. 2010).

*Status Letter to Hon. Lorna G. Schofield*
*Page -7-*
*June 11, 2013*

In addition, because the orders were unduly and adversely influenced by Cowan and Supple's own misconduct they cannot be given collateral estoppel application and will not lead to admissible evidence. *Yu Chen v. LW Estaurant, Inc.*, 2011 WL 3420433 (EDNY); *N'Jie v. Cheung*, 201 WL 3259793 (DNJ); *see also*, *Gaming Marketing Solutions Inc. v. Kein Cross*, 528 F. Supp. 2d 403 (SDNY 2007).

Also, most respectfully… Supple blatantly lied to this Court both during oral argument in January, 2013 and in his Rule 37 motion papers filed in response to Plaintiff's proposed 5AC. Supple falsely represented that Cowan's conflicts that were *admitted to* by Cowan partners in Cowan's unilateral 2003 USPTO withdrawal appended to Plaintiff's complaint, pertained only to the dispute over Plaintiff's of counsel salary. The emails documents Cowan produced in December, 2012 prove 180 degrees to the contrary. Supple therefore comes to this Court with unclean hands.

Cowan's recent production of the purged emails also established that Legend and Cowan actual conspired to conceal known conflicts of interest, and not to credit Plaintiff's algorithmic contributions in Legend's patent applications. This is a per se violation of USPTO Regulations. They also established Cowan's breach of fiduciary duty per se because they expressly state that Cowan was *"following Legend's instructions"* .

That Cowan defendants' unilaterally and materially altered other documents such as the rider to Plaintiff's of counsel contract and breached the attorney client privilege in sending those documents to Legend and its California attorneys, demonstrates spoliation for purposes of sanctions. See, *Micron Technology v. Rambus*, ___ F. 2d ___, 2013 WL 227630 (D. Del.); see also *Ibid.* 645 F. 3d 1311, 98 USPQ2d 1693 (Fed. Cir. 2011).

In August, 2009 SDNY Arbitrator found in the only evidentiary hearing in this lawsuit that Plaintiff's of counsel contract plus rider was signed and dated stamped by Cowan managing partner defendant William Borachard on April 17, 2002. The new date stamp that Cowan partners embossed on their forgery of May 8, 2002, was created *after* Cowan had already perfected and filed a concealed PCT application for Legend's

*Status Letter to Hon. Lorna G. Schofield*
*Page -8-*
*June 11, 2013*

officers and 100% assigned that application to Legend two days earlier on May 6th. The PCT application incorporated Plaintiff's digital algorithms without crediting Plaintiff as a co-inventor in defiance of USPTO Regulations. Cowan's clear intent was to make it appear as if Plaintiff was still working at the firm on May 8, 2002 and had authorized Cowan's patent services for Legend on the PCT, which Plaintiff did not. Plaintiff did not know the services were being performed; they were affirmatively and fraudulently concealed. And of course Plaintiff also did not authorize Cowan's100% assignment of the PCT that omitted her name as coinventor. In fact when defendant managing partner William Borchard and patent attorney R. Lewis Gable asked Plaintiff if they could keep Legend on as a client when they asked her to exit the firm, Plaintiff said "no". In fact, the work was already done 2-3 months earlier and concealed, demonstrating bad faith.

Cowan also never got a retainer agreement from Legend in breach of NY statutes. Cowan knew that any retainer would have had to have been approved by Plaintiff who was then listed as Legend's unconditional General Counsel. This further demonstrates that all Cowan's work on the PCT was done in joint consort to defraud Plaintiff, conceal the known conflicts with Plaintiff's inventions and get expanded retainers from Legend's founders. *Ulico v. Wilson Elser et al*, 56 AD 3d 1 (AD 1st Dept. 2008).

USPTO Solicitor confirmed in December, 2012 that Legend officer Barry Sandrew had in fact stolen Plaintiff's digital algorithm technology with the help of outside attorney, Lawrence Husick, Esq., in May, 2001. Sandrew filed Legend's first [concealed] digital provisional via Husick on May 4, 2001 incorporating Plaintiff's algorithms (Appl. No. 60/288929). Ergo by perfecting that provisional and keeping it concealed from Plaintiff in spite of known conflicts, Cowan became jointly and severally liable to Plaintiff as Legend's agent.

Plaintiff retained Squitieri & Fearon, LLP 2007 to represent her interests in this lawsuit; to file the Legend lawsuit and to consolidate the Cowan and Legend matters before this Court based on common issues of

8

*Status Letter to Hon. Lorna G. Schofield*
*Page -9-*
*June 11, 2013*

law and fact including issues of Cowan's agency in the conversion of Plaintiff's intellectual property. However, upon belief, Supple also engaged in backstage misconduct and defamation to get S&F to abandon Plaintiff and stipulate to a transfer of the Legend matter to CA away from all witnesses, proof and Legend's NY agents at the Cowan firm. Very suspiciously S&F, who was not admitted in CA had to find a local attorney to admit its attorneys pro hac vice, and then after expending $1,800 to do so, almost immediately abandoned both cases. Thereafter SDCA also improperly denied Plaintiff's application to order  return of Plaintiff's files in violation of Second Circuit's order.

S&F efiles that Plaintiff just got two weeks ago were acquired pursuant to writ of mandamus from Supreme Court of NY on April 30, 2013.  For three years Plaintiff did not know S&F was retaining Plaintiff's efiles; because in 2010, S&F falsely represented they turned over everything they had.  In January, 2013, S&F conceded to retaining six additional hard boxes and all Plaintiff's efiles; there was no legal justification for retention per the Supreme Court.

The electronic files plus attachments that Plaintiff just got in mid-May from S&F are voluminous.  However, they prove Supple's frivolous litigation.  Plaintiff, for example, already produced four boxes of documents pursuant for arbitration;  but Cowan who was supposed to produced four partners to give testimony only produced, one, Borchard.  Thereafter, Cowan was already denied Rule 37 sanctions by Arbitrator after making several motions.  Furthermore, Borchard unsuccessfully attempted to argue during arbitration that there is no contract with Plaintiff on April 17, 2002 and his argument was rejected, demonstrating that Plaintiff's contracdt rider was unilaterally forged on his watch.

Ergo, what now purports to be Cowan's first document request filed in December 2012 and is also subject of another  Rule 37 motion, is actually Cowan's second and third such motions.

*Status Letter to Hon. Lorna G. Schofield*
*Page -10-*
*June 11, 2013*

There is no grounds for the Court awarding sanctions in Cowan favor, only in Plaintiff's, for selective purging in anticipation of litigation and spoliation. <u>*Yu Chen v. LW Estaurant, Inc.*</u>, 2011 WL 3420433 (EDNY); <u>*N'Jie v. Cheung*</u>, 201 WL 3259793 (DNJ). Plaintiff has fully complied with all Cowan's document requests; and went to great lengths to make sure her she produced files in possession of her attorneys that she did not have. Plaintiff was hospitalized with acute diverticulitis and Clostridium difficile colitis in January and February, 2013.[3]

Cowan's torts of spoliation and selectively purging toll prevailing statutes of limitations also mandate sanctions and a preclusion order in fhe form of an order authorizing service of Plaintiff's proposed 5AC.  Para. 18 of Plaintiff's previous 3AC filed by S&F states that if patent issued to Plaintiff during the pendency of the action, damages claims would be added by amendment to recover damages to any patent claims or Plaintiff's portfolio.

No further frivolous litigation or prejudice to Plaintiff's interest can be tolerated.

Plaintiff's motion to compel Cowan's depositions of those attorneys who did not show at arbitration, adverse orders to Cowan in all litigations, OED proceedings, and all work done in the field of Plaintiff's inventions for other clients since 2002, must be compelled by the Court.

Plaintiff has a Ninth Circuit appeal due on June 24, 2013 on the limited issue of Plaintiff's right to recover Legend stock that is independent of Plaintiff's right to recover lost patent service retainers and customization contracts that Cowan, as Legend's NY agent, lost Plaintiff over the past ten years.

---

[3] Plaintiff was hospitalized with acute diverticulitis and Clostridium difficile colitis in January and February, 2013.

**WHEREFORE,** Plaintiff prays that her Status Letter be accepted, that Plaintiff's proposed 5AC be authorized for service, that Cowan's motion for Rule 37 sanctions, be denied, and that a scheduling order be issued to compel production of all Cowan's outstanding discovery and depositions, discovery to include but not be limited to, all work and correspondence for Cowan clients in the field of Plaintiff's inventions since 2001, disciplinary proceedings, adverse orders in other litigations, and all communications hard and electronic with Plaintiff's previous attorneys at S&F.  Plaintiff also seeks four additional weeks prior to scheduling conference to complete review of S&F's electronic files and submit appellant's briefs to the Ninth Circuit.

Dated:  June 11, 2013                    Respectfully submitted,
Essex County,  NJ

_____
AMY R. GURVEY, Plaintiff

Encls.

cc:  Hon. Lorna Schofield
cc:  Richard Supple, Esq. rsupple@hinshawlaw.com
cc:  Michael Berlin, Esq. berlinm@gtlaw.com

**Amy Weissbrod**

| | |
|---|---|
| **From:** | NYSD_ECF_Pool@nysd.uscourts.gov |
| **Sent:** | Tuesday, May 21, 2013 9:34 AM |
| **To:** | CourtMail@nysd.uscourts.gov |
| **Subject:** | Activity in Case 1:06-cv-01202-LGS-HBP Gurvey v. Cowan, Liebowitz & Latman PC et al Letter |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**U.S. District Court**

**Southern District of New York**

**Notice of Electronic Filing**

The following transaction was entered on 5/21/2013 at 9:33 AM EDT and filed on 5/17/2013
**Case Name:**      Gurvey v. Cowan, Liebowitz & Latman PC et al
**Case Number:**   1:06-cv-01202-LGS-HBP
**Filer:**           Amy R. Gurvey
**Document Number:** 169

**Docket Text:**
LETTER addressed to Magistrate Henry B. Pitman (and Judge Lorna G. Schofield) from Amy R. Gurvey dated 5/14/13 re: Plaintiff informs the Court that he not only emphatically opposes Cowan attorney Richard Supple, Esq.'s ex parte application dated 5/8/2013 to docket two recent April, 2013 orders entered in response to Plaintiff's 2013 Rule 60(b) motion papers in the related SDCA lawsuit against Cowan clients, Legend Films and their founding officers, but Plaintiff seeks immediate advance sanctions against Cowan and Supple in the amount of $150,000.00 to cover Plaintiff's costs of an expensive appeal to the Ninth Circuit etc. Document filed by Amy R. Gurvey.(sc)

**1:06-cv-01202-LGS-HBP Notice has been electronically mailed to:**

Amy Rebecca Weissbrod  amyweissbrod@verizon.net

Michael Arthur Berlin  berlinm@gtlaw.com, alblitsupport@gtlaw.com, gtcourtalert@gtlaw.com, schaefferc@gtlaw.com

John Richard Supple, Jr  rsupple@hinshawlaw.com, tharry@hinshawlaw.com

1

315 Highland Avenue
Upper Montclair, NJ 07043
May 14, 2013

FAX (212) 805-6111

Hon. Henry B. Pitman
United States Magistrate Judge
USDC SDNY
Chambers/Courtroom #18A
New York, NY 10007

      Re:  *Gurvey v. Cowan Liebowitz & Latman, PC* 06 –cv-1202
(LGS)(HBP); *Gurvey v. Legend 3D/Legend Films, Inc.* originally
08-cv-9256 (SHS)(SDNY) transferred in 2009 to SDCA, 09-0942-cv
(SDCA) (Before the Ninth Circuit since October, 2012) (Case No. 12-
56872)
      Response and cross-application in to Richard Supple, Esq.'s letter
application of May 8, 2013.

Dear Judge Pitman (and Judge Schofield):

      By this letter and attachments, Plaintiff not only emphatically
opposes Cowan attorney Richard Supple, Esq.'s audacious *ex parte*
application dated May 8, 2013 to docket two recent April, 2013 orders
entered in response to Plaintiff's 2013 Rule 60(b) motion papers in the
related SDCA lawsuit against Cowan clients Legend Films and their
founding officers [1], but Plaintiff seeks immediate advance sanctions against
Cowan and Supple in the amount of $150,000 to cover Plaintiff's costs of an
expensive appeal to the Ninth Circuit including to retain appeals counsel to

---

[1] [*Gurvey v. Legend 3D/Legend Films, Inc., Jeffrey Yapp, Barry Sandrew
and David Martin*, 08-cv-9256 (SHS)(SDNY) [transferred to SDCA by
Plaintiff's previous attorneys herein Squitieri & Fearon, LLP ("S&F") in
2009, 09-0942-cv (SDCA)].  Plaintiff's Ninth Circuit appeal to SDCA's
order entering summary judgment in favor of Legend defendants' while
precluding Plaintiff's discovery is Plaintiff's last attempt to mitigate
damages against Cowan for conspiring with Legends' officers to commit
fraud at the USPTO after converting Plaintiff's inventions and intellectual
property.

1

prepare and file appellate briefs that are due in June, 2013 and any required reply briefs. Cowan still owes Plaintiff her Second Circuit appeal costs in this lawsuit that remain outstanding and unpaid.

Plaintiff's Ninth Circuit appeal will seek reversal of SDCA's summary judgment order of September 14, 2012 (attached). It will seek to recover not only Plaintiff's 3% vested in Legend stock at founders' level at the highest valuation since 2003 under contract and quasi-contract theories, (assets that were reserved on Plaintiff's of counsel contract duly executed by Cowan on April 17, 2002 as found by SDNY Arbitrator); but also ½ of Legend's global patent service retainers and customization contracts over the past 10 years because Legend defendants and Cowan jointly failed to list Plaintiff as co-inventor of certain algorithms needed to convert Legend's previous analog only process.

Forfeiture of Plaintiff's patent royalties from Legend was directly attributable to Legend and Cowan's secret pact and conspiracy to steal and convert Plaintiff's inventions and intellectual property. Certain of Plaintiff's inventions that Cowan was already obligated by contract to protect as of December, 2001 were required to convert Legend's analog only film colorization and black-and-white negative restoration processes to digital and get Legend a monopoly in the relevant film and television markets. Plaintiff contends that Legend defendants are jointly and severally liable for inducing Cowan's breach of fiduciary duty to Plaintiff, who was the superior patent client in time and right; getting Cowan to conceal from Plaintiff known conflicts of interest; and defrauding Cowan partners, the USPTO and the Court.

In September, 2012, SDCA, having improperly denied Plaintiff discovery rights and also failing to order return of Plaintiff's from Plaintiff's previous attorneys Squitieri & Fearon, LLP, entered summary judgment in Legend's favor. The findings of the SDCA are factually and legally impossible based on Cowan's first document production in this lawsuit in seven years in December, 2012. Cowan's purged documents establish a *de facto* conspiracy between Legend officers and Cowan attorneys to conceal known conflicts of interest *at Legend's instructions*.

The damning e-mails were selectively erased from a CD ROM Cowan sent to Plaintiff in 2003 allegedly with "all her files" and toll prevailing statutes of limitation on all claims. Cowan's December, 2012 first

production in seven years now establishes that contrary to Supple's untruthful representations and frivolous ex parte applications to this Court, that Cowan purged Plaintiff's files and spoliated others to conceal the conspiracy with Legend defendants in favor of expanded retainers. *Ulico v. Wilson Elser et al,* 56 AD 3d 1 (AD 1st Dept. 2008).

The purged e-mails *admit* that Cowan was "*following its clients' instructions*".

Plaintiff was then advised also in December, 2012 that the USPTO Solicitor/OED opened an investigation against Cowan patent attorneys based on Second Circuit's order in February 10, 2012 upholding Plaintiff's breach of fiduciary duty and patent malpractice claims. Plaintiff is entitled to discover the documents from this investigation; and Cowan's previous submissions to the First Dept. Disciplinary Committee in 2005.

The new damning emails also support Plaintiff's 5AC that must now be granted and ordered filed, served and answered; and Supple's Rule 37 motion for sanctions denied.

However, Plaintiff also argues that the purged and spoliated documents that were selectively excised in anticipation of litigation mandate immediate sanctions. See, *Micron Technology v. Rambus,* ___ F. 2d ___, 2013 WL 227630 (D. Del.); see also *Ibid,* 645 F. 3d 1311, 98 USPQ2d 1693 (Fed. Cir. 2011).

Per Supple's own admissions during oral argument in January, 2013, Cowan's spoliation was done in anticipation of litigation. The problem with Supple's argument, however, is that he blatantly lied to the Court. Supple falsely represented that the "*conflict of interest*" *admitted* to by Cowan partners in Cowan's unnoticed 2003 USPTO withdrawal (attached), only pertained to the dispute over Cowan's withholding of Plaintiff's of counsel salary. Nothing could have been further from the truth.

It is now obvious that the *admitted conflicts* (that were concealed from Plaintiff because the USPTO withdrawal was never served and Cowan purged Plaintiff's files from the 2003 CD ROM) pertained to Cowan's known conflicts with other clients to whom they were converting Plaintiff's inventions and intellectual property. Aside from Legend, those clients include, but are not limited to, Clear Channel, Live Nation, and members of

3

PHISH. Plaintiff inventions span mobile ticketing, premium mobile ticketing and secondary ticketing, and digital algorithms that convert and edit event and other valuable content for real time distribution in digital format direct to mobile devices without needing to access an online retailer.

Supple's strategy all along, therefore, was to engage in frivolous litigation before this Court to keep concealed the damning e-mails and attempt to narrow this case down to a straight breach of contract matter pertaining to Plaintiff's of counsel agreement. Cowan sent Plaintiff their model of counsel agreement to mark up in December, 2001. It had nothing to do with the unique arrangement Cowan offered, that was meant to lure Plaintiff to the firm under falsely pretenses, and get her to accept Cowan's offer over a competing offer from Moses & Singer by agreeing to protect Plaintiff's inventions and do her patent work as part of the deal. Cowan's real motive, however, was to get their hands on Plaintiff's inventions and her client lists to benefit its other clients, and through malpractice and inaction, prevent Plaintiff's early rights of patent enforcement against them.

In July, 2006 (Docket #14), Supple intentionally omitted the rider to Plaintiff's of counsel contract when moving to compel arbitration and stay all discovery. Cowan defendant Simon Gerson, Esq,. swore under oath that what was appended to the motion was Plaintiff's complete contract. He lied.

The rider that Gerson and Supple intentionally omitted had been materially forged by Cowan attorneys after Plaintiff and Cowan both signed it on April 17, 2002 as found by SDNY Arbitrator. Arbitrator found that Cowan breached Plaintiff's contract without cause after only three weeks, rendering the SDCA order a legal and factual impossibility. The breach date was found to be May 7, 2002 after Plaintiff was instructed to attend a managing partners' meeting; however, Cowan was obligated to protect Plaintiff's inventions as of December, 2001 when Plaintiff's patent retainer was accepted by Cowan.

However, a new version of the rider was forged and masterminded by Cowan on May 8, 2002 and date stamped without Plaintiff's initials. Then in breach of Plaintiff's attorney client privilege, the forgery was sent by Cowan to Legend defendant and their attorneys, and was used by Legend defendants to prejudice Plaintiff's rights before SDCA and get a summary judgment order that was factually wrong and impossible. The new rider date of May 8, 2002 was embossed by Cowan to make it appear as if Plaintiff

4

was aware of Cowan's perfection and filing of Legends' unpublished PCT application two days earlier on May 6, 2002.  That application incorporated certain of Plaintiff's digital algorithms necessary to convert Legend's previous analog only technology to digital, without Plaintiff's knowledge and without crediting Plaintiff as co-inventor of the digital process as USPTO Regulations require.  On the same date, Cowan partners assigned that PCT 100% to Legend.   Plaintiff who was then general counsel of Legend was not shown the PCT, did not know of the patent services already performed.  They were in fact improperly performed by Cowan without a required retainer agreement in favor of Legend, and while Cowan also concealed from Plaintiff the previous provisional application Sandrew secretly filed via outside attorney Husick, Esq. to steal Plaintiff's algorithms.[2]

The evidence is now undeniable that Cowan and Legend through conspiracy, made a pact to steal and convert Plaintiff' inventions while Cowan was serving as Legend defendants NY agents.  Cowan concealed known conflicts of interests *"at the client's instructions"* and was induced to breach fiduciary duty to Plaintiff who was the superior patent client in time and right.  See also, *Mindy's Cosmetics v. Dakar*, 611 F. 3d 590 (9th Cir. 2010).

Cowan's torts of spoliation and purging toll prevailing statutes of limitations and mandate sanctions and a preclusion order  in Plaintiff's favor.   They also mandate denial of Supple' s motion for Rule 37 sanctions.

No further frivolous litigation or prejudice to Plaintiff's interests can be tolerated by this Court.

---

[2] Cowan partners also concealed from Plaintiff Sandrew's May 4, 2001 unpublished provisional patent application (60/288929) incorporating Plaintiff's algorithms that SDCA defendant Barry Sandrew stole and filed via an outside attorney, Lawrence Husick, Esq.  These algorithms became part of Legend's US patent in 2007.  E-mails that Cowan also purged establish that Cowan knew that Sandrew and Husick had encumbered Sandrew's previous analog only patents that were works for hire for American Film Technologies, Inc. ("AFT"), Legend's competitor.

WHEREFORE, Plaintiff's 5AC must be ordered filed and served, Supple's motion for Rule 37 sanctions must be denied as frivolous and an order must be entered for Cowan to immediately advance $150,000 to Plaintiff as part of a mandatory sanction for selectively purging and spoliating Plaintiff's intellectual property files in anticipation of litigation.

In the alternative and in the interests of justice, Plaintiff seeks permission to file a formal motion for severance on the issues of fraud and spoliation that pertain to Plaintiff's damages pertaining to the Legend conspiracy and whether Cowan and Supple must be sanctioned for engaging in frivolous litigation delaying Plaintiff's discovery rights without justification, and Cowan also assessed punitive damages in the discretion of the Court.

Dated: May 14, 2013                    Respectfully submitted,
Essex County, NJ

                                       _____
                                       AMY R. GURVEY, Plaintiff

Encls.

cc: Hon. Lorna Schofield
cc: Richard Supple, Esq.
cc: Michael Berlin, Esq.

315 Highland Avenue
Upper Montclair, NJ  07043
amygurvey@verizon.net
917-733-9981
March 15, 2013

Asli.carome@uspto.gov
Asli Carome, Esq.
Office of Enrollment and Discipline
United States Patent and Trademark Office
PO Box 1450
Alexandria, VA  22313-1450

Re:  Cowan Liebowitz & Latman, PC
Patent attorneys: R. Lewis Gable, Esq. Mark Montague, Esq., Michael Wolfson, Esq., William Dippert, Esq.  Managing Partners: William Borchard, Esq., Simon Gerson, Esq., Christopher Jensen, Esq., Midge Hyman, Esq., Baila Celedonia Esq.,

Dear Ms. Carome:

   This letter is respectfully submitted at your request as a follow-up to surprise documents recently produced by the USPTO Solicitor in December, 2012.  I am an inventor issued two (2) US patents, the first an unprecedented seven years after original filing by the above NY intellectual property law firm, Cowan Liebowitz & Latman, with first office action at six years. [1]  Nine (9) patent applications are still pending.

   The documents recently produced by Solicitor were concealed from me by Cowan partners when they sent me a CD ROM in 2003 *allegedly "with all my files"*. The representation was not true; many files were erased, excised and spoliated leaving me to attempt to get the discovery in a lawsuit. On February 10, 2012,  2d Circuit upheld my patent malpractice and breach of fiduciary duty claims against the Cowan firm. [2]  I was forced to file a damages lawsuit in 2006, 3 ½ years before any patent claims issued, to comply with statute of limitations.  My

---

[1] Gurvey US Patent Nos. 7,603, 321; D610947S
[2] *Gurvey v. Cowan Liebowitz & Latman, PC* et al. 06-cv-1202 (SDNY)

1

patent portfolio has been severely damaged by Cowan's withholding of essential services at early critical stages in exchange for expanded retainers in favor of other clients and fraud before the Patent Office. _Ulico v. Wilson Elser_, 56 AD 3d 1 (NYAD 1st dept. 2008) (cited by the Second Circuit). Many Cowan clients are the original unauthorized outsourcers of my inventions and Cowan's failure to file for non-publication, expedited prosecution and perform patent searches to qualify from prior art, if any, then allowed Apple to file applications incorporating my inventions, drawings, schematics and ideas in its own 2008 application, six years after my original filing.

I now request that the USPTO Office of Enrollment and Discipline ("OED") investigate Cowan's misconduct for failing to protect my inventions at the critical times, failing to disclose known conflicts of interest in violation of disciplinary rules, and incorporating certain of my inventions into patent applications filed for other Cowan clients.

I also request that OED, in response to the enclosed SDNY subpoena, produce patent applications since January 2002 filed by any of the above-referenced Cowan attorneys since 2002 (including filed by Michael Wolfson, Esq. and William Dippert, Esq., former Cowan partners who worked on my inventions) that pertain in any way to event or airline ticketing, mobile ticketing, paperless ticketing, secondary ticketing, digital conversion algorithms, digital content editing, processing content orders from electronic keypads, and direct transmission of event related content in digital format, that are the fields of my inventions that Cowan was retained to protect. Also, because Mr. Wolfson moved his offices to Greenberg and Traurig after getting access to my inventions, I request copies of all patent applications filed by this firm since 2002 in the stated fields.

Here is a synopsis of the relevant facts.

I hired Cowan Liebowitz & Latman, PC to protect my inventions to the full bounds of the law in December, 2001 and edit and file my draft applications, schematics, utility specifications and designs. At this time, I was of counsel to the firm. I gave my draft patent application to the firm, and in February, 2002, I was **forced** by managing partner William Borchard, Esq. to distribute parts of my draft formal application at a February, 2002 firm meeting and present a one-hour

summary of my ideas.  Cowan attorneys breached the attorney-client privilege and disclosed my inventions to clients and non-lawyers.

Two patent partners originally assigned my inventions, William Dippert, Esq. and Michael Wolfson, Esq., exited the firm within two months and went to larger firms including Greenberg & Traurig.  Cowan did nothing to prevent misappropriation of my trade secrets by them or breach of attorney client privilege by any of its remaining 60 lawyers.  Both Cowan and the Greenberg Traurig firm represent clients using my inventions without authorization since 2003 including Clear Channel, Live Nation, Instant live Concerts, Next Ticketing, MLB, MLB Advanced Media, Tickets.com,, Phish, Phish LIVE and Legend Films/Legend 3D, Inc.  Upon belief, there was no document generated by Cowan requiring the exiting attorneys to keep my inventions confidential.  Two new patent partners at Cowan were then assigned my file, R. Lewis Gable, Esq. and Mark Montague, Esq.

Immediately after the meeting, I heard from Cowan senior associate Susan Schick, Esq. by e-mail lauding the value of my inventions to the music industry (see attached).  Schick was then engaged to the bass guitarist of rock band Phish, Mike Gordon, who I met in April, 2002 at a firm party.  Gordon knew everything about my inventions.  Upon belief, Schick left the firm and is now married to Gordon and they live in Burlington, Vermont.  Phish LIVE has been using my inventions for many years.  Upon further belief, Gordon gave my trade secrets to executives at Clear Channel, owner of venues that stage PHISH concerts.  This allowed Clear Channel Entertainment, which became Live Nation in 2005, to form a new entity, Instant Live Concerts, as a Massachusetts LLC in 2003.  Instant Live Concerts was introduced in the *New York Times* Business Section over six columns on May 5, 2003 and the article interviewed Phish members.  Upon belief, Cowan partners placed that article.

Had Cowan performed according to the standard of care, patent claims should have issued to me by 2004-5 and would have been enforceable against several Cowan corporate clients.  Cowan failed to file formal applications, failed to file for expedited prosecution, for non-publication, failed to perform patent searches through the two remaining partners and failed to qualify my inventions from prior art, if any, for examiners.  Then Cowan unilaterally withdrew <u>without</u>

notice and withdrew as to only one of the two applications its partners filed, causing an administrative mess and delay of prosecution.

My inventions disclosed include novel utility methods in primary mobile ticketing, secondary premium ticketing [3] digital conversion/editing algorithms that would enable paperless, entry access control at venues and airlines; pay all royalties and edit, package and authenticate direct digital transmission of live event content to mobile devices in close to real time without the need to access an online retailer such as *iTunes*. These inventions are now state of the art in the mobile industry but still unenforceable because several applications that should have issued eight years ago had Cowan performed according to the standard of care and without conflicts, remain in languished prosecution.

My patents further disclosed algorithms to convert analog content to digital, edit live event content for immediate transmission to mobile devices; and novel, inexpensive means of "capturing otherwise lost live content". The content could be any digital content convertible into bits such as concerts, sports action stills, movies, conference presentations, political debates, press events, games and educational lectures, as examples.

In mid-May, 2002, I got an e-mail from Cowan partner Christopher Jensen, Esq. that Cowan would file "provisional patent applications". I never heard the term "provisional" before and I did not know the significance. Cowan patent partner Mark Montague was copied on that email and he knew I did not know what provisional applications were. I had no idea that my draft specifications, drawings, schematics, apparatus designs and draft claims had already been copied into Cowan's computer systems, had been disclosed to members of Phish and Clear Channel, and had not been touched since December, 2001.

Montague then drafted up a short three-page description of my inventions including utility mobile ticketing; and filed a provisional application No. 60/382,710 without my review. He did not file the draft specifications, drawings,

_____

[3] See <u>US v. Ticketmaster and Live Nation</u>, Consent Decree and Competitive Impact Statement, pp. 8 line 10 on the difference between primary and secondary ticketing operations in the current mobile market, 2010 WL 5699134, 975407 DDC 2010) (RMC)

schematics, apparatus designs and draft claims that Cowan had for five months; and his description was a butchered job.

Then a second application was prepared and filed by R. Lewis Gable, Esq. (60/382,949) expanding description of the content editing algorithms, digital conversion algorithms, and systems that would authenticate and transmit digital content direct to mobile devices inclusive of payment of royalties. That provisional discloses authentication of event content orders through users' mobile registration numbers, credit cards, cell phone numbers, and e-mails, for example.

In April, 2003, I received a call from the USPTO that Cowan had withdrawn from my representation for an admitted "*conflict of interest*". I was advised that a withdrawal notice was filed by Cowan attorney Montague; it was never served or sent to me. USPTO then investigated the lack of service and confirmed that there was no proof of service attached to the notice filed at the USPTO. USPTO Docketing advised me that Cowan's unilateral withdrawal was only applicable to one of the two provisional applications and Cowan remained attorney of record until September, 2003; the docket confirms this. Moreover, I never got any of the documents pertaining to filings by Cowan after May, 2002 and request they be immediately produced. USPTO then advised that my pending applications would be taken out of the queue for prosecution in due course until the matter of Cowan's incomplete withdrawal was resolved to the Commissioner's satisfaction.

The recent production by USPTO Solicitor in December, 2012 had many surprises including a theretofore unpublished May 4, 2001 provisional patent application (No. 60/288,929) that Cowan had since at least March, 2002, which was fraudulently concealed from me. The concealed provisional had been given to Cowan after filing in the exclusive name of another Cowan client, Barry Sandrew, by a Pennsylvania attorney, Lawrence Husick, Esq., coincidentally in the same month I was named as a key executive in the financial prospectus of Sandrew' new company Legend Films, Inc. All previous applications filed by Sandrew dealing with colorization processes for black-and-white film and video were analog only. This demonstrates there was confiscation of my digital conversion inventions by Sandrew and that Cowan knew about it. March 23, 2009 Arbitration transcripts in the SDNY lawsuit contain confirmation of Cowan's actual knowledge. (see attached).

5

However, the smoking gun is that Solicitor also produced Cowan's theretofore unpublished PCT application filed May 6, 2002 that perfected the concealed provisional in favor of Sandrew by Cowan partner R. Lewis Gable, Esq. The PCT filing was one week before Cowan partner Christopher Jensen, Esq. noticed in e-mails Cowan would file "provisionals" for me after performing no services for more than five months; and never filing the formal application.

In August, 2009, SDNY Arbitrator then also not knowing the facts because of Cowan's concealment of documents, found that my of counsel was terminated "without cause" coincidentally the next day, May 7, 2002, just three weeks after Cowan signed my contract plus a rider on April 17, 2002, both incorporating the firm's date stamps and time codes. I knew of no PCT filed by Gable in favor of Sandrew or Legend at the time; I was advised only that the "firm had changed its mind".

USPTO Solicitor also produced confirmation that the PCT was then immediately 100% assigned to Sandrew's new company, Legend Films, Inc., in spite of the fact that it incorporated my inventions that Cowan was already obligated to protect.

There was never need to file a "provisional" application; Cowan just elected do minimum, substandard work after filing the PCT knowing of the conflicts of interest. However, further evidence of attorney misconduct is that Cowan partner William Borchard, Esq. unilaterally and fraudulently forged the rider to my of counsel contract to imprint a new date stamp of May 8, 2002 never signed or seen by me until 2010. In further breach of the attorney client privilege, Cowan also sent the unilaterally altered rider to Sandrew's attorney in California.

Cowan never notified me of the conflict of interest with Sandrew's filings; and also did not identify the conflict of interest in the 2003 USPTO withdrawal notice. In December, 2012 Cowan recently produced e-mails that were concealed and excised from my CD ROM in 2003 that admit Cowan lawyers were *following the instructions of the client*. I was the superior client in time and right.

Upon seeing Sandrew's PCT application for the first time in December, 2012, I knew - as a named executive of Legend in 2001 - that Sandrew's past inventions were *analog only* and that Sandrew had stolen my digital conversion

algorithms to convert his previous analog only black-and-white negative masking processes and had used another outside attorney to conceal the patent filings and take credit for my inventions. All Sandrew's previous filings were analog only and were works for hire for American Film Technologies, Inc. ("AFT"). In 2002, Cowan already had e-mails that Sandrew and his Pennsylvania attorney, Lawrence Husick, Esq., had previously encumbered even the analog masking patents in favor of AFT and Sandrew was sued for breach of fiduciary duty by AFT shareholders. Upon belief, Husick was also sued for other, independent acts of malpractice.

The PCT filed by Cowan was then also improperly concealed from me, not published and in 2003 sent to another firm, Procopio of San Diego that filed a US application for Legend based on the PCT (Appl. No. 10/450,970) that in 2007 became US patent No. 7, 181,081. These documents were excised from the CD ROM I was sent by Cowan in 2003 that allegedly had "*all my files*"; and I was never credited anywhere as co-inventor of the digital conversion algorithms as patent regulations require.

Ergo, no later than May 6, 2002, before my inventions and draft applications that Cowan improperly forced me to disseminate were even worked on or protected in any way, Cowan partners actually knew of an irreconcilable conflict of interest with my inventions with another client and had done nothing to protect my patent interests or priority dates.

The e-mails just produced by Cowan in SDNY on remand that were excised and withheld from my 2003 CD ROM **admit that Cowan was expressly instructed by Sandrew and Legend officers "to follow its instructions".**

**Cowan  partners Gable and Borchard, however, improperly also elected to conceal  Sandrew's filings from me in entirety, excised the relevant e-mails from the files they sent me in 2003 after unilateral withdrawal that was not noticed, failed to disclose the nature and source of the conflict of interest to the USPTO, and allowed Sandrew through fraud and deceit to induce Cowan's breach of fiduciary duty to me.** Most unbelievably Cowan's defense attorney has lied to the SDNY many times by omitting Cowan's fraudulent concealment of these documents in connection with Sandrew and Legend's applications.

7

In addition, Cowan did not file for non-publication or expedited prosecution knowing that other clients had interest in the subject matter of my primary ticketing processes, secondary ticketing processes, and the digital conversion algorithms.

In 2008, Apple filed a virtually identical application with the only difference being that consumers are directed to *iTunes* to buy the event content, whereas my inventions transmit the content direct to users. That Cowan knew the essential services that were needed to protect my inventions and priority dates in 2002 is demonstrated by the exemplary services performed for Sandrew and Legend, at the same time. The sad reality is that Sandrew and Legend were clients I introduced to Cowan.

The order of 2d Circuit entitles me to discover conflicts with other of Cowan's patent clients. I therefore appreciate your complying with the SDNY subpoena or forwarding it to the USPTO Solicitor.

Thank you for your continued investigation into this matter.

Very truly yours,

Amy R. Gurvey

Encls.

2d Circuit Order February 10, 2012
SDNY Arbitration Award August 4, 2009
Cowan USPTO Unilateral Withdrawal (unnoticed)
SDNY Arbitration Transcript March 23, 2009 (pp. 212-213 Cowan testimony)
Cowan e-mails withheld in 2003 and produced in December, 2012

09-2185-cv(L)
Gurvey v. Cowan, Liebowitz & Latman, P.C., et al.

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

1    At a stated term of the United States Court of Appeals for the Second Circuit, held at the
2  Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York,
3  on the 10th day of February, two thousand twelve.
4
5  PRESENT:
6
7          AMALYA L. KEARSE,
8          JOSÉ A. CABRANES,
9          ROBERT D. SACK,
10                   *Circuit Judges.*
11  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
12  AMY R. GURVEY,
13
14          *Plaintiff-Appellant,*
15
16          -v.-                                    Nos.   09-2185-cv(L)
17                                                          10-4111 (Con)
18  COWAN, LIEBOWITZ & LATMAN, P.C., CLEAR
19  CHANNEL COMMUNICATIONS, INC., LIVE
20  NATION, INC., INSTANT LIVE CONCERTS, LLC,
21  NEXTICKETING, INC., WILLIAM
22  BORCHARD, MIDGE HYMAN, BAILA
23  CELEDONIA, CHRISTOPHER JENSEN, DALE
24  HEAD, STEVE SIMON, MICHAEL GORDON,
25  and SUSAN SCHICK,
26
27          *Defendants-Appellees.*[1]
28  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

---

[1] The Clerk is directed to amend the official caption as indicated above.

1

| | | |
|---|---|---|
| 1 | **FOR APPELLANT:** | Amy R. Gurvey, *pro se*, Upper |
| 2 | | Montclair, N.J. |
| 3 | | |
| 4 | **For APPELLEES:** | J. Richard Supple, Jr., Hinshaw & |
| 5 | | Culbertson LLP, New York, N.Y., |
| 6 | | *for* Cowan, Liebowitz & Latman |
| 7 | | PC, William Borchard, Midge |
| 8 | | Hyman, Baila Celedonia, and |
| 9 | | Christopher Jensen; |
| 10 | | |
| 11 | | Samara L. Kline (Melissa |
| 12 | | Armstrong, *on the brief*), Baker |
| 13 | | Botts LLP, Dallas, Texas, *for* Live |
| 14 | | Nation, Inc., InstantLive |
| 15 | | Concerts, LLC, NexTicketing, |
| 16 | | LLC, and Clear Channel |
| 17 | | Communications, Inc. |
| 18 | | |

19    Appeal from a judgment of the United States District Court for the Southern District of New

20    York (Barbara S. Jones, *Judge*).

21

22    **UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND**

23    **DECREED** that the judgment of the District Court be **AFFIRMED in part** and **VACATED and**

24    **REMANDED in part.**

25    Plaintiff-appellant Amy R. Gurvey appeals from the District Court's April 23, 2009 judgment

26    dismissing her third amended complaint ("TAC") pursuant to Fed. R. Civ. P. 12(b)(6). We assume the

27    parties' familiarity with the underlying facts and the procedural history of the case, some of which we

28    briefly reiterate here.

29                                            BACKGROUND

30    In February 2006 Gurvey filed her initial complaint in this action, principally asserting claims of

31    misappropriation of trade secrets against all defendants named in the complaint, fraud and breach of

32    fiduciary duty against her attorney, Cowan, Liebowitz & Latman LLC ("Cowan"), and unfair

2

1    competition and interference with prospective economic advantage against Cowan, Clear Channel

2    Communications ("CCC"), InstantLive, and Live Nation, Inc. ("Live Nation").  Gurvey did not serve

3    the complaint on the defendants at that time.

4        Four months later, in June 2006, Gurvey filed an amended complaint, which added a subsidiary

5    of CCC as a defendant, as well as, *inter alia*, claims of malpractice against Cowan.  Gurvey served the

6    first amended complaint on all defendants, and attached a copy of the original complaint.

7        Later, on March 4, 2008, Gurvey filed her third[2] amended complaint, which forms the basis of

8    this appeal.  The TAC added as defendants several partners of and one associate employed by Cowan

9    (together with Cowan, the "Cowan Defendants"), several executives of the corporate defendants, and

10   Michael Gordon, the bass guitarist for the rock band "Phish."  The TAC also asserted numerous claims

11   against various defendants for, *inter alia*, misappropriation of trade secrets, unfair competition, breach of

12   fiduciary duty, tortious interference with a contract, tortious interference with prospective economic

13   relations, attorney malpractice, violations of Section 2 of the Sherman Act,[3] violations of state antitrust

14   laws, and violations of the Lanham Act.[4]

15       On April 23, 2009, the District Court dismissed the TAC in its entirety.[5]  *Gurvey v. Cowan,*

16   *Liebowitz & Latman, P.C.,* No. 06 Civ. 1202, 2009 WL 1117278 (S.D.N.Y. Apr. 24, 2009) ("*Gurvey II*").

---

[2] Gurvey, who filed her initial complaint *pro se*, moved on October 10, 2006 to file a second amended complaint.  While that motion was still pending, Gurvey retained counsel and requested leave to file a third amended complaint.  The District Court granted permission to file a third amended complaint, deeming the *pro se* motion moot.  *Gurvey v. Cowan, Liebowitz & Latman,* No. 06 Civ. 1202, Docket No. 41, at 2 (S.D.N.Y. Jan. 23, 2008) (order granting permission to file third amended complaint).

[3] 15 U.S.C. § 2, *et seq.*

[4] 15 U.S.C. § 1051, *et seq.*

[5] On March 16, 2009, the District Court dismissed the action against CCC and Live Nation for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  *See Gurvey v. Cowan, Liebowitz & Latman, P.C.,* No. 06 Civ. 1202, 2009 WL 691056 (S.D.N.Y. Mar. 17, 2009) ("*Gurvey I*").  Although Gurvey claims that this dismissal constituted reversible error, she failed to include in her Notice of Appeal her intent to appeal from this order.  *See Gurvey,* No. 06 Civ. 1202, Docket No. 83 (S.D.N.Y. Sept. 23, 2010) (Notice of Appeal).  We therefore do not have jurisdiction to decide her claim that the District Court erred by dismissing her claims against CCC and Live Nation for lack of personal jurisdiction.  *See Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 256 (2d Cir. 1995).

3

1   The court determined that Gurvey's claims of misappropriation of trade secrets, unfair competition, and

2   tortious interference with contract claims were time-barred.  The court also determined that her state

3   and federal antitrust claims, as well as her unjust enrichment claim, had been inadequately pleaded.  It

4   further found that Gurvey's false advertising claims under the Lanham Act were related to the

5   authorship of her allegedly proprietary ideas and therefore were not properly the subject of an action

6   under the Lanham Act.

7        With respect to Gurvey's claims for tortious interference with prospective economic relations,

8   the court concluded that Gurvey's allegations—that, because Cowan illegally revealed her proprietary

9   information and trade secrets to CCC and Live Nation, she lost the opportunity to complete a private

10  placement offering of securities to be issued by her own company—were too vague to give rise to a

11  plausible claim for relief.  The court determined that the TAC neglected to allege that defendants knew

12  of Gurvey's private placement opportunity when they allegedly wrongfully interfered with the

13  opportunity, and therefore dismissed the tortious interference claim.

14       Finally, with respect to Gurvey's legal malpractice claims against the Cowan defendants, the

15  court concluded that Gurvey had offered only "vague and non-actionable challenges" to defendants'

16  legal representation.  Gurvey's allegation that defendants had failed to protect the confidentiality of her

17  trade secrets was not premised on "anything more than speculation" and did not present a challenge to

18  the actual quality of defendants' legal representation.  In addition, Gurvey's allegation of a conflict of

19  interest did not include any detail as to the supposed conflict.  Moreover, the court determined that

20  Gurvey had failed to identify the precise damages she had suffered or how defendants' legal

21  representation had actually caused these damages.  Gurvey's breach of fiduciary duty claims against the

22  Cowan defendants were dismissed for similar reasons.[6]

---

[6] The District Court also dismissed Gurvey's claim for an accounting because an accounting is a remedy, not a separate claim.

4

1    On appeal Gurvey argues that the District Court abused its discretion by (1) failing to adjudicate

2    her April 2010 Rule 60(b) motion which, *inter alia*, sought leave to file a fourth amended complaint; (2)

3    dismissing her claims against the defendants for misappropriation of her trade secrets, violation of the

4    federal and state unfair competition and antitrust laws, tortious interference with her contractual and

5    business relations, and attorney malpractice and breach of fiduciary duty; (3) not issuing a formal order

6    with respect to the Cowan defendants' motion to compel arbitration and stay all proceedings pending

7    arbitration; (4) failing to enter on the docket and adjudicate her requests to "reinstate" discovery; (5)

8    granting Live Nation's and CCC's motions to dismiss for lack of personal jurisdiction; (6) finding that

9    defendants did not engage in unfair competition by issuing false and misleading press releases; and (7)

10    dismissing her claims against Cowan for ongoing malpractice and breach of fiduciary duty before the

11    United States Patent and Trademark Office and for tortious interference with her contract with her

12    previous employer, Legend Films.[7]  Gurvey has also moved to correct the record on appeal, requesting

13    that we order the District Court to docket various documents she has unsuccessfully attempted to file

14    with the District Court during the pendency of this appeal, including a record of a state arbitration

15    proceeding and a motion filed pursuant to Fed. R. Civ. P. 60(b), and that we order the District Court to

16    permit her to file a fourth amended complaint (which she has also unsuccessfully attempted to file with

17    the court).  The Cowan defendants have petitioned for fees and costs, requesting that Gurvey be

18    required to pay their expenses associated with the defense of the instant appeal.

---

[7] Gurvey also appeals from the District Court's denial of her motion for reconsideration of dismissal pursuant to Fed. R. Civ. P. 59(a). *See Gurvey*, No. 06 Civ. 1202, Docket No. 80 (S.D.N.Y. Sept. 20, 2010) (order denying motion to reconsider). In adjudicating Gurvey's Rule 59 motion, the District Court found that several of the arguments she made in her motion were newly raised. The court accordingly refused to consider those arguments. *Gurvey*, No. 06 Civ. 1202, Docket No. 80 (S.D.N.Y. Sept. 20, 2010) (order denying motion to reconsider); *see Nat'l Union Fire Ins. Co. of Pittsburgh v. Stroh Cos., Inc.*, 265 F.3d 97, 115 (2d Cir. 2001) (noting that under Local Rule 6.3 of the Southern District of New York, a plaintiff may not raise a new argument for the first time in a motion for reconsideration). Because the arguments were not properly presented to the District Court, they are not before us now. *See Nat'l Union Fire Ins. Co.*, 265 F.3d at 115-16. To the extent the District Court rejected any earlier-raised arguments in its denial of Gurvey's motion for reconsideration, those arguments are addressed in tandem with, and subsumed by, our discussion of the court's dismissal of Gurvey's complaint on the merits.

1          DISCUSSION

2          We review *de novo* a dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6),

3   "construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing

4   all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d

5   Cir. 2002). The complaint must plead "enough facts to state a claim to relief that is plausible on its

6   face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although all allegations contained in the

7   complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129

8   S. Ct. 1937, 1949 (2009). A claim will have "facial plausibility when the plaintiff pleads factual content

9   that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

10  alleged." *Id.*

11         Having conducted an independent and *de novo* review of the record in light of these principles,

12  and for substantially the reasons stated by the District Court in its thorough and well-reasoned opinion

13  and order of April 2009, *Gurvey II*, 2009 WL 1117278, we affirm the judgment to the extent that it

14  dismissed Gurvey's claims for misappropriation of trade secrets, unfair competition, and tortious

15  interference with contract as time-barred, and to the extent that it dismissed her claims for false

16  advertising, violations of state and federal antitrust laws, and tortious interference with prospective

17  economic relations, for failing to sufficiently plead claims upon which relief may be granted.

18         However, we vacate the District Court's judgment to the extent that it dismissed Gurvey's

19  claims for attorney malpractice and breach of fiduciary duty against the Cowan defendants. Construing

20  the TAC liberally, accepting all the factual allegations in the complaint as true, and drawing all

21  reasonable inferences in Gurvey's favor, *see Bell Atl. Corp.*, 550 U.S. at 570, we conclude that Gurvey

22  stated a plausible claim by alleging that the defendants used the information given to them as part of a

23  confidential attorney-client relationship to their own advantage by disclosing it to other clients who then

6

1    profited therefrom to Gurvey's detriment, *see Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker,*

2    56 A.D.3d 1, 10 (1st Dep't 2008).[8]  We therefore remand the cause for further proceedings before the

3    District Court on these claims.

4          We deny Gurvey's motion to correct the record on appeal, having found that the documents she

5    asks this Court to consider either were not properly filed with the District Court or concern events that

6    occurred subsequent to the District Court's dismissal of her claims.  *See generally* Fed. R. App. P. 10(e)

7    (setting forth procedure for correction of record on appeal).  We also deny the request of the Cowan

8    defendants for an award of appellate costs and fees. *See* Fed. R. App. P. 38; *Schiff v. United States,* 919

9    F.2d 830, 834 (2d Cir. 1990).

10          We have reviewed Gurvey's remaining arguments and find them to be without merit.

11                                 CONCLUSION

12          For the foregoing reasons, the judgment of the District Court is hereby AFFIRMED in part and

13    VACATED in part as specified above.  The cause is REMANDED to the District Court for further

14    proceedings consistent with this order, including discovery on the remaining claims and any possible

15    dispositive motions that may thereafter ensue.

16

17
18                                   FOR THE COURT,
19                                   Catherine O'Hagan Wolfe, Clerk of Court

---

[8] The plausibility of this argument is bolstered by Gurvey's allegation that Cowan withdrew from representing Gurvey before the United States Patent and Trademark Office due to what Cowan allegedly termed a "conflict of interest."

**THE ASSOCIATION OF THE BAR
OF THE CITY OF NEW YORK**

**Arbitration for Disputes Among Lawyers**

---

**In the Matter of the Arbitration between:**

| | |
|---|---|
| Re:   Amy R. Gurvey, | Claimant, |
| -against- | |
| Cowan, Liebowitz & Latman, P.C., | Respondent. |

---

**AWARD OF ARBITRATOR**

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties and dated as of January 15, 2002, and having been duly sworn, and having heard the proofs and allegations of the parties, do hereby, AWARD, as follows:

1. Claimant Amy R. Gurvey ("Gurvey") and respondent Cowan, Liebowitz &Latman, P.C. ("Cowan") entered into a Memorandum Agreement as of January 15, 2002 (the "Agreement") by which Gurvy was hired as counsel to Cowan, the term commencing on February 15, 2002 and ending December 31, 2002. Gurvey's base compensation "for the balance of calendar year 2002" was "at the rate of $150,000 per year, payable every two weeks...."

2. This arbitration was commenced in April 2008 by Gurvey, and the hearings were conducted over a two day period, March 23 and 24, 2009. Only two witnesses testified: Gurvey on her own behalf and William Borchard, who was called by claimant as an adverse witness. Gurvey's basic claim was breach of the Agreement, and Cowan's counterclaim alleged fraudulent inducement by reason of Gurvey's misrepresentations concerning her background, skills and experience. At the hearing, Cowan broadened its counterclaim to assert misrepresentations and material omissions concerning anticipated billings, receipt of a salary from one of her clients, claims made on her resume, sanctions for frivolous litigation misconduct, and her receipt of Social Security disability payments.

3. In May 2002 Gurvey was terminated by Cowan. Although there is no writing that spells out the reasons for the termination--which took place only weeks after the Agreement was actually executed by the parties on or about April 17, 2002--the Managing Partner of Cowan at the time of the events in question testified that "[I]t was not working out at any level." He went on to elaborate that Gurvey's fees and billings were inadequate, that she had failed to bring the firm the entertainment practice that it sought and that a $5000 monthly retainer expected from a particular client did not materialize.

4. Gurvey asked to stay on at Cowan through September and was allowed to do so. Her last payment from Cowan covered the two week period ending August 15, 2002.

5. The Agreement, largely drafted by Cowan and based on its standard contract of this kind, did not provide for termination for cause and did not condition payment of the "base compensation" on any performance standards regarding billable hours or "Billing Units" defined in the

Agreement. Although the Agreement stated that the parties could conduct a fairness review of the base compensation at any time, no such review was requested or conducted.

6. Gurvey's proofs established that Cowan breached the Agreement by failing to pay the balance of her salary due from August 15 through December 31, 2002 at the rate of $150,00 per year, which totals $60,250. Although Gurvey also requested "the value of four weeks vacation time," the Arbitrator finds that no additional sum would be owing to Gurvey on account of vacation. The Agreement states that she was entitled to "the same vacation rights as other counsel (currently 4 weeks per calendar year with no carryover from year to year)." Thus, the value of Gurvey's vacation rights are included within her unpaid salary.

7. Cowan raised several defenses to the breach of Agreement claim: that Gurvey failed to perform; breached the implied covenant of good faith and fair dealing; and was a "faithless servant". After consideration of the proof on these issues, the Arbitrator concludes that there was insufficient evidence of Gurvey's nonperformance--which would have had to be tantamount to "lack of consideration" given the terms of the Agreement: no right to terminate for cause and no performance or billing standards. The other arguments did not fit the facts presented.

8. Cowan's counterclaim is denied. Respondent failed to carry its heavy burden of proof on a fraud claim, particularly with respect to the elements of materiality and reasonable reliance. Further, many of the alleged misrepresentations or omissions were facts and circumstances that Cowan only learned about long after its determination to terminate Gurvey.

9. Each party shall bear its own legal fees, costs, and expenses of this Arbitration as well as one half of the fees of the Arbitrator.

10. Gurvey further requested interest "at the statutory rate since August 12, 2002." The Arbitrator declines to award interest for that period of time for these reasons: the Agreement does not provide for the payment of interest; interest was not sought in Gurvey's demand for arbitration, and the Arbitration Rules for Disputes Among Lawyers of The New York City Bar Association provide discretion to the Arbitrator. Gurvey did not commence this proceeding until approximately six years after her termination. She should not profit by this delay. Consequently, the Arbitrator has determined that Gurvey is entitled to interest on $60,250 (but not interest on interest) at the statutory rate from April 16, 2008 to the date of the Award.

In summary, I AWARD as follows:

1. Respondent shall pay Claimant the sum of $60,250.00 on Claimant's breach of Agreement claim (the "Award").

2. The only pre-judgment interest that Claimant shall recover is interest at the statutory rate commencing April 16, 2008 up to but not including the date of this Award, on the amount of the Award, but not interest on interest.

3. Post-award interest shall accrue form the date of this Award until paid in full at the statutory rate.

4. Administrative fees of The Association of the Bar of the City of New York, attorney's fees, and any costs and expenses shall b e borne by each party to the extent incurred.

5. Each party shall pay one-half of the fees of the Arbitrator.

2

6. Respondent's counterclaim is denied.

This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims or counterclaims not expressly granted herein are hereby denied.  The Arbitrator will maintain jurisdiction.

August 4, 2009
_____
Date

_____
Charlotte Moses Fischman

I, Charlotte Moses Fischman, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.

8/4/2009
_____
Date

_____
Charlotte Moses Fischman

KL3 2724810.1

3



9200
#2

BEST AVAILABLE COPY

PTO/SB/83 (05-05)
Approved for use through 10/31/2002. OMB 0651-0035
U.S. Patent and Trademark Office U.S. DEPARTMENT OF COMMERCE

| REQUEST FOR WITHDRAWAL AS ATTORNEY OR AGENT | Application Number | 60/382,949 |
|---|---|---|
| | Filing Date | May 24, 2002 |
| | First Named Inventor | Gurvey |
| | Group Art Unit | To be assigned |
| | Examiner Name | To be assigned |
| | Attorney Docket Number | 24855-01 |

To: Assistant Commissioner for Patents
Washington, DC 20231

I hereby apply to withdraw as attorney or agent for the above identified patent application.

The reasons for this request are:

A conflict of interest has arisen between the applicant and the law firm of Cowan, Liebowitz & Latman,
P.C. the correspondence address of this provisional application.

☐ The correspondence address is NOT affected by this withdrawal.

☒ Change the correspondence address and direct all future correspondence to:

CORRESPONDENCE ADDRESS

☐ Customer Number _____ → Place Customer Number Bar Code Label here

Firm or Individual Name | Amy R. Gurvey
Address | 315 Highland Avenue
City | Upper Montclair | State | NJ | ZIP | 07043
Country | USA
Telephone | 973-347-5000 | Fax | 202-776-9139

206576

1

```
 1
 2    IN THE MATTER OF THE ARBITRATION
      BEFORE THE ASSOCIATION OF THE BAR
 3    OF THE CITY OF NEW YORK
      - - - - - - - - - - - - - - - - - -x
 4
      AMY R. GURVEY,
 5
                        Claimant,
 6
 7          -against-
 8
      COWAN LIEBOWITZ & LATMAN, P.C.,
 9
10                      Respondent.
11    - - - - - - - - - - - - - - - - - - -x
12
                    March 23, 2009
13                  10:10 a.m.
14                  1177 Avenue of the Americas
                    New York, New York
15
16
17
      BEFORE: Charlotte Fischman, Arbitrator
18
19
20          TRANSCRIPT OF PROCEEDINGS
21
22
23
24
25
```

♀

2

1

206576

5    have 37 in there, which is CLL 605 and

6    606?

7         MR. SUPPLE:  Right, series of

8    e-mails.

9         MR. SQUITIERI:  Yes, okay,

10    that's agreed.

11         MR. SUPPLE:  Okay.

12    CONTINUED CROSS-EXAMINATION BY

13    MR. SUPPLE:

14    Q.    Now, do you see the evidence or

15    do you see, I'm sorry not the evidence,

16    the e-mail in the middle there from David

17    Martin to RLG at CLL.com?

18    A.    Yes.

19    Q.    "Re: Amy Gurvey"?

20    A.    Yes.

21    Q.    Who is VLG?

22    A.    It's Lew Gable, a patent lawyer.

23    Q.    Did Lew Gable have anything to

24    do with Legend Films or working on Legend

25    Films?

235

1         CROSS - BORCHARD

2    A.    I think he was doing some work

3    for Legend Films.

4    Q.    And what is this -- what does

5    this e-mail say from David Martin to Lew

6    Gable?

7    A.    It says, Lew I just got your

Page 212

# Legend Films LLC

## Executive Summary

## Overview

Legend Films, LLC has created a proprietary, cost efficient, next generation film-colorization technology to bring to market the vast library of black-and-white film and television content of significant interest to consumers.

Led by a team of seasoned marketing and distribution professionals with access to the world's leading classic film and television libraries, Legend is poised to become the world's leading producer, marketer and distributor for this highly profitable media segment.

The Company seeks to raise $4 million to fund the first year of operations, and believes that this amount will be sufficient to bring the Company to break-even on a revenue and EBITDA basis within one year. The Company believes that it can achieve $4.9 million in annual EBITDA in its second year of operations, and EBITDA of over $40 million in its fifth year.

The Company draws on the following strengths and competitive advantages:

- Superior technology capable of cost-efficient, high-resolution restoration and colorization.

- Seasoned, capable senior sales organization with relevant, key experience in video distribution.

- Scalable business economics drawing upon multiple high margin revenue streams following the initial fixed cost of restoration and colorization.

- Few, if any, direct competitors.

- Favorable distribution agreements with current content owners.

- Focused strategy with clearly defined objectives and deliverables.

## The Opportunity

Retail consumers have historically demonstrated a strong interest and demand for colorized classic film and television content. This is demonstrated by the success of certain classic titles that continue to generate substantial cash flow from colorized versions of the films. The clearest example of this is the Shirley Temple series for 20th Century Fox, which has generated over $200 million in retail VHS sales since its introduction. By colorizing vaulted titles, studios are able to refresh and further exploit their film and television libraries at extremely low cost. The television/cable market is also highly preferential to showing

1

– 2 –                                      December 9, 2012

color content, and will pay premium licensing fees as they, in turn, can extract higher advertising revenue.

## The Market

The filmed entertainment industry (including television) is dominated by several large media conglomerates ("Majors") and, to a lesser extent, a variety of non-studio production and distribution companies ("Mini-Majors"). Finally, small to mid-sized independent production companies ("Independents") round out this competitive industry.
Most of the Majors and Mini-Majors as well as many of the Independents have film libraries of various sizes, portions of which are often in black and white formats. Due to the competitive nature of the industry, these producers are continuously seeking new ways to refresh and monetize their film libraries. Our technology offers one way that any production company can do so.

Worldwide black and white film and television inventory is sufficiently large to justify a significant potential market for color conversion. Of the more than 26,000 black and white films in existence in the U.S. alone, only 400 have been colorized to date. Major studios such as Universal, Warner Bros., Columbia, MGM/UA and 20th Century Fox own large collections of black and white classic films of interest.

In addition to production companies' libraries, there are thousands of black and white titles presently available in the public domain. These movies are no longer copyrighted and can therefore be "acquired" at little to no charge for purposes of colorization. We intend to selectively colorize public domain content to further leverage our distribution channels. Additionally, Legend will receive a 95-year copyright on the "improved" public domain material.

The opportunities are not limited to classic feature films. Virtually all TV programs were black and white through 1967 (with the exception of NBC-1965). Much of the international black and white content was produced well into the 1970s. Legend will be able to, through joint ventures or acquisition, colorize black & white TV series that have demonstrated popular appeal and commercial viability for distribution throughout the world (e.g., *Twilight Zone, The Addams Family, The Beverly Hillbillies, Perry Mason, Cheyenne, Sunset Strip, Burns and Allen, The Jack Benny Show, Playhouse 90, The Three Stooges, Leave It To Beaver, The Andy Griffith Show, Lost in Space, Father Knows Best, Dr. Kildare, My Favorite Martian, Lassie, Rawhide, I Love Lucy, Mr. ED, Flipper, The Fugitive, Alfred Hitchcock Presents, The Honeymooners, Maverick, The Outer Limits, The Untouchables,* etc.)

## Competition

To the best of our knowledge, there are only two potential competitors to Legend in this market, Dynac and American Film Technologies. American Film Technologies is no longer operating and Dynac is focused on fee for service short form work. Both competitors have patented systems for colorization. However, due to the fact that both of these systems rely upon low resolution, antiquated and highly labor intensive methods of applying colorization to a film in contrast to the Legend Films technology (further described

below), their product is marked by a lack of efficiency (i.e. massive amounts of manual reworks) and lower quality.

## Technology

The Company has developed the patent-pending third generation technology for the restoration and color enhancement of black and white feature films. We believe that our system will be more efficient and will provide significantly higher image quality than any other existing technology. In the Legend Films Process, black and white scenes are digitally separated into background and motion elements creating a visual reference database represented by a few frames for directing the computer control of color application from frame to frame. Following a creative pre-production phase for each feature film, the application of color to each frame becomes largely an automated process in which computers interpolate the appropriate color based on calculated similarities in the luminance pattern within regions the black and white image.

Our system has been designed to take advantage of modern high-speed networks, large-scale mass storage, and special-purpose image processing algorithms. By doing so, we can provide a seamless process from digitization to  final delivery regardless of the distribution channel. Our process was filed with the patent office on May 5, 2001.

## Capital Needs

Legend Films' development and rollout plan is based upon a tightly focused mission that requires a measured level of investment, tied to specific milestones designed to limit the level and risk of investment. The Legend Film Business Plan calls for three distinct phases, the last phase being funded out of free cash flow:

| Phase | Date | Time | Investment Required |
|---|---|---|---|
| Seed | 1/01 – 6/01 | 1-6  months | $   300,000 |
| Early Stage Production | 7/01-12/02 | 7-24 months | $ 4,000,000 |
| Full-Scale Production | 1/03 - | 24+ months | $ 2,000,000 |

Legend Films is currently in its seed phase, with $300,000 provided by founders. Funds have been earmarked for business planning, technology development, securing of patent rights, corporate formation legal costs, and other costs associated with securing equity funding.

The Early Stage Production phase will span upto 18 months, at a projected total cost of approximately $4 million. That funding will be used to develop the San Diego staging studio that will have the capacity to produce one finished feature film each month. Legend Films projects that the 13 feature films resulting from early stage production will generate approximately $12.5 million in revenue over the same 18 month period. Importantly, this $4 million will fully-fund the Legend business plan, with the final $2 million capital funded out of free cash flow.  This $2 million is sufficient to stage the full production studio in Mexico, 30 miles South of our San Diego studio.  The return from this final $2 mm will be a significant reduction in the cost of restoration and colonization (from approximately $3,000

per "restored and colorized" minute to approximately $1,200 per minute), allowing Legend to economically pursue a broader range of content, including the significant international libraries.

## Management and Key Personnel

Legend Films has attracted some of the most successful and talented executives in the fields of video Distribution and Colorization:

*Jeffrey B. Yapp, Chairman and CEO*:  Former President and COO of Hollywood Entertainment, the second largest video retailer in the US, with over 1,800 stores.  Prior to Hollywood Entertainment, Jeff was the President of 20th Century Fox Home Entertainment Worldwide.  Mr. Yapp has directed many of the most successful distribution campaigns in the industry including *Star Wars, Independence Day, Speed,* and *X-Files*.  Additionally, Jeff was involved in the most successful colorized product campaigns in entertainment history, including the Shirley Temple series, *Miracle on 34th Street* and *The Longest Day*.  These "colorized" campaigns generated over $200 million in revenue for Fox.

*Barry B Sandrew, Ph.D. President and COO*.  Dr. Sandrew developed the original patented digital systems and processes for colorization and was co-founder and Chief Technology Officer of American Film Technologies (AFT), one of the pioneer colorization companies. Barry was responsible for all operations of AFT, including the development of its production studio in Mexico.  Through his patented technology and management, AFT colorized more than 250 motion pictures, 170 television programs and 90 animated cartoons, accounting for over 80% of colorized product worldwide.

*Robert Schmiedeler, Chief Financial Officer*.   Rob most recently served as CFO for ServiceMagic, Inc., an Internet company based in Golden, Colorado.  There, Rob was responsible for ServiceMagic's corporate finance and accounting functions.  Before joining ServiceMagic, Rob was a Partner and Co-Head of Investments at Tango Group, a private investment company in Boulder, Colorado.  Previously, he spent eleven years with Merrill Lynch & Co. in Chicago, most recently as Director of Investment Banking.  While at Merrill Lynch, Rob participated in and led numerous transactions including mergers & acquisitions, public and private financing, and other corporate finance advisory services.

*Michael Southard, Vice President and Creative Director*.  Michael is known as the premier creative director in the area of colorization.  Most recently, Michael was the Creative Director for New Line Cinemas, *Pleasantville*.  Michael worked at AFT for more than six years and was responsible for much of its colorized product.

*Michael Kirsch, Vice President of Sales*.  Michael is one of the most experienced distribution executives in the specialty video market.  Michael was the Senior Vice President of Sales and Marketing at Goodtimes Video.  Michael's reference accounts include most of the major customers in the video business today including the category leaders: Walmart, Target, and Kmart.

*Lawrence A. Husick, Patent Counsel*.  Founding partner of Lipton, Weinberger, and Husick. Mr. Husick specializes in intellectual property and technology law and will function

as.  In addition to being a inventor (holding 5 patents in his first startup company, which went public in 1996), Lawrence is the author (with Dr. Sandrew) of most of AFT's patents, and is the attorney who successfully defended AFT against CST in their patent lawsuit over first generation colorization technologies.

*Amy Gurvey, General Counsel,* Ms. Gurvey is an attorney whose career spans over 20 years in matters including studio legal affairs, rights management, intellectual property rights, and business affairs.

## Projected Financial Performance

Legend Films is projecting a net loss of approximately $600,000 during its first 12 months of operation.  However, Legend is projecting being EBITDA positive and earnings positive very shortly after the first release in the middle of year one.  Based upon the achievement of realistic and highly conservative revenue targets from just one revenue stream (DVD sales), Legend Films is projected to generate EBITDA of: Year 2 $4.9 million, Year 3 $17.6 million, Year 4 $29.8 million and Year 5 $41.9 million.  These projections do not include revenue estimates for cable, syndication, International, Internet or broadband applications, which are incremental high margin revenue streams that will conservatively represent an additional 30-40% more revenue.

**Contact Info:  Jeffrey B Yapp, Chairman and CEO**

**Office: 503-638-6216**

**Cell:    503-407-3000**

**Fax:   503-638-8836**

**Email: jeffyapp@yahoo.com**

## Amy Gurvey

**From:** JCJ@cll.com
**Sent:** Thursday, May 01, 2003 12:07 PM
**To:** Amy Gurvey
**Subject:** RE: Legend Files

We had to follow the instructions of the client. I suggest that you take this up with Mr. Martin and Mr. Yapp.

-----Original Message-----
From: Amy Gurvey [mailto:amygurvey@comcast.net]
Sent: Thursday, May 01, 2003 12:02 PM
To: JCJ@cll.com
Subject: RE: Legend Files

Lew took the word of David Martin without checking with Jeff Yapp while I was still General Counsel. Now it may be impossible for me to get paid for my work.

-----Original Message-----
From: JCJ@cll.com [mailto:JCJ@cll.com]
Sent: Thursday, May 01, 2003 12:01 PM
To: Amy Gurvey
Subject: Legend Files

I just spoke to Lew. He tells me that all of the Legend files were sent at the request of David Martin to Legend's new attorney.
The applications were assigned to Legend and recorded in the US Patent and Trademark Office so all of the files belonged to Legend. If you need something from these files, you should communicate with Mr. Martin or Legend's new counsel. We no longer possess these files.

Chris Jensen

*************************************************************
This electronic mail transmission may contain confidential information and is intended only for the person(s) named. Any use, copying or disclosure by another person is strictly prohibited. If you have received this transmission in error, please notify the sender via return e-mail.
*************************************************************
*************************************************************
This electronic mail transmission may contain confidential information and is intended only for the person(s) named. Any use, copying or disclosure by another person is strictly prohibited. If you have received this transmission in error, please notify the sender via return e-mail.
*************************************************************

315 Highland Avenue
Upper Montclair, NJ  07043
SDNY ECF amyweissbrod@verizon.net
April 4, 2013


PLAINTIFF'S   STATUS LETTER

Re: _Amy R. Gurvey  Pro Se v. Cowan Liebowitz & Latman, PC,  et al._, 06-cv-1202
(LGS) (HBP)

Hon. Lorna Schofield
USDC Southern District of NY
500 Pearl Street
New York, NY  10007          cc:  Pro se Window

Dear Judge Schofield:


## STATUS OF THE CASE

Pursuant to the District Court's scheduling order, this is Plaintiff's Amy R.
Gurvey's status letter and comments to the status document submitted by Cowan
Liebowitz & Latman, PC's attorney Richard Supple, Esq.  Plaintiff contests
Cowan's report on several grounds.

Plaintiff appearing pro se won reversal before Second Circuit in February
10, 2012 of her claims against Cowan for malpractice and breach of fiduciary duty
including malpractice before the USPTO.  Plaintiff was forced to appear pro se
after withdrawal by her previous attorneys Squitieri & Fearon, LLP ("S&F") who
withdrew after the Arbitration Award was entered in Plaintiff's favor against
Cowan in August, 2009.   S&F failed to enter that award on the docket; and then
failed to file proper notices of appeal.  Per Second Circuit (fn 5) the Court was
divested of jurisdiction to hear the dismissal of Cowan clients Clear Channel and
Live Nation solely because S&F failed to file proper notices of appeal.

1

First, as a housekeeping matter, Cowan has still not paid for Plaintiff's appeal expenses per Second Circuit's invoice; it remains outstanding and the Court must compel payment.

Second, S&F has not returned Plaintiff's files, although it represented to Judge Jones that it turned over everything it had.  Plaintiff was required to file and serve a SDNY subpoena in November, 2012 and S&F remains in contempt.  There is a motion pending for the Court to compel return of hard and electronic files from S&F many of which are relevant to defendants' document requests that are voluminous.

Contrary to Supple's paper, the old 3AC includes an allegation that amended damage claims would be filed by Plaintiff in this lawsuit if patent claims issued to Plaintiff during the pendency of this lawsuit.  Plaintiff contends that better claims should have issued to Plaintiff in 2004-5 had Cowan performed according to the standard of care; claims that would have been immediately enforceable against its clients.  Instead, Plaintiff's first patent claims issued an unprecedented seven years after Cowan was retained to protect Plaintiff's inventions, in October, 2009, after the case was already on appeal.  That is the only reason the Second Circuit did not hear the patent damage claims; and any further appeal in this lawsuit will be to the Federal Circuit.

Procedurally, in this lawsuit we are in the start of discovery as concerns Cowan's misconduct before the USPTO.  Second Circuit's order allowed discovery to commence.  Discovery was stayed for the first three years of the case including on tort claims.

In addition, Arbitration did not take place for three years until *after* Cowan clients Clear Channel and Live Nation were already sua sponte dismissed and Cowan's dismissal was imminent in four weeks.  Plaintiff won arbitration on all counts by order entered August 4, 2009.  Arbitration was the only evidentiary hearing in the lawsuit; and the factual findings are inconsistent with the District Court's dismissal orders; and the chronology is relevant to Cowan's torts.

To date, no formal discovery schedule has been issued although Judge Jones cancelled a conference scheduled for April 16, 2012.

Subsequently Plaintiff filed for leave to file an amended complaint. The proposed Fifth Amended Complaint ("5AC") is based on the USPTO Solicitor's more recent document production of theretofore unpublished and concealed patent applications Cowan filed for other clients starting in 2002 that did not credit Plaintiff's inventions; it is also based on additional documentary evidence that Cowan did in fact withhold some of Plaintiff's email files on disks sent to Plaintiff in 2003. There are also new documents that Cowan concealed known conflicts of interest because it was "*following the clients' instructions*". These are some of the grounds meriting the 5AC and expanded breach of fiduciary duty claims. [1]

---

[1] USPTO Solicitor produced a theretofore unpublished PCT application filed by Cowan attorneys on May 6, 2002 for other clients Barry Sandrew and Legend Films, who Plaintiff introduced to Cowan. Plaintiff was then listed General Counsel of Legend Films in Legend's financing prospectus and was owed 3% vested of Legend stock at founder's level for consulting services since 1999. In consult with Cowan and as signed off by Cowan, Plaintiff's 3% in Legend was listed as a reserved right and "grandfathered matter" on the rider that Cowan signed on April 17, 2002.

In spite of Plaintiff's known interest and title in Legend, however, Cowan never showed Plaintiff any work it did for on Sandrew's PCT. The May 6, 2002 day the PCT was perfected and filed by Cowan partner R. Lewis Gable is coincidentally one day before Cowan terminated Plaintiff's of counsel contract 'without cause" on May 7, 2002 as found by SDNY Arbitrator. Cowan partners called Plaintiff into a meeting to advise "*they had changed their mind*". (3AC para. 42). Again this was untruthful.

In addition, in violation of the Patent Regulations, Cowan did not list Plaintiff as co-inventor of digital conversion algorithms on the PCT. All previous formal applications filed by Sandrew were analog only and works for hire. Then Cowan 100% assigned the digital PCT to Legend. Legend was in turn able to file a US application based on the PCT that issued as US Patent No. 7, 1818,081. Plaintiff lost 8 years of participations in patent services retainers and license retainers enjoyed by Legend on a monopoly basis in restoring black and white theatrical films and television series for Hollywood studios.

3

Contrary to Mr. Supple's status draft, Plaintiff will argue that Cowan's fraudulent concealment and purging files tolls prevailing statutes even further. In addition, Cowan's arguments on this same issue were already been rejected by the Second Circuit.

In accordance with the order of Magistrate Pitman, the parties were ordered to serve Rule 26(a) disclosures starting in October. Plaintiff timely filed and served her during forced evacuation during Hurricane Sandy in October, 2012. Plaintiff granted Cowan an extension of time but Supple's disclosures were served a month later.

In her first discovery motion Plaintiff seeks all her patent documents and work performed including patent filings for other clients in the field of Plaintiff's inventions. Supple then produced Cowan's first document production. That discovery request is justified by the concealment and fraud Cowan committed pertaining to Legend's PCT; Supple's discovery production is unresponsive save for insurance information. .

Plaintiff was then hospitalized on an emergent basis first for *Clostridium difficile* colitis and then for acute diverticulitis between December, 2012 and February, 2013. Magistrate issued an order in January, 2013 while Plaintiff was hospitalized for Plaintiff to comply with Cowan's document requests by January 14. 2013; and to explain why Plaintiff was entitled to certain document requests. Plaintiff filed for an extension of time based on hospitalization; the motion was not adjudicated. Cowan then filed a motion for Rule 37 sanctions and Plaintiff requested by formal motion, 4-6 weeks to complete production of the voluminous documents Cowan requested. Cowan opposed that request for adjournment.

Supple's draft contends there are only three issues in the case. (para 2, pp 2). Plaintiff disagrees.

Plaintiff contends that the allegations in the 3AC (para. 18 ) that amended claims and damages claims are anticipated and would be filed should any patents issued to Plaintiff during the pendency of the lawsuit, establishes grounds for Rule

15 (c) relief.  Two patents issued to Plaintiff starting in October, 2009 and her portfolio can now demonstrate significant damages directly attributable to Cowan's malpractice, breach of fiduciary duty and concealing known conflicts of interest.

The 5AC is clear that Cowan withheld what it knew to be essential services on Plaintiff's inventions based on patent services performed for other clients, it failed to file for non-publication, expedited prosecution, failed to perform patent searches it representing were being performed, and failed to qualify Plaintiff's inventions from the prior art, losing Plaintiff valuable priority dates.  The two patents that did issue to Plaintiff in 2009 should have issued with better more comprehensive claims in 2004-5 and would have been earlier enforceable against at least eight Cowan trademark clients had Cowan performed according to the standard of care.  It is no coincidence that Cowan clients including Clear Channel, Live Nation, Instant Live Concerts, Next Ticketing, MLB, MLB advanced Media, the New York Times, PHISH, PHISH Live, Live Phish, Legend Films and airlines, are the earliest unauthorized outsourcers of Plaintiff's inventions.

Further contrary to Supple's analysis, the 3AC also:

(1)      Lists Plaintiff's inventions in digital editing (paras. 1, 21, 25, 26);

(2)      Alleges malpractice claims based on Cowan's failure to supervise its patent attys (para. 3)

(3)      Alleges Cowan's breach of duty in placing press releases marketing other clients that quoted from Plaintiff's confidential applications ;

(4)      Alleges how Cowan's withholding of services allowed Plaintiff's operating systems for mobile ticketing and secondary premium ticketing enabled unauthorized outsourcing by other Cowan's other industry clients, MLB, MLB Advanced Media (subsidiary Tickets.com), Phish, Phish Live, Live Phish, New York Times and airlines, to name a few; and

(5)      Alleges how Cowan's withholding of what it knew to be essential patent services enabled Apple and other to copy Plaintiff's patent applications while they were in languished and delayed prosecution.

No defendant has yet answered any complaint.  Supple rehashes issues already rejected by the Second Circuit including on statutes of limitation that were raised ad infinitum in his briefs.

There is a motion on the docket to disqualify Susan Schick's and Michael Gordon's attorney based on alleged improper service.  Plaintiff will argue that their attorney must be disqualified, service should be extended, and that defendants are in contempt of discovery requests and a subpoena.

Defendants make reference to a 1997 HUD tenant's sanction that Plaintiff did not pay.  The sanction is on appeal to the New York State Court of Appeals.  Plaintiff was represented by an attorney in those proceedings that pertain to her HUD apartment and , she was not an attorney on the case.

There are at least two major orders against Cowan finding serious malpractice, fraud and breach of fiduciary duty issues in other courts emanating from fraud charges.  *Kaplan v. Cowan Liebowitz & Latman PC* 832 So. 2d (Fl App 3 Dist. 2002).

Respectfully submitted,

AMY R. GURVEY
Plaintiff


## CERTIFICATE OF SERVICE

Plaintiff Amy R. Gurvey declares that on April  5, 2013  she filed Plaintiff's within Status Report requested by Hon. Lorna G. Schofield by filing same on the SDNY ECF docket, by filing at the SDNY Attn : Pro se Window, by sending a copy of Hon. Schofield and by effecting service on attorneys for defendants as follows:

Richard Supple, Esq.  Hinshaw Culbertson, LLP, 780 Third Avenue, NY  10017;

Michael Berlin, Esq. Greenberg & Traurig, 54 State Street, Albany, NY  12207s

## Jensen, Christopher

| | |
|---|---|
| **From:** | Jensen, J. Christopher |
| **Sent:** | Thursday, May 01, 2003 12:07 PM |
| **To:** | 'amygurvey@comcast.net' |
| **Subject:** | RE: Legend Files |

We had to follow the instructions of the client.  I suggest that you take this up with Mr. Martin and Mr. Yapp.

-----Original Message-----
From: Amy Gurvey [mailto:amygurvey@comcast.net]
Sent: Thursday, May 01, 2003 12:02 PM
To: JCJ@cll.com
Subject: RE: Legend Files

Lew took the word of David Martin without checking with Jeff Yapp while I was still General Counsel.  Now it may be impossible for me to get paid for my work.

-----Original Message-----
From: JCJ@cll.com [mailto:JCJ@cll.com]
Sent: Thursday, May 01, 2003 12:01 PM
To: Amy Gurvey
Subject: Legend Files

I just spoke to Lew.  He tells me that all of the Legend files were sent at the request of David Martin to Legend's new attorney. The applications were assigned to Legend and recorded in the US Patent and Trademark Office so all of the files belonged to Legend.  If you need something from these files, you should communicate with Mr. Martin or Legend's new counsel.  We no longer possess these files.

Chris Jensen

*********************************************************
This electronic mail transmission may contain confidential
information and is intended only for the person(s) named.
Any use, copying or disclosure by another person is
strictly prohibited. If you have received this transmission
in error, please notify the sender via return e-mail.
*********************************************************

1

**CLL 483**

**Amy Gurvey**

| | |
|---|---|
| **From:** | jyapp@cablevision.com |
| **Sent:** | Monday, October 14, 2002 10:56 AM |
| **To:** | 'ARG@cll.com' |
| **Subject:** | Re: ARG/legend Docs |

The original did include license barry has agreed to put the patent ito the company. Jeff

**Jensen, Christopher**

| | |
|---|---|
| **From:** | Jensen, J. Christopher |
| **Sent:** | Thursday, May 01, 2003 12:05 PM |
| **To:** | 'amygurvey@comcast.net' |
| **Subject:** | RE: Patent file |

Yes.  We filed a notice of withdrawal as your counsel in the PTO in January which was
accepted by the PTO on February 13, 2003.  A copy of that notice was sent to you by Mark
Montague on January 3, 2003.  A copy of the notice and the PTO acceptance of our
withdrawal is also in the file that I am sending to you.

Chris Jensen

-----Original Message-----
From: Amy Gurvey [mailto:amygurvey@comcast.net]
Sent: Thursday, May 01, 2003 11:59 AM
To: JCJ@cll.com
Cc: MXM@cll.com; RLG@cll.com
Subject: RE: Patent file

Did Mark and/or Lew file a formal revocation/withdrawal of attorneys with the PTO for each
of the applications when you sent me the notice of conflict?

-----Original Message-----
From: JCJ@cll.com [mailto:JCJ@cll.com]
Sent: Thursday, May 01, 2003 11:55 AM
To: Amy Gurvey
Subject: RE: Patent file

Both of the provisional patent applications are in the one file that I sent you.  I will
speak to Lew about whether he still has any Legend files.

Chris Jensen

-----Original Message-----
From: Amy Gurvey [mailto:amygurvey@comcast.net]
Sent: Thursday, May 01, 2003 11:34 AM
To: JCJ@cll.com
Cc: MXM@cll.com; RLG@cll.com
Subject: RE: Patent file

4-30-03:  From what I recall, there were two PPA's filed by the firm - the 710 application
filed 5-22-02 by Mark Montague (that was filed before it was given to me to read) and the
949 application containing my description and filed by Lew Gable two days later.  I need
both PPA's sent to me at once along with Mark's patent search that would be appreciated.
I would also like my complete Legend files from Lew's Office.  These were never sent to
me.
-----Original Message-----
From: JCJ@cll.com [mailto:JCJ@cll.com]
Sent: Thursday, May 01, 2003 10:45 AM
To: Amy Gurvey
Subject: Patent file

I am attaching a copy of a letter that I have sent to you by Federal Express this morning
enclosing your patent file.  As you requested, I want to inform you that the Federal
Express tracking number for this letter is 790768320584.

Chris Jensen

1

CLL 484

## Jensen, Christopher

| | |
|---|---|
| **From:** | Jensen, J. Christopher |
| **Sent:** | Thursday, May 01, 2003 12:01 PM |
| **To:** | 'amygurvey@comcast.net' |
| **Subject:** | Legend Files |

I just spoke to Lew.  He tells me that all of the Legend files were sent at the request of David Martin to Legend's new attorney.
The applications were assigned to Legend and recorded in the US Patent and Trademark Office so all of the files belonged to Legend.  If you need something from these files, you should communicate with Mr. Martin or Legend's new counsel.  We no longer possess these files.

Chris Jensen

**CLL 486**



March 26, 2003

Re:     Transfer of Legend Films Matters and Files to
        Procopio, Cory, Hargreaves & Savitch LLP

Dear Lew:

This letter will serve as my instruction and authorization to immediately transfer all matters and files of Legend Films, Inc. to Pattric J. Rawlins at Procopio, Cory, Hargreaves & Savitch. Please send the files to:

Pattric J. Rawlins
Procopio, Cory, Hargreaves & Savitch LLP
530 B Street, Suite 2100
San Diego, California 92101-4469

As the files involve ongoing intellectual property matters with upcoming deadlines, please complete this transfer as quickly and expeditiously as possible. Additionally, please include electronic copies of all documents and correspondence related to the matter(s) being transferred.

Very truly yours,



David Martin
Chief Executive Officer


cc: Pattric J. Rawlins

CLL 563

# Cowan, Liebowitz & Latman, P.C.
### LAW OFFICES

1133 Avenue of the Americas  •  New York, NY 10036-6799

*Telephone* (212) 790-9200  •  *Web* www.cll.com  •  *Fax* (212) 575-0671

R. Lewis Gable
Direct (212) 790-9228
rlg@cll.com

April 15, 2003

**VIA FEDERAL EXPRESS**

Pattric J. Rawlins
Procopio, Cory, Hargreaves & Savitch LLP
530 B Street - Suite 2100
San Diego, California  92101-4469

> Re:   Legend Films, Inc.
>       24781

Dear Mr. Rawlins:

Pursuant to David Martin's instructions, we are forwarding to your care the PCT Application File (Our Ref. 24781.01).  We are also enclosing a client docket for Legend Films LLC, which reflects upcoming due dates for this application and a disc with this application stored thereon.

We apologize for the delay in providing the enclosed file to you.  We are aware of a further file (Our Ref. 24781.00) for which we have conducted an exhaustive search through our offices, but without success.  Our recollection is that this file had a record of the related parent provisional application and a disc with color copies of some of the drawings for the PCT application.  Though we can not say with certainty, Amy Gurvey may have this file.

Appreciating that we have now removed this matter from our docket, please place this matter on your docket and provide a change of address form to the PCT Receiving Office of the USPTO.

RLG/CXI/24781/01/557461.1

**CLL 601**

Cowan, Liebowitz & Latman, P.C.
Pattric J. Rawlins
April 15, 2003
Page 2


     Please also sign and return to me the enclosed copy of this letter acknowledging safe receipt of this letter and the noted enclosures.

                    Very truly yours,

                    R. Lewis Gable

Enclosures:  1)   01 file
           2)   Docket Sheet
           3)   CD

cc:  David Martin (via fax:  858-551-8368)
      William Borchard

RLG/CXI/24781/01/557461.1

**CLL 602**

## Amy Gurvey

**From:**      Barry Sandrew, Ph.D. <bsandre1@ix.netcom.com>
**Sent:**      Tuesday, May 07, 2002 9:00 AM
**To:**      'agurvey@rcn.com'; 'jyapp@calbevision.com'
**Subject:**      Re: Lawrence Husick

That paragraph was deleted!

----- Original Message -----
**From:** Amy Gurvey
**To:** jyapp@calbevision.com
**Cc:** bsandre1@ix.netcom.com
**Sent:** Tuesday, May 07, 2002 4:59 AM
**Subject:** Lawrence Husick

5-7:  Jeff and Barry:  My firm is not the general counsel of Legend so Lawrence's termination letter must be sent by one of you.  Regarding the patent assignment, I will ask Lew today if whatever Lawrence said he contributed on p.12 has been deleted.  I hope so.  In this event, we might be able to avoid this matter completely.  When you have the documents from Bashjendra, please call me.  If there aren't any, get whatever documents you have from the company from the files and the Internet.  My firm charges for these types of services.

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### Southern District of New York

*Amy R Garvey*
_____
Plaintiff

v.

*Cowan Liebowitz & Latman, R et al.*
_____
Defendant

)
)
)
)
)
)
)

Civil Action No. 06-CV-1202 (SDNY)
2d Cir 09-2185, 10-4111 (2d Cir 2012)
(If the action is pending in another district, state where:)

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: *Solicitor, United States Patent & Trademark Office*
*PO Box 1450 Alexandria VA 22313-1450*

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: *Patent applications since 2002 filed by attorneys affiliated with Cowan Liebowitz and Latman in the fields of primary tf editing, secondary tf editing, distribution of event & event content, and digital conversion algorithms, digital content editing.*

| Place: *319 Highland Avenue* *Upper Montclair, NJ 07043* | Date and Time: *April 3, 2013 10am* |
|---|---|

*all files between 2002 - 2005 filed by Cowan Liebowitz attorney Plaintiff*

☒ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

*Barry Sandrew legend films*

| Place: | Date and Time: |
|---|---|

*a Letter to OED Ashe Carone dated 3-15-13 from Plaintiff*
*requested by OED Ashe Carone USPTO*

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: *3-8-13*   **RUBY J. KRAJICK**

CLERK OF COURT

*S. Corado*
_____
Signature of Clerk or Deputy Clerk

OR

_____
Attorney's signature

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* _____
*Amy R Garvey Prose Plaintiff* , who issues or requests this subpoena, are:
*USPTO inventor*

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

Westlaw.

Slip Copy, 2012 WL 4061773 (S.D.Cal.)
(Cite as: 2012 WL 4061773 (S.D.Cal.))

**H**
Only the Westlaw citation is currently available.

United States District Court,
S.D. California.
Amy R. GURVEY, Plaintiff,
v.
LEGEND FILMS, INC. formerly known as Legend
Films, LLC, Jeffrey B. Yapp, Barry B. Sandrew,
Legend3D, Inc., and Legend Films, LLC, Defendants.

No. 3:09–cv–00942 AJB (BGS).
Sept. 14, 2012.

Amy R. Gurvey, Upper Montclair, NJ, pro se.

Douglas R. Clifford, Fred Michael Plevin, Paul Plevin
Sullivan and Connaughton LLP, San Diego, CA,
Michael Terrance Conway, Leclair Ryan PC, New
York, NY, for Defendants.

Order Denying Plaintiff's Ex Parte Applications,
[Doc. Nos. 148 and 149], Granting Defendants'
Motion for Summary Judgment, [Doc. No. 118], Denying
Plaintiff's Motion for Summary Judgment, [Doc. No.
132], Denying Plaintiff's Motion to **Vacate**, Transfer
to SDNY for Trial, and for Extension of Time to File
Pre–Trial Documents, [Doc. No. 157], Denying
Plaintiff's Motion to Stay Preliminary Pre–Trial
Memo and Witness Lists, [Doc. No. 161].
ANTHONY J. BATTAGLIA, District Judge.

*1 The Defendants have filed a motion for summary
judgment (Doc. No. 118) on all of the causes of
action in Plaintiff's First Amended Complaint
("FAC"), (Doc. No. 70). The Plaintiff filed a cross
motion for summary judgment, (Doc. No. 132),
seeking a variety of sanctions and summary judgment
on the issue of Plaintiff's 3% interest in Legend Films.
The Plaintiff filed ex parte applications, (Doc. Nos.
148 and 149), on January 19, 2012 seeking: (1) an
extension of time to obtain counsel to file her reply
brief, and (2) leave to file an amended complaint. The
Plaintiff also filed a motion to vacate a prior stipula-
tion and transfer the case to SDNY for trial and for an
extension of time to file pre-trial documents, (Doc.
No. 157). Plaintiff also filed a motion for a stay on the
preliminary pre-trial memo and witness lists, (Doc.

No. 161). For the reasons set forth below, the Plain-
tiff's ex parte applications, (Doc. Nos. 148 and 149),
are DENIED; Plaintiff's motion for transfer and for
extension of time to file pre-trial documents, (Doc.
No. 157), is DENIED; Plaintiff's motion to stay pre-
liminary pre-trial memo and witness list (Doc. No.
161), is DENIED AS MOOT; Defendants' motion for
summary judgment, (Doc. No. 118), is GRANTED;
and Plaintiff's cross motion for summary judgment,
(Doc. No. 132), is DENIED.

**Background**
**I. The Parties**
    Plaintiff, Amy Gurvey, is an attorney licensed to
practice in the states of California and New York with
experience and training in entertainment and intel-
lectual property law.[FN1] She was a resident of New
York until 2002, at which time she moved her resi-
dence to New Jersey. Ms. Gurvey contends that she
performed legal services for Defendant Legend Films,
Inc. as well as individual Defendants between 2000
and 2002.

    FN1. The following facts here and in the
    "Background" section are taken from the
    FAC and the parties moving papers.

    Defendant Legend Films, Inc. ("Legend") is a San
Diego-based company specializing in the restoration
and colorization of old black-and-white films and
television shows for DVD, HDTV, and theatrical
release. Legend Films, LLC ("LLC"), the predecessor
to Legend, was formed in 2001 by Defendants Yapp
and Sandrew, and was incorporated in Nevada. In
2003, Legend was incorporated in California, and the
LCC ceased to exist.

    Defendant Barry Sandrew, Ph.D., is a California
resident, and is currently serving as President and
Chief Operating Officer of Legend. Sandrew is the
inventor of an all-digital process for colorizing black
and white films.

    Defendant Jeffrey Yapp is currently a California
resident and serves as Chairman of Legend's Board of
Directors. In 2001, when the LLC was formed, Yapp
was a resident of Oregon. Subsequently, in 2001,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 4061773 (S.D.Cal.)
(Cite as: 2012 WL 4061773 (S.D.Cal.))

judgment by simply pointing out to the Court an absence of evidence from the nonmoving party. *Miller,* 454 F.3d at 987. "The moving party need not disprove the other party's case." *Id.*

Once the movant has made that showing, the burden shifts to the opposing party to produce "evidence that is significantly probative or more than 'merely colorable' that a genuine issue of material fact exists for trial." *LVRC Holdings LLC v. Brekka,* 581 F.3d 1127, 1137 (9th Cir.2009) (citing *FTC v. Gill,* 265 F.3d 944, 954 (9th Cir.2001)); *see also Miller,* 454 F.3d at 988 ("[T]he nonmoving party must come forward with more than 'the mere existence of a scintilla of evidence.'") (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The Court must review the record as a whole and draw all reasonable inferences in favor of the nonmoving party. *Hernandez v. Spacelabs Med. Inc.,* 343 F.3d 736, 738 (9th Cir.2000). However, unsupported conjecture or conclusory statements are insufficient to defeat summary judgment. *Id.; Surrell v. Cal. Water Serv. Co.,* 518 F.3d 1097, 1103 (9th Cir.2008). "Thus, '[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Miller,* 454 F.3d at 988 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

### *Discussion*
#### *I. Plaintiff's Ex Parte Applications*
**\*5** As a preliminary matter, the Court will first address the Plaintiff's ex parte applications seeking: (1) an extension of time to obtain counsel and file a reply brief, (Doc. No. 148); (2) leave to file a Second Amended Complaint ("SAC") (Doc. No. 149); (3) the transfer of this case to the Southern District of New York for trial and to **vacate** orders and further extend pretrial deadlines, (Doc. No. 157).

#### *A. Plaintiff's Ex Parte Application for an Extension of Time*
Ex parte applications for extensions of time are proper only if the prescribed time period has not yet expired and if the party can show good cause. Fed. R. Civ. Pro. 6(b)(1)(A). Once the time has expired, a noticed motion for relief, based on a showing of excusable neglect, is required. Fed. R. Civ. Pro.

6(b)(1)(B).

The Plaintiff states in her ex parte applications [FN3] that she is seeking additional time to find counsel and file a reply brief due to her medical conditions, however, the Plaintiff's application discusses medical conditions [FN4] that occurred in 2009 through October 2011. *See* Doc. No. 148, pp. 3–6, ¶¶ 1–7. None of the Plaintiff's discussion provides any justification for her failure to timely file her reply brief by the November 28, 2011, deadline. Since the Plaintiff was able to file an opposition to defendants' summary judgment motion and a cross-motion for partial summary judgment [FN5] on October 22, 2011 and has not articulated any reason or demonstrate good cause for why she could not have timely file a reply brief, the Plaintiff's request for an extension of time is hereby DENIED.

> FN3. In reviewing the Plaintiff's applications, the Court notes that the Plaintiff has incorporated arguments responsive to the Defendants' motion for summary. Despite their untimely nature, the Court will accept and consider these arguments as Plaintiff's reply.

> FN4. The Plaintiff attached a doctor's note to her application, Doc. No. 148–3, p. 1, however, the doctor's note does not appear to assist Plaintiff with her argument as it indicates only that she was under the care of a doctor on December 29, 2011, and it is dated more than one month after Plaintiff's reply was due.

> FN5. The Court notes that it accepted the Plaintiff's opposition and cross motion for summary judgment despite the fact that they were filed late and exceed the allowable page limit without leave of Court.

With regard to the Plaintiff's request for additional time to retain new counsel, the Court notes that: (1) the Plaintiff is an experienced attorney; and (2) the Plaintiff has twice in the course of this case either discharged or refused to communicate with prior counsel, thereby causing counsel to file motions to withdraw, Doc. Nos. 43 and 82. In light of the Plaintiff's request to substitute herself as counsel in this case in June of 2011, Doc. No. 93, and the Plaintiff's failure to demonstrate any efforts in the preceding

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 4061773 (S.D.Cal.)
**(Cite as: 2012 WL 4061773 (S.D.Cal.))**

months to retain counsel, the Plaintiff's request for additional time to obtain counsel to prepare and file her reply is DENIED.

### B. Plaintiff's Ex Parte Application for Leave to File a SAC

The Plaintiff seeks leave to file a SAC to add new allegations and one new cause of action against the current Defendants, as well as David Martin, a Defendant that was previously dismissed by the Court. The Plaintiff does not allege that these allegations or cause of action are based on newly discovered information. The Plaintiff states that she became aware of the supposed fraud that forms the basis of her new allegations and cause of action at her deposition on March 23, 2011. *See* Doc. No. 148, p. 16, ¶ 42–43. However, the Plaintiff filed her first amended complaint on March 30, 2011, which was one week after her deposition, and did not include the new allegations of cause of action or seek leave shortly thereafter to do so.

*6 The deadline to amend the pleadings set by this Court's scheduling orders was February 22, 2011. *See* Doc. No. 69. The Plaintiff has failed to demonstrate good cause for: (1) the delay in requesting amendment; or (2) her failure to follow the rules of this Court requiring Plaintiff to request and obtain a hearing date for motion to amend. Based upon the foregoing and the fact that the Court finds these new allegations and cause of action legally untenable and therefore futile, the Plaintiff's improper, ex parte request seeking leave to amend is hereby DENIED.

### C. Plaintiff's Motion to Transfer

This case was transferred to this Court per a joint motion of the parties more than three years ago. (Doc. No. 1, p. 99–100). In light of the parties stipulation to transfer to this Court and the advanced stage of the litigation, this Court finds a transfer unwarranted and prejudicial as it would cause undue delay. Accordingly, Plaintiff's motion to transfer is DENIED.

### II. The Motions for Summary Judgment

There are two motions for summary judgment presently before the Court, the Defendants' motion for summary judgment, Doc. No. 118, and the Plaintiff's cross-motion for summary judgment, Doc. No. 132. The Defendants' motion seeks summary judgment or, in the alternative, partial summary judgment or, an order specifying material facts not in dispute pursuant

to Rule 56 of the Federal Rules of Civil Procedure. The Defendants argue that the Plaintiff's causes of action are barred by the statute of limitations because any alleged agreement ended when plaintiff went to work at Cowan, Liebowitz & Latlaw, P.C. ("Cowan") in or about February 2002.

.   Alternatively, the Plaintiff's cross-motion for summary judgment seeks Rule 11 sanctions, as well as other sanctions in the form of leave to file an amended pleading, attorney's fees, denial of the Defendants' motion for summary judgment and unconditional issuance of 3% of the shares of Defendant Legend's stock.

### A. All of Plaintiff's Claims Are Time–Barred by the Statute of Limitations

The Plaintiff alleges in her FAC that she entered into a contract with Defendants on November 15, 2001. (FAC, ¶ 20.) Plaintiff claims that the terms of the contract entitled her to a 3% share in Legend, as well as compensation at the rate of $125,000 per year. *Id.* Although Defendants emphatically dispute that any contract was ever formed (as more fully discussed below), even if a contract was formed, Defendants argue that the Plaintiff breached the contract, and/or the contract ended by mutual consent, shortly thereafter in February of 2002.

The Defendants contend that the accrual date for the Plaintiff's claims is the date that the Plaintiff went to work full-time at Cowan in February 2002, because on that date, the Defendants contend that the Plaintiff either breached the alleged employment agreement with Defendants or the parties mutually consented to terminate the agreement. The Defendants argue that because the Plaintiff did not filed her complaint in the Southern District of New York until October 29, 2008, the six year statute of limitations on the Plaintiff's claims has already run and the Plaintiff is precluded from recovering the 3% share in Legend and compensation at the rate of $125,000 per year.

*7 Accepting Plaintiff's factual allegations as true, the contract was breached in November 2002, while Plaintiff filed her Complaint in October 2008. However, Plaintiff's assertions are without merit. The statute of limitations issue was decided by Judge Gonzalez in a previous motion. *See* Doc. No. 37. Judge Gonzalez determined that New York had personal jurisdiction over Defendants and, therefore,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 4061773 (S.D.Cal.)
**(Cite as: 2012 WL 4061773 (S.D.Cal.))**

New York choice of law rules should be applied. *Id.* at 16:7–8. New York follows the "traditional definition of accrual-a cause of action accrues at the time and in the place of injury. *Id.* at 19:4–5 citing *Global Fin. Corp. v. Triarc Corp.* ., 93 N.Y.2d 525, 529, 693 N.Y.S.2d 479, 715 N.E.2d 482 (1999). Judge Gonzalez determined that Plaintiff's causes of action all accrued in New Jersey, as Plaintiff was a New Jersey resident in October 2002. *Id.* at 19:8–9, 693 N.Y.S.2d 479, 715 N.E.2d 482.

All six of Plaintiff's claims have a six-year statute of limitations. *See* N.J. Stat. An. § 2A:14–1; *see also Iwanowa v. Ford Motor Co.*, 67 F.Supp.2d 424, 473 (D.N.J.1999) (citing *Miller v. Bd. of Chosen Freeholders of Hudson County*, 10 N.J. 389, 409 (1952) (applying the six year statute of limitations to "claims sounding in restitution/unjust enrichment or quantum meruit")). [FN6]

> [FN6.] Judge Gonzalez also noted that even if the pro-resident section of New York's borrowing statute applied, the result would be the same. Similar to New Jersey, New York would apply a six-year statute of limitations to all of Plaintiff's claims. *See* N.Y. C .P.L.R. § 213.2 (applying a six-year statute of limitation to all actions "upon a contractual obligation or liability, express or implied," except for several exceptions not applicable here); *see also Cohen v. City Co. of New York*, 283 N.Y. 112, 27 N.E.2d 803 (1940) (applying the six-year statute of limitations to a quantum meruit claim). Doc. No. 37, p. 19:10–14, fn. 17.

Defendants allege, and this Court agrees, that if any contractual relationship ever existed, that relationship was terminated in February of 2002 when Plaintiff began working at Cowan law firm. By starting work at Cowan, any alleged contract between plaintiff and defendants came to an end, as Plaintiff either breached the alleged agreement or the parties terminated the alleged agreement by mutual consent. *Lubliner v. Helmsley–Spear, Inc.*, 227 A.D.2d 142, 642 N.Y.S.2d 240, 241 (1996) ("It is settled that where an employee under contract agrees to change positions, the previous employment contract comes to an end[.]"); *Prillaman v. Century Indemnity Co. of Hartford, Conn.*, 138 F.2d 821, 823 (4th Cir.1943) ("It is well established that the right to terminate contract

by mutual consent exists independent of any provision in the contract permitting the parties to do so[.]").

Plaintiff argues that the statute of limitations should be tolled with respect to the quantum meruit claim because of the alleged reassurances by Defendants that she would eventually be payed. However, this exact argument was already rejected by Judge Gonzalez. (Doc. No. 37, p. 22:20–26). Judge Gonzalez cited the Third Circuit in *Baer* which stated "[t]he essence of a quasi-contract claim is not the expectancy of the parties, but rather the unjust enrichment of one of them." 392 F.3d at 622. As a result, Judge Gonzalez concluded, it would be "inappropriate" to look at Plaintiff's expectations of payment, rather than the services she provided to Defendants. *See id.* (Noting that the plaintiff's belief "that he was going to get paid if and when the show was a success" was irrelevant). Plaintiff stopped providing services to Defendants in her individual capacity in February 2002 and all of her clients became clients of the Firm per her employment agreement she executed with the Firm upon accepting an of counsel position in February of 2002. (Doc. No. 118–1, p. 4:4–8). Any alleged reassurances by Defendants cannot defeat the statute of limitations for this claim.

**\*8** Accordingly, the statute of limitations began to run at the latest in February 2002. *Schmidt v. McKay*, 555 F.2d 30, 36 (2d Cir.1977) (promissory estoppel claim accrues at the time of the promise); *Ely–Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402, 599 N.Y.S.2d 501, 615 N.E.2d 985 (1993) (breach of contract claim accrues at time of breach); *Franconia Associates v. United States*, 536 U.S. 129, 142, 122 S.Ct. 1993, 153 L.Ed.2d 132 (2002) (same). Furthermore, to the extent any such contract includes the stock options, Plaintiff contends those were due to her "immediately" in January 2002. (Doc. No. 118–1, p. 10). By Plaintiff's own admission, therefore, any claim related to the stock options accrued in January 2002. Plaintiff filed the instant action on October 28, 2008; at least eight months after the statute of limitations had run on all claims. Based upon the foregoing, Plaintiff's claims one through six are time-barred and Defendants' motion for summary judgement is GRANTED as to these claims.

***B. Even if the Plaintiff's Claims Were Not Time–Barred, These Claims Fail as a Matter of Law***

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 4061773 (S.D.Cal.)
**(Cite as: 2012 WL 4061773 (S.D.Cal.))**

### 1. Plaintiff's Claim for Quantum Meruit Fails as a Matter of Law

To prove a claim for quantum meruit, the Plaintiff must show: (1) performance of services in good faith; (2) acceptance of services by the person to whom they are rendered; (3) expectation of compensation there-fore; and (4) reasonable value of services rendered. *Evans–Freke v. Showcase Contracting Corp.*, 85 A.D.3d 961, 926 N.Y.S.2d 140, 141 (2011); *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 437–38, 608 A.2d 280 (1992); *Liddle & Robinson, LLP v. Garrett*, 720 F.Supp.2d 417, 422 (S.D.N.Y.2010). Plaintiff's claim fails for the following reasons: (1) Legend paid her for the performance of her services, as did her employer Cowan; and (2) Plaintiff had no expectation of compensation.

Plaintiff was paid $10,000 by Legend for the services she performed prior to February of 2002 when she commenced employment with Cowan. (Doc. No. 118–1, p. 17:14–20). Shortly thereafter, Plaintiff began working for Cowan where her com-pensation included payment for work provided to Legend. *Id.* at 17:23–24. As such, the Plaintiff has already been reasonably compensated for the work she performed for Defendants. Plaintiff conceded that any work she performed for Defendants after commencing working at Cowan was "included in [her] stock in-terest." *Id.* at 17:27. Therefore, to the extent Plaintiff argues she performed services for Legend after her employment at Cowan ended, she admits that she did not expect any compensation for those services. *Id.* at 18:1–2. In fact, the contract that she entered into with Cowan expressly stated that any payment she received from her clients belonged to the firm. (Doc. No. 118–1, p. 4:4–8). Plaintiff was also receiving com-pensation from Cowan for her work at the firm, which included work for the Defendants. This salary was verified in a contractual dispute between Plaintiff and Cowan. *See Gurvey v. Cowan, Leibowitz & Latman*, PC, 06–cv–1202 (BSJ) (SDNY); 2d Cir. Consolidated Appeal Nos. 9–2185; 10–4111 (February 10, 2012).

*9 Plaintiff has failed to raise an issue of material fact regarding her claim for quantum meruit. Even if this claim were to survive the statute of limitations, it fails on the merits. Accordingly, summary judgment is GRANTED in favor of Defendants on Plaintiff's quantum meruit claim.

### 2. Plaintiff's Breach of Contract Claims Against Legend Films and Individual Defendants

Plaintiff's second and third causes of action are for breach of contract against Legend Films and the individual Defendants. Here, Plaintiff cannot prove that a contract existed between the parties, and even if it did, the claim is barred by the statute of frauds. Additionally, if the parties entered into any agreement, such an agreement would be in violation of the pro-fessional rules of conduct and unenforceable.

### a. No Contract Existed Between the Parties

To recover for a breach of contract, a plaintiff must prove: (1) the existence of a contract; (2) the plaintiff's performance under the contract; (3) the defendants breach under the contract; and (4) resulting damages. *JP Morgan Chase v. J.H. Elec. of New York*, 69 A.D.3d 802, 893 N.Y.S.2d 237, 239 (2010); *Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.*, 421 F.Supp.2d 831, 833 (D.N.J.2006). A party seeking to enforce the contract has the burden of proving a valid and enforceable contract existed. *Allen & Company v. Occidental Petroleum Corp.*, 382 F.Supp. 1052, 1055 (S.D.N.Y.1974). Here, Plaintiff cannot show that a valid contract existed between her and any of the corporate or individual defendants.

First, there is no dispute that the parties never entered into a written agreement. (Doc. No. 118–1 p. 14:15–16; Gurvey depo. 160:14–16). Although Plaintiff provided Legend with a proposed contract, that contract was never signed. *Id.* at 14:16–17. In New York, "unsigned writings prepared by a plaintiff, without more, do not suffice to bind a defendant." *Karlin v. Avis*, 457 F.2d 57, 62 (2d Cir.1972). Even if Plaintiff alleges the formation of an oral agreement, that argument cannot survive summary judgment because Plaintiff cannot show that there was any meeting of the minds as to the material elements of the contract.

Contract formation requires an offer, acceptance, and consideration. *N.F.L. Ins. Ltd. v. B & B Holdings, Inc.*, 874 F.Supp. 606, 610 (S.D.N.Y.1995). The for-mation of a contract also requires that at least two parties mutually assent to the material terms of the contract. *International Paper Co. v. Suwyn*, 966 F.Supp. 246, 254 (S.D.N.Y.1997) (contract enforce-able under New York law only if there is a "meeting of the minds between the parties regarding the material elements of the agreement."). A mere agreement to

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 4061773 (S.D.Cal.)
**(Cite as: 2012 WL 4061773 (S.D.Cal.))**

agree renders the contract unenforceable. *Mar Oil, S .A. v. Morrissey*, 982 F.2d 830, 840 (2d Cir.1993) ("[A] purported contract that leaves the compensation term to be determined by future negotiations is a mere 'agreement to agree,' and under New York law is deemed too indefinite to be enforceable.").

**\*10** In the instant case, the Court finds that there was no meeting of the minds as to the material terms of the alleged agreement such as dilution of the stock options, the amount and the vesting period. The Plaintiff acknowledges disagreement over the material terms of the offer to provide her shares in Legend. (Doc. No. 118–1, p. 14:23–24). The Plaintiff's complaint explains that "shares were not to be issued with any required vesting period. The parties never agreed that the shares would or could be diluted." (Doc. No. 78, p. 7:12–17.) However, dilution is the standard practice at Legend. (Doc. No. 118–1, p. 15:3). Every common share of stock at Legend since its inception, including the shares belonging to Legend's founders, have been subject to dilution. *Id.* at 15:4–6. Such a significant deviation from the norm would lend itself to said terms being in writing. Plaintiff cannot demonstrate and has failed to offer any evidence to dispute the fact that no meeting of the minds occurred with respect to Plaintiff's alleged entitlement to stock options. Based upon the foregoing, the Court finds that the Plaintiff has failed to demonstrate as a matter of law that there was a meeting of the minds as to material elements of the alleged Agreement to issue a 3% interest in Legend's stock.

### b. Plaintiff's Claim for Breach of Contract is Barred By the Statute of Frauds

The statute of frauds provides that any agreement is void if, "[b]y its terms [it] is not to be performed within one year from the making thereof" unless that agreement is in writing and 'subscribed by the party to be charged therewith." N.Y. Gen. Oblig. Law 5–701; *City of Yonkers v. Otis Elevator Company*, 649 F.Supp. 716, 726 (S.D.N.Y.1986).[FN7] Plaintiff's FAC alleges that she had an agreement to work for Legend "for an initial term of two (2) years commencing January 1, 2002." (Doc. No. 78, p. 7:4–5). This agreement could not have been completed within a year and therefore falls within the statute of frauds. Because defendants never signed the alleged Agreement with Plaintiff, any claim for breach of the alleged Agreement is barred by the statute of frauds.

FN7. New York law applies because Plaintiff alleges the agreement was made while she lived there. N.Y. Gen. Oblig. Law 5–701 (focused on "the making" of an agreement; FAC, ¶ 20 (alleged agreement formed in November 2001); Doc. No. 37, p. 18–19 (noting that Plaintiff resided in New York until April 2002).

Plaintiff refers in her opposition to a series of emails exchanged between her and Defendants throughout the time period. Plaintiff does not allege these emails comprise the contract, but merely that they refer to an understanding previously established by the parties. However, none of these emails discuss the specifics of any contract, nor do they outline any material terms necessary to create a valid contract. Such writings are not sufficient to establish the elements of a valid contract or survive the statute of frauds. The statute of frauds exists to protect against such understandings forming the basis of valid contracts as a means of preventing fraud in legal transactions particularly susceptible to deception, mistake and perjury. *Shaftel v. Dadras*, 39 F.Supp.2d 217, 228 (1999). Contracts for a period greater than one year is such a context. Thus, any alleged contract is unenforceable due to the statute of frauds.

### c. Plaintiff's Alleged Contract With Legend Violated the Rules of Professional Conduct, And Is Unenforceable

**\*11** The Rules of Professional Conduct in California, New Jersey and New York all require Plaintiff to advise Legend to seek independent counsel before entering into a business transaction with them whereby she would acquire an ownership interest in the company. Plaintiff was also required to obtain Legend's written consent to any arrangement resulting in her having an ownership interest in the company.

A lawyer may not enter into a business transaction with a client or knowingly acquire an ownership ... or other pecuniary interest unless; (1) the transaction and terms in which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner and terms that should have reasonably been understood by the client; (2) the client is advised of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent counsel of the client's choice on the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 4061773 (S.D.Cal.)
**(Cite as: 2012 WL 4061773 (S.D.Cal.))**

transaction; and (3) the client consents in writing thereto.

N.J. Rules of Prof. Conduct, Rule 1.8; *see also* N.Y. Rules of Prof. Conduct, Rule 1.8; Cal. Rules of Prof. Conduct, Rule 3–300. Plaintiff conceded there was no signed writing between the parties. Furthermore, the Plaintiff has failed to produce any writing indicating that she advised Defendants to seek counsel or that they subsequently consented to the grant of stock options to the Plaintiff.

Additionally, the Rules of Professional Conduct in all relevant states further obligate the Plaintiff to communicate the basis, rate and fees to the Defendants in writing. N.J. Rules of Prof. Conduct, Rule 1.5(b); N.Y. Rules of Prof. Conduct, Rule 1.5(b). Defendants allege and Plaintiff fails to offer any proof that she did so. Indeed, Plaintiff admits to never having received a retainer agreement from Defendants at any point. (Doc. No. 118–1, p. 11: 20–21).

Therefore, even if a contract existed between the parties, the contract would be unenforceable as it violates the rules of professional conduct. *Raphael v. Shapiro*, 154 Misc.2d 920, 587 N.Y.S.2d 68, 72 (1992) (violation of the Rules of Professional Conduct rendered contract void and unenforceable; plaintiff should not be permitted to reap the benefits of a void and unenforceable contract); *Ford v. Albany Medical Center*, 283 A.D.2d 843, 724 N.Y.S.2d 795, 797 (2001) (contract unenforceable because attorney violated the Code of Professional Responsibility); *City of New York v. 17 Vista Associates*, 192 A.D.2d 192, 599 N.Y.S.2d 549, 553 (1993) ("Contracts contrary to public policy are unenforceable and courts will not recognize rights purportedly arising from them.")

For all of the above mentioned reasons, summary judgement is GRANTED in favor of Defendants on Plaintiff's second and third causes of action for breach of contract.

### 3. Plaintiff's Claims of Promissory Estoppel Against All Defendants

Plaintiff's fourth cause of action for promissory estoppel against all Defendants fails even if the claim is not time barred because the individual Defendants never provided a clear and unambiguous promise to her and the Plaintiff has already been compensated for her work at Legend.

\*12 To establish a claim for promissory estoppel a plaintiff must prove: (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance by the party to whom the promise is made; and (3) an injury sustained in reliance on the promise. *Rogers v. Town of Islip*, 230 A.D.2d 727, 646 N.Y.S.2d 158, 158 (1996); *Peck v. Imedia, Inc.*, 293 N.J.Super. 151, 165, 679 A.2d 745 (1996); *Roberts v. Karimi*, 204 F.Supp.2d 523, 527 (E.D.N.Y.2002). Here, Plaintiff cannot prove that there was a clear and unambiguous promise from either one of the individual defendants or that she suffered an injury. In fact, Plaintiff conceded that there was ambiguity with the alleged promise. (Doc. No. 118–1, p. 18:23–24 [Gurvey depo. 199:16–200:2] ). Moreover, Plaintiff received $10,000.00 for services performed from Legend and an additional salary from Cowan. *Id.* at 19: 3–4; [Gurvey Depo. 177:10–18]. She already received compensation for her work both by Legend and by Cowan and thus has not been injured by any reliance on the promise. Accordingly, Plaintiff cannot prove the necessary elements of the claim for promissory estoppel.

Based upon the foregoing, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's fourth claim for promissory estoppel.

### 4. Plaintiff's Claims for Specific Performance Against Legend Films

Plaintiff's fifth cause of action is for specific performance against Defendant Legend Films. Because Plaintiff cannot establish the existence of a contract (as discussed above), she cannot compel specific performance. Furthermore, Plaintiff's claim for specific performance is barred by the doctrine of laches. "The defense of laches, in a suit for specific performance, is to be considered wholly independent of the Statute of Limitations." *Richardson v. Vajiradhammapadip Temple*, 24 A.D.3d 649, 807 N.Y.S.2d 392, 392 (2005); *Lavin v. Board of Educ. of City of Hackensack*, 90 N.J. 145, 151, 447 A.2d 516 (1982). "Unexplained delay is evidence of waiver an acquiescence in non-performance." *City of New York v. New York Cent. R.R. Co.*, 275 N.Y. 287, 293, 9 N.E.2d 931 (1937). "Although the action is brought within the period prescribed by the statute, it may have been delayed as to preclude the granting of equitable relief" if the defendant can show the plaintiff is guilty of an unreasonable, prejudicial delay. *Richardson*, 807

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 4061773 (S.D.Cal.)
(Cite as: 2012 WL 4061773 (S.D.Cal.))

N.Y.S.2d at 393; *Lavin*, 90 N.J. at 152–53, 447 A.2d 516; *see also Cantrell v. Hayduck*, 45 N.Y.2d 925, 927, 411 N.Y.S.2d 224, 383 N.E.2d 870 (1978) (under doctrine of laches, delay of approximately two months can bar claim).

In terms of the stock options, Plaintiff claims that Legend should have provided her with shares of stock in January 2002. (FAC ¶ 20(d)(1) [noting that the alleged agreement commenced in January 2002 with "Class B shares (600) to be due, owing, and payable immediately for past services"].) Plaintiff alleged that she performed services for Legend after she left to work at Cowan, but later conceded that work was part of her supposed agreement for shares in January 2002. (Doc. No. 118–1, p. 16:18–19). Any salary claims arose at the latest in February of 2002, yet Plaintiff waited until October 2008 to file this lawsuit. In the meantime, Legend has operated its business, and sought financing for its business, with representations of its ownership that did not include Plaintiff. *Id.* Therefore, laches bars Plaintiff's claim for specific performance.

### 5. Plaintiff's Claim for Violation of *New York Labor Law Section 198*

**\*13** Plaintiff's sixth claim is for failure to pay wages under New York labor law section 198. New York Labor Law, Article 6, which governs an employers payment of wages and benefits to an employee, defines an employee as "any person employed for hire by an employer in any employment." New York Labor Law § 190(2). This definition excludes independent contractors. *Akgul v. Prime Time Transportation*, 293 A.D.2d 631, 741 N.Y.S.2d 553, 556 (2002).

#### a. Plaintiff was Not Employed at Legend

When determining whether an employer-employee relationship exists, the critical inquiry is the degree of control exercised by the purported employer over the results produced or the means used to achieve those results. *Bhanti v. Brookhaven Memorial Hospital Medical Center, Inc.*, 260 A.D.2d 334, 687 N.Y.S.2d 667, 669 (1999); *Bynog v. Cipriani Group Inc.*, 1 N.Y.3d 193, 770 N.Y.S.2d 692, 695, 802 N.E.2d 1090 (2003); *Barry & Sons, Inc. v. Instinct Productions LLC*, 5 Misc.3d 172, 783 N.Y.S.2d 225, 235 (2004) (reversed, in part, on other grounds). The factors relevant in assessing such control include whether the worker: (1) worked at her own conven-

ience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employers payroll; and (5) was on a fixed schedule. *Bynog*, 770 N.Y.S.2d at 695, 802 N.E.2d 1090; *Barry & Sons, Inc.*, 783 N.Y.S.2d at 235.

Here, the Court finds for the following reasons that the Plaintiff was not employed by Legend. First, Plaintiff worked at her own convenience, (Doc. No. 118–1, p. 20) and Legend did not supervise her work or work product, but simply received her work product when it was finished. *Id.* at 20:5, 783 N.Y.S.2d 225. Second, Plaintiff was not only free to engage in other employment, she did engage in other, full-time and exclusive employment. Plaintiff started working for Cowan in February of 2002, (FAC ¶ 25), and was paid a full salary from Cowan, awarded in a lawsuit judgment in Plaintiff's favor. (Doc. No. 118–1, p. 20:20–23). This salary included payment for services rendered to Legend. *Id.* at 20:23–24, 783 N.Y.S.2d 225. Third, Plaintiff did not receive any benefits during the period that she performed work for Legend and was never on Legend's payroll. *Id.* at 20:3–12, 783 N.Y.S.2d 225. Plaintiff admits she never received a paycheck from Legend, although she did receive a lump sum payment in the form of $10,000.00. *Id.* at 12–14, 783 N.Y.S.2d 225. Finally, Plaintiff did not work on a fixed schedule, but was responsible for completing tasks at her convenience. *Id.* at 20:4–5, 783 N.Y.S.2d 225. Based upon the foregoing, the Court finds that the Plaintiff cannot establish that she was employed by Legend. Accordingly, summary judgment is GRANTED for Defendants on the Plaintiff's sixth cause of action.

#### b. Summary Judgment is Appropriate Regardless of the Choice of Law

In Defendant's previous motion to dismiss, Judge Gonzalez determined that New Jersey law should be applied to Plaintiff's claims because Plaintiff was a New Jersey resident when the claims arose in October of 2002. (Doc. No. 37, p. 19:8–11). Plaintiff cannot continue to assert a claim based on New York law if the Court has already determined that this claim is governed by New Jersey law. Accordingly, summary judgment is GRANTED as to Plaintiff's claim for failure to pay wages under New York's labor law.

**\*14** Even if Plaintiff were to convince this Court that New York law should govern her claim, summary judgment is still appropriate. Plaintiff last resided in

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 4061773 (S.D.Cal.)
(Cite as: 2012 WL 4061773 (S.D.Cal.))

New York in April 2002 and the statute of limitations for this cause of action is six years. *See* N.Y. Lab. Law § 198 ("Notwithstanding any other provision of law, an action to recover upon a liability imposed by this article must be commenced within six years.") Plaintiff did not file this cause of action until October 2008 and thus her claim is barred by the statute of limitations.

### *Conclusion*

For the reasons set forth above, the Court rules as follows on the pending motions.

1) Plaintiff's ex parte applications, (Doc. Nos. 148 and 149), are DENIED;

2) Plaintiff's motion for transfer and for extension of time to file pre-trial documents, (Doc. No. 157), is DENIED;

3) Plaintiff's motion to stay preliminary pre-trial memo and witness list (Doc. No. 161), is DENIED AS MOOT;

4) Defendants' motion for summary judgment, (Doc. No. 118), is GRANTED;

5) Plaintiff's cross motion for summary judgment, (Doc. No. 132), is DENIED.

IT IS SO ORDERED.

S.D.Cal.,2012.
Gurvey v. Legend Films, Inc.
Slip Copy, 2012 WL 4061773 (S.D.Cal.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.