```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
                                   :
AMY R. GURVEY,
                                   :
                Plaintiff,             06 Civ. 1202 (LGS)(HBP)
                                   :
    -against-                          OPINION
                                   :   AND ORDER
COWAN, LIEBOWITZ & LATMAN, P.C.,
et al.,                            :
                Defendants.
                                   :
-----------------------------------X
```

        PITMAN, United States Magistrate Judge:


I.   Introduction


        I write to resolve several outstanding motions.  For

the reasons set forth below, (1) plaintiff's motion for leave to

serve a Fifth Amended Complaint (Docket Item 116) is denied, (2)

defendants' cross-motion to strike certain material from plain-

tiff's proposed Fifth Amended Complaint (Docket Item 119) is

denied as moot, (3) plaintiff's motion to disqualify the law firm

of Greenberg Traurig, LLP (Docket Item 150) is denied, (4)

plaintiff's motion for leave to serve defendants Michael Gordon

and Susan Gordon[1] and to compel discovery from them (Docket Item

---

        [1] "Subsequent to the filing of this lawsuit, Susan Gordon,
formally Susan Schick, had her name legally changed" (Memorandum
of Law in Support of Defendants' Motion to Dismiss the Complaint,
dated Feb. 22, 2013 (Docket Item 134), at 2 n.1).

150) is denied, (5) plaintiff's motion for an extension of time
to respond to defendants' discovery requests, my January 14, 2013
Order and defendants' motion for sanctions (Docket Item 154) is
denied and (6) plaintiff's motion for "advance sanctions" (Docket
Item 169) is denied.  Furthermore, by no later than August 5,
2013, plaintiff is ordered to show cause why sanctions should not
be imposed on her for her improper Rule 26(a)(1) disclosures and
her failure to comply with several of my Orders.  Finally, by no
later than August 5, 2013, defendants are directed to answer
plaintiff's Third Amended Complaint.

II.  <u>Facts</u>

        Plaintiff commenced this lawsuit on February 15, 2006
(Docket Item 1), alleging that her former employer, the law firm
of Cowan, Liebowitz & Latman, P.C. ("CLL") improperly disclosed
certain of her ideas and inventions to several of its clients.
On January 23, 2008, after several years of litigation and
several proposed amended pleadings, the Honorable Barbara S.
Jones, United States District Judge (retired), to whom this
matter was then assigned, granted plaintiff leave to file the
fourth iteration of her complaint, or her Third Amended Complaint
(Docket Item 41); the Third Amended Complaint was filed on March
8, 2008 (Third Amended Complaint, dated Mar. 4, 2008 (Docket Item

45)("3AC")).  Plaintiff's Third Amended Complaint, which remains

the operative pleading, "asserted numerous claims against various

defendants for, inter alia, misappropriation of trade secrets,

unfair competition, breach of fiduciary duty, tortious interfer-

ence with a contract, tortious interference with prospective

economic relations, attorney malpractice, violations of Section 2

of the Sherman Act, violations of state antitrust laws, and

violations of the Lanham Act."  Gurvey v. Cowan, Liebowitz &

Latman, P.C., 462 F. App'x 26, 28 (2d Cir. 2012).  On April 23,

2009, Judge Jones dismissed plaintiff's Third Amended Complaint

in its entirety.  Gurvey v. Cowan, Liebowitz & Latman, PC., 06

Civ. 1202, 2009 WL 1117278 (S.D.N.Y. Apr. 24, 2009) (Jones,

D.J.).

        On February 12, 2012, the Court of Appeals affirmed

most aspects of Judge Jones' order of dismissal, but vacated that

portion of her decision that dismissed plaintiff's claims for

legal malpractice and breach of fiduciary duty against CLL and

certain of its individually-named attorneys (collectively, the

"CLL defendants"), stating, in pertinent part:

          [W]e affirm the judgment to the extent that it dis-
          missed Gurvey's claims for misappropriation of trade
          secrets, unfair competition, and tortious interference
          with contract as time-barred, and to the extent that it
          dismissed her claims for false advertising, violations
          of state and federal antitrust laws, and tortious
          interference with prospective economic relations, for

3

failing to sufficiently plead claims upon which relief
may be granted.  However, we vacate the District
Court's judgment to the extent that it dismissed
Gurvey's claims for attorney malpractice and breach of
fiduciary duty against the Cowan defendants.  Constru-
ing the [Third Amended Complaint] liberally, accepting
all the factual allegations in the complaint as true,
and drawing all reasonable inferences in Gurvey's
favor, see Bell Atl. Corp., 550 U.S. at 570, 127 S.Ct.
1955, we conclude that Gurvey stated a plausible claim
by alleging that the defendants used the information
given to them as part of a confidential attorney-client
relationship to their own advantage by disclosing it to
other clients who then profited therefrom to Gurvey's
detriment, see Ulico Cas. Co. v. Wilson, Elser,
Moskowitz, Edelman & Dicker, 56 A.D.3d 1, 10, 865
N.Y.S.2d 14 (1st Dep't 2008).  We therefore remand the
cause for further proceedings before the District Court
on these claims.

Gurvey v. Cowan, Liebowitz & Latman, P.C., supra, 462 F. App'x at

30.

          Plaintiff's allegations concerning the claims remanded

by the Court of Appeals, i.e., plaintiff's claims for attorney

malpractice and breach of fiduciary duty against the CLL defen-

dants, can be summarized as follows.  Plaintiff was employed by

defendant CLL in an Of Counsel capacity at "a guaranteed base

salary of $150,000," pursuant to a January 25, 2002 employment

agreement (3AC ¶ 29).  CLL agreed to represent plaintiff before

the United States Patent and Trademark Office ("USPTO") by filing

two provisional patent applications ("PPAs") concerning technolo-

gies developed by plaintiff prior to being employed by CLL (3AC

¶¶ 28, 33).  Soon after beginning her employment, plaintiff was

4

"ordered" to present her "confidential proprietary projects, business plans, and inventions" at CLL's monthly partner's conference, and, after doing so, received a "standing ovation" (3AC ¶¶ 34-35). CLL did not tell plaintiff "that non-attorneys were also in attendance at the firm conference" (3AC ¶ 39). Defendant William Borchard, Esq., a CLL partner, told plaintiff that her business plans "would be of significant interest" to Clear Channel Communications ("CCC"), another client of CLL, and that "he preferred to have plaintiff as a client of CLL rather than as 'of counsel'" (3AC ¶¶ 36-37).

     In early May 2002, Borchard and two other CLL partners, Peter Porcino, Esq. and Simon Gerson, Esq., informed plaintiff that she would no longer be employed by CLL as Of Counsel (3AC ¶ 42). However, defendant Christopher Jensen, Esq., another CLL partner, told plaintiff that CLL still "had interest in the subject matter of plaintiff's patents and would file plaintiff's PPA's [sic] before the USPTO" (3AC ¶¶ 43).

     In August 2002, after plaintiff returned from a business trip on which she was sent by CLL, she discovered that she was locked out of her office (3AC ¶¶ 46-47). Plaintiff alleges that

          CLL told [her] that it was mailing her files but many
          items and proprietary confidential materials were never
          received including the complete disc directory of

plaintiff's computer directories, her Rolodex, confidential personal notes on the business plans related to the patent filings and certain of her confidential handouts at the first conference.  CLL also did not take adequate precautions to ensure that plaintiff's confidential trade secrets were protected.  Several boxes that plaintiff did receive showed signs of tampering and unauthorized access in that they had been opened and/or broken.  Some of plaintiff's files were left by the CLL Defendants in public places with access to anyone.

(3AC ¶ 48).

In February 2003, plaintiff was notified by the USPTO that CLL had withdrawn as the attorney on one of her patents (PPA #60,382,710) because of a conflict of interest, although the nature of the conflict was never revealed to plaintiff (3AC ¶¶ 50-51).  In March 2003, InstantLive, a former defendant in this action and an entity then affiliated with CCC, stated on its website that it "was offering a new added benefit to concert audience members allowing them to purchase live recordings of the concerts attended with their tickets" (3AC ¶ 55).  On May 5, 2003, The New York Times published an article describing InstantLive, a CCC venture with a business model allegedly identical to one of plaintiff's proprietary business concepts ("onsite distribution of live recordings at concerts") (3AC ¶ 52).  In Fall 2005, CCC formed an entity called LiveNation, and LiveNation acquired InstantLive (3AC ¶ 57).

On April 6, 2012, after the Court of Appeals' remand, Judge Jones ordered the remaining defendants to file their answer to the Third Amended Complaint by April 27, 2012 (Docket Item 97). However, on April 16, 2012, at plaintiff's request, Judge Jones granted plaintiff a 45-day stay of proceedings so that she could retain patent malpractice counsel (Docket Item 100).

On June 6, 2012, plaintiff filed a document entitled "Plaintiff's Pro Se's [sic] Ex Parte Application to Be Granted Expedited ECF Privileges; Expedited Preliminary Discovery documents Concerning Legend Films and an Order to Extend Stay of Other Proceedings for Additional 45 Days to Complete Retention of Counsel" (Docket Item 102). This document sought broad discovery, much of which related to a separate action plaintiff brought in California, Gurvey v. Legend Films, Inc., et al., 09-942 (AJB) (S.D. Cal.), prompting me to issue an Order on June 11, 2012 limiting discovery to "the claims and defenses in this action," namely, "plaintiff's claims against the Cowan defendants for attorney malpractice and breach of fiduciary duty" (Order, dated June 11, 2012 (Docket Item 103), at 2). On July 2, 2012 I granted plaintiff a second 45-day stay to obtain counsel (Docket Item 107).

On July 16, 2012, notwithstanding the stay that plaintiff had sought, plaintiff filed a document entitled "Motion for

7

Leave to File Fourth Amended Complaint Disovery [sic] and Media-
tion on Certain USPTO Damage Claims" (Docket Item 109).  The
proposed Fourth Amended Complaint, annexed to that motion,
asserted claims against the CLL defendants "premised on persis-
tent divided loyalty, egregious breach of fiduciary duty, aban-
donment, breach of NY's Disciplinary Rules of Professional
Conduct, 22 NYCRR 603, et seq., legal malpractice, legal patent
malpractice, fraud, fraudulent concealment, and continuing prima
facie intentional torts" (Proposed Fourth Amended Complaint,
dated July 11, 2012, annexed as Ex. 1 to Docket Item 109, at 1).

      On August 2, 2012, I lifted the stay in this matter and
ordered defendants to file their opposition to plaintiff's July
16, 2012 motion for leave to serve a Fourth Amended Complaint by
September 12, 2012, and ordered plaintiff to file her reply by
September 28, 2012 (Docket Item 111).  Defendants duly filed
their opposition on September 12, 2013 (Docket Items 112-14).

      On September 28, 2012, plaintiff filed a document
entitled "Plaintiff's Reply to Docket #115 Seeking Service of
Plaintiff's 5th Amended Complaint and Responding to Cowan's
Opposition" (Docket Item 116).  Annexed to this submission was a
proposed Fifth Amended Complaint, which was dated September 7,
2012, indicating that plaintiff had drafted it before defendants
had filed their opposition to her motion to serve a Fourth

Amended Complaint.  The Fifth Amended Complaint, much like the Fourth Amended Complaint, continued to assert claims against the CLL defendants for legal malpractice and breach of fiduciary duty, but appeared to predicate these claims on a set of factual allegations that were entirely different from those asserted in the Third Amended Complaint.  For example, plaintiff now alleged, inter alia, that in January 2002, she agreed to reduce her salary at CLL from $200,000 to $150,000 in exchange for patent services from CLL, and that the $50,000 differential was "earmarked for the patent retainer" (Proposed Fifth Amended Complaint, dated Sept. 7, 2012 ("Prop. 5AC"), annexed as Ex. 1 to Docket Item 116, ¶ 19).  The services that CLL allegedly agreed to provide to plaintiff also now extended well beyond the preparation of PPAs; plaintiff alleged that CLL

> breached the standard of care and its fiduciary duties of confidentiality and absolute loyalty to Plaintiff by withholding what it knew to be essential patent ser-vices at critical early stages in the prosecution process, failed to immediately edit and file Plain-tiff's long form applications that the firm had in draft, and thereby caused Plaintiff to forfeit maximum valuable patent claims, priority dates, license fees and patent service retainers that would have issued to Plaintiff no later than 2004-5 had Cowan performed according to the standard of care.  Instead, and be-cause Cowan did not perform, Plaintiff got less than optimal claims issued based on the same disclosures she gave to another law firm, but no claims issued at all until October, 2009.

(Prop. 5AC ¶ 8).  Plaintiff also added new allegations concerning
Legend Films, specifically, that CLL "engaged in back stage
conversations with officers of Legend Films, did not list Plain-
tiff of [sic] Legend's digital masking technology on either of
Legend's formal USPTO and EPO patent applications; and then
unilaterally and materially altered Plaintiff's contract rider
and gave it to Legend and its attorneys" (Prop. 5AC ¶ 9).  Based
on these and other new factual allegations, plaintiff's proposed
Fifth Amended Complaint, in addition to the claims remanded by
the Court of Appeals, asserted claims for "fraud and frivolous
litigation practices," "intentional torts," "negligence" and
"disgorgement of expanded [sic] retainers" (Prop. 5AC ¶¶ 75-106).

          On October 9, 2012, after an in-court conference,
plaintiff's motion to file a Fourth Amended Complaint was with-
drawn and I ordered that her September 28, 2013 submission was to
be deemed a motion to file a Fifth Amended Complaint (Docket Item
117).  I also limited discovery to the claims remanded by the
Court of Appeals, namely, plaintiff's malpractice and
breach-of-fiduciary duty claims, and ordered the parties to make
the disclosures required by Fed.R.Civ.P. 26 (a)(1) by November 6,
2012 (Docket Item 117).  On November 7, 2012, defendants filed
their opposition to plaintiff's motion to file a Fifth Amended

Complaint and also moved to strike certain allegedly impertinent material from the proposed pleading (Docket Items 119-22).

On January 2, 2013, after being granted an extension of time (Docket Item 127), plaintiff filed what purported to be her reply in further support of her motion to file a Fifth Amended Complaint (Plaintiff's Reply In support of motion to file and serve a Fifth Amended Complaint, dated Jan. 1, 2013 (Docket Item 129)("Pl. Reply")).  Again, however, although plaintiff's submission was styled as a reply, rather than respond to the arguments set forth in defendants' opposition, plaintiff argued that she should be allowed to assert even more new claims.  For example, plaintiff stated that she "now move[d] based on USPTO Solicitor General's November, 2012 document production to add two claims against [CLL] for expanded fraud damages for concealing documents to impede Plaintiff's discovery of her claims for ten years, and for [CLL]'s failure to supervise its individual attorneys" (Pl. Reply at 1).  Plaintiff further stated that "the Court must now permit Plaintiff, under unanimous cases of the Federal Circuit, [] to add expanded intrinsic and extrinsic fraud damages against Cowan.  Landmark Screens v. Morgan Lewis & Bockius, 676 F. 3d 1354, 102 USPQ2d 1521 (Fed. Cir. 2012), over and above the allegations in her 5AC" (Pl. Reply at 3 (emphasis in original)).  Plaintiff also now insisted, in stark contradiction to her

11

previous pleadings, that she had "never retained Cowan to file provisional patent applications" (Pl. Reply at 5).

On January 3, 2013, I held a discovery conference, at which I ordered plaintiff to respond to defendants' outstanding discovery requests by January 17, 2013 (Docket Item 130 at 1). In light of the breadth of several of plaintiff's own discovery requests, which clearly sought discovery beyond the claims remanded by the Court of Appeals, I also ordered that plaintiff provide to me, by January 17, 2013, written explanations of how each of her discovery requests served on CLL was relevant to her attorney malpractice and breach of fiduciary duty claims (Docket Item 130 at 2). To this day, plaintiff has not complied with this Order.

On February 22, 2013, defendants Michael Gordon and Susan Gordon moved to dismiss the Third Amended Complaint for plaintiff's alleged failure to serve them (Docket Items 132-37).

On March 27, 2013, defendants moved for sanctions pursuant to Fed.R.Civ.P. 37(b)(2) and (c)(l) based on plaintiff's "improper Rule 26 discovery disclosures and violations of this Court's discovery orders dated October 10, 2012 and January 14, 2013" (Docket Item 145).

On April 2, 2013, in response to defendants Michael and Susan Gordon's motion to dismiss, plaintiff filed a cross-motion

12

to disqualify Greenberg Traurig LLP, the law firm representing
the Gordons, for an extension of time "to cure any alleged
defective service upon defendants Schick and Gordon by Plain-
tiff's previous attorneys Squitieri & Fearon, LLP[2]," and to
compel the Gordons to respond to her discovery demands (Docket
Item 150 at 1-2).  Plaintiff also moved for "a writ of replevin
mandating that defendants Squitieri & Fearon, LLP, Olympio Lee
Squitieri, Esq. and Garry Stevens, Esq. . . . immediately produce
all Plaintiff's electronic files that pertain to Plaintiff's
representation" (Docket Item 152 at 1).  The Gordons opposed
plaintiff's cross-motion on April 10, 2013 (Docket Items 160-64).

On April 4, 2013, plaintiff filed a "Notice of Motion
for an Extension of Time" with a return date of April 11, 2013
and provided that "opposition paper must be submitted one week
prior to the return date" (Docket Item 154 at 1, 5).  Plaintiff
requested "an extension of time of 4-6 weeks to respond to
defendant Cowan, Liebowitz & Latman, PC's voluminous document
requests, to respond more completely to the Court's [January] 14,
2013 order on discovery, and to respond to Cowan defendants' Rule
37 motion for sanctions including move against Cowan for failing
to comply with Plaintiff's document production requests that

---

[2] Squiteri & Fearon were granted leave to withdraw as
counsel for plaintiff on September 21, 2010 (Docket Item 81).

13

seeks [sic] all Plaintiff's patent files and documents pertaining to patent applications filed for other clients in the field of Plaintiff's inventions" (Docket Item 154 at 1). Defendants objected to the motion as procedurally defective due to the one-day response demand, but nevertheless served a response on April 4, 2013, the very same day (Docket Item 156).

On May 8, 2013, defendants submitted a letter advising the Court that on April 8, 2013, sanctions were imposed on plaintiff by the United States District Court for the Southern District of California in an action she had commenced against Legend Films, Inc. and others (Letter from Richard Supple, Esq., dated May 8, 2013 (undocketed)("May 8 Letter"), at 1).

On May 17, 2013, plaintiff submitted a rambling, 56-page letter seeking, inter alia, "immediate advance sanctions against Cowan and Supple in the amount of $150,000 to cover Plaintiff's costs of an expensive appeal to the Ninth Circuit" (Docket Item 169 at 1).

III. Analysis

    A.   Motion to
          Amend

As a preliminary matter, based on plaintiff's January 2, 2013 Reply Memorandum, it is unclear whether plaintiff intends

14

the proposed Fifth Amended Complaint to be her operative plead-
ing.  Indeed, in that submission, as noted above, she states that
she seeks, "expanded intrinsic and extrinsic fraud damages . . .
over and above the allegations in [the Fifth Amended Complaint]"
(Pl. Reply at 3 (emphasis in original).  While this language
strongly indicates that plaintiff's proposed Fifth Amended
Complaint does not encompass all of the claims that she seeks to
assert, plaintiff's Reply Memorandum did not annex a proposed
pleading with the "expanded" allegations.  Thus, if I were to
construe plaintiff's reply as a motion for leave to serve a sixth
amended complaint, it would be defective because it did not
include the proposed amended pleading.  See, e.g., Abercrombie v.
Andrew College, 04 Civ. 7717 (KMK), 2006 WL 1716857 at *25
(S.D.N.Y. June 15, 2006) (Karas, D.J.) ("[I]n making a motion for
leave to amend, plaintiffs must attach a proposed amended com-
plaint so that the Court and the opposing party has an opportu-
nity to understand the exact changes proposed."); accord Am.
Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp., 233
F.R.D. 327, 329 (S.D.N.Y. 2005) (Lynch, then D.J., now C.J.);
Jonas v. Rich, 02 Civ. 498 (BSJ), 2004 WL 1542231 at *2 (S.D.N.Y.
July 8, 2004) (Jones, D.J.); 6 Charles A. Wright, Arthur R.
Miller & Mary K. Kane, Federal Practice & Procedure § 1485 at
688-89 n.3 (3d ed. 2010).  In any event, subsequent filings from

15

plaintiff suggest that she has not abandoned the present motion
(see, e.g., Docket Item 169, at 3 ("The new damning emails also
support Plaintiff's 5AC that must now be granted and ordered
filed, served and answered.")).  Accordingly, I conclude that
plaintiff's motion for leave to file a Fifth Amended Complaint
has not been withdrawn, and for the reasons set forth below, I
deny the motion.

          The standards applicable to a motion to amend a plead-
ing are well settled and require only brief review.  In general,
a motion to amend is governed by Fed.R.Civ.P. 15(a), which
provides that leave to amend should be freely granted when
justice so requires.  Fed.R.Civ.P. 15(a); Foman v. Davis, 371
U.S. 178, 182 (1962); McCarthy v. Dun & Bradstreet Corp., 482
F.3d 184, 200 (2d Cir. 2007); Aetna Cas. & Sur. Co. v. Aniero
Concrete Co., 404 F.3d 566, 603 (2d Cir. 2005); Dluhos v. Float-
ing & Abandoned Vessel, Known as "New York", 162 F.3d 63, 69 (2d
Cir. 1998); Gumer v. Shearson, Hammill & Co., 516 F.2d 283, 287
(2d Cir. 1974).  "Nonetheless, a 'district court has discretion
to deny leave for good reason, including futility, bad faith,
undue delay, or undue prejudice to the opposing party.'"
Sissel v. Rehwaldt, 12-952-CV, 2013 WL 2372296 at *4 (2d Cir.
June 3, 2013) (summary order), quoting Holmes v. Grubman, 568
F.3d 329, 334 (2d Cir. 2009); Lee v. Regal Cruises, Ltd., 916 F.

16

Supp. 300, 303 (S.D.N.Y. 1996) (Kaplan, D.J.), aff'd, 116 F.3d 465 (2d Cir. 1997); see McCarthy v. Dun & Bradstreet Corp., supra, 482 F.3d at 200; Ellis v. Chao, 336 F.3d 114, 126-27 (2d Cir. 2003); Montefiore Med. Ctr. v. Am. Prot. Ins. Co., 00 Civ. 3235 (LTS)(MHD), 2003 WL 21108261 at *1 (S.D.N.Y. May 14, 2003) (Swain, D.J.); Am. Home Assur. Co. v. Jacky Maeder (Hong Kong) Ltd., 969 F. Supp. 184, 187-88 (S.D.N.Y. 1997) (Kaplan, D.J.).

The Court of Appeals has also repeatedly noted that the trial court has broad discretion in ruling on a motion to amend. See, e.g., Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir. 2000); Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel, 145 F.3d 85, 89 (2d Cir. 1998); Guzman v. Bevona, 90 F.3d 641, 649 (2d Cir. 1996); see generally Grace v. Rosenstock, 228 F.3d 40, 53-54 (2d Cir. 2000).

A proposed amendment is futile when it fails to state a claim. Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir. 1990); Mina Inv. Holdings Ltd. v. Lefkowitz, 184 F.R.D. 245, 257 (S.D.N.Y. 1999) (Sweet, D.J.); Parker v. Sony Pictures Entm't, Inc., 19 F. Supp. 2d 141, 156 (S.D.N.Y. 1998) (Kaplan, D.J.), aff'd in pertinent part, vacated in part on other grounds sub nom., Parker v. Columbia Pictures Indus., 204 F.3d 326 (2d Cir. 2000); Yaba v. Cadwalader, Wickersham & Taft, 931 F. Supp. 271, 274 (S.D.N.Y. 1996) (Koeltl, D.J.); Prudential Ins. Co. v. BMC

Indus., 655 F. Supp. 710, 711 (S.D.N.Y. 1987) (Sweet, D.J.); see
generally Dluhos v. Floating & Abandoned Vessel Known as "New
York", supra, 162 F.3d at 69-70.  The party opposing the amend-
ment has the burden of demonstrating that a proposed amendment
would be futile.  Staskowski v. Cnty. of Nassau, 05 Civ. 5984
(SJF)(WDW), 2007 WL 4198341 at *4 (E.D.N.Y. Nov. 21, 2007); see
also Lugosch v. Congel, No. 00 Civ. 784 (RFT), 2002 WL 1001003 at
*1 (N.D.N.Y. May 14, 2002).

        A proposed amendment may be denied as futile "where the
claim or defense proposed to be added has no colorable merit."
Oliver v. DeMarinis & Co., 90 Civ. 7950 (SS), 1993 WL 33421 at *2
(S.D.N.Y. Jan. 29, 1993) (Lee, M.J.) (inner quotations omitted);
see also Ryder Energy Distrib. Corp. v. Merrill Lynch Commodi-
ties, Inc., 748 F.2d 774, 783 (2d Cir. 1984) (if the movant has
"colorable grounds for relief," justice requires that leave to
amend be granted in the absence of undue delay, bad faith, or
prejudice).  The "'colorable grounds' requirement mandates that a
district court may not deny a motion for leave to amend a plead-
ing [on futility grounds] when said pleading is sufficient to
withstand a motion to dismiss under Federal Rule of Civil Proce-
dure 12(b)(6)."  Children First Found. Inc. v. Martinez, No. 04
Civ. 0927 (NPM), 2007 WL 4618524 at *5 (N.D.N.Y. Dec. 27, 2007),
citing in part Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d

18

229, 244 (2d Cir. 2007); see also Estate of Ratcliffe v. Pradera

Realty Co., 05 Civ. 10272 (JFK), 2007 WL 3084977 at *4 (S.D.N.Y.

Oct. 19, 2007) (Keenan, D.J.); Journal Publ'g Co. v. Am. Home

Assur. Co., 771 F. Supp. 632, 635 (S.D.N.Y. 1991) (Leisure,

D.J.); Prudential Ins. Co. v. BMC Indus., Inc., supra, 655 F.

Supp. at 711.  In assessing the claimed futility of a proposed

amended pleading, the court must assume the truth of the factual

allegations set forth in the proposed amended pleading.  Edwards

v. City of N.Y., 07-CV-5286 (CPS)(RML), 2009 WL 1910740 at *1

(E.D.N.Y. June 29, 2009); Da Cruz v. Towmasters of N.J., 217

F.R.D. 126, 128 n.1 (E.D.N.Y. 2003); Binder v. Nat'l Life of Vt.,

02 Civ. 6411 (GEL), 2003 WL 21180417 at *2 (S.D.N.Y. May 20,

2003) (Lynch, then D.J., Cir. J.); Gabourel v. Bouchard Transp.

Co., 901 F. Supp. 142, 144 (S.D.N.Y. 1995) (Chin, then D.J., now

Cir. J.).

          In evaluating a motion under Rule 12(b)(6), the court

must determine whether the plaintiff has alleged any facially

plausible claims.  See Virgil v. Town of Gates, 455 F. App'x 36,

37 (2d Cir. 2012); Smith v. NYCHA, 410 F. App'x 404, 405-06 (2d

Cir. 2011).  A claim is plausible when its factual content

"allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged.  The plausibility

standard is not akin to a 'probability requirement,' but it asks

19

for more than a sheer possibility that a defendant has acted
unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (cita-
tions omitted). "Where a complaint pleads facts that are merely
consistent with a defendant's liability, it stops short of the
line between possibility and plausibility of entitlement to
relief." Ashcroft v. Iqbal, supra, 556 U.S. at 696 (internal
quotations omitted). Accordingly, "where the well-pleaded facts
do not permit the court to infer more than the mere possibility
of misconduct, the complaint has alleged -- but it has not
'show[n]' -- 'that the pleader is entitled to relief.'" Ashcroft
v. Iqbal, supra, 556 U.S. at 679, quoting Fed.R.Civ.P. 8(a)(2).

A motion to amend to allege a claim for fraud may also
be denied as futile for failure to comply with Fed.R.Civ.P.
9(b)'s heightened pleading requirements. See DDR Const. Servs.,
Inc. v. Siemens Indus., Inc., 09 Civ. 9605 (ALC)(JLC), 2012 WL
4711677 at *3-*4 (S.D.N.Y. Sept. 26, 2012) (Carter, D.J.); Cohen
v. Greenberg, 09 Civ. 3012 (PKC), 2010 WL 4159628 at *2-*3
(S.D.N.Y. Oct. 13, 2010) (Castel, D.J.).

Here, all of plaintiff's proposed new claims go far
beyond the scope of the Court of Appeals' remand and are futile.

First, with respect to plaintiff's new claim for fraud,
plaintiff provides no justification for her failure to raise this
claim until more than ten years after many of the alleged events

giving rise to the claim.  Even assuming, however, that plain-
tiff's fraud claim is not time-barred,[3] the claim is far too
threadbare to meet the heightened pleading standard of Rule 9(b).

> Under New York law, the elements of a common law fraud
> claim are "[1] a misrepresentation or a material omis-
> sion of fact which was false and known to be false by
> defendant, [2] made for the purpose of inducing the
> other party to rely upon it, [3] justifiable reliance
> of the other party on the misrepresentation or material
> omission, and [4] injury." Premium Mortg. Corp. v.
> Equifax, Inc., 583 F.3d 103, 108 (2d Cir. 2009) (cita-
> tion omitted).  Under Federal Rule of Civil Procedure
> 9(b), Plaintiff must meet a heightened pleading stan-
> dard on its fraud claims. Plaintiff must "state with
> particularity the circumstances constituting fraud."
> Fed.R.Civ.P. 9(b).  This means that a fraud claim
> alleging material misrepresentations or omissions must
> "(1) detail the statements (or omissions) that the
> plaintiff contends are fraudulent, (2) identify the
> speaker, (3) state where and when the statements (or
> omissions) were made, and (4) explain why the state-
> ments (or omissions) are fraudulent." Eternity Global
> Master Fund, Ltd. v. Morgan Guar. Trust Co., 375 F.3d
> 168, 187 (2d Cir. 2004) (citation omitted).

Woori Bank v. Citigroup Inc., 12 Civ. 3868 (LTS), 2013 WL 1235648
at *4 (S.D.N.Y. Mar. 27, 2013) (Swain, D.J.); see also Cohen v.
S.A.C. Trading Corp., 711 F.3d 353, 359 (2d Cir. 2013).  In
alleging fraud, plaintiff provides only vague and conclusory

---

[3] "[T]he New York statute of limitations for a common law
fraud claim is 'the greater of six years from the date the cause
of action accrued or two years from the time the plaintiff or the
person under whom the plaintiff claims discovered the fraud, or
could with reasonable diligence have discovered it.'" Cohen v.
S.A.C. Trading Corp., 711 F.3d 353, 361 n.3 (2d Cir. 2013),
quoting N.Y. C.P.L.R. § 213(8).

allegations that CLL "lured" her to accept employment through

"false promises" that "certain patent partners would perform the

work on Plaintiff's inventions and would to send Plaintiff

medical patent work so Plaintiff could meeting [sic] threshold

billing requirements" (Prop. 5AC ¶ 76).  According to plaintiff,

the defendants "knew these partners were exiting the firm so that

its own compliance with the contract it offered was legally

impossible" (Prop. 5AC ¶ 77).  Plaintiff provides no information

as to who made the alleged misrepresentations, what the specific

misrepresentations were, when such misrepresentations were made,

or why they were false when made.  In re Merrill Lynch Auction

Rate Sec. Litig., 851 F. Supp. 2d 512, 533 (S.D.N.Y. 2012)

(Preska, D.J.) ("In this Circuit, Fed.R.Civ.P. 9(b) requires that

fraud allegations include the who, what, when, where and why of

each statement alleged to be fraudulent."); In re Initial Pub.

Offering Sec. Litig., 241 F. Supp. 2d 281, 327 (S.D.N.Y. 2003)

(Scheindlin, D.J.) (Fraud may be pled "without long or highly

detailed particularity" so long as the complaint identifies the

who, what, when, where and why of the alleged fraud).  Without

such basic information, plaintiff simply does not "state with

particularity the circumstances constituting fraud," Fed.R.Civ.P.

9(b), and this claim would, therefore, be unable to withstand a

motion to dismiss.

Plaintiff's new claim for "frivolous litigation prac-
tices" is equally defective.  Plaintiff's proposed Fifth Amended
Complaint contains a litany of allegations concerning defendants'
alleged misconduct during the course of this litigation, includ-
ing "defrauding this Court by averring in January, 2008 that
Plaintiff had agreed to withdraw certain claims against Cowan,
when Plaintiff had made no such representations" (Prop. 5AC ¶
85), and obtaining "a frivolous stay on discovery by
intentionality omitting the rider to Plaintiff's of counsel
contract in sworn papers that falsely averred under oath that
what Cowan was appending was Plaintiff's entire contract" (Prop.
5AC ¶ 88).  Assuming, without deciding, the truth of plaintiff's
allegations, mechanisms to provide a remedy exist under 28 U.S.C.
§ 1927, Fed.R.Civ.P. 11 and 37 and the Court's inherent power,
each of which has its own substantive requirements.  Plaintiff
cites no authority, and I am aware of none, that permits an
independent tort claim based on alleged misconduct in a litiga-
tion.

Plaintiff also attempts to assert claims for certain
unspecified "intentional torts" (see Prop. 5AC ¶¶ 94-96).  In
support of these claims, plaintiff states only that "Cowan's
withholding of Plaintiff's patent services was intentional and
calculated to prevent issuance to Plaintiff of patent claims by

23

2004-5 that could be enforced against its clients," and that
"Cowan intentionally withheld from Plaintiff the stellar services
it performed for Legend in 2002 that got Legend issued US and EPO
patents in two years" (Prop. 5AC ¶¶ 92-96).  To the extent
plaintiff is attempting to re-plead tort claims that the Court of
Appeals has already found to be time-barred, including misappro-
priation of trade secrets, unfair competition, and tortious
interference with contract, such claims are precluded by the
doctrine of <u>res judicata</u> and, thus, futile.  Insofar as plaintiff
intends to assert other tort claims, her mere allegation that she
was subjected to "intentional torts" is impermissibly vague and
fails to comply with Federal Rule of Civil Procedure 8(a)(2).
<u>See</u> <u>Sheehy v. Brown</u>, 335 F. App'x 102, 104 (2d Cir. 2009) (dis-
missal appropriate where "allegations are so vague as to fail to
give the defendants adequate notice of the claims against them").
Accordingly, plaintiff's "intentional tort" claims would not
withstand a motion to dismiss and are futile.

     The remaining new claims can be summarily dispatched.
Plaintiff's new negligence claim (<u>see</u> Prop. 5AC ¶¶ 97-103) is
entirely duplicative of her legal malpractice claim, and plain-
tiff alleges no facts suggesting that the CLL defendants breached
any duty owed to her separate and apart from the duty they owed
to her as her counsel.  Finally, plaintiff's new "claim" for

"disgorgement of expanded retainers," to the extent it is even comprehensible, appears to be in the nature of a remedy, not a separate claim.

Accordingly, for all of the reasons stated above, there is ample justification for denying plaintiff's motion to amend on the basis of futility alone. However, in the interest of thoroughness, and because plaintiff has also exhibited conduct suggesting dilatory purposes and bad faith, I shall address those prongs of the analysis as well.

Although there is authority that delay alone, in the absence of prejudice, is an insufficient basis on which to deny a motion to amend, Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 234-35 (2d Cir. 1995); Middle Atl. Util. Co. v. S.M.W. Dev. Corp., 392 F.2d 380, 384 (2d Cir. 1968), nevertheless, when a motion to amend is made after a long delay, some explanation for the delay is necessary. Dilworth v. Goldberg, 10 Civ. 2224 (JMF)(GWG), 2012 WL 4017789 at *22 (S.D.N.Y. Sept. 13, 2012) (Gorenstein, M.J.), quoting N.H. Ins. Co. v. Total Tool Supply, Inc., 621 F. Supp. 2d 121, 124 (S.D.N.Y. 2009) ("A district court 'may deny a motion to amend when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly when the movant offers no excuse for the delay.'"); Reisner v. Gen. Motors Corp., 511

25

F.Supp. 1167, 1172 (S.D.N.Y. 1981) (Goettel, D.J.), aff'd, 671
F.2d 91 (2d Cir. 1982) (delay in seeking to amend pleading
requires some explanation); see also Sissel v. Rehwaldt, supra,
2013 WL 2372296 at *4 (denial of leave to amend after delay of
more than two years not an abuse of discretion where movant
offered "no explanation for delay or why the new causes of action
were not asserted in the original complaint").

Plaintiff's motion to file a Fifth Amended Complaint
was deemed filed on November 28, 2012, more than six-and-a-half
years after the filing of plaintiff's original complaint, and
approximately ten years after the events giving rise to this
litigation.  In spite of this delay, nowhere in any of plain-
tiff's numerous and voluminous submissions does she provide any
credible justification or explanation for her failure to assert
her new claims, aside from vague and incomprehensible arguments
about tolling and spoliation (see Docket Item 169 at 2-3).  The
lack of any clear explanation is telling, given that plaintiff's
new allegations appear to be predicated on facts that plaintiff
would have known all along, including the purported existence of
a $50,000 retainer agreement.  The fact that plaintiff, until
recently, was an attorney,[4] makes her failure to assert such

---

[4] On December 4, 2012, plaintiff licence to practice was
(continued...)

claims until nearly a decade after their accrual all the more troubling.  Even more disturbing is plaintiff's pattern of moving to amend her complaint, waiting for defendants to oppose her motion, and then seeking to further amend her pleadings in her reply papers.  Such a tactic, which appears calculated to frustrate any attempt by defendants to formulate meaningful responses, is the very essence of dilatory motive and bad faith.

The numerous misrepresentations in plaintiff's motion papers are additional evidence of her bad faith.  For example, in her Reply Memorandum she refers to the "Second Circuit's February 2012 order upholding of [her] patent malpractice, breach of fiduciary duty, breach of attorney client privilege and fraud claims against Cowan defendants" (Pl. Reply at 2).  It is clear that the Second Circuit ruled that plaintiff's Third Amended Complaint had stated claims for only malpractice and breach of fiduciary duty; the Court of Appeals affirmed the dismissal of her other claims.  She also states that "[t]hus far the [Southern District of California] has denied Plaintiff's claim for specific

---

[4](...continued)
suspended for six months, effective thirty days from that date. In re Gurvey, 102 A.D.3d 197, 200, 958 N.Y.S.2d 5 (2012) appeal dismissed, 20 N.Y.3d 1085 (2013) ("Furthermore, respondent's pursuit of frivolous and vexatious litigation, as well as her misrepresentations to the court, warrant suspension.").

performance to have her stock issued in Legend" (Pl. Reply at 20), when in fact, that court had already dismissed plaintiff's claims in their entirety.  Gurvey v. Legend Films, Inc., 3:09-CV-00942 (AJB), 2012 WL 4061773 (S.D. Cal. Sept. 14, 2012) reconsideration denied, 3:09-CV-00942 AJB, 2013 WL 244115 (S.D. Cal. Jan. 22, 2013).  These statements, only two examples among many, are clearly intended to mislead the Court, and such behavior is sadly consistent with plaintiff's lengthy and well-documented history of misconduct in other litigation (see Ex. Y to Docket Item 147 (collecting cases)), including the recent imposition of sanctions against her for repeated attempts to amend her pleadings "to add new allegations based on a complicated theory of Defendants defrauding her former employer" after the dismissal of her case (see Order Granting in Part and Denying in Part Motion for Sanctions, Gurvey v. Legend Films, Inc., 3:09-CV-00942 (AJB) (S.D. Cal. Apr. 8, 2013) annexed as Ex. 1 to Letter from Hinshaw & Culbertson LLP, dated May 8, 2013 (undocketed)).

Finally, I note that the motion to amend should be denied on the ground of prejudice to defendants.  Indeed, the prejudice to defendants is not just prospective; it has already occurred.  On multiple instances, defendants have wasted time and money to responding to plaintiff's repeated attempts to amend her pleadings only for plaintiff, with no forewarning, to attempt to

further amend those pleadings in her reply papers to assert new claims. Given the history of this case, allowing plaintiff leave to file what would be the sixth iteration of her complaint would be grossly unfair. This case is more than seven years old and cannot remain at the pleading stage in perpetuity.

Thus, for all of the reasons discussed above, plaintiff's motion for leave to amend is denied. Defendants are directed to answer the Third Amended Complaint by no later than August 5, 2013. Additionally, because the Third Amended Complaint remains the operative pleading, defendants' motion to strike allegations from plaintiff's Fifth Amended Complaint is denied as moot.

B.   Defendants' Motion
     <u>For Sanctions</u>

Defendants urge that sanctions be imposed on plaintiff because her Rule 26(a)(1) disclosures "(i) did not produce or describe any documents relevant to this case, (ii) listed numerous witnesses who have nothing to do with this case, and (iii) did not set forth required damages calculations or provide any backup damages documents" (Memorandum of Law in Support of Defendants' Motion to Sanction Plaintiff Pursuant to Fed.R.Civ.P. 37(b)(2) and (c)(1), dated Mar. 27, 2013 (Docket Item 147)("Def.

29

Sanct. Mem."), at 1).  Defendants further argue that sanctions

are warranted because,

> for more than two months, Gurvey has blatantly disre-
> garded and violated this Court's orders, dated October
> 10, 2012 and January 14, 2013, by (a) refusing to limit
> her discovery demands to matters at issue in her Third
> Amended Complaint ("TAC"), (b) failing to respond to
> the Court's order that she explain and justify her
> prolix, improper discovery demands, and (c) failing to
> respond to the Cowan Defendants' discovery demands.

(Def. Sanct. Mem. at 1).  Defendants submitted a supplemental

declaration in further support of their motion for sanctions on

June 18, 2013, after what they deemed to be deficient responses

by plaintiff to their document demands (Docket Item 171).

Plaintiff has not responded to defendants' motion for

sanctions.  Instead, on April 4, 2013, plaintiff moved for "an

extension of time of 4-6 weeks to respond to defendant Cowan,

Liebowitz & Latman, PC's voluminous document requests, to respond

more completely to the Court's January 14, 2013 order on discov-

ery, and to respond to Cowan defendants' Rule 37 motion for

sanctions" (Docket Item 154).

Rule 37(b)(2) provides that a court may impose sanc-

tions against a party that "fails to obey an order to provide or

permit discovery . . . ."  Salahuddin v. Harris, 782 F.2d 1127,

1132-33 (2d Cir. 1986).  Sanctions may be granted against a party

under Rule 37(b)(2) if there is noncompliance with an order,

30

"notwithstanding a lack of wilfulness or bad faith, although such factors 'are relevant . . . to the sanction to be imposed for the failure.'" Auscape Int'l v. Nat'l Geographic Soc'y, 02 Civ. 6441 (LAK), 2003 WL 134989 at *4 (S.D.N.Y. Jan. 17, 2003) (Kaplan, D.J.), quoting 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2283, at 608 (2d ed. 1994); see Melendez v. Ill. Bell Tel. Co., 79 F.3d 661, 671 (7th Cir. 1996) ("Bad faith . . . is not required for a district court to sanction a party for discovery abuses.  Sanctions are proper upon a finding of wilfulness, bad faith, or fault on the part of the noncomplying litigant." (citations omitted)); Alexander v. Fed. Bureau of Investigation, 186 F.R.D. 78, 88 (D.D.C. 1998) ("In making the determination of whether to impose sanctions, Rule 37(b)(2) does not require a showing of willfulness or bad faith as a prerequisite to the imposition of sanctions upon a party." (citations omitted)).  The decision to impose sanctions "is committed to the sound discretion of the district court and may not be reversed absent an abuse of discretion." Luft v. Crown Publishers, Inc., 906 F.2d 862, 865 (2d Cir. 1990), citing, inter alia, Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 642 (1976) (per curiam); see Design Strategy, Inc. v. Davis, 469 F.3d 284, 294 (2d Cir. 2006) ("A district court has wide discretion in imposing sanctions, including severe sanc-

tions, under Rule 37(b)(2) . . . ."); Daval Steel Prods. v. M/V
Fakredine, 951 F.2d 1357, 1365 (2d Cir. 1991) (same); Dove v.
City of New York, 06 Civ. 1096 (SAS), 2006 WL 3802267 at *2
(S.D.N.Y. Dec. 26, 2006) (Scheindlin, D.J.) (same); see generally
Southern New England Tel. Co. v. Global NAPS Inc., 624 F.3d 123,
144-45 (2d Cir. 2010).

Rule 37(b)(2) directs a court to "make such orders in
regard to the failure as are just," including, inter alia,
striking the party's pleading, precluding the introduction of
certain evidence, or dismissing the action or rendering a judg-
ment by default.  Fed.R.Civ.P. 37(b)(2).  Additionally, the court
must impose reasonable expenses and attorney's fees on the
disobedient party "unless the court finds that the failure was
substantially justified or that other circumstances make an award
of expenses unjust."  Fed.R.Civ.P. 37(b)(2).

> "In deciding whether to impose sanctions under
> Rule 37, the Court considers the following factors:
> '(1) the willfulness of the noncompliant party or the
> reasons for noncompliance; (2) the efficacy of lesser
> sanctions; (3) the duration of the period of noncompli-
> ance; and (4) whether the noncompliant party had been
> warned of the consequences of his noncompliance.'
> Nieves v. City of New York, 208 F.R.D. 531, 535
> (S.D.N.Y. 2002) (citing Bambu Sales, Inc. v. Ozak
> Trading Inc., 58 F.3d 849 (2d Cir. 1995))."

<u>Oseni v. Tristar Patrol Servs.</u>, 05 Civ. 2875(RJD)(LB), 2006 WL
2972608 at *7 (E.D.N.Y. Oct. 18, 2006); <u>accord</u> <u>Agiwal v. Mid
Island Mortg. Corp.</u>, 555 F.3d 298, 302-03 (2d Cir. 2009).

The harsher remedies, such as preclusion of certain
evidence, while permitted under Rule 37, "should be imposed only
in rare situations . . . ." <u>Update Art, Inc. v. Modiin Publ'g,
Ltd.</u>, 843 F.2d 67, 71 (2d Cir. 1988). "Such a severe sanction is
justified 'when the failure to comply with a court order is due
to willfulness or bad faith, or is otherwise culpable.'" <u>Izzo v.
ING Life Ins. & Annuity Co.</u>, 235 F.R.D. 177, 186 (E.D.N.Y. 2005),
<u>quoting</u> <u>Daval Steel Prods. v. M/V Fakredine</u>, <u>supra</u>, 951 F.2d at
1365.

Fed.R.Civ.P. 37(c)(1) provides as follows:

(1) **Failure to Disclose or Supplement.**  If a party
fails to provide information or identify a witness as
required by Rule 26(a) or (e), the party is not allowed
to use that information or witness to supply evidence
on a motion, at a hearing, or at a trial, unless the
failure was substantially justified or is harmless.  In
addition to or instead of this sanction, the court, on
motion and after giving an opportunity to be heard:

> (A) may order payment of the reasonable expenses,
> including attorney's fees, caused by the failure;

> (B) may inform the jury of the party's failure;
> and

> (C) may impose other appropriate sanctions, in-
> cluding any of the orders listed in Rule
> 37(b)(2)(A)(i)-(vi).

"The purpose of Rule 37(c) is to prevent the practice of 'sand-bagging' an adversary with new evidence." Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 280 F.R.D. 147, 156 (S.D.N.Y. 2012) (Marrero, D.J.), citing Ebewo v. Martinez, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004) (Koeltl, D.J.); Johnson Electric North America Inc. v. Mabuchi Motor America Corp., 77 F. Supp. 2d 446, 458-59 (S.D.N.Y. 1999) (Sprizzo, D.J.). Although there is some language in the Advisory Committee Notes to the 1993 amendments to Rule 37 suggesting that preclusion is intended as an "automatic sanction" for untimely disclosures, the Court of Appeals has explained that the struc-ture of the Rule does not warrant this interpretation and has directed District Courts to use a more flexible approach in assessing the consequences of a party's untimely disclosure or amendment of a disclosure previously made. Design Strategy Inc. v. Davis, supra, 469 F.3d at 296-98. Specifically, the Court of Appeals has identified four factors to be considered in determin-ing whether an order of preclusion is appropriate: "(1) the party's explanation for the failure to comply with the disclosure requirement, (2) the importance of the excluded evidence, (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony, and (4) the possibility of a continuance." Kam Hing Enterprises, Inc. v. Wal-Mart Stores,

34

Inc., 359 F. App'x 235, 237 (2d Cir. 2010), citing Design Strat-
egy Inc. v. Davis, supra, 469 F.3d at 296; accord Zerega Ave.
Realty Corp. v. Hornbeck Offshore Transp., LLC, 571 F.3d 206, 213
(2d Cir. 2009).

        As an initial matter, plaintiff principally relies on
two grounds in support her motion for an extension of time:  "two
emergent hospitalizations in December, 2012 and January, 2013 for
Clostridium difficile colitis and acute diverticulitis," and
"[t]he toxic waste and friable asbestos contamination of Plain-
tiff's NJ home []on May 5, 2009," (Docket Item 154 at 1-4).  I
find these excuses to be baseless and deny plaintiff's motion for
an extension of time.  Plaintiff's purported ailments did not
prevent her from making numerous other filings during the time
period she claims to have been unable to respond.

        With respect to defendants' motion for sanctions, after
a thorough review of defendants' motion papers and the extensive
attached exhibits, there is compelling evidence that plaintiff
has violated both Fed.R.Civ.P. 37(b)(2) and (c)(1).  First,
plaintiff's disclosures made pursuant to Rule 26(a)(1) are
deficient in numerous respects.  Rather than adhering to the
requirements of Rule 26(a)(1), plaintiff's "disclosures" consist
of lengthy arguments about the merits of her case interspersed
with broad document demands (see generally Docket Item 125).

35

Instead of identifying the documents within her possession, custody, or control on which she will rely, plaintiff provides a list of 53 "documents or categories of documents in hard and electronic format may be used by Plaintiff in support of her claims or defenses and are requested in discovery," many of which have tenuous or no relevance to the claims in this litigation (Docket Item 125 at 20-24).  With respect to the identification of witnesses, plaintiff identifies more than thirty individuals and entities, a number of whom have no logical connection to plaintiff's claims, including "Solicitor General, European Patent Office," and "Major League Baseball/MLB Advanced Media" (Docket Item 125 at 17-19).  Finally, under the heading "Damage Calcula-tions," plaintiff submitted only the following:  "Plaintiff's damages are to be calculated public documents [sic] and if that is not sufficient, by experts" (Docket Item 125 at 24).  These disclosures are plainly defective, and it appears that plaintiff has made no attempt to supplement or amend them, despite being informed of their deficiencies by defendants (see Ex. H to Declaration of J. Richard Supple, Jr. in Support of Motion for Discovery Sanctions, filed Mar. 27, 2013 ("Supple Decl.")(Docket Item 146)).

Plaintiff has also ignored my Orders of October 10, 2012 and January 14, 2013, and in doing so, violated Fed.R.Civ.P.

36

37(b)(2).  My October 10, 2012 Order explicitly limited discovery to plaintiff's malpractice and breach-of-fiduciary duty claims. However, as evidenced by, among other things, the document demands contained within plaintiff's defective Rule 26(a)(1) disclosures and plaintiff's first set of document demands and interrogatories (Ex. I to Supple Decl.), plaintiff has sought discovery of extraordinary breadth that is far beyond the scope of the two claims remanded by the Court of Appeals.  In addition, to this day, plaintiff has disregarded my Order of January 14, 2013 by failing to explain in writing how each of her discovery requests to CLL is relevant to the remaining claims.  Plaintiff has offered no explanation for her cavalier attitude with respect to compliance with these Orders.

In short, for the reasons stated above, I conclude that defendants have made a _prima_ _facie_ showing that plaintiff has violated Fed.R.Civ.P. 37(b)(2) and (c)(1).  Nevertheless, because plaintiff is proceeding _pro_ _se_, and in the interest of ensuring a complete record, I shall afford plaintiff a final opportunity to attempt to explain her conduct and/or provide mitigating evidence on her behalf.  Accordingly, by no later than August 5, 2013, I direct plaintiff to show cause, in writing, why she should not be subject to sanctions for her defective Rule 26(a)(1) disclosures and her failure to comply with my discovery orders dated October

10, 2012 and January 14, 2013.  No extensions of this deadline
shall be granted.

    C.   <u>Writ of Replevin</u>

        Plaintiff also moves for a writ of replevin mandating
the production of "all Plaintiff's electronic files that pertain
to Plaintiff's representation" from her former attorneys,
Squitieri & Fearon, who she refers to as "defendants," but who
are not parties to this action (Docket Item 152 ¶ 1).  In a
letter dated June 11, 2013, plaintiff indicates that she made an
identical motion in a separate action against Squitieri & Fearon
for legal malpractice currently pending in New York state court,
<u>see</u> <u>Gurvey v. Squitieri & Fearon LLP, et al.</u>, Ind. No.
102516-2012 (Sup. Ct. N.Y. Co.), and that the motion had been
granted (<u>see</u> Plaintiff's 2nd Status Letter, dated June 11, 2013
(Docket Item 175, at 1 ("Plaintiff was granted a writ of replevin
by Supreme Court (Index No. 12/102516 on April 30, 2013) and S&F
turned over 4 CDs of voluminous electronic files the second week
of May.")).  Petitioner's application for a writ of replevin has
been rendered moot by the decision of the state court.[5]

_____

    [5] Even if petitioner's application for a writ of replevin
were not moot, it would be barred by the doctrine of <u>res</u>
<u>judicata</u>, because an identical motion has also been made and
                          (continued...)

D.    Plaintiff's Motion
      to Disqualify
      Greenberg Traurig LLP


    Plaintiff also moves to disqualify Greenberg Traurig
LLP, attorneys for Michael and Susan Gordon, because "[t]he chair
patent partner at defendant Cowan Liebowitz in December, 2001
assigned to protect Plaintiff's inventions was Michael Wolfson,
Esq.," who was "given access to Plaintiff formal draft patent
applications, drawings, schematics, specifications and claims,
exited the firm 2-3 months after access and then later in 2002,
upon belief, joined [Greenberg Traurig] as an equity partner"
(Docket Item 153 at 1-2).  According to plaintiff "[b]ecause
Wolfson will be a material witness at trial, under the Disciplin-
ary Rules, he and his firm's conflicts preclude their represent-
ing any defendant in this lawsuit" (Document Item 153 at 2).

    In response, Greenberg Traurig argues that plaintiff's
motion is legally unsupportable.  They provide an affidavit from
Mr. Wolfson, in which he states that he that he left Greenberg
Traurig in April 2009, that he was never plaintiff's "lead patent
attorney" at CLL, never performed any work on behalf of plain-

---

    [5](...continued)
ruled upon in her lawsuit against Legend Films in the Southern
District of California.  See Gurvey v. Legend Films, Inc., supra,
2013 WL 1883229 at *1-*2 (S.D. Cal. May 3, 2013).

tiff, and never improperly disclosed any of plaintiff's confiden-
tial information (Docket Item 164 ¶¶ 3-7).  The Gordons' present
attorney, Michael Berlin, Esq., states that he joined Greenberg
Traurig in January 2011, after Wolfson had already left the firm
(Docket Item 161 at ¶ 3).

The standard for a motion for disqualification was
succinctly summarized by the Honorable Paul A. Engelmayer, United
States District Judge, in Daudier v. E & S Med. Staffing, Inc.,
12 Civ. 206 (PAE), 2012 WL 3642823 at *1-*2 (S.D.N.Y. Aug. 23,
2012):

> Disqualification is viewed "with disfavor in this
> Circuit," Bennett Silvershein Assocs. v. Furman, 776
> F.Supp. 800, 802 (S.D.N.Y. 1991), because it "impinges
> on parties' rights to employ the counsel of their
> choice." Stratavest Ltd. v. Rogers, 903 F.Supp. 663,
> 666 (S.D.N.Y. 1995).  The Second Circuit has noted the
> "high standard of proof["] required for disqualifica-
> tion motions because they are "often interposed for
> tactical reasons, and that even when made in the best
> faith, such motions inevitably cause delay." Evans v.
> Artek Sys. Corp., 715 F.2d 788, 791-92 (2d Cir. 1983)
> (internal quotation marks omitted); see also Gov't
> India v. Cook Indus., Inc., 569 F.2d 737, 739 (2d Cir.
> 1978).
>
> The disqualification of counsel is, however, "a
> matter committed to the sound discretion of the dis-
> trict court." Cresswell v. Sullivan & Cromwell, 922
> F.2d 60, 72 (2d Cir. 1990).  A federal court's power to
> disqualify an attorney derives from its "inherent power
> to 'preserve the integrity of the adversary process.'"
> Hempstead Video, Inc. v. Inc. Vill. of Valley Stream,
> 409 F.3d 127, 132 (2d Cir. 2005) (quoting Bd. of Educ.
> v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979)).
> Disqualification "is only appropriate where allowing

40

the representation to continue would pose 'a signifi-
cant risk of trial taint.'"  <u>Team Obsolete Ltd. v.
A.H.R.M.A. Ltd.</u>, No. 01-cv-1574, 2006 WL 2013471, at *3
(E.D.N.Y. July 18, 2006) (<u>citing</u> <u>Glueck v. Jonathan
Logan, Inc.</u>, 653 F.2d 746, 748 (2d Cir. 1981)). "'[A]ny
doubt is to be resolved in favor of disqualification.'"
<u>Gurney's Inn Resort & Spa Ltd v. Benjamin</u>, No.
10-cv-3993, 2012 WL 2951373, at *5 (E.D.N.Y. July 20,
2012) (<u>quoting</u> <u>Hull v. Celanese Corp.</u>, 513 F.2d 568,
571 (2d Cir. 1975)).

   "One recognized form of taint arises when an
attorney places himself in a position where he could
use a client's privileged information against that
client." <u>Hempstead Video</u>, 409 F.3d at 133.  If an
attorney successively represents a client and another
party with interests directly adverse to that client,
the attorney may be disqualified if:

     (1)  the moving party is a former client of the
          adverse party's counsel;

     (2)  there is a substantial relationship between
          the subject matter of the counsel's prior
          representation of the moving party and the
          issues in the present lawsuit; and

     (3)  the attorney whose disqualification is sought
          had access to, or was likely to have had
          access to, relevant privileged information in
          the course of his prior representation of the
          client.

<u>Id</u>.

   Plaintiff's motion is frivolous and is clearly made for
the purpose of delaying the adjudication of the Gordon defen-
dants' pending motion to dismiss.  It is telling that, in moving
to disqualify Greenberg Traurig based on the theory that
Wolfson's purported conflict should be imputed to the entire law
firm, plaintiff omits the fact that Mr. Wolfson left Greenberg

41

Traurig in April 2009 and never overlapped with the attorney representing the Gordons.  Plaintiff cites no legal authority warranting disqualification under such circumstances, and there appears to be none.  In any event, plaintiff's argument must fail because it is clear that at no point in time was she even a client of Greenberg Traurig.  Thus, she is unable satisfy the first prong of the <u>Hempstead Video</u> test, because she is not "former client of the adverse party's counsel." <u>Hempstead Video, Inc. v. Inc. Vill. of Valley Stream</u>, 409 F.3d 127, 133 (2d Cir. 2005).  Accordingly, plaintiff's motion to disqualify Greenberg Traurig is denied.

> E.   Plaintiff's Motions for
> an Extension of Time to
> Complete Service and
> <u>to Compel Discovery</u>

Defendants Michael and Susan Gordon's motion to dismiss (Docket Items 132-37) raises non-frivolous arguments that the two have never been served in this action, and, thus, are not proper defendants.[6]  Plaintiff has currently not served any opposition to the motion to dismiss.  Rather, plaintiff has moved for an

---

[6] There is also a serious question as to whether Michael Gordon is even still a defendant in this case, given the nature of claims remanded by the Court of Appeals and that fact that he was neither an attorney nor was he employed by CLL.

extension of time "to cure any alleged defective service upon defendants Schick and Gordon by Plaintiff's previous attorneys" and to compel discovery from them (Docket Item 150).

Whether plaintiff is entitled to an extension of time to serve defendants Michael and Susan Gordon is inextricably linked to the outcome of the Gordons' motion to dismiss.  Accordingly, I deny plaintiff's motion for an extension of time without prejudice to renewal pending the adjudication of the Gordon defendants' motion to dismiss.  Additionally, because the jurisdictional issues raised by the Gordon defendants' motion should be determined prior to issues concerning the merits of discovery, I also deny plaintiff's motion to compel discovery without prejudice to renewal pending a decision on the motion to dismiss.

    F.   Plaintiff's Motion
         For Sanctions

Plaintiff's May 17, 2013 letter, which focuses largely on plaintiff's dissatisfaction with adverse decisions in her California action against Legend Films, also seeks "immediate advance sanctions against Cowan and Supple in the amount of $150,000 to cover Plaintiff's costs of an expensive appeal to the Ninth Circuit" (Docket Item 169 at 1).  Plaintiff's states that

sanctions are warranted against defendants and their counsel for "selectively purging and spoliating Plaintiff's intellectual property files in anticipation of litigation," (Docket Item 169 at 6). Although plaintiff's arguments are circuitous and, at times, incomprehensible, she appears to be arguing that certain "damning" e-mails, allegedly produced by defendants in December 2012, "were selectively erased from a CD ROM Cowan sent to plaintiff in 2003 allegedly with 'all her files'" (Docket Item 169 at 2). These e-mails, plaintiff asserts, are evidence of a conspiracy between CLL and the "Legend defendants" -- presumably a reference to the defendants in plaintiff's California action -- the object of which was to obtain "expanded retainers" (Docket Item 169 at 2-3). Defendant has not formally opposed plaintiff's motion. However, because plaintiff's motion is entirely without merit, I deny it.

"Spoliation is the destruction or significant alter-ation of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber, Co., 167 F.3d 776, 779 (2d Cir. 1999). A court may impose sanctions based on Federal Rule of Civil Procedure 37(b) if a party fails to comply with a discovery order. Fed.R.Civ.P.37(b); Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002);

Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 72 (S.D.N.Y. 1991) (Francis, M.J.).  A court may also impose sanctions on a spoliating party based on its "inherent power to control the judicial process and litigation, but [that] power is limited to that necessary to redress conduct which abuses the judicial process." Passlogix, Inc. v. 2FA Tech., LLC, 708 F. Supp. 2d 378, 409 (S.D.N.Y. 2010) (Leisure, D.J.) (internal quotation marks omitted), quoting Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 685 F. Supp. 2d 456, 465 (S.D.N.Y. 2010) (Scheindlin, D.J.), abrogated on other grounds by Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135 (2d Cir. 2012). "'The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge, and is assessed on a case-by-case basis.'" Zubulake v. UBS Warburg, LLC, 229 F.R.D. 422, 430 (S.D.N.Y. 2004) (Scheindlin, D.J.), quoting Fujitsu v. Federal Express Corp., 247 F.3d 423, 436 (2d Cir. 2001); see also Harkabi v. SanDisk Corp., 275 F.R.D. 414, 418 (S.D.N.Y. 2010) (Pauley, D.J.).

          A party who seeks sanctions based on the spoliation of evidence must show:  "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind' and (3) that the destroyed evidence was 'relevant'

to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Zubulake v. UBS Warburg, LLC, supra, 229 F.R.D. at 430; see also Chin v. Port Auth. of N.Y. & N.J., supra, 685 F.3d at 162.  If the moving party satisfies these elements, the "court may, in its discretion, grant an adverse inference jury instruction or other sanctions insofar as such a sanction would 'serve the threefold purpose of (1) deterring parties from destroying evidence; (2) placing the risk of an erroneous evaluation of the content of the destroyed evidence on the party responsible for its destruction; and (3) restoring the party harmed by the loss of evidence helpful to its case to where the party would have been in the absence of spoliation.'"  Chin v. Port Auth. of N.Y. & N.J., supra, 685 F.3d at 162 (internal alterations omitted), quoting Byrnie v. Town of Cromwell, 243 F.3d 93, 107 (2d Cir. 2001).

Plaintiff's motion for spoliation sanctions is defective for numerous reasons, perhaps the most obvious of which is that it seeks sanctions against defendants for the destruction of e-mails that defendants have not destroyed.  Indeed, plaintiff's sanctions motion seems to have been prompted by defendants' production of the very e-mails plaintiff alleges have been "spoliated."  To the extent plaintiff is arguing that the "spoliation" took place when CLL sent her a "CD ROM . . . in 2003

allegedly with 'all her files'", she provides no information about the CD or who among defendants represented to her that the CD contained the e-mails that are the subject of her sanctions motion.  In fact, plaintiff provides no evidence that defendants were even obligated to produce the e-mails before their eventual production December 2012.  Plaintiff also provides no discussion of the content of the allegedly newly-produced, "damning" e-mails, and instead simply states that they are evidence of a wide-ranging conspiracy involving numerous parties, many of whom are defendants in plaintiff's California action, currently on appeal.  Finally, plaintiff does not even attempt to justify the bizarre notion that her proposed monetary sanction in this case should be measured by the anticipated cost of an appeal before the Ninth Circuit in an entirely different action.

Accordingly, plaintiff's motion for sanctions is denied.

IV.  Conclusion

Accordingly, for all the foregoing reasons, plaintiff's motion for leave to amend (Docket Item 116) is denied, defendants' cross-motion to strike (Docket Item 119) is denied, plaintiff's motion to disqualify (Docket Item 150) is denied, plaintiff's motion for leave to serve defendants Michael Gordon

47

and Susan Gordon and to compel discovery (Docket Item 150) is denied, plaintiff's motion for an extension of time to respond to defendants' discovery requests, my January 14, 2013 Order and defendants' motion for sanctions (Docket Item 154) is denied, and plaintiff's motion for sanctions (Docket Item 169) is denied.  By no later than August 5, 2013, plaintiff is ordered to show cause why sanctions should not be imposed on her for her improper Rule 26(a)(1) disclosures and her failure to comply with my Orders of October 10, 2012 and January 14, 2013.  Finally, by no later than August 5, 2013, defendants are directed to answer plaintiff's Third Amended Complaint.

Dated:  New York, New York
        July 15, 2013

                              SO ORDERED

                              _____
                              HENRY PITMAN
                              United States Magistrate Judge

Copies transmitted to:

Ms. Amy R. Gurvey
315 Highland Avenue
Upper Montclair, New Jersey   07043

John R. Supple, Jr., Esq.
Hinshaw & Culbertson, LLP.
780 Third Avenue
New York, New York   10017

Michael A. Berlin, Esq.
Greenberg Traurig, LLP
200 Park Avenue
New York, New York  10166