UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
                                    :
AMY R. GURVEY,                      :
                                    :
                Plaintiff,          :    06 Civ. 1202 (LGS)(HBP)
                                    :
      -against-                     :    OPINION
                                         AND ORDER
COWAN, LIEBOWITZ & LATMAN,          :
P.C., et al.,                       :
                                    :
                Defendants.         :
                                    :
----------------------------------X


            PITMAN, United States Magistrate Judge:


I.   Introduction


            By notice of motion dated March 9, 2014 (Docket Item

207), plaintiff seeks leave to file a Sixth Amended Complaint.

For the reasons set forth below, plaintiff's motion is denied.


II.  Facts


            The facts underlying this action are set forth in a

number of opinions, including Gurvey v. Cowan, Liebowitz &

Latman, PC, 06 Civ. 1202 (BSJ), 2009 WL 1117278 (S.D.N.Y. Apr.

24, 2009) (Jones, D.J.), Gurvey v. Cowan, Liebowitz & Latman,

P.C., 462 F. App'x 26 (2d Cir. 2012) (summary order) and Gurvey

v. Cowan, Liebowitz & Latman, P.C., 06 Civ. 1202 (LGS)(HBP), 2013

WL 3718071 (S.D.N.Y. July 15, 2013) (Pitman, M.J.).  Familiarity
with these opinions is assumed.

          This action arises out of a dispute between plaintiff
and the law firm that was formerly both her employer and her
counsel.  For a brief period in 2002, plaintiff was employed as
counsel by the firm of Cowan, Liebowitz & Latman, P.C. ("CLL").
CLL also represented plaintiff in connection with two provisional
patent applications ("PPAs") that claimed inventions to edit,
package and distribute recordings of live music events, as well
as electronic ticketing methods related to the performances that
would be captured in the recordings (Third Amended Complaint,
dated Mar. 4, 2008 (Docket Item 47) ("TAC") ¶¶ 28, 33).  For
reasons that are not relevant here and that are in dispute, the
relationship between plaintiff and CLL soured shortly after its
inception, and plaintiff's employment terminated.  Nevertheless,
according to plaintiff, CLL expressed a continued interest in the
subject matter of her claimed inventions and agreed to file PPAs
before the United States Patent and Trademark Office ("USPTO")
(TAC ¶ 43).  On May 22, 2002 and May 24, 2002, CLL filed two
patent applications with the USPTO, naming plaintiff as sole
inventor and CLL as attorneys of record (TAC ¶ 44).  CLL later
withdrew from representing plaintiff with respect to one of her
applications due to a conflict of interest (TAC ¶ 50).

Plaintiff subsequently read media stories which indicated to her that other CLL clients were utilizing the technology disclosed in her patent applications, which lead plaintiff to conclude that CLL had improperly disclosed confidential information concerning her inventions to other clients in violation of its obligations to plaintiff.

Plaintiff commenced this action in 2006, and the pleading that is currently operative -- the Third Amended Complaint -- originally alleged claims for misappropriation of trade secrets, ideas, labor or skill, Sherman Act and state antitrust violations, Lanham Act violations, interference with prospective economic relations, tortious interference with contract, legal malpractice, breach of fiduciary duty and unjust enrichment against CLL.  In 2009, the Honorable Barbara S. Jones, United States District Judge (now retired), to whom the matter was then assigned, granted defendants' motion to dismiss the complaint in its entirety.  Gurvey v. Cowan, Liebowitz & Latman, PC, supra, 2009 WL 1117278 at *8.  The Court of Appeals for the Second Circuit affirmed Judge Jones' decision with respect to the dismissal of all claims except plaintiff's claims for legal malpractice and breach of fiduciary duty, Gurvey v. Cowan, Liebowitz & Latman, P.C., supra, 462 F. App'x at 30, and remanded

the matter for further proceedings concerning those claims.  The
matter was referred to me after the Court of Appeals' decision.

      After some procedural wrangling not relevant here,
plaintiff moved to file a Fourth Amended Complaint.  The proposed
Fourth Amended Complaint alleged that the CLL defendants were
guilty of "persistent divided loyalty, egregious breach of
fiduciary duty, abandonment, breach of New York's Disciplinary
Rules of Professional Conduct, 22 NYCRR 603, et seq., legal
malpractice, legal patent malpractice, fraud, fraudulent conceal-
ment, and continuing prima facie intentional torts" (Proposed
Fourth Amended Complaint, dated July 11, 2012, annexed as Ex. 1
to Motion for Leave to File Fourth Amended Complaint Discovery
and Mediation on Certain USPTO Damages Claims, dated July 15,
2012 (Docket Item 109), at 1).

      However, after defendants filed their papers in opposi-
tion to plaintiff's motion to amend, plaintiff filed a document
entitled "Plaintiff's Reply to Docket # 115 Seeking Service of
Plaintiff's 5th Amended Complaint and Responding to Cowan's
Opposition" (Docket Item 116).  Annexed to this submission was a
proposed Fifth Amended Complaint ("Prop 5AC").  The proposed
Fifth Amended Complaint, like the Fourth Amended Complaint,
continued to assert claims against the CLL defendants for legal
malpractice and breach of fiduciary duty, but appeared to predi-

cate these claims on a set of factual allegations that were
entirely different from those asserted in the Third Amended
Complaint.  For example, plaintiff alleged in the proposed Fifth
Amended Complaint that in January 2002, she agreed to reduce her
salary at CLL from $200,000 to $150,000 in exchange for patent
services from CLL, and that the $50,000 differential was "ear-
marked for the patent retainer" (Prop. 5AC ¶ 19).  The proposed
Fifth Amended Complaint alleged that CLL agreed to provide
services to plaintiff that went well beyond the preparation of
PPAs; plaintiff's new complaint alleged that CLL

> breached the standard of care and its fiduciary duties
> of confidentiality and absolute loyalty to Plaintiff by
> withholding what it knew to be essential patent ser-
> vices at critical early stages in the prosecution
> process, failed to immediately edit and file Plain-
> tiff's long form applications that the firm had in
> draft, and thereby caused Plaintiff to forfeit maximum
> valuable patent claims, priority dates, license fees
> and patent service retainers that would have issued to
> Plaintiff no later than 2004-5 had Cowan performed
> according to the standard of care.  Instead, and be-
> cause Cowan did not perform, Plaintiff got less than
> optimal claims issued based on the same disclosures she
> gave to another law firm, but no claims issued at all
> until October, 2009.

(Prop. 5AC ¶ 8).  Plaintiff also added new allegations concerning
another client of CLL -- Legend Films.  Specifically, plaintiff
alleged that CLL "engaged in back stage conversations with
officers of Legend Films, did not list Plaintiff of [sic]
Legend's digital masking technology on either of Legend's formal

5

USPTO and EPO patent applications; and then unilaterally and
materially altered Plaintiff's contract rider and gave it to
Legend and its attorneys" (Prop. 5AC ¶ 9(r)).  Based on these and
other new factual allegations, plaintiff's proposed Fifth Amended
Complaint, in addition to the claims remanded by the Court of
Appeals, asserted claims for "fraud and frivolous litigation
practices," "intentional torts," "negligence" and "disgorgement
of expanded [sic] retainers" (Prop. 5AC ¶¶ 75-106).

On October 9, 2012, after an in-court conference,
plaintiff's motion to file a Fourth Amended Complaint was with-
drawn, and I ordered that her September 28, 2013 submission would
be deemed a motion to file a fifth amended complaint (Docket Item
117).

After further briefing concerning the proposed Fifth
Amended Complaint, I issued an Opinion and Order on July 15, 2013
denying plaintiff leave to amend.  I found that the claims newly
asserted in the proposed Fifth Amended Complaint failed to state
claims, that the motion to amend was untimely and asserted in bad
faith, and that the proposed amendments were prejudicial to
defendants.  Gurvey v. Cowan, Liebowitz & Latman, P.C., supra,
2013 WL 3718071 at *8-*12.

Plaintiff sought reconsideration of my July 15, 2013
Opinion and Order; I denied her motion for reconsideration on

February 25, 2014.  <u>Gurvey v. Cowan, Liebowitz & Latman, P.C.</u>, 06
Civ. 1202 (LGS)(HBP), 2014 WL 715612 at *1 (S.D.N.Y. Feb. 25,
2014).  Plaintiff subsequently filed the present motion.

Defendants oppose plaintiff's motion to file a Sixth
Amended Complaint primarily on the ground that plaintiff's "new"
pleading is nothing more than a rehash of her proposed Fifth
Amended Complaint, which I have already rejected on two occasions.  Plaintiff has not submitted any reply papers in response
to defendants' arguments.

III.  <u>Analysis</u>

A.  The Proposed Sixth Amended
Complaint Merely Restates
the Previously Rejected
<u>Proposed Fifth Amended Complaint</u>

After carefully reviewing the two pleadings, I conclude
that defendants are correct and that there is no material difference between the already rejected proposed Fifth Amended Complaint and the proposed Sixth Amended Complaint.

Although the proposed Sixth Amended Complaint, unlike
the proposed Fifth Amended Complaint, does not delineate the
specific claims plaintiff is attempting to assert, the factual
allegations in both are substantially the same.  In both proposed
pleadings, plaintiff alleges that (1) she was induced to accept

7

employment at CLL by promises that she would be working with
certain intellectual property partners who left the firm shortly
after her employment started; (2) CLL hired plaintiff in order to
gain access to plaintiff's inventions, contacts and client list;
(3) CLL breached plaintiff's employment contract; (4) CLL under-
took to prosecute plaintiff's patent applications but failed to
do so diligently and competently, causing plaintiff to lose
certain claims and to lose priority in the marketplace; (5)
actions taken by CLL in the prosecution of plaintiff's patents
substantially delayed their issuance, causing plaintiff to lose
lucrative business opportunities; (6) CLL's delay in prosecuting
plaintiff's patents had the effect of delaying plaintiff's entry
into the market and permitting competitors (Ticket Master and
Live Nation) to acquire market dominance; (7) CLL disclosed
plaintiff's confidential invention to certain of its other
clients (including Clear Channel, Live Nation and Phish) enabling
them to misappropriate plaintiff's intellectual property; (8)
CLL's counsel has defrauded this Court; (9) CLL failed to list
plaintiff as a co-inventor on a patent application filed on
behalf of Legend Films; (10) CLL prosecuted Legend's patents
properly and diligently but refused to provide the same service
to plaintiff; (11) CLL favored other clients over plaintiff and
thereby earned fees that it would not have earned had it not

breached the duties of confidentiality and loyalty it owed to plaintiff.

A few examples demonstrate that the proposed Sixth Amended Complaint is merely a restated and reorganized iteration of the proposed Fifth Amended Complaint:

|                  Proposed Sixth<br>Amended Complaint                  |                  Proposed Fifth<br>Amended Complaint                  |
| --- | --- |
| 10.  Had Cowan defendants performed according to the standards of care for patent attorneys, however, Plaintiff would have had her first issued US patent claims in 2004-5 instead of on October 13, 2009, which would have avoided this lawsuit altogether and/or markedly changed its outcome. Plaintiff would have had an earlier right to enforce her intellectual assets against infringers, unauthorized users, and as to Legend, thieves. | 12.  Plaintiff also lost the right to charge for patent licenses and service retainers stating in 2004-5 when Plaintiff's applications should otherwise have issued had Cowan performed according to the standard of care and filed Plaintiff's formal applications early in 2002.<br><br>          *       *       *<br><br>42.  Had Plaintiff's patent claims issued in 2004-5 as should have occurred if Cowan did not breach the standard of care, Plaintiff would be participating in customized service retainers since 2004-5 from these mega licensees. Instead, however, 18 of Plaintiff's patent applications remain languished and delayed [sic] based on Cowan's early withholding of services. |

9

11. For example, former corporate defendants Clear Channel and Live Nation, were dismissed in March, 2009 based on false jurisdiction papers [sic] that their newly formed subsidiaries Instant Live Concerts LLC and Next Ticketing, Inc. had no sufficient NY contacts to acquire jurisdiction [sic] over the parents. The order [was] entered in spite of defendants' false jurisdictional papers in the face of concrete public files that Clear Channel and Live Nation own and operate 145 concert and event venues in NYS alone; and that this Court has conferred personal jurisdiction [sic] over these defendants in several other cases.

91. Had Cowan not defrauded the Court as to discovery, Plaintiff would have had discovery also against Clear Channel and Live Nation, precluding their sua sponte dismissal on false jurisdictional grounds; and enabling continued prosecution of Plaintiff's patent infringement claims in this lawsuit. Instead, Plaintiff now has to file separate lawsuits for infringement.

25. In February, 2002 Cowan managing defendant William Borchard forced Plaintiff to present her inventions at a [sic] firm's monthly partner's [sic] meeting and Plaintiff, as ordered, gave a 1 1/2 hour presentation after which she got a standing ovation from the entire defendant law firm. Defendant Borchard told Plaintiff her inventions created "quite a buzz."

26. Immediately after that meeting, Cowan defendants - without Plaintiff's authorization or consent - started disseminating notes and notices referring to Plaintiff's inventions as a "Cowan patent project". However, defendants still did nothing to protect Plaintiff's inventions. Cowan attorney Susan Schick e-mailed partners that she wanted to work on the project team and then upon belief, Schick re-disseminated Plaintiff's confidential information to her finance [sic], Michael Gordon, bass guitarist of Phish (now Schick's husband). Gordon knew all about Plaintiff's inventions by the time Cowan hosted a firm party in April 2002, demonstrating that there was a serious leak that Cowan defendants had caused.

23. In February, 2002, Cowan immediately instructed Plaintiff to present her clients and inventions at the February, 2002 monthly partners' meeting; which Plaintiff did. This constituted breach of Plaintiff's attorney client privilege by Cowan because Plaintiff believes that non-lawyers attending the meeting [sic], and therefore Cowan did not file any of Plaintiff's USPTO documents until May 200 [sic].

24. In the interim, other Cowan attorneys including Susan Schick immediately informed Cowan managing partners about the huge potential of Plaintiff's inventions and that she, Schick, wanted to be involved in the "project". Certain e-mails were exchanged between Schick and Cowan management indicating that Plaintiff's inventions were intended to be a firm "project". Schick was then engaged to Mike Gordon, bass guitarist of Phish at that time, another Cowan client, and upon belief, is now married to Gordon. Within a few months, Gordon somehow knew of Plaintiff's inventions.

(Prop 5AC; Plaintiff's Proposed Sixth Amended Complaint ("6AC")

Based on Cowan's First Document Production, dated March 9, 2014

(Docket Item 207) ("Prop. 6AC")).

11

"Under the law of the case doctrine, 'when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case.'"  LaVoice v. UBS Fin. Servs., Inc., 11 Civ. 2308 (KMW)(JLC), 2013 WL 5380759 at *2 (S.D.N.Y. Sept. 26, 2013) (Wood, D.J.), quoting United States v. Quintieri, 306 F.3d 1217, 1225 (2d Cir. 2002); accord United States v. Plugh, 648 F.3d 118, 123 (2d Cir. 2011) ("As a general matter, [a court] will adhere to its own decision at an earlier stage of the litigation." (internal quotation marks omitted)).

The law of the case doctrine prohibits a plaintiff from reasserting in an amended pleading claims that have previously been dismissed.  For example, in Weslowski v. Zugibe, 12 Civ. 8755 (KMK), 2015 WL 1455857 (S.D.N.Y. Mar. 31, 2015) (Karas, D.J.), a former county attorney alleged that he had been forced to resign from his position in violation of his First and Four- teenth Amendment rights.  His initial complaint was dismissed for failure to state a claim and he filed an amended complaint that reasserted many of the same matters, without material alteration, that were alleged in the original complaint.  The Honorable Kenneth M. Karas, United States District Judge, found that the law of the case doctrine warranted the summary dismissal of those

portions of the amended complaint that were redundant of the
original complaint.

      Under the law of the case doctrine, "a decision on
an issue of law becomes binding precedent in subsequent
stages of the same litigation." Brentwood Pain &
Rehab. Servs., P.C. v. Allstate Ins. Co., 508 F. Supp.
2d 278, 288 (S.D.N.Y. 2007) (citing In re PCH Assocs.,
949 F.3d 585, 592 (2d Cir. 1991)) . . . . [A] court
should be "loathe to revisit an earlier decision in the
absence of extraordinary circumstances," N. River Ins.
Co. v. Phila. Reinsurance Corp., 63 F.3d 160, 165 (2d
Cir. 1995) (internal quotation marks omitted) . . .,
namely "cogent or compelling reasons not to [follow the
earlier decision], such as an intervening change of
controlling law, the availability of new evidence, or
the need to correct a clear error to prevent manifest
injustice," Bellezza v. Holland, No. 09-CV-8434, 2011
WL 2848141, at *3 (S.D.N.Y. July 12, 2011) (internal
quotation marks omitted) . . . .

      The mere filing of an Amended Complaint does not
entitle Plaintiff to relitigate his claims absent new
factual allegations.  Because the Amended Complaint . .
. is in large part identical to Plaintiffs' first
Complaint, the law of the case doctrine counsels
against reconsideration of the Court's [earlier] dis-
missal of the first Complaint.  See State Farm Mut.
Auto. Ins. Co. v. Mallela, No. 00-CV-4923, 2002 WL
31946762, at *8 (E.D.N.Y. Nov. 21, 2001) (applying law
of the case doctrine where "plaintiff's [c]omplaint
[was] very similar to [the] plaintiff's [p]rior
[c]omplaint").  Plaintiff's arguments to the contrary,
while blunt and punchy, do not raise any "extraordinary
circumstances" that suggest otherwise.  See Ritani, LLC
v. Aghjayan, 970 F. Supp. 2d 232, 263 (S.D.N.Y. 2013)
(denying motion for reconsideration because of lack of
extraordinary circumstances); Selah v. N.Y.S. Docs
Comm'r, No. 04-CV-3273, 2006 WL 2051402, at *2
(S.D.N.Y. July 25, 2006) (dismissing amended complaint
because the plaintiff failed to make a showing indicat-
ing why the court should depart from law of the case).

2015 WL 1455857 at *5-*6; accord Ndremizara v. Swiss re Am.

Holding Corp., 12 Civ. 5769 (KMK), 2015 WL 1262146 at *10

(S.D.N.Y. Mar. 18, 2015) (Karas, D.J.).

      Thus, the law of the case doctrine warrants the denial

of plaintiff's motion.

    B.  Even if Reviewed
       under Rule 15
       Standards, Plaintiff's
       Motion Should Be Denied

      Moreover, even if I were to review plaintiff's motion

under Fed.R.Civ.P. 15 standards without regard to the law of the

case doctrine, it still fails.

      My July 2013 Opinion and Order discussed at length the

criteria under which a motion to amend is assessed, see Gurvey v.

Cowan, Liebowitz & Latman, P.C., supra, 2013 WL 3718071 at *7-*8,

and that discussion need not be rehearsed here.  For present

purposes, it is sufficient to note that, notwithstanding the

liberality with which federal courts consider motions to amend, a

proposed amended pleading may be rejected to the extent it is

futile, asserted in bad faith, unduly delayed or prejudicial to

the opposing party.  Holmes v. Grubman, 568 F.3d 329, 334 (2d

Cir. 2009); accord Sissel v. Rehwaldt, 519 F. App'x 13, 17 (2d

Cir. 2013) (summary order).

14

To the extent that the proposed Fifth Amended Complaint failed to state claims beyond the malpractice and breach of fiduciary duty claims remanded by the Court of Appeals, the proposed Sixth Amended Complaint does not remedy those defects. As noted above, the proposed Sixth Amended Complaint does not separately state or identify the claims plaintiff is attempting to state.  Given the high degree of similarity in the factual allegations set forth in the Fifth and Sixth Amended Complaints, I assume plaintiff is attempting to restate the same claims she attempted to assert in the proposed Fifth Amended Complaint. Plaintiff nowhere suggests that she is now attempting to assert new or different claims.  Although the proposed Sixth Amended Complaint has rearranged the factual allegations, plaintiff has not materially added to them.

For example, to the extent plaintiff is attempting to allege a fraud claim, she still has not set forth when or where the fraudulent statements were made, the precise nature of the fraudulent statements, how she relied on them or why the state-ments were fraudulent.  The proposed Sixth Amended Complaint can be read to allege fraud on the theory that plaintiff was fraudu-lently induced to accept employment with CLL based on representa-tions that she would be working with two particular intellectual property partners who left the firm shortly after plaintiff

15

started (Prop. 6th AC ¶¶ 54-55).  However, plaintiff also alleges

that she was hired "for her business development services" and

that she was not hired "to perform trademark or other legal work"

(Prop. 6th AC ¶ 54).  Plaintiff actually alleges that partners

who departed "were supposed to do Plaintiff's work" (Prop. 6th AC

¶ 55).  If plaintiff was hired for her ability to bring in new

business, it is difficult to understand how the departure of the

two intellectual property partners adversely affected her expec-

tations or constituted a fraud.  Plaintiff does not allege that

the two partners who departed were critical to CLL's intellectual

property department, nor does she allege that the departure of

these partners somehow thwarted her ability to develop business.

In short, the Sixth Amended Complaint does not even identify the

elements of a fraud claim, let alone identify them with the

particularity required by Fed.R.Civ.P. 9(b).

To the extent the proposed Sixth Amended Complaint is

intended to state a claim for purportedly frivolous litigation

practices, it suffers from the same deficiency as the proposed

Fifth Amended Complaint.  Assuming the truth of plaintiff's

factual allegations, Panther Partners Inc. v. Ikanos Commc'ns,

Inc., 681 F.3d 114, 119 (2d Cir. 2012); Smith v. NYCHA, 410 F.

App'x 404, 405-06 (2d Cir. 2011) (summary order), the remedy for

such conduct, if it occurred, is a motion under Fed.R.Civ.P. 11

16

or 37 or 28 U.S.C. § 1927,[1] each of which has its own substantive requirements. I am aware of no authority that permits an independent tort action to be brought against a defendant based on its alleged litigation misconduct.[2]

To the extent the proposed Sixth Amended Complaint can be construed to assert claims for "intentional torts," "negligence" and "disgorgement of expanded [sic] retainers," plaintiff is merely elaborating on the claims that were remanded by the Court of Appeals, namely her claims for legal malpractice and breach of fiduciary duty. Whether malpractice or breach of fiduciary duty was negligent or intentional may be relevant to

---

[1]I note in this regard that plaintiff has already been sanctioned twice in this matter for improper litigation tactics, while plaintiff's prior motion for sanctions against defendants was denied.

[2]By their nature, neither claims for malicious prosecution nor abuse of process can be brought against a defendant who, like defendants here, have not asserted any counterclaims. A claim for malicious prosecution requires, among other things, that the party against whom the claim is asserted prosecuted a civil action against the plaintiff. Castro v. E. End Plastic, Reconstructive & Hand Surgery, P.C., 47 A.D.3d 608, 609, 850 N.Y.S.2d 483, 487 (2d Dep't 2008). There is no claim here that defendants ever commenced or prosecuted an action against plaintiff. A claim for abuse of process requires, among other things, the use of "regularly issued process, civil or criminal, compelling the performance or forebearance of some prescribed act." Bd. of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n, Inc., Local 1889, AFT AFL-CIO, 38 N.Y.2d 397, 403, 343 N.E.2d 278, 293, 380 N.Y.S.2d 635, 642 (1975). There is no allegation here that defendants ever made use of any process directed at plaintiff.

the measure of damages, but the actor's intent does not alter the nature of the claim.  Because these allegations are redundant of claims that are already in the case, leave to amend to include these allegations is not warranted.

Because the instant motion was filed more than a year after plaintiff's application to file a Fifth Amended Complaint, plaintiff's delay weighs even more heavily against her than it did with respect to her proposed Fifth Amended Complaint. Plaintiff's motion to file a Sixth Amended Complaint was filed eight years after the action was commenced, and where a plaintiff has delayed this long in moving to amend, it is incumbent upon the plaintiff to offer some explanation for her delay.  Dilworth v. Goldberg, 914 F. Supp. 2d 433, 460 (S.D.N.Y. 2012) (Gorenstein, M.J.) ("A district court 'may deny a motion to amend when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly when the movant offers no excuse for the delay.'"), quoting N.H. Ins. Co. v. Total Tool Supply, Inc., 621 F. Supp. 2d 121, 124 (S.D.N.Y. 2009) (Peck, M.J.); Reisner v. Gen. Motors Corp., 511 F. Supp. 1167, 1172 (S.D.N.Y. 1981) (Goettel, D.J.) (delay in seeking to amend pleading requires some explanation), aff'd, 671 F.2d 91 (2d Cir. 1982); see also Sissel v. Rehwaldt, supra, 519 F. App'x at 17 (denial of leave to amend after delay

of more than two years not an abuse of discretion where movant offered "no explanation for delay or why the new causes of action were not asserted in the original complaint").

Plaintiff makes a feeble and unconvincing attempt to justify her delay.  Plaintiff claims that she was delayed in filing her motion to amend her complaint for a sixth time because she did not have the facts giving rise to her Sixth Amended Complaint until defendants' December 2012 document production. This argument appears to be a pure fabrication.  Although plaintiff makes the broad argument that she needed defendants' December 2012 document production to draft the Sixth Amended Complaint, she cites no specific documents that she first received in December 2012 as the source of her allegations.  For example, plaintiff alleges, among other things, that defendants' December 2012 document production establishes that defendants (1) improperly concealed a conflict of interest, (2) improperly transferred plaintiff's putative invention to another client of CLL, (3) purged files from plaintiff's email directories "at the client's instructions," (4) "unilaterally altered Plaintiff's purged files," and (5) "submitted doctored evidence to this Court" and engaged in frivolous litigation practices (Plaintiff Pro Se's Notice of Motion to File and Serve a Sixth Amended Complaint ("6AC") Based on Cowan's First Document Production, dated March

9, 2014 (Docket Item 207) ("Plaintiff's Motion to Amend") ¶¶ 4,
6, 7, 12). However, despite plaintiff's repeated contention that
these "facts" were unknown until defendants' document production,
plaintiff does not identify the documents that purport to support
these contentions.

The only documents from defendants' production that
plaintiff offers show that after plaintiff's departure from CLL
she requested copies of certain files concerning Legend Films, a
client plaintiff claims she brought to CLL. The documents
further show that CLL responded to plaintiff stating that it no
longer had the files she requested and that all files had been
returned to Legend Films at its request. Defendants' document
production also includes a letter from Legend Films to CLL dated
two months before plaintiff's request in which Legend requests
the return of its files (Plaintiff's Motion to Amend, Ex. 3).
Except for the letter from Legend Films requesting the return of
its files, all the emails plaintiff cites were sent to plaintiff
in 2003 and are not, therefore, newly discovered information. In
addition, none of the emails remotely suggest the misconduct
plaintiff is alleging in her proposed Sixth Amended Complaint.[3]

_____

[3]Curiously, after CLL advised plaintiff in 2003 that the CLL
had returned Legend Films' files, plaintiff's only reaction was
that she feared that this development might make it more
(continued...)

Second, plaintiff's contention that she only learned of the bases for her proposed Sixth Amended Complaint after defendants' December 2012 document production is contradicted by the record in this case.  The proposed Fifth Amended Complaint was submitted in September 2012, three months before defendants' document production (see Docket Item 116).  As demonstrated above, there is no material difference between the factual allegations in the proposed Fifth Amended Complaint and the proposed Sixth Amended Complaint.  Because the two pleadings are substantially the same, plaintiff's argument that the latter pleading was the product of an intervening event cannot be true.

Finally, there is substantial reason to believe that the motion to file a Sixth Amended Complaint was filed in bad faith.  As was true with respect to her proposed Fifth Amended Complaint, see Gurvey v. Cowan, Liebowitz & Latman, P.C., supra, 2013 WL 3718071 at *11, the proposed Sixth Amended Complaint contains allegations that are contradicted by plaintiff's own prior sworn statements.  For example, in her proposed Sixth Amended Complaint, plaintiff alleges that she had a contract of employment with CLL under which she was entitled to a salary of

---

[3](...continued)
difficult for her to collect a fee (Plaintiff's Motion to Amend, Ex. 3).  Plaintiff did not express any outrage or concern that her confidential information had been disclosed to a third party.

21

$200,000 per year but that CLL deducted $50,000 as a fee for its patent work for plaintiff (Prop. 6AC ¶ 58).  In a 2009 arbitration proceeding, plaintiff testified under oath that she had voluntarily agreed to a reduction in salary because she had not generated as much business for CLL (Declaration of J. Richard Supple, Jr. in Support of Defendants' Motion for Sanctions, dated April 25, 2014 (Docket Item 225) ("Supple Decl.") Ex. H). Similarly, plaintiff alleges in her proposed Sixth Amended Complaint that CLL improperly failed to list her as a co-inventor on a patent application filed on behalf of Legend Films for a film colorization process (Prop. 6AC ¶¶ 33-37).  However, in an earlier action in which plaintiff sought to recover legal fees from Legend Films, plaintiff alleged that Barry Sandrew, an officer of Legend Films was "the name[d] 'inventor'" of the film colorization process (Supple Decl. Ex. G ¶ 5).  The complaint in that action contains no suggestion that plaintiff was an inventor of the film colorization process.  These contradictions, the additional contradictions identified in my July 2013 Opinion and Order and the fact that plaintiff is now asserting a seventh iteration of her complaint suggest that plaintiff is seeking to prolong this litigation rather than resolve it on the merits.

C.   Summary

Despite the fact that plaintiff was formerly a practic-
ing attorney[4] and despite the fact that there has been a ruling
from the Court of Appeals setting forth what claims are properly
stated, plaintiff persists in attempting to restate her complaint
-- now for the sixth time.  Plaintiff's latest iteration of the
complaint merely restates the complaint that was rejected in
2013, and even if it had not been previously rejected, it is
futile, untimely and asserted in bad faith.

IV.  Conclusion

Accordingly, for all the foregoing reasons, plaintiff's
motion to file a Sixth Amended Complaint (Docket Item 207) is
denied in all respects.

Dated:  New York, New York
        July 21, 2015

                          SO ORDERED

                          _____
                          HENRY PITMAN
                          United States Magistrate Judge

_____

     [4]The Clerk's Office files disclose that Plaintiff was
admitted to practice in this Court in 1987.  She was suspended
from practicing in this Court on June 24, 2013.  Her readmission
in this Court id dependent on her readmission to practice in the
state courts of New York.  To date, plaintiff remanins suspended
from practice in New York's state courts.

                               23

Copies transmitted to:

Brian M. Dratch, Esq.
Franzlau Dratch, P.C.
Plaza One
354 Eisenhower Parkway
Livingston, New Jersey  07039

J. Richard Supple, Jr., Esq.
Hinshaw & Culbertson LLP
13th Floor
800 Third Avenue
New York, New York  10022