```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
AMY R. GURVEY,                                              :
                                      Plaintiff,            :
                                                            :        06 Civ. 1202 (LGS)
              -against-                                     :
                                                            :        OPINION AND ORDER
COWAN, LIEBOWITZ & LATMAN, P.C., et                         :
al.,                                                        :
                                      Defendants.           :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/06/2017

LORNA G. SCHOFIELD, District Judge:

Plaintiff Amy R. Gurvey commenced this action against Defendants William Borchard, Midge Hyman, Baila Celedonia, Christopher Jensen, all attorneys at the firm of Cowan Liebowitz & Latman, P.C. ("Cowan" or "the Firm"), which is also a defendant (together, "Defendants") and others. Defendants move for summary judgment on the remaining claims of attorney malpractice and breach of fiduciary duty. Plaintiff cross-moves for summary judgment as to a number of claims that are not pending in this case. Insofar as Plaintiff's claims have not been dismissed previously, Plaintiff's cross-motion is construed as a motion to amend the pleadings and is denied as both untimely and futile. *Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016). For the reasons below, Defendants' motion is granted.

## I. BACKGROUND

Unless noted, the facts below are undisputed and drawn from the parties' Rule 56.1 Statements and other submissions on this motion, and are construed in Plaintiff's favor. *See Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 71–72 (2d Cir. 2016). Given the long history of this litigation, only the facts relevant to the adjudication of this motion are discussed.

On December 6, 2001, Cowan sent Plaintiff a "letter of intent" confirming its offer of employment to Plaintiff, subject to finalizing the terms of the employment agreement. Around this time, Plaintiff was working on a venture that she called "ConcertMaster and Electronic Ticketing" -- a "ticketing and e-ticketing method[] on mobile devices . . . to enable distribution of live recordings and event merchandise." Plaintiff had described her venture "in general" during her interview with the Firm. She later, in a May 2002 email to a third party unrelated to Cowan, described her business idea: "The patent will allow ticket buyers to get a SmartCard or small CD in lieu of a cardboard ticket if they pay a premium over the ticket price, let's say $10. Within a certain number of hours after [*sic*] performance, the premium payer can will then [*sic*] be able to insert the disk into a computer and download an encryped [*sic*] DVD of the concert attended . . . ."

The Third Amended Complaint (the "Complaint") asserts that from January 2002, Plaintiff was Cowan's client, and Plaintiff testified that she "may have assumed that Cowan were [her] lawyers" at that time. On February 1, 2002, Plaintiff joined Cowan as "of counsel," under a one-year employment agreement, dated January 15, 2002. The only evidence of the parties' relationship from early 2002 is the employment agreement, which acknowledges Plaintiff's ownership of the e-ticketing venture, but makes no mention of any attorney-client relationship in connection with that project or any other matter.

Plaintiff presented her venture at a Firm meeting shortly after she joined in early 2002, at the request of Cowan attorney William Borchard. In her deposition, Plaintiff testified that Borchard told her that the purpose of her presentation was to inform "of-counsels who were part-time" "of the nature of [her] inventions and [her] practice . . . to find out if some of them could send [her] billings to do for their other clients." Plaintiff also testified that she provided

2

handouts at the meeting, and that she did not remember whether those handouts were marked "confidential" or whether she informed the attendees that her invention was confidential. She did not ask for the handouts to be returned to her.

In March or April 2002, Plaintiff claims to have attended a Firm event at which she met Michael Gordon of the band Phish and "w[as] shocked to discover how much [he] knew of plaintiff's confidential business plans and technology." Plaintiff believed that Gordon's then-girlfriend, Cowan associate Susan Schick, disclosed Plaintiff's confidential information, or that "[Gordon] may have been at the [February] meeting." Plaintiff testified that, at the time of the Firm event where she met Gordon, "Cowan had not done any filing for [her]," and "Cowan had not done anything yet."

The Firm terminated Plaintiff's employment on or around May 7, 2002. Beginning on May 10, 2002, while planning for Plaintiff's departure, the Firm agreed to help Plaintiff prepare and file with the United States Patent and Trademark Office ("USPTO") a provisional patent application ("PPA") for her electronic ticketing venture. In a May 10, 2002, email from Plaintiff to Borchard and Cowan attorney Christopher Jensen, Plaintiff stated:

> Coincidentally (and without any request on my part), Mark Montague came into my office yesterday and said he would like to file the provisional patent for my concert idea. Since my discussing this patent and the business model during my first firm meeting, a few of the associates have asked me if they could work on it. I have deferred answering them. Time has now become of the essence . . . . For expediency purposes, I am willing to pay for Mark's time and legal fees. . . . If it is better if all my projects and clients are handled separately, please so advise, and I will retain outside counsel. I told Mark that I would love him to do the work but under no circumstances could he do anything without getting your permission.

Later the same day, Jensen authorized Cowan attorney Mark Montague to file the PPA on Plaintiff's behalf and said, "[w]e should just keep track of our time for now and then we will figure out later with Amy how we are going to get paid."

3

On May 22, 2002, after Plaintiff's employment was terminated but before she had vacated her office at the Firm, Montague filed a PPA on Plaintiff's behalf, entitled "Premium Performance Ticket." On May 24, 2002, Cowan attorney Lewis Gable filed a second PPA that was substantially similar to, but more expansive than, the first PPA and intended to supersede the first PPA. Defendants assert that they did not perform any legal work for Plaintiff after Gable filed the second PPA, and Plaintiff has not presented contrary evidence.

In June 2002 (after Plaintiff was fired, but still before she had vacated her office, which occurred in September), Cowan attorney Midge Hyman told Plaintiff that "the firm would not send [her] work under any circumstances" or "allow [her] to work on [her] patent or . . . use any of the firm's other patent attorneys to assist [her]." In October 2002, Plaintiff sent an email to Borchard and Jensen requesting that her files be sent to her, and thereafter, that "all of [her] files . . . be burned and destroyed" and a "Certificate of Destruction [be] signed by the firm."

In December 2002, Plaintiff had a telephone conversation with Jensen in which, Jensen asserts, Plaintiff threatened to sue the Firm. The next day, Plaintiff sent an email to Jensen and Borchard, in which she sought payment for her services and threatened to "pursue vigorously" the "misappropriation of any my [*sic*] trade secrets and patent (filed by the firm)." In response, Jensen instructed Plaintiff not to email him again. According to Defendants, Plaintiff's "threat of litigation" created a conflict of interest, which prompted them to withdraw formally as her representative before the USPTO, which they did by filing a request for withdrawal on January 3, 2003. The request for withdrawal stated as the reason for the request that "[a] conflict of interest has arisen between the applicant [Plaintiff] and the law firm [Defendants]." The record includes a January 3, 2003, letter from Defendants to Plaintiff advising her, "Since a potential conflict of interest has arisen between you and Cowan, Liebowitz & Latman, P.C., we are

ethically obligated to withdraw as legal counsel to you in the above-referenced patent matter."
On February 13, 2003, the USPTO accepted the request, which Plaintiff alleges in the Complaint that she learned of on February 16, 2003.

In April 2003, Plaintiff communicated with Schick and claimed not to know the source of the Firm's conflict of interest. Jensen, after learning about this communication replied, "As we previously informed you, we can not [*sic*] represent you in connection with your provisional patent applications because of your threats of legal action against this firm."

On May 5, 2003, the *New York Times* published an article that Plaintiff describes as "announcing and introducing [Clear Channel Communications, Inc.'s ("Clear Channel")] newest venture," and describing "Plaintiff's entire confidential business models for the onsite distribution of live recordings at concerts." The article reported that Clear Channel would begin selling compact discs of live recordings of concerts at Clear Channel venues "within five minutes of a show's conclusion," and that Clear Channel described the venture as "a continuation of the trend among various bands and start-ups in recent years to sell authorized recordings that are available on CD or as Internet downloads soon after the event." The article quoted various people in the music industry, including Phish's manager, John Paluska. "Although [Phish's] experience is not a direct comparison," he illustrated the potential growth of the instant disc market by noting that Phish had "sold close to $1 million in concert-show downloads over the Internet since opening the livephish.com site in late December." He observed that "it would not be easy for Clear Channel to move into the instant-CD sphere" because of "legal issues," an apparent reference to an earlier observation in the same article that instant discs could pose a problem for established artists who have contracts with "major labels." In and before 2002, Clear Channel was Cowan's client as to unrelated matters that did not concern live events.

5

According to the Complaint, Defendants and Clear Channel "joint[ly] misappropriate[ed] . . . Plaintiff's trade secrets, confidential business models including those contained in Plaintiff's PPA's."

On April 24, 2009, this Court dismissed the Complaint in its entirety. On February 10, 2012, the Second Circuit affirmed the dismissal, except "to the extent that it dismissed Gurvey's claims for attorney malpractice and breach of fiduciary duty." *Gurvey v. Cowan, Liebowitz & Latman, P.C.*, 462 F. App'x 26, 30 (2d Cir. 2012) (summary order). The Second Circuit held that Plaintiff had pleaded a "plausible claim by alleging that [Defendants] used the information given to them as part of a confidential attorney-client relationship to their own advantage by disclosing it to other clients who then profited therefrom to Gurvey's detriment." *Id*. The Second Circuit noted that "[t]he plausibility of this argument is bolstered by Gurvey's allegation that Cowan withdrew from representing Gurvey before the United States Patent and Trademark Office due to what Cowan allegedly termed a 'conflict of interest.'" *Id*. at n.8.

## II.    LEGAL STANDARD

Summary judgment should be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Proctor v. LeClaire*, 846 F.3d 597, 607 (2d Cir. 2017). There is a genuine dispute "when the evidence is such that, if the party against whom summary judgment is sought is given the benefit of all permissible inferences and all credibility assessments, a rational factfinder could resolve all material factual issues in favor of that party," and "no rational factfinder could find in favor of the nonmovant." *SEC v. Frohling*, 851 F.3d 132, 136–37 (2d Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (affirming summary judgment and the district court's finding that "no rational factfinder could fail to find that Frohling knew" that

opinion letters he issued were false, despite his deposition testimony to the contrary, in light of his admission and documentary evidence illustrating his knowledge). This standard applies "whether summary judgment is granted on the merits or on an affirmative defense such as the statute of limitations." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The movant bears the initial burden of demonstrating the absence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[T]he movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Vill. of Depew*, 75 F.3d 98, 107 (2d Cir. 1996) (citing *Celotex Corp.*, 477 U.S. at 322–23). The burden then shifts to the nonmoving party, who must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. The court must construe the evidence and draw all reasonable inferences in favor of the non-moving party. *See Wright*, 831 F.3d at 71–72.

The nonmoving party may not create a triable issue of fact by contradicting factual allegations in the Complaint, *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011), or submitting an affidavit that disputes her own prior sworn testimony, *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 205 (2d Cir. 2014). "The purpose of th[is 'sham issue of fact'] doctrine is clear: '[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.*; *accord Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (explaining that "where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine . . .

7

whether there are any genuine issues of material fact, without making some assessment of the plaintiff's account.").

New York law governs the substantive issues arising from the surviving claims of attorney malpractice and breach of fiduciary duty. "In a diversity action based on attorney malpractice, state substantive law . . . applies." *Nordwind v. Rowland*, 584 F.3d 420, 429 (2d Cir. 2009); *accord Henkel v. Wagner*, No. 12 Civ. 4098, 2016 WL 1271062, at *5 (S.D.N.Y. Mar. 29, 2016). "The parties' briefs assume that [New York] state law governs this case, and 'such implied consent is . . . sufficient to establish the applicable choice of law.'" *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017) (quoting *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009)).

## III. DISCUSSION

Defendants move for summary judgment as to Plaintiff's claims for attorney malpractice and breach of fiduciary duty. The motion is granted on the independent grounds that both claims are time barred, and that Plaintiff has proffered insufficient evidence from which a reasonable jury could find in her favor on either claim.

### A. Statutes of Limitations

Plaintiff's claims are dismissed as untimely because they were not filed within the limitations period applicable to each claim -- three years, plus 228 days during which time the statutes of limitations were tolled due to Cowan's representation of Plaintiff in connection with her patent application. The Complaint was filed on February 15, 2006. To be timely, any claim must have accrued no earlier than three years plus 228 days before that date, or July 2, 2002. The evidence in the record, construed in Plaintiff's favor as required on this motion, shows that

any improper disclosure of Plaintiff's information by Cowan occurred no later than April 2002. Accordingly, the claims are time barred.

### 1. Relevant Statutory Period

The surviving claims allege attorney malpractice and breach of fiduciary duty. Each is constrained by a three-year statute of limitations period. Under New York law, an action for attorney malpractice must be filed within three years from the date of accrual. N.Y. C.P.L.R. § 214(6). "For fiduciary duty claims, the choice of the applicable limitations period depends on the substantive remedy that the plaintiff seeks." *Rohe v. Bertine, Hufnagel, Headley, Zeltner, Drummon & Dohn, LLP*, 160 F. Supp. 3d 542, 548 (S.D.N.Y. 2016) (quoting *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268, 272 (N.Y. 2009)). Where, as here, Plaintiff seeks money damages, "a three-year statute of limitations similarly applies." *Id.*

Plaintiff argues that a six-year statute of limitations applies to her breach of fiduciary duty claim because "fraud, concealment, sabotage, USPTO false claims as are involved here have a six-year statute of limitations." Plaintiff is correct insofar as "where an allegation of fraud is essential to a breach of fiduciary [duty] claim, courts have applied a six-year statute of limitations under CPLR 213(8)." *Levy v. Young Adult Inst., Inc.*, No. 13 Civ. 2861, 2016 WL 6092705, at *20 (S.D.N.Y. Oct. 18, 2016) (quoting *IDT Corp.*, 907 N.E.2d at 272). The six-year statute of limitations is inapplicable here, however, because the Complaint's allegations of breach of fiduciary duty are not "inextricably bound to a fraud claim." *Id.* The essence of a fraud claim is a knowing misrepresentation of material fact. *See id.* (citing *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 164–65 (1st Dep't 2003)). After the Second Circuit's remand Order, the surviving claims are based on allegations that Defendants "used [Plaintiff's] information given to them as part of a confidential attorney-client relationship to their own advantage by disclosing it

to other clients." *Gurvey*, 462 F. App'x at 30.  As Plaintiff's fiduciary duty claim is based on the alleged misappropriation and wrongful disclosure of Plaintiff's information and not fraud, the three-year -- not the six-year -- statute of limitations applies.

### 2. Tolling of the Statute of Limitations

"'[T]he rule of continuous representation tolls the running of the [s]tatute of [l]imitations on [a] malpractice claim until the ongoing representation is completed.'"  *Grace v. Law*, 21 N.E.3d 995, 999 (N.Y. 2014) (quoting *Shumsky v. Eisenstein*, 750 N.E.2d 67, 70 (N.Y. 2001)); *see also Zaref v. Berk & Michaels, P.C.*, 595 N.Y.S.2d 772, 774 (1st Dep't 1993) (noting that "a client cannot reasonably be expected to assess the quality of the professional service while it is still in progress" and finding the continuous representation doctrine applies where "the continuous representation . . . [is] in connection with the particular transaction which is the subject of the action").  Generally, tolling under the continuous representation doctrine "end[s] once the client is informed or otherwise put on notice of the attorney's withdrawal from representation."  *Champlin v. Pellegrin*, 974 N.Y.S.2d 379, 380 (1st Dep't 2013) (internal quotation marks omitted and alterations in original).  There must be "clear indicia of an ongoing, continuous, developing, and dependent relationship between [plaintiff and defendant] . . . or a mutual understanding of the need for further representation on the specific subject matter[s] underlying the malpractice claim."  *Id.* (internal citation and quotation marks omitted and alterations in original).  The parties must "explicitly contemplate[] further representation" for tolling to apply.  *Williamson ex rel. Lipper Convertibles, L.P. v. PricewaterhouseCoopers LLP*, 872 N.E.2d 842, 847 (N.Y. 2007); *accord Carvel v. Ross*, No. 09 Civ. 0722, 2011 WL 856283, at *13 (S.D.N.Y. Feb. 16, 2011).

to other clients." *Gurvey*, 462 F. App'x at 30.  As Plaintiff's fiduciary duty claim is based on the alleged misappropriation and wrongful disclosure of Plaintiff's information and not fraud, the three-year -- not the six-year -- statute of limitations applies.

### 2. Tolling of the Statute of Limitations

"'[T]he rule of continuous representation tolls the running of the [s]tatute of [l]imitations on [a] malpractice claim until the ongoing representation is completed.'"  *Grace v. Law*, 21 N.E.3d 995, 999 (N.Y. 2014) (quoting *Shumsky v. Eisenstein*, 750 N.E.2d 67, 70 (N.Y. 2001)); *see also Zaref v. Berk & Michaels, P.C.*, 595 N.Y.S.2d 772, 774 (1st Dep't 1993) (noting that "a client cannot reasonably be expected to assess the quality of the professional service while it is still in progress" and finding the continuous representation doctrine applies where "the continuous representation . . . [is] in connection with the particular transaction which is the subject of the action").  Generally, tolling under the continuous representation doctrine "end[s] once the client is informed or otherwise put on notice of the attorney's withdrawal from representation."  *Champlin v. Pellegrin*, 974 N.Y.S.2d 379, 380 (1st Dep't 2013) (internal quotation marks omitted and alterations in original).  There must be "clear indicia of an ongoing, continuous, developing, and dependent relationship between [plaintiff and defendant] . . . or a mutual understanding of the need for further representation on the specific subject matter[s] underlying the malpractice claim."  *Id.* (internal citation and quotation marks omitted and alterations in original).  The parties must "explicitly contemplate[] further representation" for tolling to apply.  *Williamson ex rel. Lipper Convertibles, L.P. v. PricewaterhouseCoopers LLP*, 872 N.E.2d 842, 847 (N.Y. 2007); *accord Carvel v. Ross*, No. 09 Civ. 0722, 2011 WL 856283, at *13 (S.D.N.Y. Feb. 16, 2011).

The period for which the statute of limitations period is tolled is, at most, the duration of the attorney-client relationship. Based on the evidence, no reasonable jury could find that Cowan represented Plaintiff before May 10, 2002, or after December 24, 2002 (and likely would find that the engagement ended earlier).

In her May 10, 2002, email Plaintiff asked Jensen for his permission to have the Firm represent her before the USPTO and file her PPA. She offered to pay for attorney Montague's time and legal fees, but also offered to retain outside counsel if Jensen preferred. On the same day, Jensen authorized Montague to make the USPTO filing and instructed him to keep track of his time. Although Plaintiff says that she "may have assumed that Cowan were [her] lawyers" in early 2002, the evidence in the record shows that Plaintiff became an employee of Cowan at that time, not a client. Based on the undisputed evidence, a reasonable jury could find only that Cowan's representation of Plaintiff began on or after May 10, 2002.

Defendants expressly repudiated the attorney-client relationship in June 2002, when Hyman notified Plaintiff that Defendants would no longer assist with her patent filings, and thereafter took no further action on her behalf. Likewise, Plaintiff repudiated the attorney-client relationship, first, on October 12, 2002, when she demanded that Defendants return and destroy all of her files in their possession, and again, on December 24, 2002, when she threatened in writing to sue Defendants. The evidence shows that by December 24, 2002, Plaintiff and Defendants both had unequivocally disavowed the attorney-client relationship.

Plaintiff's unsupported and contradictory statements, including that "Cowan **never** attempted to withdraw from Plaintiff's representation until [as late as] February 20, 2007," are insufficient to create a triable issue. First, the Complaint alleges that Cowan represented Plaintiff through "at least February 2003 and May, 2003" -- not 2007. Plaintiff may not directly

11

contradict the pleadings to survive a motion for summary judgment, and the Court is entitled to disregard such statements. *See Rojas*, 660 F.3d at 106. Second, Plaintiff has provided no evidence that Defendants represented her after December 2002 (or even June 2002), or to controvert Defendants' evidence that (1) Hyman expressly terminated the attorney-client relationship in June 2002; (2) Plaintiff requested that the Firm send her all of her files and then destroy any copies in October 2002; and (3) Plaintiff threatened to sue Defendants in December 2002.

Plaintiff's own submissions on this motion contradict her argument that Defendants represented her after December 2002. For example, Plaintiff argues that "[D]efendant Jensen admit[ted] that Montague continued to perform patent searches until May 1, 2003." However, Plaintiff's corresponding exhibit -- a letter from Jensen to Plaintiff dated May 1, 2003 -- states that Montague performed a computer database search at some unspecified time in the past; that the search is inconclusive because of information that was unavailable at the time the search was conducted; that "we formally withdrew as your counsel in the Patent Office in January, 2003 and have not represented you in connection with this matter since that date"; and that it is "imperative that [Plaintiff] engage new patent counsel" to meet the looming May 22 and 24 USPTO deadlines. The implication is that the search was conducted before January 2003 and would need to be updated by Plaintiff's new counsel, who should be hired immediately. Nothing in the record suggests that Cowan acted on Plaintiff's behalf after June 2002.

No reasonable fact finder could conclude that the parties contemplated or had a mutual understanding as to Defendants' continuing representation respecting Plaintiff's patent application after December 24, 2002. *See, e.g.*, *De Carlo v. Ratner*, 204 F. Supp. 2d 630, 638 (S.D.N.Y. 2002) (finding plaintiff's legal malpractice claim time barred because the continuing

12

representation doctrine was inapplicable and where "there [was] a breakdown" in the attorney-client relationship); *Tantleff v. Kestenbaum & Mark*, 15 N.Y.S.3d 840, 843–44 (2d Dep't 2015) (affirming grant of summary judgment on attorney malpractice claim on the ground that the claim was time barred where undisputed facts showed that the representation and tolling had ended). Construing the evidence in Plaintiff's favor, and therefore assuming that Defendants represented Plaintiff no earlier than May 10, 2002, until no later than December 24, 2002, the statutes of limitations were tolled for 228 days, and any claim must have accrued no earlier than July 2, 2002.

### 3. Accrual of Plaintiff's Claims

Causes of action for both attorney malpractice and breach of fiduciary duty accrue on the date of the alleged breach. *Rohe,* 160 F. Supp. 3d at 549. "What is important is when the malpractice was committed, not when the client discovered it." *McCoy v. Feinman*, 785 N.E.2d 714, 718 (N.Y. 2002).

The surviving claims in this action are based on the allegation that Defendants disclosed Plaintiff's confidential information to other clients. *See Gurvey*, 462 F. App'x at 30. The Complaint alleges that Plaintiff suspected Cowan associate Susan Schick of disclosing Plaintiff's confidential information to Phish band member Michael Gordon before or around February 2002. Plaintiff, at her deposition, testified that Gordon confirmed in April 2002 that Schick had disclosed the information. Construing these facts in the light most favorable to Plaintiff, the latest date on which a reasonable jury could find that Plaintiff's claims accrued based on the alleged Phish disclosure was in April 2002.

The Complaint also alleges that Cowan and Clear Channel jointly misappropriated Plaintiff's information. This allegation appears to be based solely on the May 2003 *New York*

*Times* article which reported that Clear Channel was beginning an "instant CD" venture, similar to but not the same as Plaintiff's e-ticketing venture, and described as "a continuation of the trend among various bands and start-ups in recent years to sell authorized recordings that are available on CD or as Internet downloads soon after the event." The article is insufficient to give rise to an inference of improper disclosure by the Firm to Clear Channel. As there is no evidence of any improper disclosure of Plaintiff's information to Clear Channel or any date on which it allegedly occurred, there is no date when Plaintiff's claims based on this alleged disclosure accrued.

Based on an April 2002 accrual date, Plaintiff's claims are barred by the three-year statutes of limitations. Plaintiff filed the Complaint on February 15, 2006. To be timely absent tolling, Plaintiff's claims must have accrued on or after February 15, 2003. Tolling the statutes of limitations for 228 days, the duration of Cowan's representation of Plaintiff, any timely claim must have accrued no earlier than 228 days before February 15, 2003, or July 2, 2002. Plaintiff's claims, which accrued no later than April 2002, are untimely.[1]

### B. Sufficiency of the Evidence

As noted, the surviving claims in this action are based on the allegation that Defendants disclosed Plaintiff's confidential information to other clients. *See Gurvey*, 462 F. App'x at 30. These claims fail as a matter of law also because Plaintiff has not proffered sufficient evidence from which a reasonable jury could find liability or damages.

---

[1] Even if the attorney-client relationship continued until January 3, 2003 (the date on which Defendants withdrew as Plaintiff's counsel before the USPTO) or until February 16, 2003 (the date on which Plaintiff claims to have learned that Defendants withdrew as her counsel before the USPTO), Plaintiff's claims still are untimely. If the attorney-client relationship continued until January 3, 2003 (resulting in a tolling period of 238 days), any timely claim must have accrued no earlier than June 22, 2002. If the relationship continued until February 16, 2003 (resulting in a tolling period of 282 days) any timely claim must have accrued by May 9, 2002.

14

First, the undisputed evidence shows that Plaintiff's information was not confidential. She shared it at a Firm meeting where she did not take any precautions to prevent its dissemination. The Complaint also states that she shared it with various third parties, and the evidence includes a May 2002 email describing her proposal to a third party. Although the claims are premised on the confidentiality of the information in the PPAs, Plaintiff inexplicably now contends that the PPAs did not include any confidential information or information that would be "of interest to [Defendants'] clients." Lastly, as discussed in detail above, Cowan did not learn Plaintiff's confidential information during the course of a confidential relationship, as the Firm did not yet represent Plaintiff when she initially disclosed it at her employment interview in December 2001, and again at the Firm meeting in February 2002.

Second, Plaintiff has not adduced evidence to show that she entrusted information with Defendants during the course of any attorney-client or other fiduciary relationship, or that Defendants disclosed her information during the course of such a relationship. Both the disclosure by Plaintiff to the Firm, and the Firm's alleged disclosure to Pfish, occurred prior to the commencement of the representation. "Failure to establish an attorney-client relationship prevents a plaintiff from proceeding on a legal malpractice claim." *Case v. Clivilles*, 216 F. Supp. 3d 367, 379 (S.D.N.Y. 2016).

Third, as discussed above, Plaintiff has failed to adduce any evidence that the Firm disclosed her information to Clear Channel. Plaintiff repeatedly testified at her deposition that she does not have specific evidence that any of the individual Defendants actually disclosed her confidential information.

Fourth, Plaintiff has not presented evidence from which a reasonable jury could conclude that she suffered damages that were proximately caused by Defendants' alleged breach. In

15

remanding the claims at issue, the Second Circuit cited *Ulico Casualty Co. v Wilson, Elser, Moskowitz, Edelman & Dicker*, 865 N.Y.S.2d 14, 22 (1st Dep't 2008), which held that a plaintiff must establish "but for causation" to recover on either an attorney malpractice claim or a breach of fiduciary duty claim against an attorney; "the plaintiff must establish the 'but for' element of malpractice" -- i.e., that Plaintiff would not have sustained a loss but for the defendant attorney's breach. *See also Reubens v. Mason*, 387 F.3d 183, 189 (2d Cir. 2004). "[M]ere speculation of a loss resulting from an attorney's alleged omissions . . . is insufficient to sustain a claim for legal malpractice." *Gallet, Dreyer & Berkey, LLP v. Basile*, 35 N.Y.S.3d 56, 58 (1st Dep't 2016) (quoting *Markard v. Bloom*, 770 N.Y.S.2d 869, 869 (1st Dep't 2004) (alterations in original). "[S]ummary judgment dismissing the legal malpractice claim has been granted where the asserted damages are vague, unclear, or speculative." *Id.* at 59.

There is no evidence in the record, expert or otherwise, that Plaintiff's venture would have been commercially successful but for any alleged conduct of Defendants, or that she would not have suffered any other actual damages but for the alleged improper disclosures. *See id.* at 58–59 (affirming summary judgment on malpractice claim because damages were purely speculative); *see also Stonewell Corp. v. Conestoga Title Ins. Co.*, 678 F. Supp. 2d 203, 212 (S.D.N.Y. 2010) (noting that "[e]xpert testimony is sometimes required to establish . . . whether the negligence proximately caused any injury to the plaintiff-client"); *O'Shea v. Brennan*, No. 02 Civ. 3396, 2004 WL 583766, at *14 (S.D.N.Y. Mar. 23, 2004) (granting summary judgment as to legal malpractice claim because "without expert testimony, it is unlikely that a jury could conclude whether, but for O'Shea's failure to file timely, [plaintiff] would have been successful in a defamation action in New York, had such an action been commenced").

Plaintiff erroneously argues that "in the event an attorney breaches his duty of loyalty, the client, as a matter of law, is not required to meet the higher standard of pleading and proving causation; but rather, must demonstrate only that the breach or conflict of interest was a substantial factor in bringing about its loss." The cases on which Plaintiff relies are inapposite or do not stand for the propositions for which she cites them. *See, e.g.*, *Ulico Cas. Co.*, 865 N.Y.S.2d at 22 ("[T]he plaintiff must establish the 'but for' element of malpractice"); *Schneider v. Wien & Malkin LLP*, No. 601363/02, 2004 WL 2495843, at *17 n.10 (N.Y. Sup. Ct. Nov. 1, 2004) ("The more rigorous 'but for' standard of causation will be applied where a breach of fiduciary claim against an attorney is premised on allegations of legal malpractice"); *Estate of Re v. Kornstein Veisz & Wexler*, 958 F. Supp. 907, 924 (S.D.N.Y. 1997) ("[T]o recover for legal malpractice, it must be shown not only that the attorney was negligent, but also that 'but for' the attorney's negligence the plaintiff would have prevailed in the underlying action.").

Because the evidence is insufficient to create any genuine issue of material fact as to Defendants' liability or Plaintiff's alleged damages, summary judgment is granted on this basis in addition to the expiration of the statutes of limitations.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED, and Plaintiff's cross-motions are DENIED. Any of Plaintiff's claims or arguments not addressed herein have been considered and rejected. The Clerk of Court is directed to close the motion at Docket No. 375 and close this case.

Dated: July 6, 2017
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE