*Pro Se Office*
*Original*
*Court Copy*
*Docketing*

AMY R. GURVEY
US Patentee/Plaintiff PRO SE
315 Highland Avenue
Upper Montclair, NJ 07043
PH 917-733-9981
amygurvey@gmail.com

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**Gurvey v. Cowan, Liebowitz & Lathman, PC et al.**

Case No. 06 Civ. 1202 (LGS)

**Motion under FRCP Rules 60(b)(6) and 15 to Vacate Judgment and Replead an Amended Complaint Post Judgment**

Application DENIED as untimely. Plaintiff seeks to vacate the judgment entered on July 7, 2017, under Rule 60(b). Plaintiff's motion is based largely on new evidence, the evidence of a patent. Rule 60(c)(1) provides that a motion under Rule 60(b) for reasons of newly discovered evidence must be filed "no more than a year after the entry of the judgment." Here, Plaintiff filed the motion more than four years after the entry of judgment. To the extent Plaintiff's motion is based on other reasons under Rule 60(b)(6)'s catch-all provision, it still must be "made within a reasonable time." Fed. Rule. 60(c)(1) ("A motion under Rule 60(b) must be made within a reasonable time . . . ."). Plaintiff's motion is devoid of facts or argument to support finding that it was made within a reasonable time. Because Plaintiff's Rule 60(b) motion to vacate is denied as untimely, Plaintiff's motion for leave to amend is also denied. "It is well established that a party seeking to file an amended complaint post-judgment must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b)." *Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020) (internal quotation marks omitted).

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 435 and to mail a copy of this Order to Plaintiff.

Dated: December 2, 2021
New York, New York

_____
LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

RECEIVED 2021 NOV 24 AM 11:15 U S DISTRICT COURT SDNY

This motion seeks relief under Rule 60(b)(6) to vacate the 2017 summary judgment orders of this Court and to replead an amended complaint post judgment under Rule 15. This motion is fully supported by the 2d Circuit's decision and order in *Metzler Investment Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F. 3d 133 (2d Cir. 2020) with no exception. Amy R. Gurvey, a US Patentee and the Plaintiff PRO SE herein declares to the truth of the following statements in support of this motion.

1. *FRCP Rules 60(b), and 15(a)(2)*

"A district court abuses its discretion when it 'bases its ruling on an incorrect legal standard or a clearly erroneous assessment of the facts.' " *City of New York v. Group Health Inc.*, 649 F.3d 151, 156 (2d Cir. 2011) (quoting *Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 348 (2d Cir. 2003)). This is exactly what transpired in this lawsuit since remand from the Second Circuit in 2012. 462 Fed. Appx. 26 (Feb. 10, 2012)

2. Plaintiff's Rule 60(b) motion with amended complaint post patent issuance was duly docketed, date-stamped, served and filed on April 22, 2010 during the first appeal to the sua sponte dismissal orders of the district court entered April 27, 2009. However, somehow Plaintiff's motions were deleted *sua sponte* from the SDNY docket while the first appeal was pending (09-2185-; 10-4111). The Second Circuit did not hear Plaintiff's claims for strict liability patent infringement damages in the first appeal because Plaintiff's first US ticketing patent – anticipated in paras. 16-18 of the Third Amended Complaint - issued five months *after* the notice of appeal was filed by Plaintiff's attorney, O. Lee Squitieri. Squitieri then moved to withdraw contending the case was rigged because Live Nation had been dismissed under Rule 12(b) based on

2

blatantly fraudulent jurisdictional papers. The Second Circuit in fact denied Plaintiff's motion under FRAP Rule 10(e) to add the patent into the appeal considering the motions had been date stamped and filed by the district court. Plaintiff's essential motions were also printed in the Second Circuit Vol. III Appendix at pp. 671 et seq. with the date stamp of April 22, 2010 and the motions vanished by the time the appeal was remanded on February 10, 2012.

3.  On remand, and in the face of the DC District Court parallel orders in *US v. Ticketmaster and Live Nation,* jurisdictional fraud by defendant Live Nation in this lawsuit was established.[1] The Dept. of Justice found that at least sine February 2008, defendant live Nation was importing a ticket system from ETV Eventim of Germany to manage defendants owned and operated venues in NYC – House of Blues, Irving Plaza and Roseland Ballroom.

4.  However, since 2012 Plaintiff never got her date stamped motions reinstated to the docket or adjudicated. Nor did Plaintiff get patent discovery on the remanded claims, or an amended complaint granted post patent

---

[1] In *US v. Ticketmaster and Live Nation*, 2010 WL 975407, 975408 (DDC 2010) the competitive impact statement and consent decree signed and entered on January 25, 2010, found that since at least February 2008, defendant Live Nation was importing a ticketing and content management system from ETS Eventim in Germany to services its owned and operated venues in NYC – House of Blues, Irving Plaza and Roseland Ballroom. In this lawsuit, eight Baker Botts and Hinshaw & Culbertson defense attorney swore under oath in Rule 12(b) moving papers filed in April 2008 that defendant Live Nation had no contacts with NYS to answer for Plaintiff's claims. Based thereon, defendant was dismissed from this lawsuit on April 27, 2009; and Plaintiff's Rule 60(b) motion based on fraud and Plaintiff's issued patent that defendant was willfully infringing, was docketed and date stamped timely on April 22, 2010 and then deleted sua sponte from the docket by the time the first appeal was remanded from the Second Circuit. On January 8, 2020, defendant was sanctioned $80mil for contumacious defiance of the consent decree and competitive impact statement and the proscriptions were extended until 2026.

issuance. By this time, the case was then an "arising under" patent case based on the US patent claims that had thus far issued to Plaintiff. Nonetheless, the claims that did issued in that patent had been prejudiced by the Cowan defendants and certain priority dates had been forfeited requiring additional continuation applications to be filed. Plaintiff was never allowed to prosecute these claims and delay damages in this court in violation of the Fifth Amendment. *NeuroRepair v. Nath Law Group*, 781 F. 3d 1340 (Fed. Cir. 2015)

5. In addition, the court never ordered the mandatory disqualification of defense counsel Richard Supple of Hinshaw & Culbertson, LLP from the Cowan law defendants' representation. Judiciary Law Section 90 and Judiciary Law Part 1240.6d both required withdrawal or disqualification.

6. At all times relevant, Supple was a concealed executive member of the Appellate Division First Dept. attorney grievance committee ("AGC") dually serving as a state officer when Plaintiff's ethics complaints against the Cowan defendants were filed seeking state orders to compel mandatory return of Plaintiff's complete patent files. Cowan defendants had twice moved unilaterally to withdraw from Plaintiff's applications at the USPTO admitting to a conflict of interest while defying practitioner mandates. 37 CFR 2.10. 2.19.10.66, 11.116.

7. Unbeknownst to Plaintiff, Supple was abusing his concealed state post to enter and corrupt Plaintiff's Third Dept. retirement bar files as Cowan defendants' agent to gain unfair litigation advantages. An order of the Appellate Division entered April 21, 2016 so found. In addition, Cowan defendants and Supple called lawyers and patent lawyers all over the tri-state area to boycott Plaintiff from her field of invention and prevent Plaintiff from retaining another patent attorney to take over prosecution at the USPTO.

4

Certain of these attorneys include Allan Chan and Charles Ruggiero abandoned Plaintiff's applications after receiving phone calls from Supple as Cowan defendants' agent. Supple defamed Plaintiff and did not disclosing the fraudulent breaches of duty by the Cowan defendants. Fourteen of Plaintiff's continuation and divisional applications mysteriously went abandoned by Chan and an investigation ensued at the USPTO Office of the Commissioner against Chan and Ruggiero.

8. There is no dispute that in 2002 the Cowan defendants tried to employ Plaintiff as a California consultant under false pretenses to achieve an interest in Plaintiff's patents. This type of retainer is per se unlawful. *Buechel v. Rhodes,* 285 AD 2d 2854 (1st Dept. 1999). The Cowan defendants told Plaintiff they "missed out on the Internet bubble". Two rainmaking partners William Dippert and Michael Wolfson who were supposed work with Plaintiff for California patent clients, exited the firm. Dippert told Plaintiff that the firm was in poor financial condition. The Cowan defendants then delayed sending Plaintiff a consulting agreement after they paid a headhunter to recruit Plaintiff By this time, Plaintiff had already introduced California patent client into the firm, Legend Films of San Diego. Legend's founder's owed Plaintiff 3% of the stock at founder's level for work performed in California since 1999.

9. Cowan defendants repudiated the offered consulting contract on May 7, 2002 two weeks after it was signed, and then tried to get out of paying the headhunter her commission.

10. Nonetheless, the firm's registration codes were contained on the cover sheets of two defective patent applications filed for Plaintiff on May 22,

5

24 and 2002. The application filed by two different Cowan attorneys – Mark Montague and R. Lewis Gable - that were insufficient to protect Plaintiff's priority dates. Two provisional applications expired and two formal application went abandoned. All were forfeited in 2003. In the interim, Plaintiff caught night staff and a secretary, Jacqueline Revander, copying Plaintiff's inventorship files and client lists into the firm directories without authorization.

11.   Thereafter defendants Midge Hyman and William Borchard sent Plaintiff to California to work with Legend Films. Legend offered Cowan defendants what they asked for, i.e., a hybrid agreement for patent legal work inclusive of a stock interest in the company. Cowan defendants told Plaintiff no stock had been offered, which was a lie. When Plaintiff returned to New York, she was locked out of defendants' office by defendant Hyman and could not get her patent files and client lists returned.

12.   Within a year, Plaintiff's applications filed by Cowan defendants expired and were ultimately forfeited.

13.   As a matter of law, Cowan defendants were serving as Plaintiff's patent attorneys in spite of what they falsely argued to this court. Cowan's patent of counsel, R. Lewis Gable, was terminated. Discovery of an email containing the names of defendant Christopher Jensen and Mark Montague says that "Cowan was following the client's instructions". Based on Cowan defendants' tortious interference. Plaintiff lost her 3% stock interest in Legend Films for work performed in California since 1999. Then Plaintiff discovered that her content editing algorithms had been inserted into Legend's PCT

6

application to achieve a patentable discovery. This application was filed by Gable without notice to Plaintiff on May 6, 2002 (PCT 02US 14192) and Plaintiff's name was fraudulent omitted as a co-inventor of the application. Ultimately, the application as filed achieved a patent on February 20, 2007, the second date that Cowan defendants attempted unilateral withdrawal from Plaintiff's representation at the USPTO. Cowan defendants were never granted withdrawal by the USPTO for defiance of practitioner conflict of interest mandates.

14. Cowan defendants then extended their scheme to the attorney grievance committee via Supple. Cowan defendants unlawfully hired Supple after Plaintiff filed an ethics complaint. No attorney serving on the AGC when an ethics complaint is filed against a client can accept the retainer of the reported firm if the client files an ethics complaint or sues. JL Part 1204.6d.

15. Plaintiff who was retired by the Third Dept. in 1998 was never under the jurisdiction over the First Dept. That Cowan defendants knew this is proven by defendants' payment of a fee to the State Bar of California in March 2002 to reinstate Plaintiff to active from inactive status so that Plaintiff could consult on patent work for California clients.

16. Another plaintiff who had a coincident in this court, Linda Grant Williams, alleged she was boycotted by several law firms that were representing clients harboring conflicting interests with her business method for financing airport terminals. Grant Williams did not get a patent and her case was remanded to the state to adjudicate state Donnelly Act damage claims. Grant Williams, however, was granted the right to replead her

7

complaint post judgment on appeal to the Second Circuit. *Grant Williams v. Citicorp*, 659 F. 3d 208 (2d Cir. 2011).

17. Plaintiff's case if far more compelling against both the Cowan defendant lawyers and clients defendant Live Nation and by Mike Gordon of Phish. Gordon is married to a former Cowan senior associate, Susan Schick. In 2002, Schick who lauded the significance and value of Plaintiff's inventions to the live music industry, enticing the firm partners to offer Plaintiff the illegal retainer to invest in her patent applications. Schick pleaded that she be allowed to work on Plaintiff's patents. The firm realized there was an irreconcilable conflict of interest when defendant Live Nation organized a subsidiary, defendant Instant Live Concerts, to distribute live CDs to ticketholders as local clubs in Boston, and then began negotiations to acquire a recording patent to expedite CD handouts.

18. However, Cowan defendants went too far and began organized corruption in Plaintiff's bar files. As Cowan defendants' agent, Supple, was never allowed to be retained. Supple was unlawfully dually serving as a state AGC officer. Cowan defendants and Supple conspired to commit crimes in Plaintiff's retirement Third Dept. bar files, defame Plaintiff to attorneys and patent lawyers, and engage in wrongful state action with other AGC staff attorneys and officers in Plaintiff's confidential state files. The plan which was successful was to have Supple's AGC supervisor, Judge Luis Gonzalez, enter a sanction order sua sponte without notice or jurisdiction. Plaintiff was already 14 years retired in NYS and there was no license to sanction.

19. Orders that adversely implicate the constitutional rights of litigants can never be entered sua sponte. *Link v. Wabash R. R. Co.*, 370 US 626 (1962).

8

This applies to Judge Gonzalez's order that was given to Magistrate Pitman and orders entered by this Court based on that order.

20. Judge Gonzalez's order entered without jurisdiction or an opportunity to be heard has been the subject of a motion to vacate for lack of jurisdiction before the State that technically, must be granted as part of the judge's administrative duties. Unfortunately, Judge Gonzalez is no longer on the bench. This required Plaintiff to move for mandamus relief against the new presiding justices of the First and Third Dept. to get the order vacated and to compel production of the complete files corrupted by Supple as Cowan defendants' agent. *Wilcox v. Supreme Council of Royal Arcanum*, 270 NY 370 (1914). Those motions remain pending.

21. Ultimately, and separate from defendants Live Nation, Instant Live Concerts, LLP and Gordon for Phish, five NYS agencies took Plaintiff's ticketing patents without payment of just compensation in violation of the Fifth Amendment.

22. Cowan defendants who with Supple, instructed and orchestrated the scheme, are each jointly and severally liable for wrongful state action pursuant to 42 USC §1983, 1985, 1988, attorney's fees and costs, and violations of the Donnelly Act, NY's General Business Law, Section 340. The diabolical *mens rea* and malice exhibited by Cowan defendants and Supple including engaging in criminal acts in further of an illegal enterprise with AGC officers must be punished and assessed for damages by this Court. Manifest injustice is clearly established.

23. In its summary judgment order entered July 6, 2017, the court admitted it never granted Plaintiff an amended complaint post patent issuance when Plaintiff was owed that complaint pursuant to prevailing patent and Federal Circuit law. The court admitted it never granted discovery ordered by the Second Circuit in the 2012 remand order. The court further held sua sponte it was holding Plaintiff to standard of a NY attorney and referred to the sua sponte order entered by Justice Gonzalez without giving Plaintiff an opportunity to be heard. The court conceded it never granted an amended complaint and did not disqualify Supple as it was required to do. Moreover, the Court never heard Cowan defendants' boycotting torts and defamation of Plaintiff to numerous attorneys and to the AGC via Supple as its agent which are acts aiding and abetting wrongful state action. *Zebrowski v. Wells Fargo Bank*, 657 F. Supp. 2d 511 (2009)

24. Previously, in 2015 the court improperly ordered Plaintiff to pay $10,000 into the SDNY Cashier in 2015 for a special patent master, Plaintiff paid the fee, and no patent master was ever hired. It took 2 ½ years for Plaintiff to secure a refund.

25. This court must now comply with the law of the circuit and offer Plaintiff the right to replead her operative 2008 complaint post judgment.

MEMORANDUM OF LAW

26. It is well established that "[a] party seeking to file an amended complaint post[-]judgment must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b)." *Ruotolo v. City of New York*, 514

10

F.3d 184, 191 (2d Cir. 2008). "[I]t would be contradictory to entertain a motion to amend the complaint" without "a valid basis to vacate the previously entered judgment." *Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 245 (2d Cir. 1991). "To hold otherwise would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation." <u>*Grant Williams v. Citicorp.*</u>, 659 F. 3d 208 at 213 (brackets and internal quotation marks omitted) (quoting *Nat'l Petrochemical*, 930 F.2d at 245).

27. Rule 60(b) provides that a court may relieve a party from a final judgment for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

28. The Second Circuit has described Rule 60(b)(6) as a catch-all provision with no outside statutory limitation that "is properly invoked when

there are extraordinary circumstances justifying relief, when the judgment may work an extreme and undue hardship, and when the asserted grounds for relief are not recognized in clauses (1)–(5) of the Rule." *Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986) (internal citations omitted). Subdivisoin (6) has no statute of limitations.

29. Notwithstanding the foregoing, the Second Circuit has held that it may be appropriate in a proper case to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment. *Nat'l Petrochemical*, 930 F.2d at 245 (internal citation omitted; brackets in original). The Court considered this *dicta* in two decisions that warrant discussion: *Williams v. Citigroup Inc.*, 659 F.3d 208 (2d Cir. 2011) and *Indiana Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85 (2d Cir. 2016).

30. In *Williams*, the district court granted the defendants' motion to dismiss with prejudice and entered judgment without ever providing the plaintiff with an opportunity to replead. *See* 659 F.3d at 211-12. The facts of the instant case are similar but far more compelling. In *Williams*, the plaintiff moved pursuant to Rules 59(e) and 60(b) to reopen the judgment and obtain leave to amend her complaint. *Id.* The district court denied the motion on the grounds that the plaintiff failed to "demonstrate any basis" for relief from the judgment and to "explain why she should be granted leave to replead at this stage when she failed to request an opportunity to replead" at an earlier stage in the litigation. *Id.* at 212.

31. Conversely, in the instant case, Plaintiff has been attempting to amend her complaint since her first US ticketing patent issued on October 13,

2009. Plaintiff duly filed a Rule 60(b) motion with amended complaint pursuant to 35 USC §271, 284, 285, 286 that was docketed and date stamped on April 22, 2010. The motion with amended complaint were both printed in Plaintiff's first appeal to the Second Circuit (09-2185;10-4111); however because notice of appeal was filed pre-patent issuance. the Second Circuit denied Plaintiff's applications under FRAP Rule 10(e) to bring the patent claims into that appeal.

32. Thereafter since remand in 2012, Plaintiff has been completely railroaded out of this court both from conducting discovery on the remanded claims and to get an amended complaint granted post patent issuance.

33. In *Williams*, the Second Circuit reversed the district court's denial of the motion to replead. The Court began by recognizing the well-established rule that a plaintiff seeking to amend a complaint post-judgment must first have the judgment vacated pursuant to Rules 59(e) or 60(b). *Id.* at 213. It then observed that "it might be appropriate in a proper case to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment." *Id.* (quoting *Ruotolo*, 514 F.3d at 191). From these formulations, the Court reasoned that "post-judgment motions for leave to replead must be evaluated with due regard to both the value of finality and the policies embodied in Rule 15." *Id.* An issued US patent anticipated by the previous complaint is considered new evidence under unanimous decisions of the Federal Circuit.

34. Then in *Williams*, the Second Circuit then went on to analyze *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) for further authority. There, the Supreme Court addressed a post-judgment motion to

13

amend the complaint. *See* 371 U.S. at 179-81, 83 S.Ct. 227. The plaintiff had asserted a claim seeking to enforce an alleged oral agreement regarding the amount she stood to inherit from her father's estate. *See id.* at 179, 83 S.Ct. 227. The district court dismissed the complaint for failure to state a claim on the grounds that the alleged agreement was unenforceable under the statute of frauds. *Id.* Judgment was entered. *Id.* The next day, the plaintiff moved to vacate the judgment and to amend her complaint to seek recovery in quantum meruit. *Id.* The district court denied the motion without explanation. *See id.* The Supreme Court reversed. It construed the motion as one properly filed pursuant to Rule 59(e). *Id.* at 181, 83 S.Ct. 227; and, against the backdrop of a plaintiff who was never afforded an opportunity to replead, the Court stated:

> " Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given" …
>
> Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules. *Id.* at 182, 83 S.Ct. 227. It follows that it is an abuse of discretion to deny a motion — to prevent a "manifest injustice," although the Court did not say so explicitly — when the plaintiff was never given an opportunity to replead in the first place."

14

35. Based on the principles of *Foman*, the Second Circuit reversed the district court's denial of the post-judgment motion to amend in *Williams*. In doing so, the Court explained that *Foman* "makes unmistakably clear" that a plaintiff need not "seek leave to replead either together with her response to the motion to dismiss, or indeed prior to the district court's entry of judgment." *Williams*, 659 F.3d at 214.

36. In *Indiana Public Retirement System v. SAIC, Inc.*, 818 F.3d 85 (2d Cir. 2016), the district court granted in part and denied in part a motion to dismiss a first amended complaint. 818 F.3d at 91. In its decision, the court granted the plaintiffs leave to amend the claims that it dismissed without prejudice. *See Id.* The plaintiffs did not file an amendment within the time allotted, however, and proceeded with their claims that had survived the motion to dismiss instead. *Id.* The defendants, meanwhile, moved for reconsideration. *Id.* The court granted the motion for reconsideration and reversed course. *See Id.* On reconsideration, the court granted the motion to dismiss in full and dismissed all the plaintiffs' claims with prejudice. *Id.* It then entered judgment for the defendant. *See Id.* The plaintiffs moved to amend or vacate the judgment and to file a proposed second amended complaint. *Id.* The district court denied the motions on the grounds that the plaintiffs had failed to demonstrate any grounds for relief under Rule 60(b) and the proposed amendment would be futile. *Id.* at 92.

37. Again, the Second Circuit reversed. As in *Williams*, the court stated first that a party seeking to file an amended complaint post-judgment must first have the judgment vacated pursuant to Rules 59(e) or 60(b). *Id.* The

Court noted that Rule 60(b) "authorizes a court to grant relief from a final judgment for 'any ... reason that justifies relief.' " *Id.* at 92 (ellipsis in original) (quoting Fed. R. Civ. P. 60(b)(6)). Then the court articulated the formulation from *National Petrochemical*: that "it might be appropriate in a proper case to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment." *Id.* (quoting *Williams*, 659 F.3d at 213).

38.   The *SAIC* Court noted that the district court "denied leave to amend under Rule 60(b)(6) solely on the ground that amendment ... would be futile, a determination that the Second Circuit must review *de novo*." *Id.* (citation and footnote omitted).

39.   There, however, the court concluded that the amendment would not be futile and reversed without "reach[ing] th[e] issue" of whether the district court abused its discretion in rejecting the plaintiff's argument that the judgment should be set aside because of newly discovered evidence. *Id.* at 92 n.4.

40.   In the instant case, there is not only in-court fraud and deceit and newly discovered evidence in the form of the first US patent issued to Plaintiff that was prejudiced, delayed and irreparably damaged by the Cowan defendants' fraudulent breaches of fiduciary duty, but Plaintiff's earlier motions were deleted sua sponte from the docket. Thereafter there were additional crimes and wrongful state action in Plaintiff's confidential state files by Cowan defendants and their agent Richard Supple, and defamation of Plaintiff. The sum total of the illegal enterprise resulted in unserved and forged documents being inserted into Plaintiff's confidential state files and sua sponte state order being entered into Plaintiff's file without jurisdiction.

41. On April 21, 2016, the Appellate Division found that Supple and Plaintiff's original attorney, Squitieri, both entered and corrupted Plaintiff's Third Dept. retirement bar files without a warrant in defiance of JL Part 1240.18 and inserted unserved and forged documents. Thereafter, Supple still did not withdraw from the Cowan defendants' representation as he was required to do. The not only did not mandate that withdrawal (JL Part 1240.6d) but allowed Supple to file premature and frivolous summary judgment motions without any discovery conducted in favor of Plaintiff. A numerous number of genuine issues of material fact existed at that time.

42. During hearing on November 29, 2016 the court set a summary judgment schedule, seating the parties apart in the courtroom, and denied Plaintiff's cross motion on conceded ground that no amended complaint post patent issuance had been granted.

43. Plaintiff has never seen the documents illegally entered by Supple into her state files as Cowan defendants' agent, and has not been served with Cowan defendants' answer to her ethics complaint. Upon belief, the complaints were removed by Supple. See *Anderson v. First Dept. Disciplinary Committee and State of NY*, 614 F. Supp. 2d 404 (SDNY 2009)(Headnotes 15, 16) finding Christine Anderson's claim that when a reported attorney is being represented by an AGC committee member of chief counsel, the client's ethics complaints are "whitewashed" 100% of the time)

44. No disciplinary action may be taken by the state AGC offices except against an attorney in a representative capacity for a client. The draft petition prepared in 2008 discovered by Plaintiff, suspiciously had the embossed signature of Paul Curran, Esq., a 2002 AGC chief counsel who was

dead of cancer in 2007. Curran was also a former partner with Cowan partner William Borchard and left the AGC in 2002.

45. Moreover, only the Third Dept. had jurisdiction over Plaintiff in the capacity of an attorney for the time she was admitted in NYS (1985-1998). Ergo, the orders of this court entered in 2015 and 2017 sua sponte finding facts not in the record were improper in that they failed to give Plaintiff an opportunity to be heard. *Link v. Wabash R. R. Co.,* 370 US 626 (1962).

46. It should be noted that (1) the district court in *SAIC* had permitted amendment after its first decision on the motion to dismiss; (2) the plaintiffs had not availed themselves of it, but were able to proceed with their surviving claims; (3) on reconsideration, the district court dismissed all the plaintiffs' claims including the theretofore surviving claims with prejudice, prohibiting amendment without providing a justification; and (4) the plaintiffs then were unable to proceed except by motion for relief from the judgment. *See SAIC,* 818 F.3d at 91-92. This history parallels the procedural pattern in *Foman* and *Williams*; the only key distinction in *SAIC* being that the plaintiffs had — and availed themselves of — one opportunity to amend while the plaintiffs in *Foman* and *Williams* had none. Notwithstanding this distinction, the cases — *SAIC, Foman,* and *Williams* — are consistent.

47. In the case at bar, by contrast, Plaintiff had no opportunity to amend her complaint post US patent issuance whatsoever, the essential motions were unlawfully deleted from the record, and Plaintiff's essential motion to disqualify defense counsel that were required to be granted, were improperly denied.

48. The Second Circuit will "review the district court's denial of a post-judgment motion for leave to replead for abuse of discretion." *Williams*, 659 F.3d at 212.

49. In this case, Plaintiff asks this court to "vacate the judgment and grant leave to replead to correct clear errors of law, unilateral corruption of case dockets and records, and to prevent manifest injustice."

50. Under the catchall provision of Rule 60(b)(6) that encompasses any "reason that justifies relief," Plaintiff argues that the Second Circuit's 'strong preference for resolving disputes on the merits' " is properly followed in this case (quoting *Williams*, 659 F.3d at 212-213).

WHEREFORE, Plaintiff prays that her motion to vacate the summary judgment orders of the court and to replead her complaint post judgment be granted in all respects.

Dated: November 19, 2021  
Montclair, NJ

AMY R. GURVEY  
/amygurvey/

Plaintiff/US Patentee Pro se